**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------X

Alan Kachalsky, Christina Nikolov, and     :
Second Amendment Foundation,     :
    :
                Plaintiffs,     :
    :
-against-     :
    :
Susan Cacace, Jeffrey A. Cohen, and     :
County of Westchester,     :
    :
                Defendants.     :
------------------------------------------------------X

**Civil Action Number:**
**10-cv-5413**

**(Hon. Cathy Seibel)**

## MEMORANDUM OF LAW IN SUPPORT OF
## THE STATE DEFENDANTS'
## MOTION TO DISMISS THE COMPLAINT

ANDREW M. CUOMO
Attorney General of the
 State of New York
Attorney for the State Defendants
Assistant Attorney General
120 Broadway, 24th Floor
New York, New York 10271
(212) 416-8553

ANTHONY J. TOMARI (AT-0186)
MONICA CONNELL (MC-9841)
RODERIGO VALLE (Admission Pending)
Of Counsel

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................ iv

PRELIMINARY STATEMENT ..................................................................................... 1

STATEMENT OF FACTS ............................................................................................. 2

A.   Relevant Legal Background......................................................................................... 2

    1.   In Heller the Supreme Court in 2008 for the First Time Recognized a
    Second Amendment Individual Right to Possess Firearms and in
    McDonald the Court in 2010 First Made that Right Applicable to the
    States .................................................................................................................... 3

    2.   New York Law Provides for the Issuance of Concealed Carry Licenses
    Through Penal Law § 400.00(2)(f) ..................................................................... 5

B.   The Parties ................................................................................................................... 7

    1.   Alan Kachalsky...................................................................................................... 7
    2.   Christina Nikolov.................................................................................................. 9
    3.   The Second Amendment Foundation, Inc. ........................................................... 9
    4.   State Defendants ................................................................................................. 10
    5.   County Defendant .............................................................................................. 10

C.   Plaintiffs' Claims ...................................................................................................... 11

ARGUMENT  -  STANDARDS OF REVIEW ............................................................. 11

POINT I
PLAINTIFFS' CONSTITUTIONAL
CLAIMS ARE NOT RIPE FOR REVIEW ................................................................. 13

    A.   Plaintiffs Must Establish an Ongoing Constitutional Violation
    for Their Claims to Be Ripe............................................................................. 13

    B.   Plaintiffs Have Not Set Forth Any Post-McDonald Application
    of the Statute and Thus Cannot Present a Ripe Claim. ..................................... 14

    C.   Plaintiffs' As Applied Challenges Are Not Ripe for Adjudication.................. 16

    D.   Plaintiffs' Facial Challenge is Not Ripe for Adjudication............................... 17

1. Plaintiffs Facial Challenge Is Not Yet Fit for Judicial
Determination by this Court............................................................................ 20

2. Plaintiffs Cannot Establish The Necessary Hardship
to Compel the Consideration of Unripe Claims........................................... 21

POINT II
PLAINTIFFS LACK STANDING TO PURSUE
THEIR CLAIMS AGAINST THE STATE DEFENDANTS................................... 22

A. Plaintiffs' Standing Implicates the Jurisdiction of this Court
and Must Be Resolved as Threshold Matter..................................................... 22

B. Plaintiffs Kachalski and Nikolov Lack Standing to Assert
Claims for Injunctive and Declaratory Relief.................................................... 23

C. SAF Lacks Standing to Prosecute this Action .................................................. 24

1. SAF Cannot Establish Direct Standing...................................................... 25

2. SAF Cannot Establish Associational Standing........................................... 26

POINT III
ABSTENTION IS APPROPRIATE IN THIS CASE............................................. 27

A. Abstention is Required Under *Younger v. Harris*.............................................. 28

B. Abstention is Also Appropriate Under *Pullman* and *Burford*........................... 31

POINT IV
PLAINTIFFS ARE BARRED FROM RE-LITIGATING
THE DENIAL OF THEIR LICENSES .................................................................... 33

A. Res Judicata Bars the Re-litigation of Previously Adjudicated Claims.............. 33

B. This Court Lacks Subject Matter Jurisdiction Under
the Rooker-Feldman Doctrine............................................................................ 34

POINT V
THERE IS NO CONSTITUTIONAL RIGHT
TO CARRY CONCEALED HANDGUNS IN PUBLIC .......................................... 37

A. Heller and McDonald Do Not Establish a Fundamental Second Amendment
Right To Carry Concealed, Loaded, Functional Handguns In Public Places ...... 38

B. Plaintiffs Fail to Demonstrate that Penal Law §400.00(2)(f) is
Unconstitutional As Applied to Them .................................................................. 42

C. Penal Law § 400.00(2) (f) is Not Unconstitutional on its Face............................ 44

POINT VI
PLAINTIFFS HAVE FAILED TO STATE AN
EQUAL PROTECTION CAUSE OF ACTION........................................................ 45

CONCLUSION.................................................................................................................. 47

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page**

Alcan Aluminum Ltd. v. Dep't of Revenue,
724 F.2d 1294 (7th Cir. 1984) ... 17

Alleghany Corp. v. Pomeroy,
898 F.2d 1314 (8th Cir. 1990) ... 31

Allendale Leasing, Inc. v. Stone,
614 F.Supp. 1440 (D.R.I.1985), aff'd, 788 F.2d 830 (1st Cir.1986) ... 16

Allstate Ins. Co. v. Serio,
261 F.3d 143 (2d Cir. 2001) ... 32

Arbitron, Inc. v. Cuomo,
2008 U.S. Dist LEXIS 86573 (S.D.N.Y. October 27, 2008) ... 29

Ashcroft v. Iqbal,
556 U.S. ---, 129 S.Ct. 1937, 1949 (2009) ... 12

Atlantic Coast Line R. Co. v. Brotherhood of Loc. Eng.,
398 U.S. 281 (1970) ... 35

Atlantic Mut. Ins. Co. v. Balfour Maclaine Intern. Ltd.,
968 F.2d 196 (2d Cir. 1992) ... 12

Bach v. Pataki,
408 F.3d 7580 (2d Cir. 2005) ... 6, 16, 45, 46

Bethphage Lutheran Serv., Inc. v. Weicker,
965 F.2d 1239 (2d Cir.1992) ... 33

Bleiler v. Chief, Dover Police Dep't.,
927 A.2d 1216 (N.H. 2007) ... 38

Burford v. Sun Oil Co.,
319 U.S. 315 (1943) ... 32, 33

Burgos v. Hopkins,
14 F.3d 787 (2d Cir.1994) ... 34

iv

Catlin v. Ambach,
   820 F.2d 588 (2d Cir. 1987)........................................................................................ 32

City of Chicago v. Fieldcrest Dairies,
   316 U.S. 432 (1942)..................................................................................................... 32

City of Cleburne v. Cleburne Living Center,
   473 U.S. 432 (1985)..................................................................................................... 45

City of Los Angeles v. Lyons,
   461 U.S. 95 (1983)....................................................................................................... 22

City of Los Angeles v. Taxpayers for Vincent,
   466 U.S. 789 (1984)..................................................................................................... 25

City of New York v. Milhelm Attea & Bros., Inc.,
   550 F.Supp.2d 332 (E.D.N.Y. 2008) .......................................................................... 33

Coffran v. Board of Trustees of New York City Pension Fund,
   46 F.3d 3 (2d Cir.1995)......................................................................................... 13, 17

CSX Transp., Inc. v. N.Y. State Office of Real Prop. Servs.,
   306 F.3d 87 (2d Cir. 2002)........................................................................................... 14

Cubas v. Martinez,
   33 A.D.3d 96 (1st Dep't 2006) .................................................................................... 16

Cuomo v. Dreamland Amusements, Inc.,
   2008 U.S. Dist LEXIS 71432 (S.D.N.Y. September 22, 2008)................................... 29

D.C. Court of Appeals v. Feldman,
   460 U.S. 462 (1983)................................................................................................ 34, 36

Diamond "D" v. McGowan,
   282 F.3d 191 (2d Cir. 2002)........................................................................................ 28

District of Columbia Court of Appeals v. Feldman,
   460 U.S. at 486-487 (1983).......................................................................................... 36

District of Columbia v. Heller,
   __U.S.__, 128 S.Ct. 2783 (2008).......................................................................... passim

Dorr v. Weber,
   2010 WL 1976743 (ND Iowa, May 18, 2010)............................................................. 39

Dube v. State Univ. of New York,
   900 F.2d 587 (2d Cir. 1990)........................................................................................... 14

Emerson v. City of New York,
   2010 WL 2910661 (S.D.N.Y. July 19, 2010) ................................................................ 36

Ex Parte Young,
   209 U.S. 123 (1908)................................................................................................. 14, 23

Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,
   544 U.S. 280 (2005)....................................................................................................... 35

Fastag v. Kelly,
   2005 WL 1705529, 3 (S.D.N.Y. 2005)................................................................... 35, 36

Field Day, LLC v. County of Suffolk,
   463 F.3d 167 (2d Cir.2006)........................................................................................... 42

Ford v. D.C. 37 Union Local 1549,
   579 F.3d 187 (2d Cir. 2009).......................................................................................... 12

Fowler v. Am. Lawyer Media, Inc.,
   2001 WL 1646537 (S.D.N.Y. 2001)............................................................................. 12

Friends of the Earth, Inc. v. Laidlaw,
   528 U.S. 167 (2000)....................................................................................................... 23

Frye v. City of Kannapolis,
   109 F.Supp.2d 436 (M.D.N.C. 1999) ........................................................................... 42

FW/PBS, Inc. v. City of Dallas, supra,
   493 U.S. 215, 230 (1990)........................................................................................ 22, 27

Genco Importing Inc. v. City of New York,
   552 F.Supp.2d 371 (S.D.N.Y.2008).............................................................................. 43

Golden v. Zwickler,
   394 U.S. 103 (1969)........................................................................ 13, 17, 20, 23, 24, 25

Gonzales v. Village of West Milwaukee,
   2010 WL 1904977 (ED Wis. May 11, 2010)................................................................. 39

Green v. Mansour,
   474 U.S. 64 (1985)................................................................................................... 14, 24

Gun Owners' Action League v. Swift,
   284 F.3d 198 (1st Cir. 2002)........................................................................................ 21

Harris v. Mills,
   572 F.3d 66 (2d Cir. 2009)........................................................................................... 13

Hawaii Housing Authority v. Midkiff,
   467 U.S. 229 (1984)...................................................................................................... 42

Hayden v. Paterson,
   594 F.3d 150 (2d Cir. 2010)......................................................................................... 13

Heller v. District of Columbia ("Heller II"),
   698 F.Supp.2d 179 (D.D.C. March 26, 2010).................................................... 3, 38, 40

Hoblock v. Albany County Bd. of Elections,
   422 F.3d 77 (2d Cir. 2005)..................................................................................... 35, 36

Hodgkins v. Holder,
   677 F.Supp.2d 202 (D.C. Dist. 2010) ...................................................... 23, 24, 25, 26

Huffman v. Pursue,
   420 U.S. 592 (1975)................................................................................................ 30, 31

Hunt v. Washington State Apple Advertising Commission,
   432 U.S. 333 (1977)................................................................................................ 26, 27

Kachalsky v. Cacace,
   65 A.D.3d 1045 (1st Dep't 2009), app. dismissed
   14 N.Y3d 743 (2010) ................................................................... 7, 8, 15, 30, 34, 36

Kaufman v. Kaye,
   466 F.3d 83 (2d Cir. 2006)........................................................................................... 30

Kirschner v. Klemons,
   225 F.3d  227 (2d Cir. 2000).................................................................................. 29, 30

Lake Carriers' Ass'n v. MacMullan,
   406 U.S. 498 (1972)...................................................................................................... 32

Lance v. Dennis,
   126 S. Ct. 1198 (2006).................................................................................................. 35

Laurel Sand & Gravel, Inc. v. Wilson,
   519 F.3d 156 (4th Cir. 2008) ....................................................................................... 31

Levy v. Lewis,
635 F.2d 960 (2d Cir. 1980).......................................................................................... 33

Lujan v. Defenders of Wildlife,
504 U.S. 555 (1992)................................................................................................ 23, 25

Majors v. Engelbrecht,
149 F.3d 709 (7th Cir. 1998) ....................................................................................... 31

Maloney v. Cuomo,
554 F. 3d 568 (2d Cir. 2009)................................................................................ 5, 14, 24

Marchi v. Board of Cooperative Ed. Servs. of Albany,
173 F.3d 469, 478 (2d Cir. 1999)................................................................. 18, 19, 20, 21

Marshall v. Walker,
958 F.Supp. 359, 365 (N.D. Ill. 1997) ........................................................................ 41

Matter of County of Westchester v D'Ambrosio,
244 AD2d 334 (2d Dep't 1997)..................................................................................... 7

Maymo-Melendez v. Alvarez-Ramirez,
364 F.3d 27 (1st Cir. 2004)......................................................................................... 31

McDonald v. City of Chicago, Ill.,
__U.S.__, 130 S.Ct. 3020 (June 28, 2010) ........................................................... passim

Medtronic v. Lohr,
518 U.S. 470 (2006).................................................................................................... 41

