UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

| | |
|---|---|
| Alan Kachalsky, Christina Nikolov, Eric Detmer, | : |
| Johnnie Nance, Anna Marcucci-Nance, | : |
| and  Second Amendment Foundation, Inc., | : |
| | : |
| Plaintiffs, | : **Civil Action Number:** |
| | : **10-cv-5413** |
| -against- | : |
| | : **(Hon. Cathy Seibel)** |
| Susan Cacace, Jeffrey A. Cohen, | : |
| Albert Lorenzo, Robert K. Holdman | : |
| and County of Westchester, | : |
| | : |
| Defendants. | : |

---------------------------------------------------------------X

### DECLARATION IN SUPPORT OF THE SUPPLEMENTAL MEMORANDUM TO STATE DEFENDANTS' MOTION TO DISMISS

**ANTHONY J. TOMARI**, under the penalties of perjury and in accordance with

28 U.S.C. 1746 declares as follows:

1.      I am an Assistant Attorney General in the Office of ANDREW M. CUOMO,

Attorney General of the State of New York, attorney for Defendants Susan Cacace, Jeffrey A.

Cohen, Albert Lorenzo and Robert K. Holdman, all of whom are New York State court judges

(hereinafter "State Defendants"), in the above-captioned action.  I submit this affirmation in

support of the State Defendants' Supplemental Memorandum in support of their Motion to

Dismiss.

2.      The State Defendants submit a supplemental memorandum of law to address only

those issues and newly asserted factual allegations pertaining to those plaintiffs and defendants

added to this action by Plaintiffs' filing of a First Amended Complaint ("FAC").  A copy of the

FAC is annexed hereto as Exhibit "1".

3.    Pursuant to Order of this Court dated October 8, 2010, all defendants' motions to dismiss the original complaint were to be served on November 5, 2010. See Docket Entry #13.

4.    After the close of business on November 4, 2010 plaintiffs attempted to file the FAC via ECF, but the attempted filing was rejected. See Docket Entry #15. Plaintiffs tried a second time to file the FAC and on November 8, 2010, the FAC was successfully filed via ECF. See Docket Entry #18.

5.    Regardless, after receiving electronic notification of plaintiffs' first attempt at filing the FAC, counsel for State Defendants obtained a copy of the FAC from the PACER system during the morning of November 5, 2010 – the date defendants' motions to dismiss were due. Given the substantial amendments to the original complaint, counsel for the State Defendants immediately wrote to this Court to request a new briefing schedule to permit the State Defendants, including the newly named judges, who had not been served, to address their dismissal motion to this superseding pleading. See, Exhibit "2" annexed hereto.

6.    Defendant County of Westchester made the same request, on the same date, through its counsel. See, Exhibit "3" annexed hereto.

7.    Plaintiffs' counsel opposed altering the October 8, 2010 briefing schedule. See, Exhibit "4" annexed hereto.

8.    State Defendants further responded by a second letter dated November 5, 2010. See, Exhibit "5" annexed hereto.

9.    By a November 5, 2010 memo endorsement order, posted on ECF on November 8, 2010, this Court declined to set a new briefing schedule. Rather, it ordered the original defendants to serve their motions to dismiss by November 9, 2010 and that the State Defendants should address the allegations made by the new plaintiffs against the added Defendants in a

- 2 -

supplemental submission to be served by December 6, 2010. See, Exhibit "6" annexed hereto. The supplemental memorandum of law submitted herewith is that supplemental submission.

10. In addition, as pertains to the newly added State Defendants, a copy of State Defendant Lorenzo's denial of plaintiff Detmer's application for a "full carry" license, dated September 27, 2010, is annexed as Exhibit "7" hereto.

11. A copy of State Defendant Holdman's denial of plaintiff Nance's application for a "full carry" license, dated September 9, 2010, is annexed as Exhibit "8" hereto.

12. A copy of State Defendant Holdman's denial of plaintiff Marcucci-Nance's application for a "full carry" license, dated September 9, 2010, is annexed as Exhibit "9" hereto.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 7, 2010

> ANDREW M. CUOMO
> Attorney General of the
> State of New York
> Attorney for Defendants
> By:
>
> Anthony J. Tomari (AT-0186)
> Assistant Attorney General
> 120 Broadway - 24th Floor
> New York, New York 10271
> (212) 416 - 8553

- 3 -

# EXHIBIT
# 1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
WHITE PLAINS DIVISION

| | | |
|---|---|---|
| ALAN KACHALSKY, CHRISTINA NIKOLOV, | : | Case No. 10-CV-05413-CS |
| ERIC DETMER, JOHNNIE NANCE, ANNA | : | |
| MARCUCCI-NANCE, and SECOND AMENDMENT : | | **FIRST AMENDED** |
| FOUNDATION, INC., | : | **COMPLAINT** |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| SUSAN CACACE, JEFFREY A. COHEN, ALBERT : | | |
| LORENZO, ROBERT K. HOLDMAN, and COUNTY : | | |
| OF WESTCHESTER, | : | |
| | : | |
| Defendants. | : | |
| | : | |

-----------------------------------------------------------------------X

## COMPLAINT

**COME NOW** the Plaintiffs, Alan Kachalsky, Christina Nikolov, Eric Detmer, Johnnie

Nance, Anna Marcucci-Nance, and Second Amendment Foundation, Inc., by and through

undersigned counsel, and complain of the defendants as follows:

### THE PARTIES

1.      Plaintiff Alan Kachalsky is a natural person and a citizen of the United States and

of the State of New York. Kachalsky resides in Westchester County.

2.      Plaintiff Christina Nikolov is a natural person and a citizen of the United States

and of the State of New York. Nikolov resides in Westchester County.

3.      Plaintiff Eric Detmer is a natural person and a citizen of the United States and of

the State of New York. Detmer resides in Westchester County.

4.      Plaintiff Johnnie Nance is a natural person and a citizen of the United States and of the State of New York. Nance resides in Westchester County.

5.      Plaintiff Anna Marcucci-Nance is a natural person and a citizen of the United States and of the State of New York. Marcucci-Nance resides in Westchester County.

6.      Plaintiff Second Amendment Foundation, Inc. ("SAF") is a non-profit membership organization incorporated under the laws of Washington with its principal place of business in Bellevue, Washington. SAF has over 650,000 members and supporters nationwide, including Westchester County, New York. The purposes of SAF include promoting the exercise of the right to keep and bear arms; and education, research, publishing and legal action focusing on the Constitutional right to privately own and possess firearms, and the consequences of gun control. SAF brings this action on behalf of itself and its members.

7.      Defendant Susan Cacace was at all relevant times a handgun carry permit licensing officer for defendant Westchester County. Defendant Cacace is responsible for executing and administering the laws, customs, practices, and policies at issue in this lawsuit; has enforced the challenged laws, customs and practices against plaintiff Kachalsky and plaintiff SAF's membership, and is in fact presently enforcing the challenged laws, customs and practices against plaintiffs' interests. Defendant Cacace is sued in her capacity as licensing officer.