Middlesex County Ethics Comm'n v. Garden State Bar Assn,
457 U.S. 423 (1982).................................................................................................... 29

Moore v. City of Asheville,
396 F.3d 385 (4th Cir. 2005) ...................................................................................... 31

Mosby v. Devine,
851 A.2d 1031 (R.I. 2004)........................................................................................... 38

Motor Vehicle Manufacturers Association v. New York State Department of
Environmental Conversation,
79 F.3d 1298305 (2d Cir. 1996)...................................................................... 13, 17, 18

N.Y. Pub. Interest Research Grp. v. Whitman,
321 F.3d 316, 324-25 (2d Cir. 2003) .......................................................................... 22

N.Y. State NOW v. Pataki,
   261 F.3d 156, 168 (2d Cir. 2001)................................................................................. 29

National Rifle Ass'n v. City of Pittsburgh,
   999 A.2d 1256 (Pa. 2010)........................................................................................... 26

National Rifle Ass'n v. City of Philadelphia,
   977 A.2d 78 (Pa. 2009)............................................................................................... 26

National Rifle Ass'n v. Magaw,
   132 F.3d 272 (6th Cir. 1997) ...................................................................................... 26

New Orleans Pub. Serv., Inc. v. Council of New Orleans,
   491 U.S. 350 (1989)..................................................................................................... 31

New York v. Ferber,
   458 U.S. 747 (1982)..................................................................................................... 18

Northeastern Fla. Chapter of the Assoc. Gen. Contractors of Am. v. City of Jacksonville,
   508 U.S. 656 (1993)..................................................................................................... 22

O'Neill v. City of Philadelphia,
   32 F.3d 785 (3d Cir. 1994)........................................................................................... 31

O'Connor v. Scarpino,
   83 N.Y.2d 91920 (1994) ................................................................................................ 5

Ohio Civil Rights Commission v. Dayton Christian Schs., Inc.,
   477 U.S. 619 (1986)............................................................................................... 28, 29

Oriental Health Spa v. City of Fort Wayne,
   864 F.2d 488 (7th Cir. 1988) ...................................................................................... 16

O'Shea v. Littleton,
   414 U.S. 488 (1974)............................................................................................... 17, 24

Papasan v. Allain,
   78 U.S. 265 (1986)....................................................................................................... 14

Parker v. District of Columbia,
   478 F.3d 370 (D.C. Cir. 2007)..................................................................................... 38

Pennhurst State School & Hospital v. Halderman,
   465 U.S. 89 (1984)....................................................................................................... 14

People v. Marin,
795 N.E.2d 953 (Ill. App. 2003) .................................................................................... 41

People v. West,
422 N.E.2d 943 (Ill.App. 1981) ................................................................................... 41

People Yarbrough,
169 Cal. App. 4th 303 (2008) ........................................................................................ 40

Port Washington Teachers' Ass'n v. Board of Educ. of Port Washington Union Free
School Dist.,
2006 WL 47447 (E.D.N.Y. 2006)....................................................................... 19, 20, 21

Railroad Comm's v. Pullman,
312 U.S. 496 (1941)............................................................................................... 31, 32

Richmond v. J.A. Croson Co.,
488 U.S. 469, 544 (1989)............................................................................................. 42

Robertson v. Baldwin,
165 U.S. 275, 281-82 (1897) ....................................................................................... 39

Romer v. Evans,
517 U.S. 620 (1996)..................................................................................................... 45

Rooker v. Fidelity Trust Co.,
263 U.S. 413 (1923)............................................................................................... 34, 35

Ruhgras A.G. v. Marathon Oil Co.,
526 U.S. 574 (1999)..................................................................................................... 11

Ruston v. Town Bd. For Town of Skaneateles,
610 F.3d 559 (2d Cir. 2010)............................................................................. 12, 13, 45

Ryan v. New York Telephone Co.,
62 N.Y.2d 494 (1984) .................................................................................................. 34

Salahuddin v. Jones,
992 F.2d 447, 449 (2d Cir.1993).................................................................................. 33

Sassower v. Mangano,
927 F.Supp. 113 (S.D.N.Y. 1996) ............................................................................... 35

Schlagler v. Phillips,
166 F.3d 439 (2d Cir. 1999)......................................................................................... 29

Spargo v. N.Y. State Comm'n on Judicial Conduct,
351 F.3d 65 (2d Cir. 2003)...................................................................................... 28, 29

State of Illinois v. Dawson,
2010 Ill.App. LEXIS 863 (August 18, 2010)................................................................. 40

State v. Knight,
218 P. 3d 1177 (Kan. Ct. App. 2009) ........................................................................... 40

Summers v. Earth Island Institute, supra,
__ U.S. __, 129 S.Ct. 1142 (2009)......................................................................... 22, 27

Swait v. University of Nebraska,
2008 WL 5083245 (D. Neb. Nov. 25, 2008) ................................................................. 40

Swiatkowski v. Citibank,
2010 WL 3951212 (E.D.N.Y. 2010)............................................................................. 33

Tenn. Student Assistance Corp. v. Hood,
541 U.S. 440 (2004).................................................................................................... 14

Texas v. U.S.,
523 U.S. 296 (1998).................................................................................................... 13

Thomas v. City of New York,
143 F.3d 31 (2d Cir. 1998).......................................................................................... 16

Thomas v. Union Carbide Agricultural Products Co.,
473 U.S. 568 (1985)............................................................................................... 13, 16

Toilet Goods Ass'n v. Gardner,
387 U.S. 158 (1967).................................................................................................... 20

Turner Broadcasting Sys., Inc. v. FCC,
512 U.S. 622 (1994).................................................................................................... 42

Turner Broadcasting Sys., Inc. v. FCC,
520 U.S. 180 (1997).................................................................................................... 42

U.S. v. Hall,
2008 WL 3097558 (S.D.W.Va., Aug. 4, 2008) ............................................................ 40

U.S. v. Skoien,
614 F. 3d 638 (7th Cir. 2010) ......................................................................................... 39

United States ex rel Kreindler & Kreindler v. United Technologies Corp.,
985 F.2d 1148 (2d Cir. 1993)........................................................................................... 11

United States v. Frederick,
2010 WL 2179102 (D.S.D. May 27, 2010) ..................................................................... 44

United States v. Hart,
2010 WL 2990001 (D. Mass. July 30, 2010)................................................................... 39

United States v. Masciandro,
648 F.Supp.2d 779, 788 (E.D.Va. 2009) ........................................................... 40, 43, 44

United States v. Miller,
604 F.Supp.2d 1162 (W.D. Tenn. 2009)......................................................................... 38

United States v. Radencich,
2009 WL 12648 (N.D. Ind. Jan 20, 2009) ...................................................................... 38

United States v. Raines,
362 U.S. 17 (1960)........................................................................................................... 17

United States v. Salerno,
481 U.S. 739 (1987)................................................................................................... 18, 44

United States v. Schultz,
2009 U.S. Dist. LEXIS 234 (N.D. Ind. Jan 5 2009) ...................................................... 38

United States v. Staten,
2010 WL 476110 (S.D.W.Va September 2, 2010)......................................................... 38

United States v. Walker,
2010 WL 1640340 (E.D. Va. April 21, 2010) ............................................................... 38

University Club v. City of New York,
842 F. 2d 37 (2d Cir. 1988)............................................................................................. 29

Warth v. Seldin,
422 U.S. 490 (1975).................................................................................... 22, 24, 25, 26

Wash. State Grange v. Wash. State Republican Party,
552 U.S. 442 (2008)........................................................................................... 17, 19, 44

Whelton v. Educ. Credit Mgmt. Corp.,
432 F.3d 150 (2d Cir.2005).............................................................................................. 34

Wilson v. Limited Brands, Inc.,
  2009 WL 1069165 (S.D.N.Y. 2009) ........................................................................ 33, 34


Younger v. Harris,
  401 U.S. 37 (1971) ..................................................................................... 28, 29, 30, 31

**United States Constitution**
U.S. Const., Art. III ...................................................................................................... 13, 22
Second Amendment .................................................................................................... passim
Fourteenth Amendment .............................................................................. 1, 2, 4, 11, 45

**Federal Statutes**

18 U.S.C. § 922 (g) (9) ........................................................................................................ 39
28 U.S.C.A. § 1257 ............................................................................................................. 30
42 U.S.C. § 1983 ....................................................................................... 1, 10, 11, 45

**Federal Rule of Civil Procedure** ("FRCP")
Rule 12(b)(1) ..................................................................................................... 1, 11
Rule 12(b)(6) ........................................................................................ 2, 11, 12, 45

**State Statutes**

CPLR Article 78 ...................................................................... 7, 8, 9, 29, 30, 31

New York Penal Law
Penal Law § 265(10) ...................................................................................................... 6, 10
Penal Law § 400.00 ........................................................................................................ 5, 7
Penal Law § 400.00(1) ....................................................................................................... 5
Penal Law § 400.00(2)(a) ................................................................................................. 6
Penal Law § 400.00(2)(f) ........................................................................................... passim
Penal Law § 400.00(3) ....................................................................................................... 6
Penal Law § 400.00(4) ....................................................................................................... 6
Penal Law § 400.00(4-a) .................................................................................................... 6
Penal Law § 400.00(5) ....................................................................................................... 6

## **PRELIMINARY STATEMENT**

Defendants the Honorable Susan Cacace and the Honorable Jeffrey A. Cohen, judges of the County Court, Westchester County (hereinafter "State Defendants"), by and through their counsel, the New York State Office of the Attorney General, move to dismiss the complaint as against them in its entirety.[1]

Plaintiffs Alan Kachalsky ("Kachalsky"), Christina Nikolov ("Nikolov") and the Second Amendment Foundation, Inc. ("SAF") (collectively "Plaintiffs") bring this action pursuant to 42 U.S.C. §1983 seeking injunctive and declaratory relief against New York's statutory requirement that an applicant for a license to carry a concealed handgun in public demonstrate that "proper cause exists for the issuance thereof". New York Penal Law § 400.00(2)(f). Plaintiffs assert that this "proper cause" requirement both facially and as applied violates their "fundamental right . . . to keep and bear arms" under the Second Amendment of the U.S. Constitution as applied to the states, Complaint ¶¶ 10, 27-29, and violates their "Fourteenth Amendment right to equal protection of the law". Complaint ¶31.

_____

[1] Pursuant to the October 8, 2010 order of this Court, State Defendants' motion to dismiss Plaintiffs' original July 14, 2010 Complaint was to be served on November 5, 2010. On the evening of November 4, 2010, Plaintiffs filed a First Amended Complaint, dated November 4, 2010, which added three new plaintiffs and two new State-judge defendants, contained new factual allegations, and changed certain of the substantive allegations regarding the nature and basis for Plaintiffs' claims. By correspondence with the Court on November 5, 2010, State Defendants sought a new briefing schedule to permit the State Defendants, including the newly named judges who had not been served, to address their motion to dismiss to the superseding pleading. Pursuant to the November 5, 2010 memo endorsement of this Court, which was received by counsel for the State Defendants on November 8, 2010, the Court declined to set a new briefing schedule for the First Amended Complaint and ordered that the original Defendants serve their motion to dismiss by November 9, 2010, that as regards the State Defendants, the motion address the allegations against the two State Defendants contained in the original Complaint, and that by December 6, 2010, the State Defendants could add any additional arguments unique to the new State Defendants and regarding allegations in the First Amended Complaint as necessary. Thus, original State Defendants Judges Cacace and Cohen have served this motion to dismiss as against the original Complaint, with the understanding that arguments relevant to the newly added State Defendants and changes contained in the First Amended Complaint will be addressed in a subsequent briefing.

State Defendants move to dismiss the complaint against them in its entirety

pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(1) on the grounds that: this

matter is not ripe for adjudication, as the decisions on license applications for Kachalsky

and Nikolov, the sole applications referenced in the complaint, were made prior to the

Supreme Court's recent determination that the Second Amendment is applicable to the

states; Plaintiffs lack standing to challenge this statute; principles of federalism require

this court to abstain from exercising jurisdiction; Plaintiffs' claims are barred by *res*

*judicata*; and Plaintiff Kahcalsky's claims are barred by the Rooker-Feldman doctrine.

State Defendants also move to dismiss pursuant to FRCP 12(b)(6) because,

contrary to Plaintiff's assertions, there is no "fundamental right to carry functional

handguns in non-sensitive public places," Complaint ¶ 10, and New York's requirement

that applicants demonstrate "proper cause" for licenses to "have and carry concealed"

handguns violates neither the Second Amendment nor the Equal Protection Clause of the

Fourteenth Amendment.

## STATEMENT OF FACTS

### A. Relevant Legal Background.

Notably, New York does not ban the possession or carrying of handguns. Rather,

as set forth below, New York law provides for the issuance of various types of licenses to

keep or carry pistols or revolvers (collectively "handguns"). Plaintiffs challenge the

"proper cause" provision of New York Penal Law § 400.00(2)(f) which governs the

issuance of licenses to publicly carry concealed handguns. Plaintiffs allege that two

recent Supreme Court cases, District of Columbia v. Heller and McDonald v. City of

Chicago, hold that the Second Amendment protects their right to "carry functional

2

handguns in non-sensitive public places for purposes of self-defense," that this right is applicable to the states, and that these decisions have effected a change in the law requiring a holding by this Court that New York's "proper cause" licensing provision is unconstitutional. Complaint ¶¶ 9-13, 23, 29.