8      Defendant Jeffrey A. Cohen was at all relevant times a handgun carry permit licensing officer for defendant Westchester County. Defendant Cohen is responsible for executing and administering the laws, customs, practices, and policies at issue in this lawsuit; has enforced the challenged laws, customs and practices against plaintiff Nikolov and plaintiff SAF's

membership, and is in fact presently enforcing the challenged laws, customs and practices against plaintiffs' interests. Defendant Cohen is sued in his capacity as licensing officer.

9.     Defendant Albert Lorenzo was at all relevant times a handgun carry permit licensing officer for defendant Westchester County. Defendant Lorenzo is responsible for executing and administering the laws, customs, practices, and policies at issue in this lawsuit; has enforced the challenged laws, customs and practices against plaintiff Detmer and plaintiff SAF's membership, and is in fact presently enforcing the challenged laws, customs and practices against plaintiffs' interests. Defendant Lorenzo is sued in his capacity as licensing officer.

10.     Defendant Robert K. Holdman was at all relevant times a handgun carry permit licensing officer for defendant Westchester County. Defendant Holdman is responsible for executing and administering the laws, customs, practices, and policies at issue in this lawsuit; has enforced the challenged laws, customs and practices against plaintiffs Nance and Marcucci-Nance and plaintiff SAF's membership, and is in fact presently enforcing the challenged laws, customs and practices against plaintiffs' interests. Defendant Holdman is sued in his capacity as licensing officer.

11.     Defendant County of Westchester is a governmental entity organized under the Constitution and laws of the State of New York, possessing legal personhood within the meaning of 42 U.S.C. § 1983. The County, by and through its Department of Public Safety, Pistol Licensing Unit, is responsible for executing and administering the laws, customs, practices, and policies at issue in this lawsuit; has enforced the challenged laws, customs and practices against the individual plaintiffs and plaintiff SAF's membership, and is in fact presently enforcing the challenged laws, customs and practices against plaintiffs' interests.

3

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. § 1983.

13. Venue lies in this Court pursuant to 28 U.S.C. § 1391.

## STATEMENT OF FACTS

14. The Second Amendment to the United States Constitution provides: "A well regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed."

15. The Second Amendment guarantees individuals a fundamental right to carry functional handguns in non-sensitive public places for purposes of self-defense.

16. The States and their units of local government are bound to respect Second Amendment rights by operation of the Fourteenth Amendment.

17. The States retain the ability to regulate the manner of carrying handguns, prohibit the carrying of handguns in specific, narrowly defined sensitive places, prohibit the carrying of arms that are not within the scope of Second Amendment protection, and disqualify specific, particularly dangerous individuals from carrying handguns.

18. The States may not completely ban the carrying of handguns for self-defense, deny individuals the right to carry handguns in non-sensitive places, deprive individuals of the right to carry handguns in an arbitrary and capricious manner, or impose regulations on the right to carry handguns that are inconsistent with the Second Amendment.

19.     New York Penal Code § 265.01(1) prohibits the possession of firearms. A violation of this provision constitutes "Criminal Possession of a Firearm in the Fourth Degree," a class A misdemeanor.

20.     New York Penal Code § 265.03(3) provides that possession of a loaded firearm outside one's home or place of business constitutes "Criminal Possession of a Firearm in the Second Degree," a class C felony.

21.     The prohibitions of sections 265.01(1) and 265.03(3) do not apply to the "[p]ossession of a pistol or revolver by a person to whom a license therefor has been issued as provided under section 400.00 or 400.01." New York Penal Code § 265.20.

22.     For most civilians who are not otherwise barred from possessing and carrying weapons, the only permit to carry handguns in public for self-defense is a permit "to have and carry concealed, without regard to employment or place of possession, by any person when proper cause exists for the issuance thereof," pursuant to New York Penal Code § 400.00(2)(f).

23.     Plaintiffs Alan Kachalsky, Christina Nikolov, Eric Detmer, Johnnie Nance, Anna Marcucci-Nance, and the members and supporters of plaintiff SAF, would carry functional handguns in public for self-defense, but refrain from doing so because they fear arrest, prosecution, fine, and imprisonment for lack of a license to carry a handgun.

24.     Plaintiffs Alan Kachalsky, Christina Nikolov, Eric Detmer, Johnnie Nance, and Anna Marcucci-Nance, are fully qualified to obtain a license to carry a handgun under New York Penal Code § 400.00(1), in that each (a) is over 21 years old, (b) of good moral character, (c) has never been convicted of a felony or serious crime, (d) has never been mentally ill or confined to any institution, (e) has not had a license revoked or been the subject of a family court

order, (f) has completed a firearms safety course, and (g) should not be denied a permit for any good cause.

25.     Defendants maintain a strict policy of denying handgun carry license applications where the applicants cannot affirmatively demonstrate a unique and personal need for self-defense distinguishable from that of the general public. Plaintiffs Kachalsky, Nikolov, Detmer, Nance, Marcucci-Nance, and the members and supporters of plaintiff SAF, cannot meet this standard as it is applied by the defendants.

26.     Plaintiff Alan Kachalsky applied for a handgun carry license pursuant to New York Penal Code § 400.00. Defendant Westchester County recommended that the permit be denied. On or about October 8, 2008, Defendant Cacace denied Kachalsky's permit application, offering that Kachalsky "has not stated any facts which would demonstrate a need for self protection distinguishable from that of the general public." Accordingly, Defendant Cacace found Kachalsky did not satisfy the requirement of New York Penal Code § 400.00(2)(f) that "proper cause" be shown for issuance of the permit.

27.     Plaintiff Kachalsky appealed the permit denial to the Appellate Division of the Supreme Court of the State of New York, pursuant to Article 78 of the New York Code of Civil Practice Law and Rules. On September 8, 2009, the Appellate Division held that Defendant Cacace's "determination was not arbitrary or capricious and should not be disturbed."

28.     On February 16, 2010, the New York Court of Appeals dismissed Kachalsky's appeal on the grounds that it presented no substantial constitutional question. At the time of this decision, it was not a holding of any federal appellate circuit that the States were bound to respect Second Amendment rights. The Court of Appeals for the Second Circuit had held that the Second

6

Amendment did not apply to the States. On June 28, 2010, the Supreme Court held that the Fourteenth Amendment does incorporate and apply the Second Amendment against the States.

29. Plaintiff Kachalsky would apply again for a handgun carry license, but refrains from doing so because any such application would be a futile act. He cannot satisfy the good cause standard, which has already been applied to him.

30. Plaintiff Christina Nikolov applied for a handgun carry license pursuant to New York Penal Code § 400.00. On or about October 1, 2009, Defendant Cohen denied Nikolov's permit application, offering that "conspicuously absent" from Defendant County's background investigation report of Plaintiff Nikolov "is the report of any type of threat to her own safety anywhere." Defendant Cohen continued: "[I]t cannot be said that the applicant has demonstrated that she has a special need for self-protection distinguishable from that of the general public; therefore, her application for a firearm license for a full carry permit must be denied." Accordingly, Defendant Cohen found Nikolov did not satisfy the requirement of New York Penal Code § 400.00(2)(f) that "proper cause" be shown for issuance of the permit.