1.     **In Heller the Supreme Court in 2008 for the First Time Recognized a Second Amendment Individual Right to Possess Firearms and in McDonald the Court in 2010 First Made that Right Applicable to the States.**

In District of Columbia v. Heller, __U.S.__, 128 S.Ct. 2783 (2008), a District of Columbia resident, who was a special police officer authorized to carry a handgun while on duty, applied for a registration permit for a handgun that he wished to keep at home, which was denied. He brought a Second Amendment challenge to the District's handgun licensing requirement insofar as it prohibited the carrying of a firearm in the home without a license, and as to a statutory "trigger lock" requirement insofar as it prohibited the use of "functional firearms within the home." Id. at 2788, 2822; Heller v. District of Columbia ("Heller II"), 698 F.Supp.2d 179, 183 (D.D.C. 2010). The Supreme Court held for the first time that the Second Amendment protects an individual right to possess firearms for self defense in "hearth and home". Heller, 128 S.Ct. at 2817, 2821. In particular, the Court held that the District's laws, which amounted to a complete handgun ban, were unconstitutional inasmuch as they extended "to the home, where the need for defense of self, family, and property is most acute". Id. at 2817.

In so holding, the Court was clear that "the right secured by the Second Amendment is not unlimited" and cannot be construed as "a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose" and specifically noted that many existing gun regulations are "presumptively lawful." Id. at

2816. The Court specifically approved of the lawfulness of prohibitions on carrying

concealed weapons, noting that the "majority of the 19th century courts to consider the

question held that prohibitions on carrying concealed weapons were lawful under the

Second Amendment or state analogues." Id. The Court stated "We are aware of the

problem of handgun violence in this country...The Constitution leaves the District of

Columbia a variety of tools for combating that problem, including some measures

regulating handguns . . . . But the enshrinement of constitutional rights necessarily takes

certain policy choices off the table. These include the absolute prohibition of handguns

held and used for self-defense in the home." Id. at 2822.

On June 28, 2010, in McDonald v. City of Chicago, Ill., __U.S. __ , 130 S.Ct.

3020 (2010), the Supreme Court held for the first time that the Second Amendment right

recognized in Heller is applicable to the states. In McDonald, the Court considered a

challenge to hand gun bans in the City of Chicago and in a Chicago suburb which were

"similar to the District of Columbia's" in Heller. McDonald, 130 S.Ct. at 3025. The

Court struck down the handgun bans: "In Heller, we held that the Second Amendment

protects the right to possess a handgun in the home for the purpose of self-defense...We

therefore hold that the Due Process Clause of the Fourteenth Amendment incorporates

the Second Amendment right recognized in Heller." McDonald, 130 S.Ct. at 3050. The

Court made clear that while holding that the Second Amendment was incorporated, it was

not broadening the scope or breadth of that right and repeated Heller's language

concerning the right's limited effect on firearms regulations, stating that its holding did

not "cast doubt" on "longstanding regulatory measures." Id. at 3047. Thus, beginning on

June 28, 2010, state laws regulating handguns were for the first time subject to the

Second Amendment right first recognized in Heller. See Maloney v. Cuomo, 554 F. 3d 56, 58 (2d Cir. 2009) (Pre-McDonald decision holding that the Second Amendment right recognized in Heller did not extend to the states and thus did not apply to New York's regulation of arms.)

## 2. New York Law Provides for the Issuance of Concealed Carry Licenses Through Penal Law § 400.00(2)(f).

Penal Law § 400.00 is the exclusive statutory mechanism for the licensing of firearms in New York State. O'Connor v. Scarpino, 83 N.Y.2d 919, 920 (1994). The law establishes various types of licenses to possess or carry firearms subject to § 400.00(1) which provides that a license shall only be issued by a licensing officer "after investigation and finding that all statements in a proper application . . . are true", and that no license shall be issued unless the applicant: (a) is over 21 years of age; (b) is of "good moral" character; (c) has never been convicted of a felony or "a serious offense"; (d) has fully disclosed any prior history of mental illness or confinement to any hospital or institution "for mental illness"; (e) has not had a firearms license revoked; and (f) has successfully completed a firearms safety course and test, if the license is sought in the County of Westchester, as in the instant case.

Licenses to carry a concealed handgun in public are governed by Penal Law § 400.00(2)(f) which provides that a license for a handgun shall be issued to "have and carry concealed, without regard to employment or place of possession, by any person when proper cause exists for the issuance thereof". Plaintiffs seek a declaration of unconstitutionality and a permanent injunction against enforcement of this "proper cause" requirement for the issuance of a full-carry handgun permit. Complaint ¶¶ 20-21, 24, 27-29, 30. It is important to note that New York's "proper cause" requirement does not

5

apply to handguns for an applicant to "have and possess in his dwelling by a householder." § 400.00(2)(a). Thus Plaintiffs' challenges in this case are materially different from those in <u>Heller</u> and <u>McDonald</u>, and go beyond the right recognized in those cases to "possess a handgun in the home for the purpose of self-defense." <u>McDonald</u>, 130 S.Ct. at 3050.

New York courts have interpreted "proper cause" for a full-carry concealed handgun permit to mean a special need for self-protection distinguishable from that of the general community or of persons engaged in the same profession as the applicant. <u>Bach v. Pataki</u>, 408 F.3d 75, 80 (2d Cir. 2005).

A full-carry application pursuant to Penal Law § 400.00(2)(f) must be made to a "licensing officer" in the city or county where the applicant resides and the required contents of that application are set out in Penal Law § 400.00(3). New York State licensing officers are judges or justices of a "court of record," except in New York City and Nassau and Suffolk Counties, where the "licensing officer" is the Police Commissioner or Sheriff. Penal Law § 265(10). Every application must be investigated by "the duly constituted police authorities of the locality where such application is made," Penal Law § 400.00(4), who report the results of their investigation to the licensing officer who must then grant or deny the application. Penal Law § 400.00(4) and (4-a). If the application is granted, the approved application must be filed with the County Clerk or other designee and the New York State Police. Penal Law § 400.00(5). If the application is denied or a limited license is issued, the specific reasons for the denial or partial denial must be put into writing. Penal Law § 400.00(4-a). An applicant may appeal the determination of his or her application through a state court judicial

6

proceeding pursuant to CPLR Article 78. See, e.g., Matter of County of Westchester v

D'Ambrosio, 244 A.D.2d 334 (2d Dep't 1997).

## B.    The Parties.

### 1.    Alan Kachalsky

Plaintiff Kachalsky is a resident of the State of New York, Westchester County.

Complaint ¶ 1. As described in the complaint, Kachalsky, "would carry functional

handguns in public for self-defense, but refrain[s] from doing so because [he] fear[s]

arrest, prosecution, fine, and imprisonment for lack of a license to carry a handgun".

Complaint ¶ 18.[2]

Kachalsky alleges he applied for, and was denied, a full-carry permit by a

Decision and Order of State Defendant Judge Susan Cacace, dated October 8, 2008,

because his application did not establish proper cause for a full-carry permit as it: "has

not stated any facts which would demonstrate a need for self protection distinguishable

from that of the general public". Complaint ¶ 21. Kachalsky alleges that he met the

other requirements of Penal Law § 400.00: (a) being over the age of 21; (b) of good

moral character; (c) never convicted of a felony or serious crime; (d) never been mentally

ill or confined to any institution; (e) has not had a [firearms] license revoked; and (f) has

completed a firearms safety course. Kachalsky further alleges he "should not be denied a

permit for any good cause". Complaint ¶ 19.

Kachalsky appealed the denial of his application to the New York State Appellate

Division, Second Department through a Special Proceeding commenced pursuant to

Article 78 of the CPLR. By Order dated September 8, 2009, the Appellate Division held

that Kachalsky "failed to demonstrate 'proper cause' for the issuance of a 'full carry

---

[2] For purposes of this motion State Defendants assume the truth of the factual allegations in the complaint.

7

permit' [and] accordingly, [Judge Cacace's] determination was not arbitrary or capricious and should not be disturbed". Kachalsky v. Cacace, 65 A.D.3d 1045 (2d Dep't 2009).

     Kachalsky sought leave to appeal the denial of his Article 78 petition to the New York Court of Appeals, which dismissed the appeal, *sua sponte*, upon the grounds that "no substantial constitutional question is directly involved". Kachalsky v. Cacace, 14 N.Y.3d 743 (2010); Complaint ¶ 23.  The Court of Appeals' Order, dated February 16, 2010, was prior to the Supreme Court ruling in McDonald v. City of Chicago, which held that the Second Amendment applies to the States. This is particularly noteworthy in light of Judge Robert Smith's dissent. In disagreeing with the majority's definition of "substantial constitutional question," Judge Smith noted that Kachalsky's appeal sought determination of whether the "proper cause" requirement violates the Second Amendment of the United States Constitution in light of the Supreme Court's decision in District of Columbia v. Heller, and whether the Second Amendment limits the powers of the states. Kachalsky, 14 N.Y.3d at 744-45.  Judge Smith noted that the question of whether the Second Amendment circumscribes the powers of the states was "of such great substance" that the Supreme Court had granted *certiorari* to consider it in McDonald, and observed: "if [the Court of Appeals] had discretion about whether to take up these issues now, we should choose not to do so; it might make sense to wait to see how the Supreme Court decides McDonald". Id. at 745. Kachalksy did not pursue his right to appeal the Court of Appeals decision to the United States Supreme Court.

     Notwithstanding the subsequent McDonald decision applying Heller to the states, and Judge Smith's comments as to that decision's potential relevance, Kachalsky has

chosen to not make a post-McDonald license application based on his conclusion that it "would be a futile act" as he "cannot satisfy the good cause standard". Complaint ¶ 24.

## 2. Christina Nikolov.

Plaintiff Nikolov alleges she is a resident of Westchester County and "would carry functional handguns in public for self-defense, but refrain[s] from doing so because [she] fear[s] arrest, prosecution, fine and imprisonment for lack of a license to carry a handgun." Complaint ¶ 18. Nikolov alleges she applied for a full carry permit which was denied by Decision and Order of State Defendant Judge Jeffrey Cohen, dated October 1, 2009, which stated: "[I]t cannot be said that the applicant has demonstrated that she has a special need for self-protection distinguishable from that of the general public; therefore her application for a firearm license for a full carry permit must be denied". Complaint ¶ 25. Nikolov alleges she otherwise met the requirements of section 400.00 of the Penal law. Complaint ¶ 19. However, unlike Kachalsky, there is no indication Nikolov ever appealed the denial of her full carry permit through the commencement of an Article 78 proceeding, or otherwise. Nor has she reapplied for a permit in light of the Supreme Court decision in McDonald, supra.

## 3. The Second Amendment Foundation, Inc.

Plaintiff SAF describes itself as "a non-profit membership organization incorporated under the laws of [the State of] Washington, with its principle place of business in Bellevue, Washington," and with "over 650,000 members and supporters nationwide, including Westchester County". Complaint ¶ 3. "The purposes of SAF include promoting the exercise of the right to keep and bear arms; and education, research, publishing and legal action focusing on the Constitutional right to privately own

9

and possess firearms". Id.  SAF claims its members and supporters "would carry

functional handguns in public for self-defense" within New York State, but refrain from

doing so for fear of prosecution due to their "lack of a license to carry a handgun."

Complaint ¶ 18.  SAF does not allege that Kachalsky and/or Nikolov are SAF members,

that SAF members have been denied, or have even applied for, handgun licenses, or that

members would meet the requirements of Penal Law § 400.00 if they had applied, and

thus makes no factual allegations demonstrating how State Defendants have caused

injuries to SAF or its members. Complaint ¶¶ 3, 18, 29.

### 4.    State Defendants

State Defendants Cacace and Cohen are county court judges for the County of

Westchester, who also act as gun licensing officers for that county, in accordance with

Penal Law § 265 (10).  It is alleged that they are "responsible for executing and

administering the laws, customs, practices, and policies at issue in this lawsuit" in

contravention of the "interests" of Kachalsky and SAF's membership.  Complaint ¶¶ 4, 5.

The Complaint contains a single factual allegation against Cacace: that she denied

Kachalsky's application for a concealed carry license. Complaint ¶ 21. Similarly, the only

factual allegation against Cohen is that he denied Nikolov's application for a concealed

carry license. Complaint ¶ 25.

### 5.    County Defendant

The Complaint alleges that defendant County of Westchester "is a governmental

entity organized under the Constitution and laws of the State of New York, possessing

legal personhood within the meaning of 42 U.S.C. § 1983,"  and that the County "by and

through its Department of Public Safety, Pistol Licensing Unit, is responsible for

executing and administering the laws, customs and practices" against the Plaintiffs and "is in fact presently enforcing the challenged laws, customs and practices against Plaintiffs' interests". Complaint ¶ 6. There are no other factual allegations as to the County Defendant.