31. Plaintiff Detmer serves in the United States Coast Guard, for one weekend each month and two full weeks each year. Since 2004, Detmer has been a qualified Boarding Team Member. Although lacking authority to arrest, Detmer carries a .40 caliber handgun while on duty with the Coast Guard, which he surrenders each time upon leaving duty. Detmer qualifies semi-annually with his handgun, regularly taking a non-firing judgmental pistol course, a firing tactical pistol course, and use-of-force training.

32. Detmer is licensed to have a private handgun for the limited purpose of target shooting. Pursuant to New York Penal Code § 400.00, Detmer applied to amend his license for

7

the purpose of "full carry," so that he could carry his gun while off-duty. On or about September 3, 2010, Defendant Westchester County recommended that the application be disapproved, as Detmer's need to enforce laws while off-duty was "speculative," and Detmer "has not substantiated that he faces danger during non employment hours that would necessitate the issuance of a full carry firearm license" and "has not demonstrated an exceptional need for self protection distinguishable from that of the general public."

33.     On or about September 27, 2010, Defendant Lorenzo denied Detmer's application, stating, "At this time, I see no justification for a full carry permit."

34.     Plaintiff Nance is licensed to have a private handgun for the limited purpose of target shooting. Pursuant to New York Penal Code § 400.00, Nance applied to amend his license for the purpose of "full carry" for self-defense, in part as Nance is a shooting instructor and regularly transports firearms. On or about August 11, 2010, Defendant Westchester County recommended that the application be disapproved, as "No safety related concerns have been cited by the applicant," and Nance "has not demonstrated an exceptional need for self protection distinguishable from that of the general public."

35.     On or about September 9, 2010, Defendant Holdman denied Nance's application for a carry permit. Holdman cited Defendant County's recommendation for denial, and its finding that Nance had not demonstrated any exceptional need for the permit. Holdman further stated, "The applicant has not provided the court with any information that he faces any danger of any kind that would necessitate the issuance of a full carry firearm license; or has not demonstrated a need for self protection distinguishable from that of the general public or of other persons similarly situated." Citing the denial of Plaintiff Kachalsky's application, Defendant Holdman

8

found Nance did not demonstrate "proper cause" within the meaning of the governing provision. Holdman continued: "In sum, the applicant has not shown sufficient circumstances to distinguish his need from those of countless others, nor has he demonstrated a specific need for self protection distinguishable from that of the general community or of persons engaged in the same business or profession."

36.    Plaintiff Marcucci-Nance is licensed to have a private handgun for the limited purpose of target shooting. Pursuant to New York Penal Code § 400.00, Marcucci-Nance applied to amend her license for the purpose of "full carry" for self-defense, in part as Marcucci-Nance is a shooting instructor and regularly transports firearms. On or about August 11, 2010, Defendant Westchester County recommended that the application be disapproved, as "No safety related concerns have been cited by the applicant," and Marcucci-Nance "has not demonstrated an exceptional need for self protection distinguishable from that of the general public."

37.    On or about September 9, 2010, Defendant Holdman denied Marcucci-Nance's application for a carry permit. Holdman cited Defendant County's recommendation for denial, and its finding that Marcucci-Nance had not demonstrated any exceptional need for the permit. Holdman further stated, "The applicant has not provided the court with any information that he faces any danger of any kind that would necessitate the issuance of a full carry firearm license; or has not demonstrated a need for self protection distinguishable from that of the general public or of other persons similarly situated." Citing the denial of Plaintiff Kachalsky's application, Defendant Holdman found Marcucci-Nance did not demonstrate "proper cause" within the meaning of the governing provision. Holdman continued: "In sum, the applicant has not shown sufficient circumstances to distinguish her need from those of countless others, nor has she

demonstrated a specific need for self protection distinguishable from that of the general community or of persons engaged in the same business or profession."

## COUNT I
## U.S. CONST., AMEND. II, 42 U.S.C. § 1983
## AGAINST ALL DEFENDANTS

38.     Paragraphs 1 through 37 are incorporated as though fully stated herein.

39.     Individuals cannot be required to prove their "good cause" for the exercise of fundamental constitutional rights, including the right to keep and bear arms.

40.     Individuals cannot be required to demonstrate any unique, heightened need for self-defense apart from the general public in order to exercise the right to keep and bear arms.

41.     New York Penal Code § 400.00(2)(f)'s requirement that handgun carry permit applicants demonstrate good cause for the issuance of a permit, violates the Second Amendment to the United States Constitution, facially and as applied against Kachalsky, Nikolov, Detmer, Nance, Marcucci-Nance, and SAF's members and supporters, damaging them in violation of 42 U.S.C. § 1983. Plaintiffs are therefore entitled to permanent injunctive relief against the enforcement of this provision.

## COUNT II
## U.S. CONST., AMEND. XIV, EQUAL PROTECTION, 42 U.S.C. § 1983
## AGAINST ALL DEFENDANTS

42.     Paragraphs 1 through 41 are incorporated as though fully stated herein.

43      New York Penal Code § 400.00(2)(f)'s requirement that handgun carry permit applicants demonstrate cause for the issuance of a permit classifies individuals, including plaintiffs, on the basis of irrelevant, arbitrary, and speculative criteria in the exercise of a fundamental right. Accordingly, the provision violates Plaintiffs' Fourteenth Amendment right to

10

equal protection of the law, damaging them in violation of 42 U.S.C. § 1983. Plaintiffs are
therefore entitled to permanent injunctive relief against the enforcement of this provision.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that judgment be entered in their favor and against

Defendants as follows:

1.      An order permanently enjoining defendants, their officers, agents, servants,

employees, and all persons in active concert or participation with them who receive actual notice
of the injunction, from enforcing N.Y. Penal Code § 400.00(2)(f)'s good cause requirement;

2.      An order commanding Defendants to issue Plaintiffs Kachalsky, Nikolov, Detmer,

Nance, and Marcucci-Nance permits to carry a handgun;

3.      Costs of suit, including attorney fees and costs pursuant to 42 U.S.C. § 1988;

4.      Declaratory relief consistent with the injunction; and

5.      Any other further relief as the Court deems just and appropriate.

Dated: November 4, 2010                       Respectfully submitted,

Alan Gura*                                    Vincent Gelardi
Gura & Possessky, PLLC                        Gelardi & Randazzo
101 N. Columbus Street, Suite 405             800 Westchester Avenue, Suite S-608.
Alexandria, VA 22314                          Rye Brook, NY 10573
703.835.9085/Fax 703.997.7665                 914.251.0603/Fax 914.253.0909
Lead Counsel                                  Local Counsel
*Admitted Pro Hac Vice

                                              By:  /s/ Alan Gura
                                                   Alan Gura

                                              Attorneys for Plaintiffs

11

# EXHIBIT
# 2



STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

**ANDREW M. CUOMO**
ATTORNEY GENERAL

**LESLIE G. LEACH**
EXECUTIVE DEPUTY ATTORNEY GENERAL
DIVISION OF STATE COUNSEL

**JUNE DUFFY**
ASSISTANT ATTORNEY GENERAL IN CHARGE
LITIGATION BUREAU

**WRITER'S DIRECT DIAL (212) 416-8965**

November 5, 2010

**By Facsimile Transmission - (914) 390-4278**

Hon. Cathy Seibel
United States District Court Judge
United States Courthouse
300 Quarropas Street
White Plains, NY 10601-4150

   Re: <u>Alan Kachalsky, et al. v. , Susan Cacace, et al</u>.
     10 CV 5413 (CS)

Dear Judge Seibel:

This office represents defendants the Hon. Susan Cacace and Hon. Jeffrey A. Cohen, judges of
the County Court, Westchester County ("State Defendants"). According to the briefing schedule
now in place in this case, the defendants are to serve their motion to dismiss the complaint today,
November 5, 2010, addressing the Complaint herein which was filed on July 15, 2010.
However, yesterday evening, November 4, 2010 the counsel for plaintiffs filed a First Amended
Complaint which identifies three new plaintiffs, two new defendants, and changes the
substantive allegations. To the best of our knowledge, the new defendants have not been served.