## C.  **Plaintiffs' Claims.**

By Complaint filed on July 15, 2010, Plaintiffs assert two § 1983 causes of action against the State Defendants, claiming that the "proper cause" requirement of Penal Law § 400.00(2)(f): (1) violates the Second Amendment, facially and as applied, Complaint ¶¶ 26-29; and (2) violates Plaintiffs' right to equal protection of the law under the Fourteenth Amendment, Complaint ¶¶ 30-31. Plaintiffs seek a permanent injunction against enforcement of the requirement, "[a]n order commanding Defendants to issue Plaintiffs Kachalsky and Nikolov permits to carry a handgun," and declaratory relief consistent with the injunctive relief requested. Complaint, Prayer for Relief.

## ARGUMENT

## STANDARDS OF REVIEW

Where, as here, a motion to dismiss is made pursuant to both Rules 12(b)(1) (subject matter jurisdiction) and 12(b)(6) (failure to state a claim), the court must consider the jurisdictional issues first. This is because a lack of subject matter jurisdiction will render all other defenses and motions moot. Ruhgras A.G. v. Marathon Oil Co., 526 U.S. 574, 584 (1999); United States ex rel Kreindler & Kreindler v. United Technologies Corp., 985 F.2d 1148, 1155-56 (2d Cir. 1993). The disposition of a Rule 12(b)(6) motion is a decision on the merits and therefore an exercise of jurisdiction and

11

thus can only be reached where a court has subject matter jurisdiction. <u>Fowler v. Am. Lawyer Media, Inc.</u>, 2001 WL 1646537 (S.D.N.Y. 2001).

"Dismissal of a case for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) is proper when the district court lacks the statutory or constitutional power to adjudicate it." <u>Ford v. D.C. 37 Union Local 1549</u>, 579 F.3d 187, 188 (2d Cir. 2009) (per curiam). "In considering a motion to dismiss for lack of subject matter jurisdiction, [courts] accept as true all material factual allegations in the complaint. However, argumentative inferences favorable to the party asserting jurisdiction should not be drawn." <u>Atlantic Mut. Ins. Co. v. Balfour Maclaine Intern. Ltd.</u>, 968 F.2d 196, 198 (2d Cir. 1992) (citations omitted).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. ---, 129 S.Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Id</u>. at 1949. The Court is not required to accept as true "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," and a plaintiff is required to provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." The court should identify "pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," <u>id</u>. at 1950, and having stripped away conclusory allegations, must determine whether the complaint's "well-pleaded factual allegations . . . plausibly give rise to an entitlement to relief." <u>Id</u>. <u>See</u> <u>also</u> <u>Ruston v. Town Bd. For</u>

Town of Skaneateles, 610 F.3d 55, 59 (2d Cir. 2010); Hayden v. Paterson, 594 F.3d 150,

161 (2d Cir. 2010); Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009).

### POINT I

### PLAINTIFFS' CONSTITUTIONAL
### CLAIMS ARE NOT RIPE FOR REVIEW

The judicial power of federal courts only extends to "cases" and "controversies,"

U.S. Const., Art. III, and courts may not exercise jurisdiction unless the plaintiff can

establish that (s)he "personally has suffered some actual or threatened injury as a result of

the putatively illegal conduct of the defendant." Coffran v. Board of Trustees of New

York City Pension Fund, 46 F.3d 3, 4 (2d Cir.1995) (Internal quotations and citations

omitted).   "A dispute is ripe for adjudication when there is a real, substantial

controversy between parties having adverse legal interests, a dispute definite and

concrete, not hypothetical or abstract". Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. N.Y.S.

Dept. of Env. Cons., 79 F.3d 1298, 1305 (2d Cir. 1996).  "A claim is not ripe for

adjudication if it rests upon contingent future events that may not occur as anticipated, or

indeed may not occur at all." Texas v. U.S., 523 U.S. 296, 300 (1998) (Internal citations

and quotations omitted); Thomas v. Union Carbide Agricultural Products Co., 473 U.S.

568, 580-81 (1985).  The ripeness requirement is applicable to actions which seek

declaratory and injunctive relief.  See Golden v. Zwickler, 394 U.S. 103, 108 (1969).

**A.**     **Plaintiffs Must Establish an Ongoing Constitutional Violation for Their Claims to Be Ripe.**

The Eleventh Amendment to the United States Constitution bars suits by private

individuals in federal court against non-consenting states, state agencies and state officers

sued in their official capacities, such as State Defendants herein, absent an express and

13

valid congressional abrogation of their immunity. <u>Tenn. Student Assistance Corp. v. Hood</u>, 541 U.S. 440 (2004); <u>Papasan v. Allain</u>, 478 U.S. 265, 276 (1986); <u>Pennhurst State School & Hospital v. Halderman</u>, 465 U.S. 89, 97-100 (1984). New York has not consented to suit in federal court and there is no express statutory abrogation overriding Eleventh Amendment immunity for the claims presented here. <u>See</u> <u>Green v. Mansour</u>, 474 U.S. 64, 68 (1985); <u>Dube v. State Univ. of New York</u>, 900 F.2d 587, 594-95 (2d Cir. 1990).

The <u>Ex Parte Young</u> doctrine provides a limited exception to Eleventh Amendment immunity which allows suit against state officials in their official capacities to stop ongoing violations of federal law and obtain prospective injunctive relief. <u>See</u> <u>Ex Parte Young</u>, 209 U.S. 123, 152 (1908); <u>CSX Transp., Inc. v. N.Y. State Office of Real Prop. Servs.</u>, 306 F.3d 87, 98 (2d Cir. 2002). However, the <u>Ex Parte Young</u> doctrine mandates that suits seeking prospective injunctive relief may be brought only to remedy ongoing constitutional violations or imminent threat of future violation, and not does not allow suit based on past violations of federal law. <u>Mansour</u>, <u>supra</u>, at 64-65.

**B.     Plaintiffs Have Not Set Forth Any Post-McDonald Application of the Statute and Thus Cannot Present a Ripe Claim.**

Plaintiffs allege that the "Second Amendment guarantees individuals a fundamental right to carry functional handguns in non-sensitive public places for purposes of self-defense" but they acknowledge that it was only after the June 28, 2010 decision of the Supreme Court in <u>McDonald</u> that the Second Amendment was determined to be applicable to the states and that this was not the law at the time the State Defendants denied Kachalsky's and Nikolov's license applications. <u>See</u> Complaint ¶¶ 11, 23.

Plaintiffs have nevertheless elected to proceed with this challenge to Penal Law 400.00(2)(f) without applying for a license under the law after McDonald, and thus without permitting State licensing officers and New York courts to consider whether and how the "proper cause" requirement under New York law can be applied consistent with the Second Amendment.  State Defendants submit that Heller and McDonald do not establish a fundamental right to "carry functional handguns in non-sensitive public places for purposes of self-defense" as Plaintiffs argue.  However, insofar as Plaintiffs assert that the application of the Second Amendment to the states affects the constitutionality of New York's concealed carry statute, Plaintiffs' claims challenging that statute are not ripe because Plaintiffs have not set forth how the statute will be applied post-McDonald when the state courts have such a challenge properly before them.  Plaintiffs thus ask this Court to entangle itself in an abstract conflict involving New York's definition of "proper cause" where the law that Plaintiffs ask this Court to adjudicate has not been applied to them by the State.

This procedural posture is particularly inappropriate in light of the Supreme Court's statements in McDonald that the recognition of an individual right in the Second Amendment does not mean that state regulation in this area is invalid and that the proper balance between individual rights and state interests should be arrived at through "[s]tate and local experimentation".  McDonald, 130 S.Ct. at 3046.  This failure is emphasized by Justice Smith's statements in the Court of Appeals' denial of Kachalsky's leave to appeal that in the event the Second Amendment was determined to be applicable to the states, substantial constitutional questions would be presented, including "whether a prohibition on carrying concealed weapons without a showing of proper cause is consistent with the

15

Second Amendment." Kachalsky v. Cacace, supra, 14 N.Y.3d at 745. Plaintiffs assert

that the application of the Second Amendment to the State following Heller and

McDonald must alter the way New York State applies its concealed carry statute.

However, in the absence of a State determination on Plaintiffs' license applications which

considers such applications subject to the newly-applicable requirements of the Second

Amendment, Plaintiffs have no ripe claim that the denial of their license applications

violates the Second Amendment.

**C.      Plaintiffs' As Applied Challenges Are Not Ripe for Adjudication.**

Plaintiffs cannot establish any ripe "as applied" Second Amendment claims

because they applied for, and were denied, a license before the Second Amendment

applied to their applications.  If, as Plaintiffs allege, the application of the Second

Amendment should affect a change in how the challenged statute must be applied by

New York, then Plaintiffs' claims are not ripe because they can only speculate as to how

State courts will enforce the statute.  Plaintiffs thus have not established that their alleged

injuries, would be sufficiently "certain" and "impending" to render them ripe.[3]  See

Thomas v. Union Carbide Agr. Products Co., supra, 473 U.S. at 580-81.  Speculation

---

[3]   In general, claims alleging the unconstitutional denial or suspension of a license are not ripe until the
license has been denied or suspended. See Bach v. Pataki, 408 F.3d at 82 (noting as a general principal, in a
pre-McDonald case, that requiring plaintiffs to actually apply for a gun license before ruling on Second
Amendment challenge would help to avoid premature adjudication and risk of entangling court in abstract
disagreements); Thomas v. City of New York, 143 F.3d 31, 35 (2d Cir. 1998)(Dismissing licensing claim
on ripeness grounds where none of the Plaintiffs had been denied license under new regulations); Allendale
Leasing, Inc. v. Stone, 614 F.Supp. 1440, 1448 (D.R.I.1985) (challenge to license revocation and
suspension procedures held not ripe for review where the state had not revoked or suspended the plaintiff's
license), aff'd, 788 F.2d 830 (1st Cir.1986); Oriental Health Spa v. City of Fort Wayne, 864 F.2d at 488-90
(7th Cir. 1988) (attack on license suspension and revocation provisions was not ripe for review since
plaintiff had never had its license suspended or revoked); Cubas v. Martinez, 33 A.D.3d 96, 103 (1st Dep't
2006) (Dismissing claim on ripeness grounds where license had not yet been suspended since it might not
be suspended).

about how license applications might be determined after <u>McDonald</u> does not state a ripe controversy. <u>See</u> <u>Washington State Grange v. Wash. State Republican Party</u>, <u>supra</u>, 552 U.S. 442, 450 (2008) <u>citing</u> <u>United States v. Raines</u>, 362 U.S. 17, 22 (1960); <u>see also</u> <u>Coffran</u>, <u>supra</u>, 46 F.3d at 4 (dismissing claim on ripeness grounds where it was asserted that the defendant Board would most likely but not certainly render a particular decision in regard to plaintiff); <u>Motor Vehicle Manufacturers Association</u>, <u>supra</u>, 79 F.3d at 1305 (claim not ripe for review where it depended upon regulatory choices not yet made by the state government).

In the absence of facts demonstrating that the challenged statute will imminently be applied to Plaintiffs in an unconstitutional manner, the threatened harm lacks "sufficient immediacy and reality" to warrant a federal court's intervention. <u>See</u> <u>O'Shea v. Littleton</u> 414 U.S. 488, 495-496 (1974); <u>Zwickler</u>, 394 U.S. at 109. As a result, Plaintiffs' as applied claims should be dismissed for the threshold reason that they are not ripe for judicial review. <u>See</u> <u>Alcan Aluminum Ltd. v. Dep't of Revenue</u>, 724 F.2d 1294, 1295, 1299 (7th Cir. 1984) (dismissing corporation's declaratory judgment action seeking to bar State of Oregon from applying a method of taxation to its subsidiary where no tax was assessed by the State; "[u]ntil a tax is assessed . . . , this controversy cannot be considered ripe").

**D.      Plaintiffs' Facial Challenge is Not Ripe for Adjudication.**

Plaintiffs' facial challenge to the challenged statute similarly fails. Facial challenges are generally disfavored, <u>see</u> <u>Wash. State Grange</u>, 552 U.S. at 450, and the considerations which underlie the ripeness doctrine are particularly called in to play where a facial challenge to a statute is mounted. The Supreme Court has cautioned

17

against facial challenges, citing three considerations: (i) they are often speculative and premature with "factually barebones records"; (ii) they frequently cause courts to anticipate constitutional questions where their resolution is not necessary or to formulate a rule of law broader than necessary to the facts before it; and (iii) they threaten the democratic process by undermining laws that represent the will of the people.   Id. at 450-451.   Additionally, the Supreme Court has generally emphasized the importance of focusing on concrete "factual situation[s] . . . for development of a constitutional rule." New York v. Ferber, 458 U.S. 747, 768 (1982). Ripeness is a constitutional prerequisite to the federal court's jurisdiction, with the burden on plaintiff to demonstrate the existence of a ripe controversy.  Marchi v. Board of Cooperative Ed. Servs. of Albany, 173 F.3d 469, 478 (2d Cir. 1999) (challenge to directive was not ripe where the Court would be forced to guess at how it would be applied by the defendants).