In consideration of the filing of the First Amended Complaint, the motion to dismiss otherwise
due today is no longer appropriate, as it, of course, addresses the original complaint, and the
briefing schedule previously established herein will need to be modified. Insofar as the new
defendants may be eligible for representation by this office, we cannot undertake such
representation unless and until service is effected, a request for representation is made, and a
determination about representation is finalized.

Page 2

State Defendants request that the briefing schedule herein be suspended, to be reset following service of the First Amended Complaint, and thereafter by consultation among the parties and submission and approval of a revised briefing schedule.

Thank you for your attention to this matter. All parties will receive a copy of this letter simultaneously by facsimile transmission.

Very truly yours,

Monica Connell
Assistant Attorney General

Copy:
Melissa-Jean Rotini, Esq.
Assistant County Attorney, Of Counsel
Westchester County Attorney's Office
Attorneys for Defendant County of Westchester
Michaelian Office Building
148 Martine Avenue, 6th Floor
White Plains, New York 10601
T: 914-995-3630
F: 914-995-3132

Vincent Gelardi
Gelardi & Randazzo
Attorneys For Plaintiffs
800 Westchester Avenue, Suite S-608
Rye Brook, New York 10573
T: (914)-251-9603
F: 914-253-0909

Alan Gura, Esq.
Gura & Possessky, PLLC
Attorneys for Plaintiff
101 N. Columbus Street, Suite 405
Alexandria, Virginia 22314
T: (703) 835-9085
F: (703) 997-7665

# EXHIBIT
# 3



**Robert P. Astorino**
County Executive

Robert F. Meehan
County Attorney

November 5, 2010

*VIA FACSIMILE: 914-390-4278*

Hon. Cathy Seibel
United States District Court Judge
The Hon. Charles L. Brieant, Jr. Federal
Building and United States Courthouse
300 Quarropas Street
White Plains, NY 10601

> Re: *Kachalsky, et al v. Cacace, et al*
> Case No.: 10-cv-05413

Dear Judge Seibel:

This office represents the County of Westchester (hereinafter "County"). At 6:25 p.m. last evening, the undersigned received notification of the 6:18 p.m. electronic filing of a superseding Amended Complaint in the above-referenced matter. Upon information and belief, the Defendants have not yet been served with a copy of the Amended Complaint, which continues to mischaracterize the County's role as that of employer of the New York State Court Judges sued in this matter.

The Amended Complaint adds new parties, and references the newly added Co-Defendant judges' decisions, which must be obtained to verify the veracity of the quotes.[1] Further, the County's Motion to Dismiss will need to be amended to address these additional parties, although it is also noted the Amended Complaint continues to fail to plead any claim against the County.

Therefore, the County respectfully joins in the request from Attorney General's Office seeking to suspend the briefing schedule pending service of the Amended Complaint. Thank you.

Respectfully Submitted,

Melissa Jean Rotini
Assistant County Attorney, Of Counsel
914-995-3630

---

[1] As the Court was advised in the County's Pre-Motion Letter of August 16, 2010, the Plaintiffs have previously mischaracterized the language in the decision of Co-Defendant Judge Cohen by taking a partial quote and changing the context.

Michaelian Office Building
148 Martine Avenue, 6th Floor
White Plains, New York 10601        Telephone: 914-995-2660        Fax: 914-995-3132*





*Please be advised that service by facsimile is not accepted.

cc: *Via Facsimile: 212-416-6075*
   Anthony J. Tomari, Esq.
   Office of the Attorney General
   120 Broadway, 24th Floor
   New York. NY 10271

*Via Facsimile: 703-997-7665*
Alan Gura, Esq.
Gura & Possessky, PLLC
1010 North Columbus Street, Suite 405
Alexandria, VA 22314

*Via Facsimile: 914-253-0909*
Vincent Gelardi, Esq.
Gelardi & Randazzo
800 Westchester Avenue, Suite S-608
Rye Brook, NY 10573

2

# EXHIBIT
# 4



## GURA & POSSESSKY, P.L.L.C.
101 N. COLUMBUS STREET, SUITE 405
ALEXANDRIA, VIRGINIA 22314
TEL. 703.835.9085/FAX 703.997.7665

November 5, 2010

The Hon. Cathy Seibel
United States District Court Judge
United States Courthouse
300 Quarropas Street
White Plains, NY 10601-4150

### VIA FAX TO 914.390.4278

Re:     *Kachalsky* v. *Cacase*
        U.S. Dist. Ct., S.D.N.Y. 10-CV-5413-CS

Dear Judge Seibel:

The latest requests by Defendants to vacate the briefing schedule, apparently without meeting and conferring and without proposing an alternative, are not well-taken. These issues have already been resolved by the Court, and any additional delays at this point would be excessive and prejudicial to Plaintiffs.

It is important to recall the background against which these latest requests are made.

The parties originally agreed on a briefing schedule amongst themselves, and had prepared a joint letter submitting the same to the Court, but at the last moment, the Attorney General's Office withdrew its consent to that schedule because it suddenly decided that it would not consent to allowing Plaintiffs to file a motion for summary judgment. Subsequently, the parties appeared before the Court at the September 7 status conference, and a briefing schedule was readily agreed to.

During that status conference, as the Court may recall, the issue arose of the State Defendants' theory that the individual plaintiffs could not complain about their permit application denials, as these were denied prior to the Supreme Court's decision in *McDonald* v. *City of Chicago*, 130 S. Ct. 3020 (2010). Defendants suggested that the outcome of the applications would have been different had Plaintiffs applied post-*McDonald*.

Plaintiffs responded that the Defendants have not changed their practices in the wake of *McDonald*, the statute being challenged here has not been amended, and in fact, Defendants are invoking Plaintiff Kachalsky's denial to deny additional applications. Indeed, Defendants did not remedy their denials of the Plaintiffs' applications.

The Hon. Cathy Seibel
Page Two

Plaintiffs proposed a solution, accepted by the Court and by all Defendants: that they move to amend the complaint to add parties denied post-*McDonald*. The Court granted the motion, giving Plaintiffs until the deadline for the motion to dismiss to amend the complaint. This arrangement was confirmed in the endorsed letter extending the deadline for both amendment and the motions to dismiss.