To maintain a facial constitutional challenge a plaintiff ordinarily must show that no set of circumstances exist under which the challenged law would be valid, that is, that the law is incapable of even a single valid application.  See United States v. Salerno, 481 U.S. 739, 745 (1987).   Here, Plaintiffs cannot make such a showing because although they claim that after McDonald, the states must recognize a fundamental right under the Second Amendment to carry handguns in "non-sensitive places", they cannot state how the challenged provision will be applied in light of this alleged right or that it is incapable of any constitutional interpretation.  See, e.g., Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. N.Y.S. Dept. of Env. Cons., 79 F.3d at 1306. (dismissing challenge to New York's auto emissions regulatory scheme on ripeness grounds where implementation of regulatory scheme was not certain and plaintiffs would be able to seek relief if regulations were

implemented in an unlawful way); Marchi, 173 F.3d at 478 (challenge to directive was not ripe where the Court would be forced to guess at how it would be applied by the defendants).

Despite the Supreme Court's caution that in considering a facial constitutional challenge, courts must avoid speculation or consideration of hypothetical factual situations, Plaintiffs ask the Court here to do just that: to predict that New York will apply the "proper cause" standard in the manner that Plaintiffs allege they will. If, as Plaintiffs assert, Heller and McDonald require a change in how the law is applied, Plaintiffs cannot obtain the injunctive and declaratory relief they seek because they have failed to allege facts indicating how the State has applied the statute after Heller and McDonald, and have failed to show that the statute is incapable of a constitutional application. As the Supreme Court held in Wash. State Grange v. Wash. State Republican Party, speculation on the possible unconstitutional results of a challenged law is not a legitimate basis for striking down the law in a facial challenge. Wash. State Grange, 552 U.S. at 450. Licensing officers in New York may apply the "proper cause" standard as it was applied in regard to Plaintiff's applications, or they may find that that application is not compatible with the right recognized in Heller, and may apply the law differently. In those instances, with a particular case before them, a developed factual record, and a real and substantial controversy, state courts may then review licensing decisions and make a determination whether the proper cause standard violates the Second Amendment. Plaintiffs' facial challenges here are not ripe because they rest upon Plaintiffs' conjecture as to "contingent future events that may not occur as anticipated, or indeed may not occur at all." Port Washington Teachers' Ass'n v. Board of Educ. of Port Washington Union

Free School Dist., 2006 WL 47447, 5 (E.D.N.Y. 2006); see also Marchi, 173 F.3d at 478.

There may be rare instances where a constitutional challenge to a statute will be deemed ripe even where the statute has not been implemented in a manner to cause injury to the plaintiff. In such "pre-enforcement" instances, courts may consider "(i) the fitness of the issues for judicial decision and (ii) the hardship to the parties of withholding court consideration". Port Washington Teachers Association, 2006 WL 47447 at *5. Plaintiffs' claims fail under this standard as well.

1.    Plaintiff's Facial Challenge Is Not Yet Fit for Judicial
        Determination by this Court.

The first stage of the analysis is whether the issues before the Court are appropriate for judicial resolution. Toilet Goods Ass'n v. Gardner, 387 U.S. 158, 162 (1967). Even where a plaintiff purports to assert a "wholly legal" challenge to a statute or regulation, where the court would be aided by a record demonstrating specifically when and how the challenged measure is enforced, a generalized facial challenge will not be ripe. Id. at 164. Here, Plaintiffs place this matter before the Court before it "has crystallized" into a live controversy. See Port Washington Teachers Association, supra, 2006 WL 47447 at *3.

Nor can ripeness be established by claims that although an actual concrete case or controversy is not presented to the Court, it is likely that application of a challenged statute will result in a constitutional deprivation to the plaintiff or others in the future. See Zwickler, supra, 394 U.S. at 109-110. As presented in the complaint, this action seeks to involve this Court in an abstract conflict with no record on the issue presented to this Court for decision, and no live conflict before it. Plaintiffs ask this Court to strike down a legislative determination, thus undermining the will of the People of New York,

without permitting the statute to be tested and applied in the context presented by Plaintiffs. This improperly invites the Court to prematurely entertain a constitutional question, with the accompanying risks of unnecessarily resolving a constitutional question and to formulate a rule of law broader than necessary to resolve the actual facts of the case before it.

    2.  Plaintiffs Cannot Establish The Necessary Hardship to Compel the Consideration of Unripe Claims.

  The second part of the pre-enforcement ripeness analysis evaluates the hardship to the parties of withholding or granting court consideration. "In assessing the possible hardship to the parties resulting from withholding judicial resolution, the Court must ask whether the challenged action creates a 'direct and immediate dilemma' for the parties." Port Washington, supra, at *5 citing Marchi, 173 F.3d at 478. Applying this test to the Plaintiffs' allegations, there is no ripe pre-enforcement claim.

  Plaintiffs have not applied post-McDonald to obtain licenses and, even if they had and were dissatisfied with the results, they could invoke available State court judicial remedies. In most instances where a pre-enforcement challenge is determined to be ripe, Plaintiffs are placed in the position of foregoing lawful conduct or facing criminal prosecution, with no alternative pathway to challenge an allegedly unconstitutional statute. However, that is not the case in the instance of gun licensing. Here Plaintiffs can apply for a license and, if they contest the outcome of that application, challenge the determination in court. See Gun Owners' Action League v. Swift, 284 F.3d 198, 207 (1st Cir. 2002). Since Plaintiffs have failed to seek licenses under the law they wish applied to such applications, because they may still apply for licenses under that law, and because they may obtain State court judicial review if the licensing determinations are in their

view unconstitutional, there is no hardship to the Plaintiffs in this Court's declining federal judicial review at this time.

## POINT II

### PLAINTIFFS LACK STANDING TO PURSUE THEIR CLAIMS AGAINST THE STATE DEFENDANTS.

**A.**    **Plaintiffs' Standing Implicates the Jurisdiction of this Court and Must Be Resolved as Threshold Matter.**

Standing is a component of Article III's "case and controversy" requirement and has been described as perhaps the most important of the jurisdictional requirements of the federal courts. See FW/PBS, Inc. v. City of Dallas, supra, 493 U.S. 215, 230 (1990); Summers v. Earth Island Institute, supra, __ U.S. __, 129 S.Ct. 1142, 1151 (2009). To have standing a plaintiff must demonstrate a personal stake in the outcome of the case to "assure that concrete adverseness which sharpens the presentation of issues" necessary for the proper resolution of constitutional questions. City of Los Angeles v. Lyons, 461 U.S. 95, 101, (1983) (quotations omitted). "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." See Warth v. Seldin, 422 U.S. 490, 498-99 (1975).[4]

Standing must be resolved as a threshold matter and the court has an independent obligation to ensure that standing exists. Northeastern Fla. Chapter of the Assoc. Gen. Contractors of Am. v. City of Jacksonville, 508 U.S. 656, 663-64 (1993); N.Y. Pub. Interest Research Grp. v. Whitman, 321 F.3d 316, 324-25 (2d Cir. 2003). Plaintiffs must show:

---

[4] The requirement of standing is important to our democratic system as without such limitations, "courts would be called upon to decide abstract questions of wide public significance even though other governmental institutions may be more competent to address the questions and even though judicial intervention may be unnecessary to protect individual rights." See Warth v. Seldin, 422 U.S. at 500.

22

(1)     Injury: Injury in fact, an invasion of a legally protected interest which is concrete and particularized, and actual or imminent, not conjectural or hypothetical.

(2)     Causation: A causal connection between the injury and the challenged conduct.

(3)     Redressability: It must be likely, as opposed to merely speculative, that the injury complained of will be redressed by a favorable decision.

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).  Plaintiffs have the burden

of establishing standing for each cause of action asserted and each type of relief sought.

See Los Angeles v. Lyons, 461 U.S. 95, 109 (1983); Friends of the Earth, Inc. v. Laidlaw

Environmental Services, 528 U.S. 167, 185 (2000).  Additionally, where a plaintiff seeks

injunctive and declaratory relief against a state, only prospective relief is available and a

plaintiff will have standing only for claims where he or she can establish an ongoing

violation of federal rights.  See Ex Parte Young, supra, 209 U.S. at 152; Point I(A), supra.

## B.     Plaintiffs Kachalski and Nikolov Lack Standing to Assert Claims for Injunctive and Declaratory Relief.

Plaintiffs seek an order directing Defendants to immediately issue Plaintiffs

Kachalsky and Nikolov "permits to carry a handgun"; an injunction prohibiting

Defendants and their employees and agents from enforcing the "good cause requirement"

of Penal Law § 400.00(2)(f); and declaratory relief consistent with the injunctive relief

sought. See Complaint, "Prayer for Relief".

Standing for declaratory or injunctive relief requires a showing of ongoing

unconstitutional conduct. See Zwickler, 394 U.S. at 110; Hodgkins v. Holder, 677

F.Supp.2d 202, 206 (D.C. Dist. 2010). See also Los Angeles v. Lyons, 461 U.S. at 109

(application of challenged chokehold to plaintiff in the past was not a cognizable injury

sufficient to establish standing in claims for prospective relief as alleged unconstitutional

23

conduct was not continuing and threat of reoccurrence was not "real and imminent"). The only injuries alleged by Plaintiffs are denials of applications for full carry permits at a time before the Second Amendment was held to apply to the states, which denials they assert violated their Second Amendment rights. See Complaint ¶¶ 18, 21, 25. Plaintiffs' assertion of a past violation in the denial of their applications does not establish their standing. For example in Warth v. Seldin, the Court noted that one member of an associational plaintiff had applied for a variance from the challenged zoning law and been denied in 1969 and so might "in 1969, or within a reasonable time thereafter" have had standing but that this past injury, alone, did not suffice to establish standing to assert a "live, concrete dispute" of an ongoing constitutional violation in 1972. 422 U.S. at 517; see also, Zwickler, supra 394 U.S. at 108-09.

Plaintiffs here do not complain of "ongoing conduct". They complain that in 2008 and 2009, prior to what they allege is a substantial change in the law such that they now have a Second Amendment right to full-carry handgun licenses, they were denied licenses and they seek redress for this alleged past violation. This the Court cannot grant. See Mansour, supra 474 U.S. at 68.   To the extent Plaintiffs forecast that further applications would be "futile" under the asserted changed legal landscape, such assertion is "conjectural" and does not have the necessary "immediacy" and certainty required to establish standing for an "as-applied" constitutional challenge. See Zwickler, supra 394 U.S. at 108-09; Lyons, supra, 461 U.S. at 107, n. 8; O'Shea v. Littleton, 414 U.S. 488, 494-95 (1974); Hodgkins, supra, 677 F.Supp.2d at 206.   Furthermore, a plaintiff who lacks standing to challenge a law "as applied" also lacks standing to assert a facial challenge to that same law. Thus, Plaintiffs lack standing to assert a facial challenge to §

400.00(2)(f).  See City of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 796-799

(1984); Zwickler, supra 394 U.S. at 108-09.

**C.      SAF Lacks Standing to Prosecute this Action.**

Organizations can establish standing on their own behalf or as a representative of

the interests of their members, which is sometimes called "associational" standing.  See

Warth, supra, 422 U.S. at 511.  In this controversy, SAF purports to assert claims on its

own behalf and on behalf of its members.  See Complaint ¶ 3.  The only allegations in

the Complaint pertaining to SAF are:

> [SAF] is a non-profit membership organization incorporated under
> the laws of Washington with its principal place of business in
> Bellevue, Washington.  SAF has over 650,000 members and
> supporters nationwide, including Westchester County, New York.
> The purposes of SAF include promoting the exercise of the right to
> keep and bear arms; and education, research, publishing and legal
> action focusing on the Constitutional right to privately own and
> possess firearms, and the consequences of gun control.  SAF brings
> this action on behalf of itself and its members.
>
>                              ***
>
> Plaintiffs Alan Kachalsky, Christina Nikolov, and the members
> and supporters of plaintiff SAF, would carry functional handguns
> in public for self-defense, but refrain from doing so because they
> fear arrest, prosecution, fine, and imprisonment for lack of a
> license to carry a handgun.

Complaint at ¶¶ 3, 18.  These allegations fail to establish either direct or associational

standing.  See Hodgkins, supra, 677 F.Supp.2d at 202  (holding SAF lacked standing to

challenge firearms laws).

1.      SAF Cannot Establish Direct Standing.

An association may establish standing to sue on its own behalf when it can set

forth a constitutional injury it has suffered as a result of the challenged conduct.  Warth,

supra, 422 U.S. at 509. Plaintiff SAF has not identified a constitutional injury it has
suffered. As such, it falls short of the statement of "concrete and particularized injury"
required to establish direct standing. Lujan v. Defenders of Wildlife, supra 504 U.S. at
560-561. Furthermore, it fails to allege any injury caused by the defendants or which
would be redressed by the relief it seeks here. As a result, any claims it asserts on its own
behalf must be dismissed. See Hodgkins, supra, 677 F.Supp.2d at 206.