In other words, everyone understood and agreed that the amendment would relate primarily to the post-*McDonald* argument. And that is exactly what has now occurred: Plaintiffs added three additional co-Plaintiffs who were denied licenses to carry firearms post-*McDonald* by Westchester County licensing officials. There is no other substantive amendment to the complaint: it lays out the exact same theories and arguments laid out previously.

Accordingly, the alleged problems raised by Defendants are not new. The Court has already addressed them at the September 7 hearing, and in its order. Defendants would have had a point had Plaintiffs asserted new legal theories or involved third-party defendants (perhaps licensing officials from other counties). But there is nothing in the amended complaint that should alter Defendants' substantive arguments. Plaintiffs have adhered to the Court's order, and expect Defendants – who agreed to this arrangement – to now do the same.

Although Defendants asked for this amendment by asserting their post-*McDonald* defense, and they received their amendment within the time to which they had agreed, the prejudice to Plaintiffs and counsel flowing from any alteration of the schedule would be significant. On October 5, the Attorney General's Office requested Plaintiffs' consent for an additional month to file its brief, citing a need for multiple levels of internal review. I could not agree to a full month extension for two reasons: (1) the delay would be excessive – Rule 12 ordinarily provides for a 3 week responsive period, and we had already agreed to 14 weeks; and (2) it would start our response time in the middle of an important, long-planned overseas trip that could not be rescheduled.

Notwithstanding the Attorney General's Office's previous lack of reciprocal courtesy on the summary judgment schedule, to accommodate that office, I agreed to a compromise that effectively cut our response time in half: the Attorney General's Office would serve its brief on November 5 instead of October 22, and our opposition would be extended from November 12 to the 15th. The Court subsequently adopted this modified schedule.

At no point during the conversations relating to this last modification did counsel indicate that he would want additional pages. But last week, counsel obtained permission to double the size of his brief. So we face the prospect of having agreed to half the time – to respond to double the brief, and we are already looking at having a responsive pleading served on November 5, for a case filed July 15 – 92 days versus Rule 12's 21-day standard.

The Hon. Cathy Seibel
Page Three

And now, even though we had an agreement that the amendment could be served concurrently with the motion to dismiss, given the purpose of the amendment and the fact it raises nothing new, Defendants ask that this delayed schedule is to be dispensed with indefinitely. They do not propose a new schedule. The request is dilatory and lacks any basis.

Also not well-taken is the County's assertion that it needs to be served with the amended complaint. The County has appeared in this case and counsel for the county is receiving electronic notice of all filings. Obviously the County has received the amended complaint, which asserts nothing new against the County – just that it applied the same practice and policy against the new plaintiffs, just as it applies this practice and policy against everyone. If the County would ignore the amended complaint, Plaintiffs would request entry of default.

It is hoped that the Attorney General's Office would agree to accept service and appear for the new defendants, as there is no need to place them on duplicate tracks. If the Attorney General insists on service of a summons for the new defendant licensing officers, it should not be heard to come back – for a fourth time – and ask again for a briefing modification. Without acceptance of service by the Attorney General for the new defendants, Plaintiffs cannot agree to any extension beyond Rule 12's twenty-one day responsive period.[1]

I have worked repeatedly with opposing counsel to agree on a briefing schedule for this case. Time and again, however, I am surprised by new understandings: the initial withdrawal from the scheduling agreement, the request for extension to which I responded by significantly reducing our responsive time, the doubling of the page limit, and now the desire to dispense with our previous agreement (and the Court's order) altogether. But I must maintain my calendar, and my clients deserve to have their case considered without additional, indefinite delay.

Thank you in advance for your consideration. All parties will receive a copy of this letter simultaneously via facsimile transmission.

Sincerely,

Alan Gura

cc:   Anthony J. Tomari (via fax to 212.416.6075)
      Melissa-Jean Rotini (via fax to 914.995.3132)
      Vincent Gelardi (via fax to 914.253.0909)

---

[1] I had advised counsel that his post-*McDonald* defense would likely trigger the involvement of additional defendants with no net benefit to his position.

# EXHIBIT
# 5



STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

**ANDREW M. CUOMO**
ATTORNEY GENERAL

**LESLIE G. LEACH**
EXECUTIVE DEPUTY ATTORNEY GENERAL
DIVISION OF STATE COUNSEL

**JUNE DUFFY**
ASSISTANT ATTORNEY GENERAL IN CHARGE
LITIGATION BUREAU

**WRITER'S DIRECT DIAL (212) 416-8553**

November 5, 2010

## By Facsimile Transmission - (914) 390-4278

Hon. Cathy Seibel
United States District Court Judge
United States Courthouse
300 Quarropas Street
White Plains, NY 10601-4150

Re:     Alan Kachalsky, et al. v. , Susan Cacace, et al.
10 CV 5413 (CS)

Dear Judge Seibel:

This office represents individual defendants Susan Cacace and Jeffrey A. Cohen, ("the State Defendants") in this matter. This letter is submitted pursuant to your Individual Practices 1 (A) and in response to plaintiffs' November 5, 2010 letter suggesting that the briefing schedule established for the original Complaint herein should cover the First Amended Complaint, filed on the court's ECF system after regular business hours on November, 4, 2010; the evening before defendants' dismissal motions were to be served. The First Amended Complaint includes new plaintiffs, new defendants and newly stated claims, and supersedes the original Complaint. Accordingly, there is no extant briefing schedule for motions concerning the First Amended Complaint, and our prior letter of this date noted that fact and suggested that any briefing schedule for the First Amended Complaint be suspended pending service, and reset following consultation among the parties. This continues to appear to be the most reasonable approach. If the parties are unable to agree on a briefing schedule for motions addressing the First Amended Complaint, it may become necessary to ask the Court's assistance in this regard.

Regarding plaintiffs' demand that this office accept service of the First Amended Complaint for the newly named defendants, and advising they will oppose establishing a briefing schedule

Page 2

unless we do so, we note that the Office of the Attorney General does not have general statutory authority to accept service for new, or additional parties. It is our general practice to be as accommodating as possible regarding service and scheduling, and this will continue to be our practice in this case.

Thank you for your attention to this matter. All parties will receive a copy of this letter simultaneously by facsimile transmission.