2.    SAF Cannot Establish Associational Standing.

An association may establish standing to bring suit on behalf of its members
when: (a) its members would otherwise have standing to sue in their own right; (b) the
interests it seeks to protect are germane to the organization's purpose; and (c) neither the
claim asserted nor the relief requested requires the participation of individual members in
the lawsuit. Hunt v. Washington State Apple Advertising Commission, 432 U.S. 333
(1977). SAF lacks standing to prosecute this action.

SAF does not allege that Kachalsky and Nikolov are members of SAF, has not
asserted facts demonstrating that any of its members have suffered a concrete and
particularized constitutional injury, and has failed to show any injury to its members of
sufficient immediacy and ripeness to warrant judicial intervention. See Warth, supra 422
U.S. at 509; National Rifle Ass'n of America v. Magaw, 132 F.3d 272, 295 (6th Cir.
1997) (NRA lacked standing to challenge statute where it had not asserted an actual or
imminent injury in fact). National Rifle Ass'n v. City of Pittsburgh, 999 A.2d 1256,
1258 (Pa.Cmwlth. 2010) (NRA and individual Plaintiffs lacked standing to challenge gun
laws where they "had not demonstrated direct and immediate harm"); National Rifle
Association v. City of Philadelphia, 977 A.2d 78 (Pa. 2009).

26

Furthermore, SAF has not alleged facts which establish that the carrying of concealed weapons in public is germane to its purpose to the extent that its interests and those of its members are so united that the nexus between the SAF's interests and its members "coalesces ... to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." Hunt, supra, 432 U.S. at 343-345 (Internal quotations and citations omitted). Merely alleging, as SAF does here, that it has many members and that unnamed members will be harmed in an unspecified way by the challenged state action is insufficient to establish associational standing. See Summers v. Earth Island Institute, supra, 129 S.Ct. at 1151 (finding organization lacked associational standing where it only set forth that unidentified members have been harmed in an unidentified manner). Furthermore, without the participation of at least one "member" who can assert that the challenged law has been applied to her unconstitutionally in a manner that is ripe for this Court's consideration, SAF cannot prosecute this action. See FW/PBS, Inc. v. Dallas, supra, 493 U.S. at 235 . Because SAF has not alleged any cognizable constitutional injury caused by the Defendants which can be remedied by this Court, or any basis to give it associational standing to represent the interests of unnamed third parties in this lawsuit SAF must be dismissed as a plaintiff.

## POINT III

### ABSTENTION IS APPROPRIATE IN THIS CASE.

Even were the Court to find that Plaintiffs' claims are ripe and they have standing, fundamental principles of equity, comity and federalism require the dismissal of Plaintiff's Complaint. It is beyond question that issues relating to guns and gun violence are of great

27

importance to the states. [5]  Even after <u>McDonald</u> it is clear that the states may regulate

firearms, so long as such regulations are compatible with the Second Amendment.  <u>See</u>

<u>Heller</u>, 128 S.Ct. at 2822; <u>McDonald v. City of Chicago</u>, 128 S.Ct. at 2816. Thus, states like

New York must now apply their gun laws and regulations consistent with the Second

Amendment and should be given the opportunity to do so.  In light of these federalism

concerns, this Court should abstain from hearing this case under the <u>Younger</u>, <u>Pullman</u> and

<u>Burford</u> abstention doctrines.

**A.      Abstention is Required Under *Younger v. Harris*.**

Abstention under <u>Younger v. Harris</u>, 401 U.S. 37 (1971), is based upon the

respect due to the states as co-equal sovereigns under our system of federalism, and the

notion that "in the ordinary course, 'a state proceeding provides an adequate forum for the

vindication of federal constitutional rights.'" <u>Diamond "D" v. McGowan</u>, 282 F.3d 191,

198 (2d Cir. 2002) (citations omitted).  <u>Younger</u> abstention is required where: 1) there is

an ongoing state proceeding; 2) an important state interest is implicated in that

proceeding; and 3) plaintiff has an adequate opportunity for judicial review of the federal

claims, in that proceeding.  <u>Spargo v. N.Y. State Comm'n on Judicial Conduct</u>, 351 F.3d

65, 75 (2d Cir. 2003); <u>Diamond "D" v. McGowan</u>, 282 F.3d at 198. <u>Younger</u> applies to

state judicial or administrative proceedings.  <u>Ohio Civil Rights Commission v. Dayton</u>

---

[5]   The fact that the regulation and control of guns is an issue of great public importance to the states is
evidenced by the number and variety of state and local gun laws analyzed by the Court in <u>Heller</u>.
Furthermore, in both <u>Heller</u> and <u>McDonald</u> the Supreme Court referenced the states' interest in regulating
guns. <u>Heller</u>, 128 S.Ct. at 2816.  In his majority opinion in <u>Heller</u>, Justice Scalia specifically acknowledged
"the problem of handgun violence" and the "tools" government may use to fight the same.  <u>Heller</u>, 128
S.Ct. at 2822.  Also in <u>Heller</u>, Justice Breyer recognized that the challenged gun control provisions were
intended to forward "goals of great public importance, namely, saving lives, preventing injury, and
reducing crime" and specifically the importance of laws relating to handguns, "which are specially linked
to urban gun deaths and injuries, and which are the overwhelmingly favorite weapon of armed criminals".
<u>Heller</u>, 128 S.Ct. at 2847- 2851.  The regulation and control of guns in New York State is thus a matter of
great importance to the State.

Christian Schs., Inc., 477 U.S. 619 (1986); Middlesex County Ethics Comm'n v. Garden State Bar Assn, 457 U.S. 423, 431-32 (1982).

Abstention is appropriate whenever the plaintiff has an "opportunity to raise and have timely decided by a competent state tribunal" the constitutional claims at issue in the federal suit, notwithstanding any delay, expense, inconvenience or even "chilling" effect plaintiff may experience thereby. Spargo, 351 F.3d at 77 -78 (2d Cir. 2003), citing Middlesex County Ethics Comm., supra. The ability to raise constitutional, statutory and related claims in subsequent judicial review of an administrative proceeding is sufficient to satisfy Younger abstention. Spargo, 351 F.3d at 78-79. Here, such determinations can be challenged through an Article 78 proceeding, and further appellate review. See, N.Y. State NOW v. Pataki, 261 F.3d 156, 168 (2d Cir. 2001) (In an Article 78 proceeding, New York State courts are empowered to issue "common law writs of certiorari to review, mandamus, and prohibition."); University Club v. City of New York, 842 F. 2d 37, 40 (2d Cir. 1988) (Constitutional issues can be decided in article 78 proceedings, and the availability of Article 78 review of State proceedings satisfies the abstention requirement of sufficient opportunity for review of constitutional rights).

Where Younger applies, abstention "is mandatory", see Schlagler v. Phillips, 166 F.3d 439, 441 (2d Cir. 1999), and warrants dismissal of a federal complaint even where the plaintiff seeks declaratory or injunctive relief. Kirschner v. Klemons, 225 F.3d 227, 235-36 (2d Cir. 2000); Arbitron, Inc. v. Cuomo, 2008 U.S. Dist LEXIS 86573 * 9-10 (S.D.N.Y. October 27, 2008); Cuomo v. Dreamland Amusements, Inc., 2008 U.S. Dist LEXIS 71432 *29 (S.D.N.Y. September 22, 2008).

Here, all of the conditions for the application of <u>Younger</u> are present. The fact that Plaintiffs may have chosen to not fully pursue their state remedies does not preclude the application of <u>Younger</u>. A state proceeding is "ongoing" or "pending" for the purposes of <u>Younger</u> if the federal plaintiff had the opportunity to raise his constitutional claim in the state trial and/or appellate courts but did not do so, even if further review of the claim is no longer available at the time the federal action is commenced. A federal proceeding is thus precluded by <u>Younger</u> if plaintiff elected to forego state court remedies. <u>Huffman v. Pursue</u>, 420 U.S. 592, 609 (1975); <u>Kirschner</u>, 225 F.3d at 234.

Plaintiffs Kachalsky and Nikolov had an adequate opportunity to raise their constitutional challenge through an Article 78 proceeding or a hybrid Article 78/declaratory judgment action. In fact, Kachalsky filed an Article 78 proceeding seeking review of the decision denying him a license to the Appellate Division, Second Department and, upon denial of that application, sought appeal to the New York State Court of Appeals. <u>Kachalsky v. Cacace</u>, 14 N.Y.3d 742 (2010). As he did not seek a writ of certiorari to the United States Supreme Court and his time to do so has expired so, he thus chose to forego his available remedies. <u>See, Kaufman v. Kaye</u>, 466 F.3d 83, 86-88 (2d Cir. 2006) (abstention mandated where a federal plaintiff may raise his/her federal claims in the state proceedings and if (s)he is dissatisfied with the state court rulings may seek review through the New York Court of Appeals and the U.S. Supreme Court); 28 U.S.C.A. § 1257 (relating to certiorari applications to the United States Supreme Court); U.S.Sup.Ct. Rule 13. Plaintiff Nikolov failed to challenge the determination of her license application at all, notwithstanding the availability of review.

Plaintiffs' failure to fully pursue their appellate remedies satisfies the "ongoing state proceeding" prong for <u>Younger</u> abstention purposes:

> When, in a proceeding to which <u>Younger</u> applies, a state trial court has entered judgment, the losing party cannot, of course, pursue equitable remedies in federal district court while concurrently challenging the trial court's judgment on appeal. For <u>Younger</u> purposes, the State's trial-and-appeals process is treated as a unitary system, and for a federal court to disrupt its integrity by intervening in mid-process would demonstrate a lack of respect for the State as sovereign. For the same reason, a party may not procure federal intervention by terminating the state judicial process prematurely -- forgoing the state appeal to attack the trial court's judgment in federal court. "[A] necessary concomitant of <u>Younger</u> is that a party [wishing to contest in federal court the judgment of a state judicial tribunal] must exhaust his state appellate remedies before seeking relief in the District Court."

<u>New Orleans Pub. Serv., Inc. v. Council of New Orleans</u>, 491 U.S. 350, 368-69 (1989) (citing <u>Huffman</u>, 420 U.S. at 608).[6]  Plaintiffs cannot strip the state proceedings of their "ongoing" character by failing to initiate an Article 78 suit (in the case of Nikolov) or failing to seek certiorari review to the Supreme Court (in the case of Kachalsky) in favor of federal review.  <u>Huffman</u>, 420 U.S. at 611 n.22.  Thus, Plaintiffs had a means of pursuing their licensing determinations which afforded them the opportunity to assert their constitutional claims in state court proceedings.  Their refusal to do so forecloses review by this Court.

**B.     <u>Abstention is Also Appropriate Under *Pullman* and *Burford*</u>.**

Abstention is also appropriate here under the abstention doctrines set out by the Supreme Court in <u>Railroad Comm'n v. Pullman Co.</u>, 312 U.S. 496, 501 (1941) and

---

[6] Other Circuits have applied <u>Huffman</u> to state administrative proceedings that have become final due to the federal-plaintiff's declining to complete available state appellate remedies.  <u>Laurel Sand & Gravel, Inc. v. Wilson</u>, 519 F.3d 156, 166 (4th Cir. 2008); <u>Moore v. City of Asheville</u>, 396 F.3d 385, 388 (4th Cir. 2005); <u>Maymo-Melendez v. Alvarez-Ramirez</u>, 364 F.3d 27, 35 (1st Cir. 2004); <u>Majors v. Engelbrecht</u>, 149 F.3d 709, 713 (7th Cir. 1998); <u>O'Neill v. City of Philadelphia</u>, 32 F.3d 785, 791 (3d Cir. 1994); <u>Alleghany Corp. v. Pomeroy</u>, 898 F.2d 1314, 1316-17 (8th Cir. 1990).

Burford v. Sun Oil Co., 319 U.S. 315, 318 (1943). Both are based upon federalism concerns and direct federal courts to avoid unnecessarily reaching open issues of state law or to disrupt state efforts to establish policy in matters of public concern.

Under Pullman abstention when a federal constitutional claim is dependent upon the interpretation of an uncertain state statutory scheme, and when state law is susceptible to an interpretation that could avoid or modify the constitutional claim, a federal court should abstain from exercising its jurisdiction to allow resolution of the state law question in the state forum. Railroad Comm'n v. Pullman Co., 312 U.S. at 501.  See also City of Chicago v. Fieldcrest Dairies, 316 U.S. 168, 171-172 (1942); Allstate Ins. Co. v. Serio, 261 F.3d 143 (2d Cir. 2001) ("Where a decision is to be made on the basis of state law ... the Supreme Court has long shown a strong preference that the controlling interpretation of the relevant statute be given by state, rather than federal, courts); Catlin v. Ambach, 820 F.2d 588, 591 (2d Cir. 1987) (Abstention appropriate where a dispositive state court interpretation of challenged statute could avoid the constitutional issue altogether). A federal determination of whether the State law "proper cause" requirement comports with the Second Amendment may be unnecessary based on how it will be interpreted by the State courts following McDonald, and this Court should allow the State to interpret its own statutory framework. See Lake Carriers' Ass'n v. MacMullan, 406 U.S. 498, 510-11 (1972) ("The paradigm case for abstention arises when the challenged state statute is susceptible of a construction by the state courts that would avoid or modify the (federal) constitutional question.").