Very truly yours,

Anthony J. Tomari
Assistant Attorney General

Copy:
Melissa-Jean Rotini, Esq.
Assistant County Attorney, Of Counsel
Westchester County Attorney's Office
Attorneys for Defendant County of Westchester
Michaelian Office Building
148 Martine Avenue, 6th Floor
White Plains, New York 10601
T: 914-995-3630
F: 914-995-3132

Vincent Gelardi
Gelardi & Randazzo
Attorneys For Plaintiffs
800 Westchester Avenue, Suite S-608
Rye Brook, New York 10573
T: (914)-251-9603
F: 914-253-0909

Alan Gura, Esq.
Gura & Possessky, PLLC
Attorneys for Plaintiff
101 N. Columbus Street, Suite 405
Alexandria, Virginia 22314
T: (703) 835-9085
F: (703) 997-7665

```
*************** -COMM. JOURNAL- ****************** DATE NOV-05-2010 ***** TIME 16:29 ********


        MODE = MEMORY TRANSMISSION              START=NOV-05 16:27      END=NOV-05 16:29

        FILE NO.=920

 STN NO.   COMM.    ABBR NO.      STATION NAME/TEL NO.    PAGES    DURATION

   001      OK       ■          919143904278           002/002 00:00:20
   002      OK       ■          919149953132           002/002 00:00:25
   003      OK       ■          919142530909           002/002 00:00:19



                                                        -                    -

 ***********************************  -          - ***** -            - *********
```

### STATE OF NEW YORK
### OFFICE OF THE ATTORNEY GENERAL
### ANDREW M. CUOMO

# FACSIMILE TRANSMISSION

**DATE:** November 5, 2010    **NUMBER OF PAGES:** 4  (INCLUDING THIS PAGE)

**TO:**  Hon. Judge Seibel                    **FAX NO:** (914) 390-4278

Melissa-Jean Rotini, Esq.                       (914) 995-3132
Assistant County Attorney, Of Counsel
Westchester County Attorney's Office
Attorneys for Defendant County of Westchester

Vincent Gelardi                                 (914) 253-0909
Gelardi & Randazzo
Attorneys For Plaintiffs


Alan Gura, Esq.                                 (703) 997-7665
Gura & Possessky, PLLC
Attorneys for Plaintiffs



**FROM:** Anthony Tomari, Assistant Attorney General


**ATTN:**
_____
*IF THERE IS A PROBLEM WITH THIS TRANSMISSION, PLEASE CONTACT*
**NAME: Anthony J. Tomari, Assistant Attorney General**
**PHONE NO.(212) 416-8553    FAX NO. (212-) 416-6075  E-Mail: Anthony.Tomari@oag.state.ny.us**

### CONFIDENTIAL

The information contained in this facsimile is privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this is strictly prohibited.

*IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR,*
*PLEASE IMMEDIATELY NOTIFY THE SENDER BY TELEPHONE. THANK YOU.*
*120 BROADWAY, NEW YORK, NY 10271-0332*

OAG 007 (12/98)

# EXHIBIT
# 6



**G&P**

GURA & POSSESSKY, P.L.L.C.
101 N. COLUMBUS STREET, SUITE 405
ALEXANDRIA, VIRGINIA 22314
TEL. 703.835.9085/FAX 703.997.7665

November 5, 2010

The Hon. Cathy Seibel
United States District Court Judge
United States Courthouse
300 Quarropas Street
White Plains, NY 10601-4150

VIA FAX TO 914.390.4278

Re: *Kachalsky v. Cacase*
U.S. Dist. Ct., S.D.N.Y. 10-CV-5413-CS

Dear Judge Seibel:

The latest requests by Defendants to vacate the briefing schedule, apparently without meeting and conferring and without proposing an alternative, are not well-taken. These issues have already been resolved by the Court, and any additional delays at this point would be excessive and prejudicial to Plaintiffs.

It is important to recall the background against which these latest requests are made.

The parties originally agreed on a briefing schedule amongst themselves, and had prepared a joint letter submitting the same to the Court, but at the last moment, the Attorney General's Office withdrew its consent to that schedule because it suddenly decided that it would not consent to allowing Plaintiffs to file a motion for summary judgment. Subsequently, the parties appeared before the Court at the September 7 status conference, and a briefing schedule was readily agreed to.

During that status conference, as the Court may recall, the issue arose of the State Defendants' theory that the individual plaintiffs could not complain about their permit application denials, as these were denied prior to the Supreme Court's decision in *McDonald v. City of Chicago*, 130 S. Ct. 3020 (2010). Defendants suggested that the outcome of the applications would have been different had Plaintiffs applied post-*McDonald*.

Plaintiffs responded that the Defendants have not changed their practices in the wake of *McDonald*, the statute being challenged here has not been amended, and in fact, Defendants are invoking Plaintiff Kachalsky's denial to deny additional applications. Indeed, Defendants did not remedy their denials of the Plaintiffs' applications.

*[Handwritten annotations in margins:]*

The Court understood the proposal in Mr. Tomassi's 10/8/10 letter as

Mr. Gura does — i.e. the parties contemplated an amended complaint concurrent w/ the motion to dismiss. The Court also does not see why the representation of the new Defendants cannot be formalized quickly. The original Defendants shall file their motion to dismiss on or before 11/9/10. Once the new defendants are represented, they may join the original Defendants' arguments by submitting a letter stating the same, + may add any additional arguments unique to them & the amended Complaint. This shall be done by 12/6/10.

Plaintiffs may oppose the original Defendants' motion on whatever date they should like, when they should provide a new letter, & time for original defendants' opposition to the new submissions, if it contains new arguments. Defendants to reply on cross-motion 2 weeks after Plaintiffs' counsel with Plaintiffs' reply in 3 weeks. Recently, Plaintiff in April, to oppose should be mindful when deciding when not

The Court has a long queue of motions + is unlikely to reach this case for some time in any event.

So Ordered
Cathy Seibel
USDJ 11/5/10

The Hon. Cathy Seibel
Page Two

Plaintiffs proposed a solution, accepted by the Court and by all Defendants: that they move to amend the complaint to add parties denied post-*McDonald*. The Court granted the motion, giving Plaintiffs until the deadline for the motion to dismiss to amend the complaint. This arrangement was confirmed in the endorsed letter extending the deadline for both amendment and the motions to dismiss.

In other words, everyone understood and agreed that the amendment would relate primarily to the post-*McDonald* argument. And that is exactly what has now occurred: Plaintiffs added three additional co-Plaintiffs who were denied licenses to carry firearms post-*McDonald* by Westchester County licensing officials. There is no other substantive amendment to the complaint: it lays out the exact same theories and arguments laid out previously.

Accordingly, the alleged problems raised by Defendants are not new. The Court has already addressed them at the September 7 hearing, and in its order. Defendants would have had a point had Plaintiffs asserted new legal theories or involved third-party defendants (perhaps licensing officials from other counties). But there is nothing in the amended complaint that should alter Defendants' substantive arguments. Plaintiffs have adhered to the Court's order, and expect Defendants – who agreed to this arrangement – to now do the same.

Although Defendants asked for this amendment by asserting their post-*McDonald* defense, and they received their amendment within the time to which they had agreed, the prejudice to Plaintiffs and counsel flowing from any alteration of the schedule would be significant. On October 5, the Attorney General's Office requested Plaintiffs' consent for an additional month to file its brief, citing a need for multiple levels of internal review. I could not agree to a full month extension for two reasons: (1) the delay would be excessive – Rule 12 ordinarily provides for a 3 week responsive period, and we had already agreed to 14 weeks; and (2) it would start our response time in the middle of an important, long-planned overseas trip that could not be rescheduled.

Notwithstanding the Attorney General's Office's previous lack of reciprocal courtesy on the summary judgment schedule, to accommodate that office, I agreed to a compromise that effectively cut our response time in half: the Attorney General's Office would serve its brief on November 5 instead of October 22, and our opposition would be extended from November 12 to the 15th. The Court subsequently adopted this modified schedule.