Burford abstention mandates dismissal of a federal action "(1) where there are 'difficult questions of state law bearing on policy problems of substantial public import

whose importance transcends the result in the case then at bar'; or (2) where the 'exercise

of federal review of the question in a case and in similar cases would be disruptive of

state efforts to establish a coherent policy with respect to a matter of substantial public

concern." City of New York v. Milhelm Attea & Bros., Inc., 550 F.Supp.2d 332,

342 (E.D.N.Y. 2008).  Federal courts are directed to exercise their powers to respect the

"rightful independence of state governments in carrying out their domestic policy".

Burford, 319 U.S. at 318; Levy v. Lewis, 635 F.2d 960, 964 (2d Cir. 1980).   The Second

Circuit has identified three factors in determining whether abstention is appropriate to

avoid disrupting a state's policy efforts: (1) the degree of specificity of the state

regulatory scheme; (2) the need to give one or another debatable construction to a state

statute; and (3) whether the subject matter of the litigation is traditionally one of state

concern. See Bethphage Lutheran Serv., Inc. v. Weicker, 965 F.2d 1239, 1243 (2d

Cir.1992).  New York has carefully regulated the possession and use of guns; gun

regulation is of substantial import to the state; and were the Court to rule on this case, it

would need to interpret the provision at issue in a particular way when that interpretation

is debatable.   The Court should abstain under Burford.

## POINT IV

### PLAITIFFS ARE BARRED FROM RE-LITIGATING
### THE DENIAL OF THEIR LICENSES.

**A.**     ***Res Judicata* Bars the Re-Litigation of Previously Adjudicated Claims.**

Plaintiff Kachalsky's as applied claim is barred by res judicata.  See Salahuddin v.

Jones, 992 F.2d 447, 449 (2d Cir.1993); Swiatkowski v. Citibank, 2010 WL 3951212, 12

(E.D.N.Y. 2010); Wilson v. Limited Brands, Inc., 2009 WL 1069165, 1 (S.D.N.Y. 2009).

Res judicata bars a "later claim arising out of the same factual grouping as an earlier

litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief." Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir.1994). The doctrine does not just bar claims actually litigated but those that could have been litigated. Wilson v. Limited Brands, Inc., 2009 WL 1069165 at 3. Res judicata applies where (1) there is a previous adjudication on the merits; (2) the previous action involved the defendant or its privy; and (3) the claims involved were or could have been raised in the previous action." Whelton v. Educ. Credit Mgmt. Corp., 432 F.3d 150, 155 (2d Cir.2005). Here, there is a previous adjudication on the merits of Plaintiff Kachalsky's challenge to the denial of his license. See Kachalsky v. Cacace, 65 A.D.3d 1045 (1st Dep't 2009), app. dismissed 14 N.Y.3d 743 (2010). Kachalsky previously sued Judge Cacace and his claims regarding the alleged illegality and unconstitutionality of the denial of his license application were placed before the state courts, which rejected them. See Kachalsky v. Cacace, 14 N.Y.3d 743 (2010). He cannot re-litigate the legality of his license denial here.[7]

**B.    This Court Lacks Subject Matter Jurisdiction Under the *Rooker-Feldman* Doctrine.**

In addition to traditional principals of claim preclusion, because Kachalsky essentially asks this Court to overturn the final determination of the state courts in regard to the denial of his license and his challenge thereto, his claims are barred by the Rooker-Feldman doctrine. Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983). Rooker-Feldman precludes cases, as here,

---

[7] *Res judicata* also applies to bar plaintiff Nikolov's claims. *Res judicata*, as well as collateral estoppel, are applicable to quasi-judicial administrative determinations. Ryan v. New York Telephone Co., 62 N.Y.2d 494, 499 (1984). Here, Judge Cohen, whether sitting as a judicial or administrative arbiter, made an adjudication on the merits of whether Plaintiff Nikolov was entitled to a full-carry license and Plaintiff raised or could have raised her all claims relating to her alleged legal entitlement thereto and could have appealed that determination.   Plaintiff Nikolov's claims are thus barred by *res judicata* as well.

"brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments". Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). See also Lance v. Dennis, 126 S. Ct. 1198, 1201 (2006); Hoblock v. Albany County Bd. of Elections, 422 F.3d 77, 85 (2d Cir. 2005) (Where a federal plaintiff lost in state court, complains of injury from that loss and invites the federal court to review and reject the state court's judgments, such a claim is precluded under Rooker-Feldman).

An aggrieved state court litigant must pursue his claims "directly in the state appellate courts and ultimately to the United States Supreme Court," and cannot use the federal district court as a means of appeal. Sassower v. Mangano, 927 F.Supp. 113, 119 (S.D.N.Y. 1996). This is because "[t]he jurisdiction possessed by the District Court is strictly original" and the district court lacks subject matter jurisdiction to act as an appellate court to review the decisions of a state court. Rooker, 263 U.S. at 416. The only permissible appellate review open to plaintiff is within the state appellate system and to the United States Supreme Court on petition for a writ of certiorari. See Atlantic Coast Line R. Co. v. Brotherhood of Loc. Eng., 398 U.S. 281, 296 (1970) ("Lower federal courts possess no power whatever to sit in direct review of state court decisions"). Nor may a litigant avoid the application of the Rooker-Feldman doctrine by casting his federal complaint as a civil rights action where it actually seeks to reverse a state court judgment. Fastag v. Kelly, 2005 WL 1705529, 3 (S.D.N.Y. 2005).

The Rooker-Feldman doctrine has been applied to foreclose review of state administrative proceedings which are subject to judicial review, including gun licensing

decisions. See Fastag v. Kelly, 2005 WL 1705529 at 5 (claim regarding revocation of

handgun license barred where plaintiff had raised identical claim in state administrative

and judicial proceedings). See also Emerson v. City of New York, 2010 WL 2910661, 10

(S.D.N.Y. July 19, 2010), where a federal court refused to consider a claim which sought

to reverse a state court handgun licensing order: "[T]o the extent that [plaintiff] raises

claims arising from the revocation of his firearms licenses in order to have this Court

review and invalidate a final state-court determination, such review is not available in the

federal district courts. Appellate jurisdiction over state court decisions, even when the

challenge to the state court's actions involves federal constitutional issues, lies

exclusively in the United States Supreme Court."

Four elements must be considered: (1) the plaintiff must have lost in state court;

(2) the plaintiff must complain of injuries caused by a state-court judgment; (3) the

plaintiff must "invite district court review and rejection of that judgment"; and (4) the

state-court judgment must have been "rendered before the district court proceedings

commenced". Hoblock, 422 F.3d at 85. All four of theses circumstances are present

here. Kachalsky litigated the denial of his application for a concealed carry license,

including the constitutional issues therein, in the state courts and the denial was affirmed.

See Kachalsky v. Cacace, 65 A.D.3d 1045 (1st Dep't 2009), app. dismissed 14 N.Y.3d

743 (2010). The state court determination was rendered before the district court action

was commenced and plaintiff now asks this Court to reject the state court's conclusion

that he was properly denied a license, to overturn the decision and order issuance of a full

carry permit, a function not within the purview of the district court. See D.C. Court of

Appeals v. Feldman, 460 U.S. at 486-487 (1983) (where plaintiff had unsuccessfully

36

contested bar committee's refusal to waive certain admission requirements in a petition to the District's Court of Appeals, his federal "as applied" claims relating to admissions requirements were barred).  Accordingly, here, Plaintiff Kachalsky's attempt to re-litigate the denial of his gun license is barred by the <u>Rooker</u>-<u>Feldman</u> doctrine.

## POINT V

### THERE IS NO CONSTITUTIONAL RIGHT
### TO CARRY CONCEALED HANDGUNS IN PUBLIC

Plaintiffs assert that <u>Heller</u> and <u>McDonald</u> recognize a fundamental Second Amendment individual right "to carry functional handguns in non-sensitive public place for purposes of self-defense," Complaint ¶10, and that "states may not completely ban the carrying of handguns in non-sensitive places, deprive individuals of the right to carry handguns in an arbitrary and capricious manner, or impose regulations on the right to carry handguns that are inconsistent with the Second Amendment". Complaint ¶13.[8]  As regards New York's "proper cause" provision, Plaintiffs contend that "individuals cannot be required to demonstrate any unique, heightened need for self-defense apart from the general public in order to exercise the right to keep and bear arms," Complaint ¶ 28, and that both facially, and as applied to Kachalsky and Nikolov individually, the requirement of Penal Law §400.00 (2) (f) that an applicant demonstrate "proper cause" for issuance of a full carry permit violates the Second Amendment. Complaint ¶ 29.

---

[8] Plaintiffs apparently also invite this Court to decide for the first time what constitutes a "sensitive" or "non-sensitive" place without allowing the New York State courts to consider that question. The Court should reject this invitation.

**A.** ***Heller* and *McDonald* Do Not Establish a Fundamental Second Amendment Right To Carry Concealed, Loaded, Functional Handguns In Public Places.**

In Heller the Supreme Court held that "the District's ban on handgun possession in the home violates the Second Amendment, as does its prohibition against rendering any lawful firearm in the home operable for the purpose of immediate self-defense". Id. at 2821-22. [9] Heller neither holds that the Second Amendment confers a fundamental right to possess handguns, nor extends the right to handgun possession to any and all public spaces without regard to the need of states to police and regulate such areas. Id. at 2821 (Second Amendment grants a "right of law-abiding responsible citizens to use arms in defense of hearth and home"); McDonald v. City of Chicago, __U.S.__, 130 S.Ct. 3020, 3050 (June 28, 2010) ("[T]he Second Amendment protects a personal right to keep and bear arms for lawful purposes, most notably for self-defense within the home"). Heller found a Second Amendment right based in substantial part on a historical review of firearms possession, and in this context expressly limited its finding regarding the scope of the Second Amendment:

> Like most rights, the right secured by the Second Amendment is not unlimited. From Blackstone through the 19th-century cases,

---

[9] Heller declined to establish a standard of review in Second Amendment cases, only ruling out "rational basis" review. 128 S. Ct. at 2817–18 & n.27. Its list of "presumptively lawful regulatory measures" points to rejection of strict scrutiny. Id. at 2817 n.26. See also, United States v. Miller, 604 F.Supp.2d 1162, 1170 (W.D. Tenn. 2009). The most appropriate standard of review is the "reasonable regulation" framework discussed in Parker v. District of Columbia, 478 F.3d 370, 399 (D.C. Cir. 2007), aff'd sub nom. District of Columbia v. Heller, 128 S. Ct. 2783 (2008). State courts interpreting right-to-bear-arms provisions in state constitutions have uniformly applied such a standard, see, e.g., Bleiler v. Chief, Dover Police Dep't., 927 A.2d 1216, 1222 (N.H. 2007); Mosby v. Devine, 851 A.2d 1031, 1044 (R.I. 2004); State v. Cole, 665 N.W.2d 328, 337 (Wis. 2003). Some courts since Heller have applied intermediate scrutiny, i.e. whether the challenged provision is substantially related to important government interests. Heller v. District of Columbia, 698 F. Supp 2d 179 (D.C. 2010); United States v. Staten, 2010 WL 476110 (S.D.W.Va September 2, 2010); United States v. Walker, 2010 WL 1640340 (E.D. Va. April 21, 2010); United States v. Radencich, 2009 WL 12648 (N.D. Ind. Jan 20, 2009). United States v. Schultz, 2009 U.S. Dist. LEXIS 234 (N.D. Ind. Jan 5 2009). Applying any level of scrutiny presupposes that the right asserted by Plaintiffs falls within the Second Amendment. State Defendants believe that this Court need not determine a level of scrutiny to decide its motion to dismiss, but if the Court does so, it should consider and uphold New York's "proper cause" provision under reasonable regulation or intermediate scrutiny standards.

> commentators and courts routinely explained that the right was not a
> right to keep and carry any weapon whatsoever in any manner
> whatsoever and for whatever purpose. For example, the majority of the
> 19th-century courts to consider the question held that prohibitions on
> carrying concealed weapons were lawful under the Second Amendment
> or state analogues. Although we do not undertake an exhaustive
> historical analysis today of the full scope of the Second Amendment,
> nothing in our opinion should be taken to cast doubt on longstanding
> prohibitions on the possession of firearms by felons and the mentally
> ill, or laws forbidding the carrying of firearms in sensitive places such
> as schools and government buildings, or laws imposing conditions and
> qualifications on the commercial sale of arms. (Emphasis added)

128 S.Ct. at 2816-17.  Moreover, the Court stated: "We identify these presumptively

lawful regulatory measures only as examples; our list does not purport to be exhaustive".

Id. at 2817; fn 26.  Significantly, neither Heller nor McDonald disturbed Robertson v.

Baldwin, 165 U.S. 275, 281-82 (1897), where the Supreme Court recognized that "the

right of the people to keep and bear arms (article 2) is not infringed by laws prohibiting

the carrying of concealed weapons."  This Court should reject Plaintiffs' invitation that it

overrule Robertson, especially given Heller's and McDonald's advice indicating approval

of reasonable state regulations.