At no point during the conversations relating to this last modification did counsel indicate that he would want additional pages. But last week, counsel obtained permission to double the size of his brief. So we face the prospect of having agreed to half the time – to respond to double the brief, and we are already looking at having a responsive pleading served on November 5, for a case filed July 15 – 92 days versus Rule 12's 21-day standard.

The Hon. Cathy Seibel
Page Three

And now, even though we had an agreement that the amendment could be served concurrently with the motion to dismiss, given the purpose of the amendment and the fact it raises nothing new, Defendants ask that this delayed schedule is to be dispensed with indefinitely. They do not propose a new schedule. The request is dilatory and lacks any basis.

Also not well-taken is the County's assertion that it needs to be served with the amended complaint. The County has appeared in this case and counsel for the county is receiving electronic notice of all filings. Obviously the County has received the amended complaint, which asserts nothing new against the County – just that it applied the same practice and policy against the new plaintiffs, just as it applies this practice and policy against everyone. If the County would ignore the amended complaint, Plaintiffs would request entry of default.

It is hoped that the Attorney General's Office would agree to accept service and appear for the new defendants, as there is no need to place them on duplicate tracks. If the Attorney General insists on service of a summons for the new defendant licensing officers, it should not be heard to come back – for a fourth time – and ask again for a briefing modification. Without acceptance of service by the Attorney General for the new defendants, Plaintiffs cannot agree to any extension beyond Rule 12's twenty-one day responsive period.[1]

I have worked repeatedly with opposing counsel to agree on a briefing schedule for this case. Time and again, however, I am surprised by new understandings: the initial withdrawal from the scheduling agreement, the request for extension to which I responded by significantly reducing our responsive time, the doubling of the page limit, and now the desire to dispense with our previous agreement (and the Court's order) altogether. But I must maintain my calendar, and my clients deserve to have their case considered without additional, indefinite delay.

Thank you in advance for your consideration. All parties will receive a copy of this letter simultaneously via facsimile transmission.

Sincerely,

Alan Gura

cc:    Anthony J. Tomari (via fax to 212.416.6075)
       Melissa-Jean Rotini (via fax to 914.995.3132)
       Vincent Gelardi (via fax to 914.253.0909)

---

[1] I had advised counsel that his post-*McDonald* defense would likely trigger the involvement of additional defendants with no net benefit to his position.

# EXHIBIT
# 7

**SUPREME COURT OF THE STATE OF NEW YORK**



RICHARD J. DARONCO
WESTCHESTER COUNTY COURTHOUSE
111 DR. MARTIN LUTHER KING, JR, BOULEVARD
WHITE PLAINS, NEW YORK 10601
(914) 824-5403
FAX: (914) 995-8651

CHAMBERS OF
ALBERT LORENZO
JUSTICE

September 27, 2010

Mr. Eric R. Detmer



Dear Mr. Detmer:

Please be advised that I am in receipt of your application to amend your pistol permit from target shooting to full carry. At this time, I see no justification for a full carry permit. Accordingly, I have disapproved your application.

Very truly yours,

Albert Lorenzo
Acting Supreme Court Justice

AL:lg

# EXHIBIT

# 8

05-266

COUNTY COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
------------------------------------------------------------------X

In the Matter of the Application of                          DECISION

Johnnie Nance,

                    Petitioner,

For an amendment to his New York State Pistol Permit.

------------------------------------------------------------------X

Robert K. Holdman, J.

FILED
AND
ENTERED·
ON  9|10  20 10
WESTCHESTER
COUNTY CLERK

 

 

        The following papers were read upon Petitioner's application in the above

captioned proceeding:

        Johnnie Nance's Application                          1

        Department of Public Safety Report and Attachments          2

        The applicant, Johnnie Nance, has submitted an application to Westchester

County to amend his New York State Pistol License (#104518) to delete target shooting

and to add full carry. The applicant also seeks the addition of one firearm and the

deletion of one firearm to his license. The petitioner currently has a restricted license to

carry for sport target shooting issued in the County of Westchester on April 30, 2009.

The petitioner requested an amendment for a fully carry to this license because of his

desire to use his NRA Instructor Safety Certifications to promote safe gun handling at

various locations.

1

The issuance of a pistol permit for self protection has recently been held by the

United States Supreme Court to be a right protected by the Second Amendment of the

United States Constitution:

> There seems to us no doubt, on the basis of both text
> and history, that the Second Amendment conferred an
> individual right to keep and bear arms. District of
> Columbia v. Heller, 554 U.S. ____ (2008); Slip op @
> page 22.

However, in so holding the Supreme Court also recognized that the Second

Amendment should not be "read...to protect the right of citizens to carry arms for any

sort of confrontation." (Id). The individual right to bear arms is limited:

> Like most rights, the right secured by the Second Amendment is
> not unlimited. From Blackstone through the 19[th] Century cases,
> commentators and courts routinely explained that the right was
> not a right to keep and carry any weapon whatsoever in any manner
> whatsoever and for whatever purpose. [citations omitted]. For example,
> the majority of 19[th] Century courts to consider the question held that
> prohibitions on carrying concealed weapons were lawful under the
> Second Amendment or state analogues. Slip. Op. Supra at 54.

Putting aside the question of whether the Second Amendment "individual" right to

bear arms is in fact extended to the states as a fundamental right, an issue not

addressed by the Supreme Court, it is clear that even if that be the case, a regulatory

scheme would not run afoul of the Courts' holding. Id, pages 53-56 and footnote 26

(where the court set forth several examples of reasonable restrictions on the right to

keep and carry a weapon). In striking down the District of Columbia statute as "a ban

on handgun possession in the home" and thereby violative of the Second Amendment,

the Supreme Court went on to hold:

2

> The Constitution leaves the District of Columbia a variety of
> tools for combating [handgun violence], including some
> measures regulating handguns.  Id. at page 64.

Therefore, those charged with the duty to oversee handgun licensing, such as this

Court, must, in the opinion of this Court, recognize and honor the right while at the same

time recognizing the limits to the right to bear arms under the Second Amendment to

the United States Constitution.

The burden of establishing "proper cause" for the issuance of a full-carry permit

is upon the applicant to establish "a special need for self-protection distinguishable from

that of the general community or of persons engaged in the same profession." Kaplan

v. Brattan 249 A.D.2d 199 at 201, op. cit. Matter of Klenosky v. New York City Police

Department 75 A.D.2d 793, affd', 53 NY2d 685.  However, Mr. Nance fails to

demonstrate any concern for his safety and certainly did not distinguish himself from

almost any other citizen.  The Court received a report from the Westchester County

Department of Public Safety, indicating that "the necessary proper cause for the

issuance of a firearm license for the purpose of Full Carry has not been met by the

applicant."  The applicant has not provided the court with any information that he faces

any danger of any kind that would necessitate the issuance of a full carry firearm

license; or has not demonstrated a need for self-protection distinguishable from that of

the general public or of other persons similarly situated.  The Department recommends

that the applicant's amendment to his New York State Pistol License be disapproved.

Penal Law section 400.00(2)(f) requires a showing of "proper cause" prior to the

issuance of a carry-concealed permit as requested by the petitioner in this matter.