Federal and state courts interpreting Heller have cautioned against construing its

holding more broadly than the Court intended.  See U.S. v. Skoien, 614 F. 3d 638, 640

(7th Cir. 2010) (Upholding provisions of 18 U.S.C. § 922 (g) (9) forbidding a convicted

domestic violence misdemeanant from possessing firearms); United States v. Hart, 2010

WL 2990001 at *3 (D. Mass. July 30, 2010) ("Heller does not hold, or even suggest, that

concealed weapons laws are unconstitutional,"); Dorr v. Weber, 2010 WL 1976743at *8

(ND Iowa, May 18, 2010) ("Robertson remains the law, and "a right to carry a concealed

weapon under the Second Amendment has not been recognized to date."); Gonzales v.

Village of West Milwaukee, 2010 WL 1904977 (ED Wis. May 11, 2010) (Supreme Court

did not hold that the Second Amendment protects carrying guns outside the home);

Heller v. District of Columbia, 698 F.Supp.2d 179, 192-93, 195 (D.D.C. March 26, 2010)

("Heller II") (Revised District of Columbia registration requirements are constitutional);

United States v. Masciandro, 648 F.Supp.2d 779,  788 (E.D.Va. 2009) ("[t]he Supreme

Court's holding should not be read by lower courts as an invitation to invalidate the

existing universe of public weapons regulations"); State of Illinois v. Dawson, 2010

Ill.App. LEXIS 863 at *19 (August 18, 2010) (Heller limited its ruling to interpreting the

Second Amendment's protection of the right to possess handguns in the home, not the

right to possess handguns outside the home in case of confrontation); State v. Knight, 218

P. 3d 1177, 1189 (Kan. Ct. App. 2009) (Heller related to use of a handgun in the home

for self defense purposes, did not establish a right to carry concealed weapons); Swait v.

University of Nebraska, 2008 WL 5083245, at *3 (D. Neb. Nov. 25, 2008) ("States can

prohibit the carrying of a concealed weapon without violating the Second Amendment");

U.S. v. Hall, 2008 WL 3097558 (S.D.W.Va., Aug. 4, 2008)(Prohibition against carrying

a concealed weapon without a permit does not violate the Second Amendment).

There are significant public safety rationales for regulating loaded, operational

concealed handguns in public. Some such concerns are articulated in the post-Heller

decision in People v. Yarbrough, 169 Cal. App. 4th 303, 314 (2008):

> Unlike possession of a gun for protection within a residence, carrying a concealed
> firearm presents a recognized threat to public order, and is prohibited as a means
> of preventing physical harm to persons other than the offender. A person who
> carries a concealed firearm on his person or in a vehicle, which permits him
> immediate access to the firearm but impedes others from detecting its presence,
> poses an imminent threat to public safety . . .

Other courts have discussed the public interest in reasonable firearm regulation:

> [A]ccidents with loaded guns on public streets or the escalation of minor public altercations into gun battles or, as the legislature pointed out, the danger of a police officer stopping a car with a loaded weapon on the passenger seat. [T]hus, otherwise "innocent" motivations may transform into culpable conduct because of the accessibility of weapons as an outlet for subsequently kindled aggression. [T]he underlying activity of possessing or transporting an accessible and loaded weapon is itself dangerous and undesirable, regardless of the intent of the bearer since it may lead to the endangerment of public safety. [A]ccess to a loaded weapon on a public street creates a volatile situation vulnerable to spontaneous lethal aggression in the event of road rage or any other disagreement or dispute. The prevention of the potential metamorphosis of such "innocent" behavior into criminal conduct is rationally related to the purpose of the statute, which is to enhance public safety. Because the legislature has a compelling interest in preventing the possession of guns in public under any such circumstances, the statute is reasonably related to the legislature's purpose of "mak[ing] communities in this state safer and more secure for their inhabitants."

People v. Marin, 795 N.E.2d 953, 958–59 (Ill. App. 2003)(citations omitted); see also Marshall v. Walker, 958 F.Supp. 359, 365 (N.D. Ill. 1997) (individuals should be able to walk in public "without apprehension of or danger from violence which develops from unauthorized carrying of firearms and the policy of the statute to conserve and maintain public peace on sidewalks and streets within the cities . . .") (quoting People v. West, 422 N.E.2d 943, 945 (Ill.App. 1981)).

"Throughout our history," governments exercising police power have had "great latitude" to protect their citizens' lives and safety. Medtronic v. Lohr, 518 U.S. 470, 475 (2006). There is no reason believe that latitude does not encompass handgun laws. The provision of New York Penal Law §400.00(2)(f) that an applicant demonstrate "proper cause" for issuance of a full carry permit does not ban the possession of a gun in the home for self-defense, as did the laws declared unconstitutional in Heller and McDonald. In fact, the statute does not prohibit the carrying of concealed handguns at all, but reflects a fair legislative determination about regulation of carrying concealed handguns in public places, and enlists reasonable

41

assessments by local officials. The judgment of whether and how to regulate firearms should be made by the legislature, not the judiciary, Heller at 128 S. Ct at 2817, and in reviewing the constitutionality of a statute, "courts must accord substantial deference to the predictive judgments" of the legislature. Turner Broadcasting Sys., Inc. v. FCC, 520 U.S. 180, 195 (1997) (quoting Turner Broadcasting Sys., Inc. v. FCC, 512 U.S. 622, 665 (1994)). "Local officials, by virtue of their proximity to, and their expertise with, local affairs, are exceptionally well qualified to make determinations of public good 'within their respective spheres of authority.'" Richmond v. J.A. Croson Co., 488 U.S. 469, 544 (1989) (quoting Hawaii Housing Authority v. Midkiff, 467 U.S. 229, 244 (1984)).

**B.      Plaintiffs Fail to Demonstrate That Penal Law §400.00(2)(f) is Unconstitutional As Applied to Them.**

An "as-applied challenge" requires analyzing the facts of the particular case to determine whether the application of a statute unlawfully deprives an individual to whom it was applied of a protected right, while a facial challenge represents a plaintiff's contention that a statute is incapable of constitutional application in any context, Field Day, LLC v. County of Suffolk, 463 F.3d 167, 174 (2d Cir.2006), and if successful in an as-applied claim the plaintiff may enjoin enforcement of the statute only against himself or herself in the objectionable manner, while a successfully mounted facial attack voids the statute in its entirety and in all applications. See, Frye v. City of Kannapolis, 109 F.Supp.2d 436, 439 (M.D.N.C. 1999).

As a threshold matter, Plaintiffs' as applied challenge fails because Penal Law § 400.00(2)(f) has not been applied to Plaintiffs in the context they now present to the Court, namely that following the determination in McDonald that the Second Amendment applies to the State, Penal Law § 400.00(2)(f) must be applied in a way that

is consistent with the Second Amendment.[10]  See Points I and II above. Furthermore,

Plaintiffs' purported as-applied challenge is indistinguishable from their facial challenge.

Plaintiffs Kachalsky and Nikolov do not allege that Penal Law § 400.00(2)(f) has been

applied to them based on facts concerning their particular circumstances, rather they

claim that it is categorically void.  This is a facial claim masquerading as an as applied

claim. See, Genco Importing Inc. v. City of New York, 552 F.Supp.2d 371, 381-

382 (S.D.N.Y.2008) (As-applied challenge dismissed because complaint was devoid of

facts from which it reasonably might be concluded that regulation as actually applied to

particular plaintiffs violated their constitutional rights).

    The as applied challenge also fails because it presumes that the Second

Amendment provides a general right to carry a concealed, loaded and operational

handgun in public, a premise which exceeds the right recognized in Heller and

McDonald. It is worth recalling the Supreme Court's observation in finding the total ban

on handgun possession in Washington D.C. unconstitutional: "Few laws in the history of

our nation have come close to the severe restriction of the District's handgun ban".

Heller, 128 S.Ct. at 2918.  New York law does not ban handgun possession, and Penal

Law § 400.00 (2)(f) does not prohibit (or even involve) the Second Amendment right of

possessing workable firearms in the home, and is thus not within the scope of Heller and

McDonald. See, United States v. Masciandaro, supra. 648 F.Supp at 788 (Rejecting

Heller-based as applied statutory challenge asserting Second Amendment right to possess

loaded firearm on National Park land). The provision in Penal Law § 400.00 (2)(f) that a

license applicant demonstrate "proper cause," i.e. a need for self protection

---

[10] Plaintiff SAF, an organization, cannot obtain a handgun license, and thus cannot maintain license-denial claims.

distinguishable from that of the general public for issuance of a full carry permit allows

individuals with legitimate self-defense concerns to carry a concealed weapon while

allowing the State to protect the public.

**C.     Penal Law § 400.00(2)(f) Is Not Unconstitutional On Its Face**

Plaintiffs face a heavy burden in seeking to have Penal Law § 400.00(2)(f)

invalidated as facially unconstitutional. Facial challenges are the most difficult to mount

successfully and are not favored because claims of facial invalidity are often speculative,

and thus risk a "premature interpretation of statutes on a factually bare bones record."

Wash. State Grange, supra, 552 U.S. at 450.  They "also run contrary to the fundamental

principle of judicial restraint that courts should neither 'anticipate a question of

constitutional law in advance of the necessity of deciding it' nor 'formulate a rule of

constitutional law broader that is required by the precise facts to which it is to be

applied'". United States v. Frederick, 2010 WL 2179102, *6 (D.S.D. May 27, 2010).

Additionally, facial challenges are disfavored because they undermine the democratic

process by "preventing laws embodying the will of the people from being implemented in

a manner consistent with the Constitution." Washington State Grange, 552 U.S. at 450;

United States v. Frederick, supra.  "[A] plaintiff can only succeed in a facial challenge by

'establish[ing] that no set of circumstances exists under which the Act would be valid.'"

Washington State Grange, 552 U.S. at 449 (quoting United States v. Salerno, 481 U.S.

739, 745 (1987)); see also, Masciandaro, supra., 648 F.Supp.2d 779 .  Moreover, "the fact

that [the regulations] might operate unconstitutionally under some conceivable set of

circumstances is insufficient to render [them] wholly invalid." Salerno, 481 U.S. at 745.

With these principles in mind, § 400.00(2)(f) clearly stands as facially constitutional. The Second Amendment clearly does not grant an absolute and unrestricted right to carry an operational concealed weapon in public, and indeed, Heller pointedly acknowledged the broad viability of state handgun regulation, and even went so far as to specifically exclude from the Second Amendment's reach, "sensitive places." 128 S.Ct. at 2816-17. Thus there is no basis to conclude that New York Penal Law § 400.00(2)(f) is void in every conceivable circumstance.

## POINT VI

### PLAINTIFFS HAVE FAILED TO STATE AN
### EQUAL PROTECTION CAUSE OF ACTION

In "Count II" of the Complaint, Plaintiffs assert that Penal Law § 400.00(2)(f) deprives them of the equal protection of the laws under the Fourteenth Amendment. The Complaint contains no factual allegations in support of that assertion. To survive a Rule 12(b)(6) motion to dismiss, plaintiffs alleging a § 1983 equal protection claim must plead a high degree of similarity between themselves other persons to whom they compare themselves such that no rational person could regard the circumstances of the plaintiffs to differ from those of a comparator to a degree that would justify differential treatment. Ruston v. Town Bd. for Town of Skaneateles,  610 F.3d 55, 59 -60 (2d Cir. 2010). Here Plaintiffs fail to plead any facts warranting a conclusion that they were treated differently than other similarly situated persons.

Moreover, "[t]he Fourteenth Amendment's promise that no person shall be denied the equal protection of the laws must coexist with the practical necessity that most legislation classifies for one purpose or another, with resulting disadvantages to various groups". Romer v. Evans, 517 U.S. 620, 631 (1996). Thus, "if a law neither burdens a

45

fundamental right, nor targets a suspect class, [the court] will uphold the legislative classification so long as it bears a rational relation to some legitimate end". City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 440 (; Bach v. Pataki, 289 F.Supp.2d 217, 288. "[L]egislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest". Cleburne, supra, 473 U.S. at 439; Bach, supra, 289 F.Supp.2d at 228. The party challenging the statute "bears the burden of demonstrating that there is no reasonable basis for the challenged distinction". Bach, supra, at 229.

Examples of the public interests served by handgun regulation statutes are discussed in Point V above. Such interests are furthered by Penal Law § 400.00(2)(f), it has a rational relationship to legitimate state public safety interests, and the Equal Protection claim should be dismissed.

46

## CONCLUSION

For the reasons stated herein, the complaint should be dismissed in its entirety as

against the State Defendants.

Dated: New York, New York
      November 9, 2010

                          Respectfully submitted,

                          ANDREW M. CUOMO
                          Attorney General of the
                           State of New York
                          Attorney for the State Defendants
                          By:

                          ANTHONY J. TOMARI (AT-0186)
                          Assistant Attorney General
                          120 Broadway, 24th Floor
                          New York, New York 10271
                          (212) 416-8553

                          MONICA CONNELL (MC-9841)
                          Assistant Attorney General
                          120 Broadway, 24th Floor
                          New York, NY 10271
                          (212) 416-8965