However, the petitioner failed to demonstrate "proper cause." Kachalsky v. Cacace, 65

3

A.D.3d 1045 (2nd Dept. 2009); *Hecht v. Bivona*, 11 A.D.3d 614 (2nd Dept. 2004); *Milo v. Kelly*, 211 A.D.3d 488 (1st Dept. 1995).

In sum, the applicant has not shown sufficient circumstances to distinguish his need from those of countless others, nor has he demonstrated a specific need for self protection distinguishable from that of the general community or of persons engaged in the same business or profession. Accordingly, the petitioner's application to amend his New York State Pistol License (#104519) is denied but the application to add one firearm and to delete one firearm to the license is approved.

This constitutes the decision and order of this Court.

Dated:    September 9, 2010
          White Plains, New York

                                        Hon. Robert K. Holdman, JSC

4

# EXHIBIT
# 9

05-267

COUNTY COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
-----------------------------------------------------------------X

In the Matter of the Application of          DECISION

Anna L. Marcucci-Nance,

                    Petitioner,

For an amendment to her New York State Pistol Permit.

-----------------------------------------------------------------X

Robert K. Holdman, J.

FILED
AND
ENTERED·
ON ___9|10___ 20 10
WESTCHESTER
COUNTY CLERK

        The following papers were read upon Petitioner's application in the above

captioned proceeding:

        Anna Marcucci-Nance's Application                    1

        Department of Public Safety Report and Attachments    2

        The applicant, Anna Marcucci-Nance, has submitted an application to

Westchester County to amend her New York State Pistol License (#104519) to delete

target shooting and to add full carry.   The applicant also seeks the addition of one

firearm and the deletion of one firearm to her license. The petitioner currently has a

restricted license to carry for sport target shooting issued in the County of Westchester

on April 30, 2009. The petitioner requested an amendment for a fully carry to this

license because of her desire to use her NRA Instructor Safety Certifications to promote

safe gun handling at various locations.

1

The issuance of a pistol permit for self protection has recently been held by the

United States Supreme Court to be a right protected by the Second Amendment of the

United States Constitution:

> There seems to us no doubt, on the basis of both text
> and history, that the Second Amendment conferred an
> individual right to keep and bear arms. District of
> Columbia v. Heller, 554 U.S. ____ (2008); Slip op @
> page 22.

However, in so holding the Supreme Court also recognized that the Second

Amendment should not be "read...to protect the right of citizens to carry arms for any

sort of confrontation." (Id). The individual right to bear arms is limited:

> Like most rights, the right secured by the Second Amendment is
> not unlimited. From Blackstone through the 19[th] Century cases,
> commentators and courts routinely explained that the right was
> not a right to keep and carry any weapon whatsoever in any manner
> whatsoever and for whatever purpose. [citations omitted]. For example,
> the majority of 19[th] Century courts to consider the question held that
> prohibitions on carrying concealed weapons were lawful under the
> Second Amendment or state analogues. Slip. Op. Supra at 54.

Putting aside the question of whether the Second Amendment "individual" right to

bear arms is in fact extended to the states as a fundamental right, an issue not

addressed by the Supreme Court, it is clear that even if that be the case, a regulatory

scheme would not run afoul of the Courts' holding. Id, pages 53-56 and footnote 26

(where the court set forth several examples of reasonable restrictions on the right to

keep and carry a weapon).   In striking down the District of Columbia statute as "a ban

on handgun possession in the home" and thereby violative of the Second Amendment,

the Supreme Court went on to hold:

2

> The Constitution leaves the District of Columbia a variety of
> tools for combating [handgun violence], including some
> measures regulating handguns. Id. at page 64.

Therefore, those charged with the duty to oversee handgun licensing, such as this
Court, must, in the opinion of this Court, recognize and honor the right while at the same
time recognizing the limits to the right to bear arms under the Second Amendment to
the United States Constitution.

The burden of establishing "proper cause" for the issuance of a full-carry permit
is upon the applicant to establish "a special need for self-protection distinguishable from
that of the general community or of persons engaged in the same profession." Kaplan
v. Brattan 249 A.D.2d 199 at 201, op. cit. Matter of Klenosky v. New York City Police
Department 75 A.D.2d 793, affd'. 53 NY2d 685. However, Ms. Marcucci-Nance fails to
demonstrate any concern for her safety and certainly did not distinguish herself from
almost any other citizen. The Court received a report from the Westchester County
Department of Public Safety, indicating that "the necessary proper cause for the
issuance of a firearm license for the purpose of Full Carry has not been met by the
applicant." The applicant has not provided the court with any information that she faces
any danger of any kind that would necessitate the issuance of a full carry firearm
license; or has not demonstrated a need for self-protection distinguishable from that of
the general public or of other persons similarly situated. The Department recommends
that the applicant's amendment to his New York State Pistol License be disapproved.

Penal Law section 400.00(2)(f) requires a showing of "proper cause" prior to the
issuance of a carry-concealed permit as requested by the petitioner in this matter.
However, the petitioner failed to demonstrate "proper cause." Kachalsky v. Cacace, 65

3

A.D.3d 1045 (2nd Dept. 2009); *Hecht v. Bivona*, 11 A.D.3d 614 (2nd Dept. 2004); *Milo v. Kelly*, 211 A.D.3d 488 (1st Dept. 1995).

In sum, the applicant has not shown sufficient circumstances to distinguish her need from those of countless others, nor has she demonstrated a specific need for self protection distinguishable from that of the general community or of persons engaged in the same business or profession. Accordingly, the petitioner's application to amend her New York State Pistol License (#104519) is denied but the application to add one firearm and to delete one firearm to the license is approved.

This constitutes the decision and order of this Court.

Dated:   September 9, 2010
         White Plains, New York

                                         Hon. Robert K. Holdman, JSC

## DECLARATION OF SERVICE

SUSAN L. REINHART, pursuant to 28 U.S.C. Section 1746, declares under penalty of

perjury as follows:

That on December 6, 2010, I served the within Supplemental Memorandum of Law in

Support of the State Defendants' Motion to Dismiss the First Amended Complaint, and

Declaration in Support of the Supplemental Memorandum to State Defendants' Motion to

Dismiss, by overnight mail, upon the following named person(s):

MELISSA-JEAN ROTINI, ESQ.
Assistant County Attorney, of Counsel
Westchester County Attorney's Office
Attorneys for Defendant County of Westchester
Michaelian Office Building
148 Martine Avenue, 6th Floor
White Plains, New York 10601
(914) 995-3630

VINCENT GELARDI
Gelardi & Randazzo
Attorneys for Plaintiffs
800 Westchester Avenue, Suite S-608
Rye Brook, New York 10573
(914) 251-9603

ALAN GURA, ESQ.
Gura & Possessky, PLLC
Attorneys for Plaintiff
101 N. Columbus Street, Suite 405
Alexandria, Virginia 22314
(703) 835-9085

by depositing the documents in a sealed, properly addressed UPS Next Day Air envelope, with

postage prepaid, in a UPS Box located at 120 Broadway, New York, New York 10271, and

directed to said person(s) at the addresses within the State designated by them for that purpose.

SUSAN L. REINHART

Executed on December 7, 2010