IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
WHITE PLAINS DIVISION


| | | |
|---|---|---|
| ALAN KACHALSKY, et al., | : | Case No. 10-CV-05413-CS |
| | : | |
| Plaintiffs, | : | Hon. Cathy Seibel |
| | : | |
| v. | : | |
| | : | |
| SUSAN CACACE, | : | |
| | : | |
| Defendants. | : | |
| | : | |

-----------------------------------------------------X


MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANTS' MOTIONS TO DISMISS

Alan Gura*
Candice N. Hance
Gura & Possessky,PLLC
101 N. Columbus Street, Suite 405
Alexandria, VA 22314
703.835.9085/Fax 703.997.7665
*Lead Counsel, Admitted Pro Hac Vice

Vincent Gelardi
Gelardi & Randazzo
800 Westchester Avenue, Suite S-608
Rye Brook, NY 10573
914.251.0603/Fax 914.253.0909
Local Counsel

TABLE OF CONTENTS

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.      WHERE ONE PLAINTIFF HAS STANDING, THE STANDING
        INQUIRY INTO CO-PLAINTIFFS MUST BE TERMINATED
        AS IRRELEVANT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

II.     PLAINTIFFS' CLAIMS ARE RIPE, AND PLAINTIFFS HAVE STANDING TO
        PRESENT THEM. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

        A.      Plaintiffs Cannot Be Required to Apply for Licenses as a
                Prerequisite for Challenging the Constitutionality of the
                Licensing System. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        B.      The Challenged Law Has Been Applied to Plaintiffs. . . . . . . . . . . . . . . . . 7

        C.      Plaintiffs Cannot Be Required To Engage In Futile Acts. . . . . . . . . . . . . . . 9

        D.      Plaintiffs' Access to Federal Courts Cannot Be Conditioned On
                Exhausting State Administrative Requirements. . . . . . . . . . . . . . . . . . . . . 11

        E.      Plaintiffs Have Pre-Enforcement Standing. . . . . . . . . . . . . . . . . . . . . . . . . 14

        F.      The Second Amendment Foundation Has Organizational and
                Representational Standing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

III.    PLAINTIFFS' CLAIMS ARE NOT BARRED BY RES JUDICATA. . . . . . . . . . . . . . 19

IV.     KACHALSKY'S CLAIMS ARE NOT BARRED BY THE
        *ROOKER-FELDMAN* DOCTRINE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

i

V.     THE "PROPER CAUSE" STANDARD IS SUBJECT TO A
       FACIAL CHALLENGE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

       A.     Licensing Officials May Never Act Arbitrarily and Capriciously. . . . . . . . . . . . 24

       B.     The Second Amendment Is Subject to Overbreadth Review. . . . . . . . . . . . . . . . 25

VI.    *YOUNGER* ABSTENTION IS INAPPLICABLE TO THIS LAWSUIT. . . . . . . . . . . . . . 29

       A.     Abstention is the Rare Exception – Not the Rule. . . . . . . . . . . . . . . . . . . . . . . . . 30

       B.     There Is No "Ongoing State Proceeding" Initiated By The State. . . . . . . . . . . . . 31

       C.     Requiring "Proper Cause" For Issuance Of A Handgun Carry Permit
              Is Not An Important State Interest. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36
       D.     Deference To State Proceedings For Review of Plaintiffs' Rights
              Is Inappropriate, And, In Any Event, This Remedy Need Not Be
              Exhausted, In Light of the State's Patently Unconstitutional Regulation. . . . . . . 37

       E.     *Younger* Does Not Shield Flagrant Violations.. . . . . . . . . . . . . . . . . . . . . . . . . . . 39

VII.   *PULLMAN* ABSTENTION DOES NOT APPLY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

VIII.  *BURFORD* ABSTENTION DOES NOT APPLY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

IX.    DEFENDANT WESTCHESTER COUNTY PROVIDED
       RECOMMENDATIONS THAT FORESEEABLY LED TO DEPRIVATION
       OF PLAINTIFFS' SECOND AMENDMENT RIGHTS, RESULTING IN
       LIABILITY UNDER 42 U.S.C. § 1983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

X.     THE EQUAL PROTECTION CLAIM PROVIDES THE DEFENSE
       SUFFICIENT NOTICE... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

ii

TABLE OF AUTHORITIES

Cases

*Abbott Labs*. v. *Gardner*,
    387 U.S. 136 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Ankenbrandt* v. *Richards*,
    504 U.S. 689 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Ashcroft* v. *ACLU*,
    542 U.S. 656 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Bach* v. *Pataki*, 408 F.3d 75
    (2nd Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Back* v. *Hastings on Hudson Union Free Sch. Dist.*,
    365 F.3d 107 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

*Baggett* v. *Bullitt*,
    377 U.S. 360 (1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40, 41

*Bd. of Trs. of State Univ. of N.Y.* v. *Fox*,
    492 U.S. 469 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

*Bethpage Lutheran Serv., Inc.* v. *Weicker*,
    965 F.2d 1239 (2d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31, 33, 41, 42

*Bray v. New York Life Ins.*,
    851 F.2d 60 (2d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Bronson* v. *Swensen*,
    500 F.3d 1099 (10th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Brown* v. *Day*,
    555 F.3d 882 (10th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Burford* v. *Sun Oil Co.*,
    319 U.S. 315 (1943) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

*Charette* v. *Town of Oyster Bay*,
   159 F.3d 749 (2d Cir. 1998).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*City of Houston* v. *Hill*,
   482 U.S. 451 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*City of Lakewood* v. *Plain Dealer Publishing Co.*,
   486 U.S. 750 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 11, 25

*City of New York* v. *Milhelm Attea & Bros., Inc.*,
   550 F. Supp. 2d 332 (E.D.N.Y. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

*Clark* v. *Jeter*,
   486 U.S. 456 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Coastal Distrib., LLC* v. *Town of Babylon*,
   2005 U.S. Dist. LEXIS 40795 (E.D.N.Y. July 15, 2005). . . . . . . . . . . . . . . . . . . 34

*Cohens* v. *Virginia*,
   19 U.S. (6 Wheat.) 264 (1821).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Colon* v. *Coughlin*,
   58 F.3d 865 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Colorado River Water Conservation Dist.* v. *United States*,
   424 U.S. 800 (1976).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 42

*Cooper* v. *Bombela*,
   34 F. Supp. 2d 693 (N.D. Ill. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35, 39

*Crawford* v. *Marion County Election Bd.*,
   553 U.S. 181 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Cullen* v. *Fliegner*,
   18 F.3d 96 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36, 38, 39

*Damico* v. *California*,
   389 U.S. 416 (1967).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

*Diamond "D" Constr. Corp.* v. *McGowan*,
   282 F.3d 191 (2d Cir. 2002).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 32

iv

*District of Columbia* v. *Heller*,
   128 S. Ct. 2783 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

*Doe* v. *Bolton*,
   410 U.S. 179 (1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Doe* v. *Connecticut*,
   75 F.3d 81 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Doe* v. *Duling*,
   782 F.2d 1202 (4th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Doran* v. *Salem Inn, Inc.*,
   422 U.S. 922 (1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Emerson* v. *City of New York*,
   2010 WL 2910661 (S.D.N.Y. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Epperson* v. *Arkansas*,
   393 U.S. 97 (1968). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Exxon Mobil Corp.* v. *Saudi Basic Indus. Corp.*,
   544 U.S. 280 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Finnerty* v. *Cowen*,
   508 F.2d 979 (2d Cir. 1974). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Forty One News, Inc.* v. *County of Lake*,
   491 F.3d 662 (7th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Gay Men's Health Crisis v. Sullivan*,
   733 F. Supp. 619 (S.D.N.Y. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Giakoumelos* v. *Coughlin*,
   88 F.3d 56 (2d Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Golden* v. *Zwickler*,
   394 U.S. 103 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Gottfried* v. *Med. Planning Servs.*,
   142 F.3d 326 (6th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

v

*Green* v. *Tucson*,
    255 F.3d 1086 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Grid Radio* v. *FCC*,
    278 F.3d 1314 (D.C. Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Gutierrez-Rodriguez* v. *Cartagena*,
    882 F.2d 553 (1st Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

*Hachamovitch* v. *Debuono*,
    159 F.3d 687 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19-22

*Havens Realty Corp.* v. *Coleman*,
    455 U.S. 363 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Hawaii Housing Authority* v. *Midkiff*,
    467 U.S. 229 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Higazy* v. *Templeton*,
    505 F.3d 161 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

*Hoblock* v. *Albany County Bd. of Elections*,
    422 F.3d 77 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

*Houghton* v. *Shafer*,
    392 U.S. 639 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Huffman* v. *Pursue, Ltd.*,
    420 U.S. 592 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*In re Slayton*,
    409 B.R. 897 (Bankr. N.D. Ill. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*International Union, United Auto., etc.* v. *Brock*,
    477 U.S. 274 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Int'l Brotherhood of Teamsters* v. *United States*,
    431 U.S. 324 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Jones* v. *Opelika*,
    316 U.S. 584 (1942) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Joseph* v. *HDMJ Rest., Inc.*,
    685 F. Supp. 2d 312 (E.D.N.Y. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Karamoko v. N.Y. City Hous. Auth.*,
    170 F. Supp. 2d 372 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

*Kercado-Melendez* v. *Aponte-Roque*,
    829 F.2d 255 (1st Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Kerman* v. *City of New York*,
    374 F.3d 93 (2d Cir. 2004).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44, 45

*Kirschner* v. *Klemons*,
    225 F.3d 227 (2d Cir. 2000).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Kusper* v. *Pontikes*,
    414 U.S. 51 (1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*Laird* v. *Tatum*,
    408 U.S. 1 (1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Laurel Sand & Gravel, Inc.* v. *Wilson*,
    519 F.3d 156 (4th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Lemon* v. *Tucker*,
    664 F. Supp. 1143 (N.D. Ill. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Lerman* v. *Bd.of Elections*,
    232 F.3d 135 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Liberty Mut. Ins. Co.* v. *Hurlbut*,
    585 F.3d 639 (2d Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Lovell* v. *Griffin*,
    303 U.S. 444 (1938). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Lujan* v. *Defenders of Wildlife*,
    504 U.S. 555 (1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 16

*Malley* v. *Briggs*,
    475 U.S. 335 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44, 45

*Marbury* v. *Madison*,
    5 U.S. (1 Cranch.) 137 (1803). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Martinez* v. *Martinez*,
    2010 U.S. Dist. LEXIS 38109 (D.N.M. Mar. 30, 2010). . . . . . . . . . . . . . . . . . . . . . . 32

*Maryland State Conf. of NAACP Branches* v. *Maryland Dep't*
    *of State Police*, 72 F. Supp. 2d 560 (D. Md. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Matter of Council of City of N.Y.* v. *Bloomberg*,
    6 N.Y.3d 380 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*McDonald* v. *City of Chicago*,
    130 S. Ct. 3020 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

*McKithen* v. *Brown*,
    626 F.3d 143 (2d Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*McNeese* v. *Board of Education*,
    373 U.S. 668 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

*McRedmond* v. *Wilson*,
    533 F.2d 757 (2d Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*Medimmune, Inc.* v. *Genentech, Inc.*,
    549 U.S. 118 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Middlesex County Ethics Comm.* v. *Garden State Bar Ass'n*,
    457 U.S. 423 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 34, 37

*Mobil Oil Co.* v. *Attorney Gen. of Va.*,
    940 F.2d 73 (4th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Monroe* v. *Pape*,
    365 U.S. 167 (1961). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14, 44

*Moore* v. *Sims*,
    442 U.S. 415 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31, 37, 39

*Moses H. Cone Mem'l Hosp.* v. *Mercury Constr. Corp.*,
    460 U.S. 1 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Nader* v. *Keith*,
    385 F.3d 729 (7th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*New Hampshire Hemp Council, Inc.* v. *Marshall*,
    203 F.3d 1 (1st Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*New Orleans Public Serv.* v. *Council of New Orleans*,
    491 U.S. 350 (1988).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 37, 39, 42

*Norfolk & W. Ry.* v. *Pub. Util. Comm'n of Ohio*,
    926 F.2d 567 (6th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Ohio Civil Rights Comm'n* v. *Dayton Christian Schs., Inc.*,
    477 U.S. 619 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31, 38

*Ord* v. *District of Columbia*,
    587 F.3d 1136 (D.C. Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*O'Neill* v. *City of Philadelphia*,
    32 F.3d 785 (3d Cir. 1994).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Parker* v. *District of Columbia*,
    478 F.3d 370 (D.C. Cir. 2007).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 26, 27

*Patsy v. Florida Board of Regents*,
    457 U.S. 496 (1982).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14, 38

*Pennzoil Co.* v. *Texaco, Inc.*,
    481 U.S. 1 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Planned Parenthood of Southeastern Pa.* v. *Casey*,
    505 U.S. 833 (1992).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Prayze FM* v. *FCC*,
    214 F.3d 245 (2nd Cir. 2000).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*R.R. Comm'n of Tex.* v. *Pullman Co.*,
    312 U.S. 496 (1941).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*Rivera-Powell* v. *New York City Bd. of Elections*,
    470 F.3d 458 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Schlagler* v. *Phillips*,
 166 F.3d 439 (2d Cir. 1999).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*Seegars* v. *Gonzales*,
 413 F.3d 1 (D.C. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Shuttlesworth* v. *City of Birmingham*,
 394 U.S. 147 (1969).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Simon & Schuster, Inc.* v. *N.Y. State Crime Victims Bd.*,
 502 U.S. 105 (1991).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Spargo* v. *N.Y. State Comm'n on Judicial Conduct*,
 351 F.3d 65 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 32, 37

*Springfield Branch, NAACP* v. *City of Springfield*,
 139 F. Supp. 2d 990 (C.D. Ill. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Steffel* v. *Thompson*,
 415 U.S. 452 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

*Sullivan* v. *City of Pittsburgh*,
 811 F.2d 171 (3d Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Swisher* v. *Brady*,
 438 U.S. 204 (1978).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Telco Commc'ns, Inc.* v. *Carbaugh*,
 885 F.2d 1225 (4th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Thomas* v. *Tex. State Bd. of Med. Exam'rs*,
 807 F.2d 453 (5th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Thornburgh* v. *Am. College of Obstetricians*,
 476 U.S. 747 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*Time Warner Cable* v. *Doyle*,
 66 F.3d 867 (7th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Townes* v. *City of New York*,
 176 F.3d 138 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

x

*United Food & Commercial Workers Union Local*
    *751* v. *Brown Group, Inc.*, 517 U.S. 544 (1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States* v. *Baugh*,
    187 F.3d 1037 (9th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States* v. *Chester*, __ F.3d __
    2010 U.S. App. LEXIS 26508 (4th Cir. Dec. 30, 2010) . . . . . . . . . . . . . . . . . . . 25, 26, 28

*United States* v. *Engstrum*,
    609 F. Supp. 2d 1227 (D. Utah 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*United States* v. *Marzzarella*,
    614 F.3d 85 (3d Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*United States* v. *Salerno*,
    481 U.S. 739 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25, 29

*United States* v. *Williams*,
    616 F.3d 685 (7th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*United States* v. *Yancey*,
    621 F.3d 681 (7th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Village of Arlington Heights* v. *Metro. Hous. Dev. Corp.*,
    429 U.S. 252 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Virginia* v. *American Booksellers Ass'n*,
    484 U.S. 383 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Warner* v. *Orange County Dep't of Probation*,
    115 F.3d 1068 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44, 45

*Warth* v. *Seldin*,
    422 U.S. 490 (1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

*Watson* v. *Buck*,
    313 U.S. 387 (1941). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*Watt* v. *Energy Action Educ. Found.*,
    454 U.S. 151 (1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

xi

*Weinberger* v. *Salfi*,
    422 U.S. 749 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Wilbur* v. *Harris*,
    53 F.3d 542 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Wisconsin* v. *Constantineau*,
    400 U.S. 433 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*Woodling* v. *Garrett Corp.*,
    813 F.2d 543 (2d Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

*Woollard* v. *Sheridan*, ___ F. Supp. 2d ___,
    2010 U.S. Dist. LEXIS 137031 (D. Md. Dec. 29, 2010) . . . . . . . . . . 4, 24, 29, 33, 34, 43

*Wright* v. *Roanoke Redev't & Hous. Auth.*,
    479 U.S. 418 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14, 38

*Younger* v. *Harris*,
    401 U.S. 37 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 30, 37, 39

*Zahrey* v. *Coffey*,
    221 F.3d 342 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

*Zwickler* v. *Koota*,
    389 U.S. 241 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41


Statutes and Rules

28 U.S.C. § 2201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. Civ. P. 8(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

N.Y. Penal Law § 400.00(2)(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 11-13, 20, 29

Other Authorities

Erwin Chemerinsky, *Federal Jurisdiction* 856 (5th ed. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Restatement (Second) of Torts § 453, Comment b (1965). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS

PRELIMINARY STATEMENT

As the two motions to dismiss are largely duplicative, this brief responds to both

motions.[1] The arguments raised by Defendants fall into two categories. First, Defendants attack

the complaint's mechanical or procedural aspects, raising a veritable kitchen-sink of frequently

contradictory defenses ranging from ripeness to *Younger* abstention. Second, Defendants assert

that the complaint lacks a substantive core, in that according to Defendants, there is no

constitutional right to publicly carry a gun for self-defense.

With respect to the substantive arguments regarding the Second Amendment's meaning,

Plaintiffs can offer no more here than they do in support of their motion for summary judgment.

Again, as there is no need to burden the Court with three sets of pleadings on this issue, Plaintiffs

rest on their extensive summary judgment briefing for the proposition that the Second

Amendment does, in fact, secure a right to carry firearms for self-defense, and that Defendants

are violating that right.

Of course, regardless of how interesting the substantive claims in this case might be,

mechanically the litigation is an ordinary claim for declaratory and injunctive relief under 42

U.S.C. § 1983. And while the Second Amendment field may be in its infancy, the rules

governing Section 1983 are familiar and frequently, as is the case here, unambiguous.

Accordingly, there is nothing in Defendants' non-substantive defenses that is not firmly

rejected by precedent. Federal courts are tasked with the duty to hear cases or controversies

arising under the Constitution and laws of the United States. This dispute is a typical, justiciable

---

[1]This brief is still well-within the allotted expanded page limit set by the Court's October
29, 2010 order, as well as the ordinary combined page limit for briefs opposing each motion.

controversy, fully ripe and not remotely subject to abstention. Defendants' motions must be denied.

## STATEMENT OF FACTS

The facts are simple, and largely undisputed.[2] Although a motion to dismiss must assume the facts as pled in the Complaint, both sets of Defendants have gone beyond the pleadings to invoke the relevant administrative records, as have Plaintiffs in support of their motion for summary judgment. There being no apparent relevant facts outside the pleadings and the administrative records, and again in the interest of economy, Plaintiffs incorporate as though fully set forth herein their statement of facts in support of their motion for summary judgment.

## SUMMARY OF ARGUMENT

The volume of arguments leveled by Defendants fails to adduce even one serious question about the First Amended Complaint's validity. Allegedly: Any constitutional challenge to a licensing scheme is both too early, if no one has applied for a license or has failed to exhaust administrative remedies; or too late, if the application was denied and the issue thus terminated, or at least subject to res judicata and abstention. An enactment depriving the population at large of fundamental rights is acceptable so long as at least one person in the state has forfeited his rights. Civil rights organizations generally lack standing on behalf of their members, and to remedy their own injuries, and state actors can participate as much as they would like in an unconstitutional decision-making process, but are absolved of Section 1983 liability so long as they are not the ultimate actors in the process. Complaints by individuals of being classified

---

[2]Plaintiffs disagree with the individual Defendants' *interpretation* of the First Amended Complaint as not describing the manner in which Defendants violate the rights of SAF members.

2

arbitrarily do not trigger equal protection concerns. And state courts, not federal courts, are primarily tasked with reviewing the federal constitutionality of state laws.

Each of these claims is flatly wrong. Plaintiffs are *not* required to commit futile acts to gain standing, nor must Plaintiffs apply under a licensing system in order to challenge its constitutionality. A permit denial is an Article III injury-in-fact. Moreover, individuals refraining from conduct arguably affected with a constitutional interest because they fear prosecution have pre-enforcement standing under Article III, as recognized and effected by the Declaratory Judgment Act. And once a person is denied permission to exercise a right, he or she may seek relief without any further entanglement with the state system that has denied her rights—civil rights plaintiffs are *never* required to exhaust state administrative or judicial proceedings as a prerequisite to maintaining a Section 1983 action.

A state administrative decision has no preclusive effect against a federal court's power to enforce the Constitution, nor may federal jurisdiction be refused absent some particular state interest. Laws infringing upon fundamental rights are subject to overbreadth review. The standing of civil rights organizations to vindicate their rights and those of their members and supporters is well-established, as is the Section 1983 liability of individuals who proximately cause civil rights violations by aiding and abetting an unconstitutional decision. And classifying individuals arbitrarily with respect to exercise of a fundamental right is the prototypical Equal Protection violation.

ARGUMENT

I.    WHERE ONE PLAINTIFF HAS STANDING, THE STANDING INQUIRY INTO
      CO-PLAINTIFFS MUST BE TERMINATED AS IRRELEVANT.

The six plaintiffs in this case—five individuals and one organization—all present

somewhat different factual circumstances, and consequently, each attract a somewhat different

set of defenses. As the Court evaluates and sorts through the various defenses, one overarching

rule should be observed, which could greatly simplify matters: "In cases where, as here, plaintiffs

seek injunctive and declaratory relief, so long as 'at least one individual plaintiff . . . has

demonstrated standing,' a court 'need not consider whether the other individual and corporate

plaintiffs have standing to maintain the suit.'" *Woollard* v. *Sheridan*, ___ F. Supp. 2d __, 2010

U.S. Dist. LEXIS 137031 at *2 n.1 (D. Md. Dec. 29, 2010) (citing *Village of Arlington Heights*

v. *Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264 & n.9 (1977) and *Watt* v. *Energy Action Educ.*

*Found.*, 454 U.S. 151, 160 (1981)) (other citations omitted)); *Gay Men's Health Crisis v.*

*Sullivan*, 733 F. Supp. 619, 631 (S.D.N.Y. 1989). Plaintiffs demonstrate below that each of them

has standing to present a ripe, justiciable, and unavoidable claim before this Court. The Court

must terminate the standing inquiry should it find that even one Plaintiff has a valid claim.

II.   PLAINTIFFS' CLAIMS ARE RIPE, AND PLAINTIFFS HAVE STANDING TO
      PRESENT THEM.

The three familiar elements of standing are injury-in-fact, causation by the defendants,

and redressability. *Lujan* v. *Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Defendants do

not suggest that their denials of Plaintiffs' applications have not impacted Plaintiffs' behavior, or

that this Court is powerless to address the situation. The standing dispute is limited to the first

*Lujan* element, injury-in-fact.

4

A.    Plaintiffs Cannot Be Required to Apply for Licenses as a Prerequisite for
       Challenging the Constitutionality of the Licensing System.

The essence of Plaintiffs' claim is that the licensing standards employed by Defendants

are unconstitutional, in that they vest unbridled discretion to license exercise of a fundamental

right. Regardless of whether the Court agrees, the question on the motion to dismiss is whether

Plaintiffs must have applied under the licensing standard they challenge.

Or, as Defendants would have it, applied multiple times, as it is undisputed that each

Plaintiff has, in fact, applied for a license. The claim that Kachalsky and Nikolov's applications

might have turned out differently in a post-*McDonald*[3] environment is frivolous, as Defendants

denied the post-*McDonald* applications of Plaintiffs Detmer, Nance, and Marcucci-Nance under

the identical standards, even citing the denial of Kachalsky's application as precedent.

But whether Plaintiffs applied or not, or applied enough times, or at the right time, is all

quite irrelevant—because they cannot be required to apply at all. "[O]ne need not apply for a

benefit conditioned by a facially unconstitutional law." *United States* v. *Baugh*, 187 F.3d 1037,

1041 (9th Cir. 1999) (citations omitted). "The Constitution can hardly be thought to deny to one

subjected to the restraints of [a licensing law] the right to attack its constitutionality, because he

has not yielded to its demands." *City of Lakewood* v. *Plain Dealer Publishing Co.*, 486 U.S. 750,

756 (1988) (*quoting Jones* v. *Opelika*, 316 U.S. 584, 602 (1942) (Stone, C. J., dissenting),

adopted *per curiam* on rehearing, 319 U.S. 103, 104 (1943)). "As the ordinance [providing for

unbridled licensing discretion] is void on its face, it was not necessary for appellant to seek a

permit under it." *Id.* (quoting *Lovell* v. *Griffin*, 303 U.S. 444, 452-53 (1938)); *see also*

---

[3]*McDonald* v. *City of Chicago*, 130 S. Ct. 3020 (2010).

5

*Shuttlesworth* v. *City of Birmingham*, 394 U.S. 147, 151 (1969); *Charette* v. *Town of Oyster Bay*, 159 F.3d 749, 757 (2d Cir. 1998).

Plaintiffs are only required to submit to a licensing scheme prior to challenging its constitutionality when there is no facial defect in the law, and the law's application is uncertain. Rejecting an exhaustion requirement in a constitutional challenge, the Supreme Court explained an agency must be allowed to "correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review." *Weinberger* v. *Salfi*, 422 U.S. 749, 765 (1975) (citation omitted). But when "the only issue is the constitutionality of a statutory requirement, a matter which is beyond [regulatory] jurisdiction to determine," and there are no other issues, submission to administrative process is not required. *Id.* "[W]e agree with other recent opinions dispensing with the exhaustion requirement in situations where the very administrative procedure under attack is the one which the agency says must be exhausted." *Finnerty* v. *Cowen*, 508 F.2d 979, 982-83 (2d Cir. 1974).[4]

Plaintiffs are challenging the constitutionality of the very administrative system Defendants claim must be exhausted, alleging in no uncertain terms that the "proper cause" requirement of N.Y. Penal Law § 400.00(2)(f) is constitutionally defective on its face. Defendants' speculation that Plaintiffs might obtain a permit under the standard is not credible, considering Plaintiffs have already been rejected and the standard has not changed. But it is also quite beside the point, given the nature of Plaintiffs' main argument. Thus, in this case, there is

---

[4]"Exhaustion" as used in this sense relates to a Plaintiff's submission to the challenged regulatory scheme for prudential reasons, as opposed to reasons of comity and deference to a sovereign state process. The latter form of exhaustion, also demanded by Defendants, is discussed in the next section.

no way to resolve the standing question without addressing the issue of the statute's facial invalidity. Resolving that question in Plaintiffs' favor inherently terminates the standing inquiry.

B.      The Challenged Law Has Been Applied to Plaintiffs.

Even if Plaintiffs were required to submit to the administrative scheme they challenge, one fact stands beyond dispute: each Plaintiff applied for a permit, and was rejected.

That, ultimately, is the beginning and end of the matter. It is a well-established tenet of Article III standing that an individual suffers justiciable injury when the government administratively denies his or her permission to engage in some desired conduct. An administrative denial is not a mere threat of hypothetical criminal enforcement in the future; rather, it is an injury-in-fact that currently restrains the desired actions of the denied party. When the government says "no," a justiciable controversy exists.

The proposition is obvious, but Plaintiffs will supply the two most relevant examples of this principle in action: *District of Columbia* v. *Heller*, 128 S. Ct. 2783 (2008) and *McDonald*. The *Heller* case was brought by six plaintiffs, one of whom—Heller—had been denied an application to register his handgun. The D.C. Circuit found five of the six plaintiffs lacked standing because it utilizes a unique pre-enforcement standing doctrine requiring an imminent prosecutorial threat, a requirement that it acknowledged contradicts Supreme Court precedent. *Parker* v. *District of Columbia*, 478 F.3d 370, 374-75 (D.C. Cir. 2007), *aff'd sub nom Heller*.[5] Nonetheless,

_____

[5]This unique imminent threat requirement continues to be controversial within the D.C. Circuit, as judges continue to point out that it contradicts Supreme Court precedent. *See, e.g. Ord* v. *District of Columbia*, 587 F.3d 1136, 1146-53 (D.C. Cir. 2009) (Brown, J., dissenting in part); *Seegars* v. *Gonzales*, 413 F.3d 1, 2 (D.C. Cir. 2005) (Williams, J.); *id.* (Sentelle, J., dissenting).

> appellant Heller has applied for and been denied a registration certificate to own a handgun . . . The denial of the gun license is significant; it constitutes an injury . . . This is not a new proposition. We have consistently treated a license or permit denial pursuant to a state or federal administrative scheme as an Article III injury . . . . Heller has invoked his rights under the Second Amendment to challenge the statutory classifications used to bar his ownership of a handgun under D.C. law, and the formal process of application and denial, however routine, makes the injury to Heller's alleged constitutional interest concrete and particular. He is not asserting that his injury is only a threatened prosecution, nor is he claiming only a general right to handgun ownership; he is asserting a right to a registration certificate, the denial of which is his distinct injury.

*Parker*, 478 F.3d at 376 (citation omitted). Judge Henderson dissented from the panel's interpretation of the Second Amendment, but acknowledged Heller had standing to challenge the handgun ban based on the permit denial. *Parker*, 478 F.3d at 402 n.2 (Henderson, J., dissenting). Subsequently, in *McDonald*, the four individual Plaintiffs each applied for, and were denied, handgun registration permits as a basis of challenging that city's handgun ban. The Supreme Court never questioned standing in either case.

Notwithstanding the actual denial of permit applications, Defendants insist that the injuries here are speculative. Reliance on *Golden* v. *Zwickler*, 394 U.S. 103 (1969) for this proposition is inapposite. In *Golden*, the inability to distribute election literature about a politician was not an injury-in-fact because it "was neither real nor immediate" that the candidate would be involved in another campaign. However, in that case the ability to exercise the right only occurred at a particular moment in time—during the candidate's run for office. Here, Plaintiffs have the right generally, at all times, to carry handguns for self-defense, subject to constitutionally sound time, place, or manner restrictions.

Defendants erroneously assume that the *past occurrence* of one of more injurious events necessarily precludes the existence of a *current* case or controversy. But the injury resulting from

8

an administrative denial does not simply vanish from existence once the ink has dried on the stamped disapproval. To the contrary, the "proper cause" standard that has already thwarted Plaintiffs' license applications continues to do so today. If standing is denied on the theory that Plaintiffs' injuries from being denied licenses are now in the past, then Article III standing would likewise be denied in any of the administrative cases routinely heard in this Court, and the entire body of federal administrative law is unconstitutional.

Indeed, on Defendants' view, the Supreme Court should never have reached the merits in *Marbury* v. *Madison*, 5 U.S. (1 Cranch.) 137 (1803), because Madison's refusal to deliver Marbury's judicial commission was a completed event that occurred in the past, regardless of how aggrieved Marbury might have been in bringing the action.

Defendants' "nothing happened" theory is, of course, incompatible with their res judicata and *Rooker-Feldman* theories. If Plaintiffs are only speculating that they will have their licenses denied, how can the matter have already been heard and determined? Of course something did happen—Plaintiffs applied for licenses, and were turned down.

Defendants may (erroneously) believe that Plaintiffs belong in state court to obtain federal constitutional review of their application denials, but for a *standing* inquiry, the question is whether a license denial is an injury-in-fact under Article III. Plainly, it is.

C.      Plaintiffs Cannot Be Required To Engage In Futile Acts.

Defendants' argument—that Plaintiffs should re-submit to a futile process, in the hopes of getting relief through *state* administrative and judicial procedures—lumps together two errors. This section addresses the first; section II.D, immediately below, addresses the latter.

A well-established corollary to the basic rule that Article III standing arises upon some negative governmental action is the futile act doctrine: if circumstances make clear that an administrative application is hopeless, a plaintiff need not go through the futile ritualistic act of submitting paperwork. *See, e.g. Int'l Brotherhood of Teamsters* v. *United States*, 431 U.S. 324, 365-66 (1977) (minority job applicants need not test a "whites only" sign before filing a Title VII claim); *Houghton* v. *Shafer*, 392 U.S. 639, 640 (1968) (per curiam) (inmate need not file hopeless administrative appeal to sustain a facial challenge); *see also Grid Radio* v. *FCC*, 278 F.3d 1314 (D.C. Cir. 2002); *Prayze FM* v. *FCC*, 214 F.3d 245, 251 (2nd Cir. 2000).

On a motion to dismiss, the Court must accept as true Plaintiffs' allegation that they "cannot meet [the 'proper cause'] standard as it is applied by the defendants." First Am. Complaint, ¶ 25. Given their conduct, Defendants can hardly disagree.

The Second Circuit's decision in *Bach* v. *Pataki*, 408 F.3d 75 (2nd Cir. 2005) is thus controlling. In *Bach*, the plaintiff challenged that state's prohibition on the issuance of firearms carry permits to those who neither permanently reside nor work in the state. Because the prohibition clearly applied to the plaintiff, he did not bother applying for a firearms permit. Both the District Court and the Second Circuit rejected a standing challenge:

> The State Police informed Bach that he was statutorily ineligible for a carry license. Bach had nothing to gain thereafter by completing and filing an application . . . . Imposing a filing requirement would force Bach to complete an application for which he is statutorily ineligible and to file it with an officer without authority to review it. We will not require such a futile gesture as a prerequisite for adjudication in federal court.

*Id*. at 82-83 (footnotes, citations and internal quotation marks omitted).

Likewise, none of the Plaintiffs can meet the "proper cause" standard because none of them can point to any special danger that they face separate and apart from the general public.

10

Defendants' conclusions to that effect are correct. Plaintiffs agree that they do not satisfy the standard, which has not changed since *McDonald*. There is absolutely no reason to suppose that the Defendants, who insist that there is no right to carry a gun and have refused to alter their conduct post-*McDonald*, will suddenly change their mind. Indeed, a presumption that licensing officials "will act in good faith and adhere to standards absent from the ordinance's face . . . is the very presumption that the doctrine forbidding unbridled discretion disallows." *City of Lakewood*, 486 U.S. at 770. And there is no question as to how the Defendants apply the "proper cause" standard.

The ultimate proof of Plaintiffs' inability to qualify under Defendants' standards are Defendants' permit denials. The only speculation here is *Defendants'* speculation that the New York Court of Appeals might reject their view of the Second Amendment. Defendants do not suggest that *they* would treat successive applications any differently. Any additional applications would thus be utterly futile, and add nothing useful to the stack of applications already denied.

  D.  Plaintiffs' Access to Federal Courts Cannot Be Conditioned On
     Exhausting State Administrative Requirements.

On their supplemental briefing, Defendants concede that "the law does not require that a plaintiff exhaust state remedies," yet press on with their claim that "as a matter of federalism and comity, and because the interpretation of a challenged state statute is ordinarily best made by state courts," Plaintiffs should have been required to exhaust their state administrative and judicial remedies. Individual Def. Supp. Br. at 9-10. At some length, Defendants' initial briefing argues repeatedly that the case is unripe because no state judicial interpretation of Penal Law § 400.00(2)(f) was obtained post-*McDonald*.

11

The argument fails. It is simply beyond dispute that Plaintiffs cannot be required to exhaust their state remedies prior to initiating a lawsuit under Section 1983. *See Patsy v. Florida Board of Regents*, 457 U.S. 496 (1982); *Wilbur* v. *Harris*, 53 F.3d 542, 544 (2d Cir. 1995). "[T]he existence of a state administrative remedy does not ordinarily foreclose resort to § 1983." *Wright* v. *Roanoke Redev't & Hous. Auth.*, 479 U.S. 418, 427-28 (1987).

"When federal claims are premised on 42 U. S. C. § 1983 and 28 U. S. C. § 1343(3) -- as they are here -- we have not required exhaustion of state judicial or administrative remedies, recognizing the paramount role Congress has assigned to the federal courts to protect constitutional rights." *Steffel* v. *Thompson*, 415 U.S. 452, 472-73 (1974) (citing *McNeese* v. *Board of Education*, 373 U.S. 668 (1963) and *Monroe* v. *Pape*, 365 U.S. 167 (1961)); *see also Damico* v. *California*, 389 U.S. 416, 417 (1967).

It makes absolutely no difference whether the state courts would entertain a constitutional challenge to Section 400.00(2)(f)—federal civil rights cases belong in federal court. And the "proper cause" standard of Penal Law § 400.00(2)(f) has been conclusively defined by New York's courts. The operation of that standard, as faithfully applied by Defendants, has absolutely nothing to do with the constitutional issues in *McDonald*. While *McDonald* clarifies that Section 400.00(2)(f) is unconstitutional, *McDonald* does not alter the provision's requirements, or even speak to the meaning of "proper cause." Defendants' argument that New York's courts must be allowed to pass, in the first instance, on Section 400.00(2)(f)'s federal constitutionality is not an argument for allowing state officials to narrowly construe some ambiguous regulatory requirement. It is a direct challenge to the primacy of this Court to review the constitutionality of state laws under Section 1983.

12

No matter how many times Defendants assert that the "proper cause" standard is vague and poorly defined (an argument that does not aid them on the merits), there is nothing mysterious about how they define it. The meaning of Section 400.00(2)(f) is clear: individuals wishing to carry guns must demonstrate "proper cause" to do so, meaning, they must "demonstrate a need for self protection distinguishable from that of the general public," Exh. A, "a special need for self-protection ," Exh. B, "an exceptional need for self protection ," Exh. C, or show a particular "danger . . . that would necessitate" issuance of the license. Exh. F, H.[6] *McDonald* did not repeal or alter the language of Section 400.00(2)(f), which continues to be applied, as written and interpreted, uninterrupted.

Defendants argue nothing less than that Section 1983 is a dead letter because federal constitutional law is evolving. But in that sense, there is nothing at all unusual about *McDonald*: the Supreme Court is constantly issuing constitutional rulings impacting the validity of state laws. But it has never been held anywhere that the Supreme Court's evolution of constitutional doctrine is a reason to mandate state judicial exhaustion in Section 1983 cases. Of course, *McDonald* itself was a Section 1983 case arising from the denial of a gun license, brought in *federal* court. It would have been equally difficult to claim that *McDonald* should have been dismissed from federal court, because Otis McDonald's handgun registration permit denial should be have been appealed administratively to the Illinois state courts so they might have the first opportunity to evaluate Chicago's registration system under *Heller*.

The ripeness arguments are yet more incredible given Defendants' claims that Plaintiffs' action is barred by res judicata and *Rooker-Feldman* abstention. Defendants cannot have it both

---

[6]Of course, application of the standard is inherently subjective.

13

ways, telling applicants who have not pursued administrative remedies that state courts must first pass on their claims as a matter of ripeness, then take the position that the very filing of an applications bars federal review because state courts may provide an exclusive forum for the hearing of *federal* constitutional claims.

In any event, factually, this is an exceedingly simple case: Plaintiffs applied for a license. Plaintiffs' applications were denied. One Plaintiff exhausted state remedies, the others have not. Plaintiffs challenge the constitutionality of the standard applied to them, a standard that Defendants continue to enforce.  As an uninterrupted and unequivocal line of Supreme Court decisions – from *Monroe*, to *McNeese*, to *Damico*, to *Steffel*, to *Patsy*, and lately *Wright* make very clear, there is simply no obligation to litigate the issue in state court.

If Plaintiffs were required to test whether the challenged law interferes with their civil rights, they now have their answer, and under Section 1983, they are now absolutely entitled to seek redress in this Court—not state court.

E.     Plaintiffs Have Pre-Enforcement Standing.

Plaintiffs "would carry functional handguns in public for self-defense, but refrain from doing so because they fear arrest, prosecution, fine, and imprisonment for lack of a license to carry a handgun." First Am. Complaint, ¶ 23. In other words, the constitutional injury is not merely the Defendants' refusal to issue Plaintiffs a permit, or the maintenance of a policy for issuance that Plaintiffs cannot satisfy. First Am. Complaint, ¶ 25. Plaintiffs are injured because they are forced to refrain from engaging in conduct they reasonably believe to be constitutionally-protected. They have "an actual and well founded fear that the law will be enforced against them." *Virginia* v. *American Booksellers Ass'n*, 484 U.S. 383, 393 (1988).

14

Governmental actors create an actual case or controversy whenever their laws or policies cause reasonable people to forego behavior, their right to engage in which a competent court has the power to secure.

> [W]here threatened action by government is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat—for example, the constitutionality of a law threatened to be enforced. *The plaintiff's own action (or inaction) in failing to violate the law eliminates the imminent threat of prosecution, but nonetheless does not eliminate Article III jurisdiction*

*Medimmune, Inc.* v. *Genentech, Inc.*, 549 U.S. 118, 129 (2007) (emphasis added).

In *Medimmune*, the Supreme Court reviewed its history of cases affirming the constitutionality of pre-enforcement standing, explaining, "[i]n each of these cases, the plaintiff had eliminated the imminent threat of harm by simply not doing what he claimed the right to do . . . That did not preclude subject matter jurisdiction because the threat eliminating behavior was effectively coerced." *Id*. at 129.

Federal courts were statutorily empowered to resolve such problems with the 1934 enactment of the Declaratory Judgment Act, 28 U.S.C. § 2201—which Plaintiffs invoke. *See* First Am. Complaint, ¶ 12. "The dilemma posed by that coercion—putting the challenger to the choice between abandoning his rights or risking prosecution—is 'a dilemma that it was the very purpose of the Declaratory Judgment Act to ameliorate.'" *Medimmune*, 549 U.S. at 129 (quoting *Abbott Labs*. v. *Gardner*, 387 U.S. 136, 152 (1967)). Plaintiffs' "predicament—submit to a statute or face the likely perils of violating it—is precisely why the declaratory judgment cause of action exists." *Mobil Oil Co.* v. *Attorney Gen. of Va.*, 940 F.2d 73, 74 (4th Cir. 1991).

15

"[I]njury in fact" means that "the plaintiff must have suffered . . . . an invasion of a legally-protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan*, 504 U.S. at 560 (citations omitted).

Imminence, under *Lujan*, is merely one class of "factual" as opposed to hypothetical harm. Accordingly, with respect to the injury-in-fact element, the Supreme Court has recognized that plaintiffs may assert "a claim of specific present objective harm or a threat of specific future harm." *Laird* v. *Tatum*, 408 U.S. 1, 14 (1972).

The "credibility" requirement is not rigorous, and is simply meant to eliminate those cases where plaintiffs are challenging a statutory relic no prosecutor is likely to invoke. For example, the Fourth Circuit rejected the credibility of the prosecutorial threat in declining to hear a challenge to Virginia's ancient bans on fornication and cohabitation, the last recorded convictions for which had occurred in 1849 and 1883, respectively. *Doe* v. *Duling*, 782 F.2d 1202 (4th Cir. 1986); *see also Bronson* v. *Swensen*, 500 F.3d 1099 (10th Cir. 2007) (no standing to challenge polygamy laws unenforced under plaintiff's circumstances).

As a general rule, however, pre-enforcement challenges are permitted where the statutes being challenged are "not moribund." *Doe* v. *Bolton*, 410 U.S. 179, 188 (1973). As recently as 1968, the Supreme Court let a teacher challenge Arkansas' "monkey law," notwithstanding the possibility that "the statute is presently more of a curiosity than a vital fact of life." *Epperson* v. *Arkansas*, 393 U.S. 97, 102 (1968).

"In all events, Article III standing is largely–albeit not entirely–a practical jurisprudence." *New Hampshire Hemp Council, Inc.* v. *Marshall*, 203 F.3d 1, 4 (1st Cir. 2000) (citations omitted). If anything, "[t]here may be a trend in favor of . . . a practical approach" to standing,

16

where "courts are content with any realistic inferences that show a likelihood of prosecution." *Id.* at 5; *Maryland State Conf. of NAACP Branches* v. *Maryland Dep't of State Police*, 72 F. Supp. 2d 560, 565 (D. Md. 1999) ("plaintiffs' likelihood of injury depends only on their status as a member of a minority group and their need to travel on I-95").

It is obvious that the authorities in New York enforce the prohibition against carrying guns without a license. It is not at all irrational for Plaintiffs to refrain from carrying guns because they do not wish to risk significant criminal liability for doing so without a license. If there is a right to carry a gun, not doing so for fear of criminal prosecution is a typical Article III injury-in-fact.

F.     The Second Amendment Foundation Has Organizational and Representational Standing.

"There is no question that an association may have standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy." *Warth* v. *Seldin*, 422 U.S. 490, 511 (1975). When a group is forced to spend resources, devoting its time and energy to dealing with certain conduct, it has standing to challenge that conduct. *See*, *e.g.*, *Havens Realty Corp.* v. *Coleman*, 455 U.S. 363 (1982).

SAF educates, researches, and publishes about gun control and its consequences. It must educate its members, and the public, about the government's enforcement of gun laws. When people have questions about the government's firearms policies, they turn to SAF. Defendants' enforcement of the challenged provisions thus directly impacts the organization. Accordingly, SAF has organizational standing in this case, and can assert claims on its own behalf.

17

Even more plainly, an association may bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *United Food & Commercial Workers Union Local 751* v. *Brown Group*, Inc., 517 U.S. 544, 553 (1996) (citation omitted).

The first prong is easily met: the individual plaintiffs are members and supporters of SAF. As they have standing, so does the organization. *See, e.g. Springfield Branch, NAACP* v. *City of Springfield*, 139 F. Supp. 2d 990, 993 (C.D. Ill. 2001) (concluding that NAACP clearly had standing with respect to racial discrimination claims, where two African-American members were plaintiffs). Indeed, since many SAF members are impacted by the challenged laws, representational standing is apparent. The second prong of the representational standing test, that the interests at issue in the litigation are "germane to the organization's purpose," is self-evidently met here.

The third and final prong of the associational standing test is that neither the claim asserted nor the relief requested requires the participation of all individual members in the lawsuit. "[S]o long as the nature of the claim and the relief sought does not make individual participation of each injured party indispensable to proper resolution of the cause, the association may be an appropriate representative of its members, entitled to invoke the court's jurisdiction." *Warth*, 422 U.S. at 511. That each individual member's claim for relief may differ based on unique facts does not prevent an association from seeking injunctive and declaratory relief relating to the standards to be applied in such cases. *International Union, United Auto., etc.* v.

18

*Brock*, 477 U.S. 274, 288 (1986). This case involves no individualized determinations whatsoever, but is and will be constrained to the simple and straightforward legal questions raised by the Complaint.  Therefore, no individualized proof will be necessary, and the participation of individual SAF members will not be required. As nothing about this case will require the participation of every SAF member, the third and final representational standing element is met.

III.    PLAINTIFFS' CLAIMS ARE NOT BARRED BY RES JUDICATA.

Defendants argue Plaintiffs' claims are barred by concepts of res judicata, because they either raised (in Kachalsky's case) or could have raised (in the other individual Plaintiffs' cases) "all claims related to [their] alleged legal entitlement" to a gun carry license. Individual Def. Br. at 34 n.7; County Br. at 19-20.

Of course, by this logic, this Court may never hear a challenge to the constitutionality of any New York administrative process subject to Article 78. Application would be required to bring plaintiffs within the purview of the challenged law, but plaintiffs would be limited to state processes under Article 78 for the resolution of "all" their claims.

But that is not the law. "It is well settled that res judicata does not apply to bar a § 1983 action where a plaintiff has previously brought an Article 78 proceeding." *Hachamovitch* v. *Debuono*, 159 F.3d 687, 695 (2d Cir. 1998) (citing *Colon* v. *Coughlin*, 58 F.3d 865, 870 n.3 (2d Cir. 1995) ("claim preclusion generally does not operate to bar a § 1983 suit following the resolution of an Article 78 proceeding, since the full measure of relief available in the former action is not available in the latter") (citations omitted)).

19

An Article 78 proceeding, or the availability of one, might only bar a Section 1983 case to the extent that the Article 78 encompassed the same claims later brought in federal court. But contrary to Defendants' statement, Article 78 hardly covers "all claims" that Plaintiffs might bring, and it certainly does not permit Plaintiffs to bring the claim they bring before this Court. It is well-established that "article 78 does not lie to challenge a legislative act . . . a petitioner who is challenging the validity of legislation may not use an article 78 proceeding for that purpose; a lawsuit to challenge the validity of legislation should take the form of an action for a declaratory judgment." *Matter of Council of City of N.Y.* v. *Bloomberg*, 6 N.Y.3d 380, 388 (2006) (citation omitted).

> New York law permits a party in an Article 78 proceeding to 'raise a claim that the administrative application of a rule to her is unconstitutional,' but does not allow the party to raise a general constitutional challenge to a law or regulation . . . . Accordingly, res judicata does not preclude a party to an Article 78 proceeding from bringing a general constitutional challenge in a later civil action.

*Karamoko v. N.Y. City Hous. Auth.*, 170 F. Supp. 2d 372, 378 (S.D.N.Y. 2001) (quoting *Hachamovitch*, 159 F.3d at 695).

Plaintiffs bring before this Court a general constitutional challenge, one that does not turn upon any of their particular, unique circumstances. Indeed, one of the plaintiffs is organizational. It is simply erroneous to assert that Plaintiffs could have asserted a facial challenge to Penal Law § 400.00(2)(f) as an Article 78 matter. Such a claim was not available under New York law.

At best, Plaintiffs might have raised, in an Article 78 proceeding, an argument that the law was applied against them in an unconstitutional matter (as opposed to a claim that the standard was misapplied, or that the licensing officers incorrectly weighed the evidence). Had Plaintiffs *chosen* to do so, then only to the extent the case might be viewed as raising an as-

20

applied challenge would there be a res judicata issue. But at least four of the individual Plaintiffs did not raise a constitutional issue before the individual defendants, and did not opt to pursue an Article 78 appeal at all.[7]

This last factor is significant. Where res judicata has been applied against federal plaintiffs that *initiated* Article 78 proceedings, "[t]he Second Circuit explained that such a result is justified on election of remedies ground." *Karamoko*, 170 F. Supp. 2d at 387 n.3 (citing *Bray v. New York Life Ins.*, 851 F.2d 60, 64 (2d Cir. 1988)). Applying this rule, the Second Circuit stressed that "the crucial factor is that [plaintiff] chose to submit her case to the state *courts* for review. Once a plaintiff has entered the state court system, she is bound by the preclusion rules governing that system." *Bray*, 851 F.2d at 64 (citation and internal quotation marks omitted); *see also Giakoumelos* v. *Coughlin*, 88 F.3d 56, 61 (2d Cir. 1996).[8]

But of course, Plaintiffs are not *required* to make that choice. "It is not enough, therefore, that Hachamovitch could have raised his reopening claim in the earlier state proceedings; Hachamovitch was entitled to reserve his federal claim for the federal courts." *Hachamovitch*, 159 F.3d at 695. And where a state administrative proceeding subject to Article 78 is not actually reviewed under Article 78, it has no res judicata effect. *See Joseph* v. *HDMJ Rest., Inc.*, 685 F. Supp. 2d 312, 315-17 (E.D.N.Y. 2009).

---

[7]Kachalsky referenced the Second Amendment in the state proceedings, but his action was not converted to a declaratory matter. It remained an Article 78 proceeding which cannot encompass a general constitutional challenge to the statute.

[8]*Bray*'s application of this concept to invoke res judicata on the basis of an Article 78 proceeding was itself later abrogated. *See Joseph*., 685 F. Supp. 2d at 315-17.

Clearly, res judicata cannot apply to *any* of the individual Plaintiffs, because Article 78 does not permit constitutional challenges to statutes. Moreover, Nikolov, Detmer, Nance, and Marcucci-Nance did not pursue an Article 78 proceeding at all, and res judicata does not undo the rule, discussed extensively *supra*, that forbids federal civil rights plaintiffs from being compelled to pursue state administrative and judicial remedies. Kachalsky pursued an Article 78 appeal, but it could not have reached his general constitutional challenge.

IV.   KACHALSKY'S CLAIMS ARE NOT BARRED BY THE
       *ROOKER-FELDMAN* DOCTRINE.

The individual Defendants' argument that Plaintiff Kachalsky's claims are barred by the *Rooker-Feldman* doctrine, Individual Def. Br. at 34-37, lack merit. The *Rooker-Feldman* doctrine has long been particularly disfavored in the Second Circuit: "*Rooker-Feldman* may be a dubious ground for a refusal to exercise federal jurisdiction over a case (like this one) that falls within the statutory grant of subject matter jurisdiction under 28 U.S.C. § 1331." *Hachamovitch*, 159 F.3d at 396. Yet still, more recently,

> the Supreme Court cited [Second Circuit precedent] as an example of a case that wrongly construed the *Rooker-Feldman* doctrine "to extend far beyond the contours of the *Rooker* and *Feldman* cases, overriding Congress's conferral of federal-court jurisdiction concurrent with jurisdiction exercised by state courts, and superseding the ordinary application of preclusion law pursuant to 28 U.S.C. § 1738."

*Hoblock* v. *Albany County Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005) (quoting *Exxon Mobil Corp.* v. *Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005)). Today,

> *Rooker-Feldman* directs federal courts to abstain from considering claims when four requirements are met: (1) the plaintiff lost in state court, (2) the plaintiff complains of injuries caused by the state court judgment, (3) the plaintiff invites district court review of that judgment, and (4) the state court judgment was entered before the plaintiff's federal suit commenced.

*McKithen* v. *Brown*, 626 F.3d 143, __ (2d Cir. 2010) (citations and internal quotation marks omitted).

Kachalsky's lawsuit plainly meets the first and fourth elements of the *Rooker-Feldman* doctrine: he lost in state court, and this action was commenced subsequent to that loss. But just as plainly, Kachalsky's claims fall outside of the second and third prongs.

Kachalsky does not complain that he was injured by any state-court judgment. The Article 78 proceeding at issue, and subsequent appeal confirming it, are not the source of the injury. The injury was caused by Defendant Cacase's denial of Kachalsky's permit application. "[A] federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it." *Hoblock*, 422 F.3d at 88. The Article 78 proceedings, and the review by the Court of Appeals, did not produce Cacase's denial—they "simply ratified, acquiesced in, or left [it] unpunished." The state court proceedings left Kachalsky where they found him. Kachalsky would have been just as injured had he never commenced the appellate proceedings.[9]

For the same reason, the fourth *Rooker-Feldman* prong is absent. Nowhere in Kachalsky's complaint does he invite review of the state appellate proceedings. To the contrary: Kachalsky complains that he cannot meet the "proper cause" requirements that the state judicial system held he did not meet. First Am. Complaint, ¶ 25.

---

[9]Accordingly, *Emerson* v. *City of New York*, 2010 WL 2910661 (S.D.N.Y. 2010), is inapposite. Emerson was relitigating, in pro se, specific findings made against him in the context of a child-custody dispute. It is unclear, and doubtful, whether that pro se plaintiff challenged the constitutionality of the proceedings themselves.

V.      THE "PROPER CAUSE" STANDARD IS SUBJECT TO A FACIAL CHALLENGE.

The District of Maryland, reviewing a similar unconstitutional law, correctly observed it was "undisputed" that a plaintiff denied renewal of his gun carry permit "has standing to bring a facial challenge to the Maryland statute." *Woollard*, supra, 2010 U.S. Dist. LEXIS 137031 at *2 n.1.[10] Defendants' contrary assertion that Plaintiffs must "establish that no set of circumstances exists under which the Act would be valid," Individual Def. Br. at 18, 44 (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)), is inapposite for a host of reasons.

A.      Licensing Officials May Never Act Arbitrarily and Capriciously.

First, assuming the "no set of circumstances" test is the correct test (and it is not), the complaint plainly satisfies that standard: there is not a single circumstance under which the exercise of unbridled discretion could be constitutional. Defendants mistake the *result* – the denial of a permit – with the unconstitutional mechanism attacked by Plaintiffs – the arbitrariness of the process. Over time, an arbitrary and capricious process is bound to occasionally yield correct results. That hardly means *Salerno* sanctions arbitrary and capricious licensing standards.

In this case, the question is not whether under all circumstances, people may be denied permits to carry guns. Obviously, some individuals (e.g., children, violent felons) could be denied access to firearms without violating the Second Amendment. The question is whether, in all (indeed, in any) circumstances, applications for gun carry permits may be conditioned upon Defendants' view of "proper cause." Defendants' *Salerno* claim depends upon a presumption that at least sometimes, they would correctly apply the "proper cause" standard. But simply put,

---

[10]Granted, the defendants in that case did not contend otherwise, but presumably the Maryland court would have noted the dispute sua sponte were one perceived.

24

whatever other standards may be employed by licensing officials, there are no circumstances under which the exercise of a fundamental right may be subjected to a licensor's unbridled discretion.  It bears repeating that a presumption that licensing officials "will act in good faith and adhere to standards absent from the ordinance's face . . . is the very presumption that the doctrine forbidding unbridled discretion disallows." *City of Lakewood*, 486 U.S. at 770.

      B.      The Second Amendment Is Subject to Overbreadth Review.

The "no set of circumstances" test offered by Defendants is not exclusive—and does not apply in this case.

First, *Salerno* itself recognized that its rule could not apply in a First Amendment context, as the First Amendment permits facial challenges based on claims of overbreadth. *Salerno*, 481 U.S. at 745. And as the Second Circuit recognizes, "[i]t is not even clear that *Salerno*'s 'no set of circumstances' test articulates an exclusive standard for making facial challenges outside the First Amendment context." *Lerman* v. *Bd.of Elections*, 232 F.3d 135, 145 n.10 (2d Cir. 2000) (citations omitted). For example, abortion laws are facially invalid where they impose an undue burden on abortion access, not in *all* cases, but "in a large fraction of the cases." *Planned Parenthood of Southeastern Pa.* v. *Casey*, 505 U.S. 833, 895 (1992). The standard for facial invalidity is occasionally, perhaps more accurately described as one exempting statutes having a "plainly legitimate sweep." *Crawford* v. *Marion County Election Bd.*, 553 U.S. 181, 202 (2008) (plurality opinion) (citations omitted); *Lerman*, 232 F.3d at 145 n.10.

Three circuits have already held that First Amendment frameworks are applicable to the Second Amendment, a result that would plainly banish the "no set of circumstances" test from the Second Amendment field. *See United States* v. *Chester*, 2010 U.S. App. LEXIS 26508 at *24

25

(4th Cir. Dec. 30, 2010) ("we agree with those who advocate looking to the First Amendment as a guide in developing a standard of review for the Second Amendment") (citations omitted); *United States* v. *Marzzarella*, 614 F.3d 85, 89 n.4 (3d Cir. 2010) ("the structure of First Amendment doctrine should inform our analysis of the Second Amendment"); *Parker*, 478 F.3d at 399 ("The protections of the Second Amendment are subject to the same sort of reasonable restrictions that have been recognized as limiting, for instance, the First Amendment.") (citation omitted).[11] Another circuit has suggested, without adopting the First Amendment analogy, that overbreadth could apply in a Second Amendment context. *United States* v. *Williams*, 616 F.3d 685, 693 (7th Cir. 2010); *cf. United States* v. *Yancey*, 621 F.3d 681, 685 (7th Cir. 2010).

But this Court need not look to the law of other courts, or conduct its own assessment of what is logical and sensible, to confirm *Salerno*'s inapplicability to Second Amendment cases. The Supreme Court's decisions in *Heller* and *McDonald* demonstrated as much quite clearly, by sustaining *facial* Second Amendment challenges.

The Supreme Court acknowledged that some individuals could be denied handguns and other functional firearms, *Heller*, 128 S. Ct. at 2816-17, and even cautioned that Mr. Heller, specifically, might not be entitled to relief: "*Assuming that Heller is not disqualified from the exercise of Second Amendment rights*, the District must permit him to register his handgun and must issue him a license to carry it in the home." *Id.* at 2822 (emphasis added). Nonetheless, it

---

[11]Indeed, Judge Davis dissented from the Fourth Circuit's adoption of a First Amendment framework for the Second Amendment specifically because he wanted to preserve *Salerno*'s application to Second Amendment cases. *Chester*, 2010 U.S. App. LEXIS 26508 at *40-42 (Davis, J., concurring in judgment).

struck down Washington, D.C.'s handgun ban.[12] Two years later, the Supreme Court refused to consider that Chicago's views on the desirability of a handgun ban entitled that city to an exemption from the constitutional prohibition against such a law. *McDonald*, 130 S. Ct. at 3046.

Likewise, there might be circumstances under which the government can require that guns be kept in a non-functional condition. Nonetheless, the Supreme Court struck down, on its face, a law mandating that firearms "be rendered and kept inoperable *at all times.*" *Heller*, 128 S. Ct. at 2818 (emphasis added).

But under Defendants' formulation, the results in *Heller* and *McDonald* would have been impossible, as there remain individuals in Washington, D.C. and Chicago who may be barred from accessing functional handguns. That is clearly not the law. As there will always be individuals who can, for some specific and obviously compelling reason, be totally disarmed, a "no set of circumstances" test is simply incompatible with the idea that some gun laws run afoul of the Second Amendment.

Apart from the object lessons of *Heller* and *McDonald*, the latter case confirmed that the Second Amendment is subject to overbreadth analysis by holding that the Amendment secures a "fundamental right."  *McDonald*, 130 S. Ct. at 3042 (plurality opinion); *id.* at 3059 (Thomas, J., concurring). "The phrase [fundamental personal rights and liberties] is not an empty one and was not lightly used." *Schneider* v. *New Jersey (Town of Irvington)*, 308 U.S. 147, 161 (1939). "[C]lassifications affecting fundamental rights are given the most exacting scrutiny." *Clark* v. *Jeter*, 486 U.S. 456, 461 (1988) (citation omitted).

---

[12]Heller did not apply for a permit to carry his gun in public. *Parker*, 478 F.3d at 400. The District required a permit to carry handguns inside the home, but had refused to make such permits available.

Courts have thus applied strict and intermediate levels of scrutiny to Second Amendment claims, depending on the circumstances. *See e.g., Chester*, 2010 U.S. App. LEXIS 26508 at *26-27; *Marzzarella*, 614 F.3d at 97. But both of these tests contain aspects of overbreadth and are thus incompatible with *Salerno.* Strict scrutiny mandates that the government have no less restrictive alternative. *Ashcroft* v. *ACLU*, 542 U.S. 656, 666 (2004); *see also United States* v. *Engstrum*, 609 F. Supp. 2d 1227, 1331-32 (D. Utah 2009) (applying strict scrutiny in Second Amendment analysis). Intermediate scrutiny requires the government demonstrate "a 'reasonable fit' between the challenged regulation and a 'substantial' government objective." *Chester*, 2010 U.S. App. LEXIS 26508 at *27 (quoting *Bd. of Trs. of State Univ. of N.Y.* v. *Fox*, 492 U.S. 469, 480 (1989)). Under both tests, a law that permissibly reaches some valid applications is nonetheless unconstitutional where room remains to narrow its impact.

Occasionally, parties contesting a plainly erroneous claim seek to expose its flaws by extending the argument to the limits of its logic. There is no need to do so here, because Defendants have already explored—and invoked— *Salerno*'s outermost reaches. Defendants claim that because they may indisputably bar the carrying of guns in "sensitive places," no one may challenge a law barring the carrying of guns *everywhere*. Def. Br. at 45. Accordingly, the "sensitive places" exception, which may fall "outside the full scope of the Second Amendment," *Heller*, 128 S. Ct. at 2816, and is thus only "presumptively lawful," *Id.* at 2817 n.26, swallows the entire constitutional rule. Government actors wishing to avoid Section 1983 litigation should therefore ban *all* constitutionally-protected conduct, wholesale, for everyone, everywhere, because doing so will capture a permitted exception upon which they can invoke *Salerno*. The argument plainly lacks merit.

28

Finally, even if Defendants were correct that *Salerno* applies to Second Amendment

cases, and even if a claim of arbitrariness does not satisfy *Salerno*, their argument would fail for

a more basic reason. The Complaint plainly alleges that the cause requirement of Penal Law §

400.00(2)(f) is unconstitutional, "facially and as applied against Kachalsky, Nikolov, Detmer,

Nance, Marcucci-Nance, and SAF's members and supporters." First Am. Complaint, ¶ 41. The

allegations are clear: Plaintiffs want to carry guns for self-defense. Whoever else is barred by

application of the "proper cause" standard, it has been applied against the Plaintiffs, who claim

that they are constitutionally entitled to carry arms for self-defense.

VI.    *YOUNGER* ABSTENTION IS INAPPLICABLE TO THIS LAWSUIT.

*Younger*[13] abstention requires an ongoing state proceeding, an important state interest

implicated by that proceeding, and an adequate opportunity for judicial review of the plaintiff's

federal claims in that state proceeding. *Spargo* v. *N.Y. State Comm'n on Judicial Conduct*, 351

F.3d 65, 75 (2d Cir. 2003) (citing *Diamond "D" Constr. Corp.* v. *McGowan*, 282 F.3d 191 (2d

Cir. 2002)). Where, as here, Plaintiffs, not the State, brought the underlying state action that

supposedly triggers abstention, that action is no longer ongoing, the State's policy interest is

unimportant, and the regulation challenged is patently unconstitutional, the Supreme Court's

abstention criteria are not met, and this Court should exercise its jurisdiction to prevent the

ongoing harm to Plaintiffs' Second Amendment rights.

In *Woollard*, supra, 2010 U.S. Dist. LEXIS 137031, a similar action brought by SAF and

another of its members challenging Maryland's similarly defective carry license law, the District

---

[13] *Younger* v. *Harris*, 401 U.S. 37 (1971).

Court recently rejected *Younger* abstention for several of these same reasons. *Woollard*'s *Younger* analysis is particularly instructive.

      A.      Abstention is the Rare Exception – Not the Rule.

The doctrine of *Younger* abstention originally cautioned federal courts from interfering with state criminal prosecutions, as a matter of comity and deference to state processes within the original police power of the States. However, *Younger* did not alter the basic concept that "[w]e have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the Constitution." *Cohens* v. *Virginia*, 19 U.S. (6 Wheat.) 264, 404 (1821).

Accordingly, the Supreme Court adheres to the bedrock principle that abstention is "an extraordinary and narrow exception to the duty of a District Court to adjudicate the controversy properly before it." *Colorado River Water Conservation Dist*. v. *United States*, 424 U.S. 800, 813 (1976)). "It is axiomatic . . . that abstention from the exercise of federal jurisdiction is the exception, not the rule. Abstention rarely should be invoked, because the federal courts have a virtually unflagging obligation . . . to exercise the jurisdiction given them." *Ankenbrandt* v. *Richards*, 504 U.S. 689, 705 (1992) (citation and internal quotation marks omitted); *New Orleans Public Serv.* v. *Council of New Orleans*, 491 U.S. 350, 359 (1988); *Hawaii Housing Authority* v. *Midkiff*, 467 U.S. 229, 236 (1984).

Likewise, "it has never been suggested that *Younger* requires abstention in deference to a state judicial proceeding reviewing legislative or executive action. Such a broad abstention requirement would make a mockery of the rule that only exceptional circumstances justify a federal court's refusal to decide a case in deference to the States." *New Orleans*, 491 U.S. at 368

(citing *Moore* v. *Sims*, 442 U.S. 415, 423 n. 8 (1979) ("we do not remotely suggest 'that every pending proceeding between a State and a federal plaintiff justifies abstention unless one of the exceptions to *Younger* applies'") (other citation omitted).

Mere overlap in jurisdiction, factual subject matter or legal issues between state and federal actions does not implicate *Younger*. *See Green* v. *Tucson*, 255 F.3d 1086, 1098 (9th Cir. 2001) ("That some issues may be litigated in the federal court that are also pending before the state courts in the parallel lawsuit does not implicate the *Younger* doctrine."). A federal court should be hesitant to abstain from hearing a case unless it meets the precise parameters of the Supreme Court's abstention doctrine, and it must give especially careful consideration to the specific facts of the suit before it. *Bethpage Lutheran Serv., Inc.* v. *Weicker*, 965 F.2d 1239, 1245 (2d Cir. 1992) ("Every abstention case is to be decided upon its particular facts and not with recourse to some 'mechanical checklist.'") (quoting *Moses H. Cone Mem'l Hosp.* v. *Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983)).

Thus, any *Younger* claim bears an exceptionally heavy burden under the most appropriate circumstances. And this case is nowhere near *Younger* territory

B.     There Is No "Ongoing State Proceeding" Initiated By The State.

The underlying state administrative proceedings in this case were initiated by Plaintiffs and are no longer ongoing, as required to abstain on *Younger* grounds.  The Supreme Court and the Second Circuit have both considered state agency administrative proceedings to be "ongoing state proceedings" for *Younger* abstention purposes, and have invoked abstention in cases where the state was investigating and enforcing violations of its laws against the federal plaintiff. *See, e.g., Ohio Civil Rights Comm'n* v. *Dayton Christian Schs., Inc.*, 477 U.S. 619 (1986) (Ohio Civil

31

Rights Commission review of plaintiff school's allegedly wrongful termination of a teacher);

*Middlesex County Ethics Comm.* v. *Garden State Bar Ass'n*, 457 U.S. 423 (1982) (ongoing

investigations of plaintiff lawyer by a state bar ethics committee); *Spargo*, 351 F.3d 65 (New

York State Commission on Judicial Conduct investigation of plaintiff judge's misconduct);

*Diamond "D" Constr. Corp.*, 282 F.3d 191 (New York Department of Labor payroll

investigation of plaintiff construction company); *Doe* v. *Connecticut*, 75 F.3d 81 (2d Cir. 1996)

(state revocation of plaintiff physician's medical license).

 However, such an extension is inapplicable where the federal plaintiff initiated the

underlying state administrative proceeding himself.  This outcome is consistent with the purpose

of *Younger* abstention.  If the underlying state proceeding is not initiated to enforce state laws,

there is no justification for a federal court to abdicate its jurisdiction in the name of comity.  This

logic has been confirmed by several federal courts.  *See, e.g.*, *Forty One News, Inc.* v. *County of*

*Lake*, 491 F.3d 662, 665 (7th Cir. 2007) ("*Younger* abstention is appropriate only when there is

an action in state court against the federal plaintiff and the state is seeking to enforce the

contested law in that proceeding."); *Nader* v. *Keith*, 385 F.3d 729, 731-32 (7th Cir. 2004)

(finding application of *Younger* in the absence of state enforcement action "frivolous."); *Laurel*

*Sand & Gravel, Inc.* v. *Wilson*, 519 F.3d 156, 166 (4th Cir. 2008) ("a defendant to a coercive

state administrative proceeding"); *Telco Commc'ns, Inc.* v. *Carbaugh,* 885 F.2d 1225, 1229 (4th

Cir. 1989) (declining to extend *Younger* automatically where there is any state contact with a

federal plaintiff because "[w]here no formal enforcement action has been undertaken, any

disruption of state process will be slight."); *Brown* v. *Day*, 555 F.3d 882 (10th Cir. 2009); *In re*

*Slayton*, 409 B.R. 897, 906 (Bankr. N.D. Ill. 2009); *Martinez* v. *Martinez*, No. CIV 09-0281

JB/KBM, 2010 U.S. Dist. LEXIS 38109, at *42-49 (D.N.M. Mar. 30, 2010); *Kercado-Melendez* v. *Aponte-Roque*, 829 F.2d 255, 260 (1st Cir. 1987); *O'Neill* v. *City of Philadelphia,* 32 F.3d 785, 791 n.13 (3d Cir. 1994).

The Second Circuit follows this rule as well. *See Bethpage Lutheran Serv.*, 965 F.2d at 1242 (noting *Younger* abstention is "appropriate to avoid federal court interference with pending state 'coercive' proceedings."). Defendants' reliance on *Huffman* v. *Pursue, Ltd.*, 420 U.S. 592 (1975) and *Kirschner* v. *Klemons*, 225 F.3d 227 (2d Cir. 2000), is inapposite because those cases involved plaintiffs who had first been subjected to coercive state proceedings. *Huffman*, 420 U.S. at 608; *Kirschner*, 225 F.3d at 234 (plaintiff brought Article 78 proceeding *after* the Board of Regents of the University of the State of New York determined his dental license should be revoked).   To be clear:

"Courts . . . have seized upon the coercive-remedial distinction as the key factor in determining whether the Younger doctrine demands abstention where a state administrative proceeding is ongoing." *Woollard*, 2010 U.S. Dist. LEXIS 137031 at *11-12 (citations omitted). If the state administrative proceeding is not a coercive function of the state's enforcement powers, but merely an available avenue of administrative relief for plaintiffs who wish to avail themselves of it – then *Younger* abstention is impossible, as it contradicts the rule that civil rights plaintiffs may not be forced to exhaust state administrative remedies.

The present situation is identical to that in Woollard:

Woollard, rather than the state, initiated the administrative proceeding. His participation in the proceeding was not mandatory, and he would have faced no liability if he opted not to participate. Furthermore, the state is not seeking to punish Woollard for any bad act. Indeed, it was Woollard's compliance with the law--specifically, his choice to apply for a

33

handgun carry permit rather than carrying a handgun illegally--that prompted the initiation of the state proceeding.

*Woollard*, 2010 U.S. Dist. LEXIS 137031 at *16-17.

Once a coercive state proceeding is identified, it must be deemed "ongoing" to satisfy *Younger* criteria. *Middlesex County Ethics Comm.*, 457 U.S. at 431; *Liberty Mut. Ins. Co.* v. *Hurlbut*, 585 F.3d 639, 648 (2d Cir. 2009) ("Common to all the cases in which the *Younger* abstention doctrine is applied is the need to find that state proceedings, whether they be criminal, civil or administrative, are ongoing or 'pending.'"). Where administrative proceedings have concluded and the agency ruling is not appealed, the state action is no longer pending, and *Younger* cannot be satisfied. *See Coastal Distrib., LLC* v. *Town of Babylon*, No. CV 05-2032 (JS) (ETB), 2005 U.S. Dist. LEXIS 40795, at *1 (E.D.N.Y. July 15, 2005); *Norfolk & W. Ry.* v. *Pub. Util. Comm'n of Ohio*, 926 F.2d 567, 572-73 (6th Cir. 1991); *Thomas* v. *Tex. State Bd. of Med. Exam'rs*, 807 F.2d 453, 456 (5th Cir. 1987) (same).

In the instant case, the underlying state proceedings at issue were initiated by Plaintiffs in an effort to proactively exercise their Second Amendment rights. None of the Plaintiffs were being prosecuted or investigated for an alleged violation of state law or agency regulation. The State did not initiate any proceedings for law enforcement purposes, and thus there is no need for this Court to defer consideration of Plaintiffs' constitutional claims for the State to finish any enforcement efforts. That a license is required to carry a handgun does not make the administrative application for such a law enforcement action by the State. To hold otherwise would render any state actor trying to force an unconstitutional legal or administrative process

34

upon a citizen immune from prosecution under 42 U.S.C. § 1983.  The wisdom of one federal

court is particularly appropriate to this case:

> The central feature to every *Younger* case is . . . not present here. The federal plaintiffs in
> this case are not defendants in the state action. They therefore cannot raise their federal
> claims by way of defense in the state proceedings . . . unlike every other *Younger* case,
> the relationship of the parties to this federal action is not an inversion of their relationship
> in the related state action. The relationship is the same. This is not a mere technical
> aberration. It means that the fundamental concern of *Younger* is absent here.

*Cooper* v. *Bombela*, 34 F. Supp. 2d 693, 696-97 (N.D. Ill. 1999) (quoting *Lemon* v. *Tucker*, 664

F. Supp. 1143, 1147 (N.D. Ill. 1987)).

What's more, the underlying administrative proceedings at issue are not ongoing.  Each

proceeding concluded when the denial of a handgun carry license was made.  There is no

conclusion to these proceedings for which this Court must still wait.  This is not the classic

*Younger* case of the State taking action against Plaintiffs, and Plaintiffs declining to avail

themselves of state remedies for self-defense in that state action.  Despite Defendants' arguments

to the contrary, judicial review of the administrative denial of handgun permits is sought at the

election of the Plaintiffs, who are not required to exhaust these remedies prior to having their

section 1983 action heard.  Thus, the continuing availability of such review does not trigger

*Younger* abstention as an "ongoing state proceeding."[14]

---

[14] Although Defendants have not attempted to raise *Younger* abstention against SAF, it is
important to note that such an attempt would likewise fail.  The Foundation is not a party to any
related state proceeding. *See Gottfried* v. *Med. Planning Servs.*, 142 F.3d 326, 329 (6th Cir.
1998) (where a litigant is not subject to a pending prosecution or civil enforcement action,
*Younger* abstention does not apply); *Sullivan* v. *City of Pittsburgh*, 811 F.2d 171, 177 (3d Cir.
1987) ("where the plaintiff in a federal action is not a party to the state proceeding, *Younger*
concerns about federal adjudication do not arise.") (citing *Doran* v. *Salem Inn, Inc.*, 422 U.S.
922, 930 (1975)).  Additionally, a party's failure to raise *Younger* abstention against an opposing
party constitutes waiver and prevents a court from applying it *sua sponte*. *Swisher* v. *Brady*, 438
U.S. 204, 213 n.11 (1978); *Time Warner Cable* v. *Doyle*, 66 F.3d 867, 874 n.6 (7th Cir. 1995).

The first essential prong of *Younger*—the existence of an ongoing, coercive state proceeding—is lacking here.

C.      Requiring "Proper Cause" For Issuance Of A Handgun Carry Permit
        Is Not An Important State Interest.

Even were Defendants able to establish the existence of an ongoing state proceeding, they have no important interest in conditioning the exercise of fundamental Second Amendment rights upon "proper cause."  For *Younger* to apply, an important state interest must actually be specified.  *Cf.* County Br. at 18 (claiming its interests are important but failing to establish what they are).

Individual Defendants offer a circular basis for the asserted important government interest in gun control by justifying gun regulation on the existence of many gun regulations.  *See* Individual Def. Br. at 28 n.5 ("The fact that the regulation and control of guns is an issue of great public importance to the states is evidenced by the number and variety of state and local gun laws.").  However, gun regulation cannot be the allegedly "important interest" at issue here. In applying *Younger* abstention, the Second Circuit has made clear that "a state cannot have a legitimate interest in discouraging the exercise of constitutional rights." *Cullen* v. *Fliegner*, 18 F.3d 96, 104 (2d Cir. 1994) (internal citation omitted). Even were the law constitutional, its impact cannot, without more, supply the governmental interest. A law's effect is not self-justifying. There must be some reason for having the law apart from identifying its impact. *Simon & Schuster, Inc.* v. *N.Y. State Crime Victims Bd.*, 502 U.S. 105, 120 (1991). Accordingly, *Younger*'s second prong cannot be satisfied.

D.   Deference To State Proceedings For Review of Plaintiffs' Rights
Is Inappropriate, And, In Any Event, This Remedy Need Not Be
Exhausted, In Light of the State's Patently Unconstitutional Regulation.

As noted *supra*, Defendants cannot require exhaustion of state remedies when the initial

proceeding was itself remedial. That remedial nature also bars application of *Younger*'s final

factor, requiring an opportunity for adequate and timely judicial review of Plaintiffs'

constitutional claims exist in available state proceedings. *Middlesex County Ethics Comm.*, 457

U.S. at 437 (citation omitted); *Spargo*, 351 F.3d at 75. Deferring to such state review ensures

that federal courts "will not unduly interfere with the legitimate activities of the States," *Younger*,

401 U.S. at 44, and gives state courts the chance to narrowly construe its laws in a way that avoid

constitutional questions entirely, *Pennzoil Co.* v. *Texaco, Inc.*, 481 U.S. 1, 12 (1987) (quoting

*Moore*, 442 U.S. at 429-30).

But the Supreme Court has never "suggested that *Younger* requires abstention in

deference to a state judicial proceeding reviewing legislative or executive action. Such a broad

abstention requirement would make a mockery of the rule that only exceptional circumstances

justify a federal court's refusal to decide a case in deference to the States." *New Orleans*, 491

U.S. at 368 (citing *Moore*, 442 U.S. at 423 n. 8 ("we do not remotely suggest 'that every pending

proceeding between a State and a federal plaintiff justifies abstention unless one of the

exceptions to *Younger* applies'") (other citation omitted).

> *Younger* is based on an assumption of parity between federal and state courts—that
> federal court relief is unnecessary when state proceedings exist to resolve a constitutional
> claim. But it is a totally different matter for federal courts to defer to executive officers,
> particularly when the lawsuit is a challenge to the constitutionality of the conduct of those
> very officers.

Erwin Chemerinsky, *Federal Jurisdiction* 856 (5th ed. 2007).  Indeed, the Second Circuit has

noted that in such cases "[a]bstention would serve no purpose because a state cannot have a

legitimate interest in discouraging the exercise of constitutional rights, or, equally, in continuing

actions otherwise brought in bad faith, thereby reducing the need for deference to state

proceedings." *Cullen*, 18 F.3d at 104 (internal citation omitted).

There is simply no escaping the fact that New York's Article 78 process does not permit

direct constitutional challenges to statutory enactments. *See discussion, supra.* The state judicial

process here thus cannot satisfy *Younger*.

Accordingly, all of Defendants' attempts to avoid this problem run afoul of the basic rule

forbidding *Younger*'s application in a manner that defeats *Patsy*'s no-exhaustion rule. *Ohio Civil

Rights Comm'n*, 477 U.S. at 627 n.2. Section 1983 civil suits against government officials may

still proceed in spite of available state remedies because plaintiffs cannot be required to exhaust

state processes before seeking federal court relief. *Patsy*, 457 U.S. at 516; *Wright*, 479 U.S. at

427-28; *Rivera-Powell* v. *New York City Bd. of Elections*, 470 F.3d 458, 468 n.12 (2d Cir. 2006)

(citing *Patsy*). Where a Plaintiff initiates state proceedings, he has the right to access federal

courts to obtain relief of unconstitutional state actions flowing out of that proceeding.

Despite Defendants' repeated citation to *Ohio Civil Rights Commission* v. *Dayton

Christian Schools* as a basis for applying *Younger* abstention, the case plainly states that where

the administrative proceedings are remedial, i.e., plaintiff-initiated, and not coercive, i.e., state-

initiated, *Patsy*'s non-exhaustion principle applies in full force, and *Younger* abstention cannot

circumscribe it.  477 U.S. at 627 n.2 (citations omitted).

38

> [I]f this court were to abstain in this case merely because the state plaintiffs can raise their federal claims in state administrative proceedings, then the result would essentially be a requirement that a federal plaintiff exhaust his constitutional claims in a state forum before resorting to a federal forum. The Supreme Court . . . has explicitly held that such a view would be contrary to law. That rule of nonexhaustion is precisely why the Supreme Court, when it extended *Younger* abstention to state administrative proceedings, required that those proceedings be coercive rather than remedial in nature. In *Dayton Christian Schools* the Court applied *Younger* because the state had already initiated a state proceeding to enforce state law, a coercive process. By contrast, here the federal plaintiffs have earlier brought a remedial action in state administrative proceedings to vindicate their own state law rights. This Court is not about to impose a requirement of exhaustion of their federal constitutional claims in the face of the uniform Section 1983 jurisprudence that rejects such a requirement. *Younger* abstention does not apply abstention to this case.

*Cooper*, 34 F. Supp. 2d at 697 (citations and footnote omitted). *See also Cullen*, 18 F.3d 96 (affirming a federal court injunction, rather than abstention, after the actors deemed to be creating the constitutional violation had already acted and the pending proceeding was before an unbiased body).

      E.     *Younger* Does Not Shield Flagrant Violations.

By its own terms, *Younger* abstention may not be applied where the law at issue is patently unconstitutional. Federal injunctions are appropriate if a statute is "flagrantly and patently violative of express constitutional provisions in every clause, sentence, and paragraph, and in whatever manner and against whomever an effort might be made to apply it." 401 U.S. at 53-54 (quoting *Watson* v. *Buck*, 313 U.S. 387 (1941)). *See also Moore*, 442 U.S. at 423 (same); *New Orleans*, 491 U.S. at 367 (same). Thus, even were *Younger* applicable, Plaintiffs are exempt because the regulation they challenge is patently unconstitutional, as discussed in greater detail in Plaintiffs' motion for summary judgment.[15]

---

[15] Indeed, this case is more akin to *City of Houston* v. *Hill*, 482 U.S. 451, 455 (1987), where the plaintiff sought declaratory and other relief after the state proceedings rather than

None of *Younger*'s prongs can be satisfied, and even were the abstention extended, the egregious nature of Defendants' constitutional violation exempts Plaintiffs from such abstention.

VII.    *PULLMAN* ABSTENTION DOES NOT APPLY.

Dismissing this case on the basis of *Pullman* abstention is equally inappropriate.  Where a state court's clarification of a state law might avoid a federal court ruling on the constitutionality of the law, federal courts may abstain from exercising their jurisdiction.  *R.R. Comm'n of Tex.* v. *Pullman Co.*, 312 U.S. 496 (1941).

Before abstention may occur, however, there must be substantial uncertainty as to the meaning of the state law and a reasonable possibility that the state court's clarification of that law will obviate the need for a federal constitutional ruling.  *See Kusper* v. *Pontikes*, 414 U.S. 51, 54 (1973) (citations omitted); *Baggett* v. *Bullitt*, 377 U.S. 360, 375-76 (1964) (citations omitted); *McRedmond* v. *Wilson*, 533 F.2d 757, 761 (2d Cir. 1976) (citation omitted) (expressly requiring that resolution of the federal law issue *depend upon* the construction of the state law).  Such abstention is not triggered when "the unconstitutionality of the particular state action under challenge is clear."  *Thornburgh* v. *Am. College of Obstetricians*, 476 U.S. 747, 756 (1986) (citations omitted).

Moreover, abstention is not appropriate merely to give state courts the chance to decide a constitutional question first.  *Wisconsin* v. *Constantineau*, 400 U.S. 433, 439 (1971) (citation omitted).  Abstention is particularly undesirable where there is a fear that constitutional rights

---

during it.  The Second Circuit has found that in such a case the factors underlying *Younger* abstention are not present and noted the *Hill* Court "did not cite *Younger* for any relevant point."  *Schlagler* v. *Phillips*, 166 F.3d 439, 443 (2d Cir. 1999).

will be chilled while the issue is pending in state court.  *See Zwickler* v. *Koota*, 389 U.S. 241,

252 (1967) (First Amendment rights implicated); *Baggett*, 377 U.S. at 378-79 (same).

Defendants' "proper cause" requirement is clearly unconstitutional, and no state court

analysis will obviate a ruling on the constitutional merits of the case.  The federal constitutional

question cannot be avoided; it is, in fact, the only question reasonably raised about this

regulation. This Court has primary jurisdiction to resolve federal civil rights claims.  And there is

also no question as to how state courts interpret the "proper cause" provision. *Pullman* abstention

is unavailable.

VIII.   *BURFORD* ABSTENTION DOES NOT APPLY.

Likewise, *Burford* abstention is inapplicable to this case.  *Burford* abstention involves

federal deference to state courts so as not to interfere with the establishment of coherent state

policies and issues of peculiarly local concern.  *See Burford* v. *Sun Oil Co.*, 319 U.S. 315, 317-18

(1943).  The Second Circuit looks to the following factors to determine whether *Burford*

abstention is appropriate: the degree of specificity of the state regulatory scheme, the need to give

a debatable construction to a state statute, and the subject matter of the litigation, namely whether

it is one of traditional state concern.  *Bethpage Lutheran Serv.*, 965 F.2d at 1243.  The Second

Circuit has found that New York's administrative and judicial regulatory system governing

liquidation of domestic insurance companies, *Levy* v. *Lewis*, 635 F.2d 960, 963 (2d Cir. 1980),

and the State's regulation of Medicaid rates and costs, *Bethpage Lutheran Serv.*, 965 F.2d at

1243, were sufficiently specific and complex for purposes of *Burford* abstention.  *Cf. City of New

York* v. *Milhem Attea & Bros., Inc.*, 550 F. Supp. 2d 332, 343 (E.D.N.Y. 2008) (State regulation

of cigarette taxation not complex enough for *Burford* abstention).  However, *Burford* "does not

41

require abstention whenever there exists such a process, or even in all cases where there is a 'potential for conflict' with state regulatory law or policy." *New Orleans*, 491 U.S. at 362 (citing *Colorado River*, 424 U.S. at 815-16).

Here, there is no specificity given to the "proper cause" requirement at issue.  Licensing officials must simply determine whether it exists or not, without the guidance of a statutory definition of the term or a list of factors to consider in their analysis.  They simply look to the application of the permit requestor and whatever background materials the local police department has compiled on the requestor to make a determination.  This is not a complex regulatory scheme akin to the Medicaid payment hierarchy described in *Bethpage Lutheran Services*.  "Carefully regulat[ing] the possession and use of guns," Individual Def. Br. at 33, is neither an accurate nor specific enough description of the regulatory scheme at issue for *Burford* purposes.

Further, as described *supra*, there is no debatable construction that can be granted to this regulation.  Defendants do not offer a debatable construction because they cannot.  This vitiates the need for state court involvement.   Finally, although gun control may generally be a traditional state concern, requiring "probable cause" for the issuance of handgun carry permit is not.  This cannot be a traditional concern precisely because no such tradition may be maintained under the supreme law of the Constitution.

*Woollard* dispensed with a similar plea for *Burford* abstention in a footnote:

Maryland appellate courts have repeatedly examined and interpreted the statute at issue in this case, and there is no reason to believe this case will present a new question of state law... In addition, where, as here, a plaintiff "launches a facial attack on [a] state statute[] as a whole," abstention on the second ground is not appropriate because the potential

relief--an injunction barring the enforcement of the statute–"could not possibly threaten [the statute's] uniform application."

*Woollard*, 2010 U.S. Dist. LEXIS 137031 at *19 n.6 (citation omitted).

*Burford* abstention may not be applied.

IX.   DEFENDANT WESTCHESTER COUNTY PROVIDED RECOMMENDATIONS THAT FORESEEABLY LED TO DEPRIVATION OF PLAINTIFFS' SECOND AMENDMENT RIGHTS, RESULTING IN LIABILITY UNDER 42 U.S.C. § 1983.

Westchester County parses the words of Nikolov's permit denial, suggesting that Plaintiff is misreading that decision in asserting the County bears some responsibility for the matter. Where Defendant Cohen wrote of information being "conspicuously absent," the County claims he meant only what is absent from the application, not from the County's investigative report. *See* County Br. at 11. But it is the County that misreads the decision, which opens with the words, "This court, in its capacity as handgun licensing officer for the County of Westchester, has been presented with *the application, which includes, in accordance with Penal Law § 400.00(4), the results of the investigation* that the Westchester County Department of Public Safety conducted concerning Ms. Nikolov's background." Pl. Exh. B, County Exh. A (citation omitted) (emphasis added). The paragraph contested by County also speak of these documents in the singular: "The application and investigation reveal . . ." *Id.*

Perhaps the County should have submitted the results of that investigation before making claims about what it does or does not contain. There is no dispute, of course, that the investigation fails to reveal any specific threats of harm to Nikolov – just as the investigative reports obtained by Plaintiffs Detmer, Nance, and Marcucci-Nance, fail to note such specific threats in recommending denial of those Plaintiffs' permit applications. Pl. Exh. C, E, G.

43

Alas, Westchester County's assertion that it is not liable because it had no direct role in the denial of Plaintiffs' handgun licenses and merely impartially investigated their backgrounds and provided recommendations to licensing officials must fail, as its actions had the forseeable consequence of depriving Plaintiffs of their constitutional rights.  *See* County Br.. at 2-3, 7-12 (acknowledging the County's investigatory and enforcement powers under the handgun licensing statute and recommendations to deny Plaintiffs' permits, but asserting no liability because it is without power to "grant or deny any handgun license application" and did not draft the statute). The Supreme Court has clearly held that liability for government officials under 42 U.S.C. § 1983 "should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions."  *Malley* v. *Briggs*, 475 U.S. 335, 345 n.7 (1986) (quoting *Monroe*, 365 U.S. at187).

Consequently, the Second Circuit has held that "an actor may be held liable for those consequences attributable to reasonably foreseeable intervening forces, including the acts of third parties."  *Kerman* v. *City of New York*, 374 F.3d 93, 126 (2d Cir. 2004) (quoting *Warner* v. *Orange County Dep't of Probation*, 115 F.3d 1068, 1071 (2d Cir. 1997) (as amended), op. reinstated, 173 F.3d 120 (2d Cir. 1999), (internal quotation marks omitted)).  *See also Townes* v. *City of New York*, 176 F.3d 138, 146 (2d Cir. 1999) (applying tort principles of proximate causation to constitutional injuries).  "The fact that the intervening third party may exercise independent judgment in determining whether to follow a course of action recommended by the defendant does not make acceptance of the recommendation unforeseeable or relieve the defendant of responsibility."  *Kerman*, 374 F.3d at 127 (citations omitted).

44

Thus, "'[a] negligent defendant will not be relieved of liability by an intervening cause that was reasonably foreseeable, even if the intervening force may have 'directly' caused the harm.'" *Warner*, 115 F.3d at 1071 n.2 (quoting *Gutierrez-Rodriguez* v. *Cartagena*, 882 F.2d 553, 561 (1st Cir. 1989)). *See also Higazy* v. *Templeton*, 505 F.3d 161, 177 (2d Cir. 2007) ("'Even if the intervening decision-maker (such as a prosecutor, grand jury, or judge) is not misled or coerced, it is not readily apparent why the chain of causation should be considered broken where the initial wrongdoer can reasonably foresee that his misconduct will contribute to an 'independent' decision that results in a deprivation of liberty.'" (quoting *Zahrey* v. *Coffey*, 221 F.3d 342, 352 (2d Cir. 2000)). Foreseeability "is normally an issue of fact." *Kerman*, 374 F.3d at 127 (citing *Warner*, 115 F.3d at 1073; *Woodling* v. *Garrett Corp.*, 813 F.2d 543, 556 (2d Cir. 1987); Restatement (Second) of Torts § 453, Comment b (1965).

Applying these principles, the Supreme Court found that a judge's wrongful decision to issue an arrest warrant did not break the causal chain between a police officer's improper application for the warrant and the subsequent arrest, and the police officer was held liable under 42 U.S.C. § 1983. *Malley*, 475 U.S. at 338-39, 344 n.7. Similarly, the Second Circuit denied immunity to the Orange County Department of Probation, which recommended an unconstitutional probationary program, even though the sentencing judge made his own decision about whether to accept that recommendation. *Warner*, 115 F.3d at 1072-73 & n.4; *see also id.* at 1072 (noting that the neutrality of the probation officer, unlike the bias of the police officer in *Malley*, made it more likely the court would accept his recommendation). Further, supervisors who recommended the termination of a school psychologist to the superintendent and school board were found to be a sufficiently proximate cause of the psychologist's constitutional injury.

45

*Back* v. *Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 126 (2d Cir. 2004). This was so because "although a jury might conclude that the Board and [the superintendent] would have made the same decision regardless of [the supervisors'] input—and solely on the basis of the parental criticisms—the evidence also permits a jury to conclude that these complaints would have been insufficient on their own to cause [the psychologist's] termination." *Id.*

In this case, Westchester County investigated Plaintiffs, as required by the statute at issue, to determine whether or not "proper cause" existed to issue them a handgun license. First Am. Complaint ¶¶ 11, 26, 30, 32, 34, 36, 37; County Br. at 2-3. The investigatory findings and denial of "proper cause" provided by the County constituted the bulk of "evidence" upon which the licensing officials relied to make their independent licensing determinations. *See* County Br. at 2, 9 (acknowledging that the County conducted investigations and recommended denial of Plaintiffs' permit applications); *id.* at 10 (noting that the licensing officials "merely reviewed the investigative reports, as required, together with the applications of Plaintiffs"). Little other justification was provided in the permit denials, and the licensing officials did not engage in additional, independent fact-finding as to the existence of cause.

Given the statute's mandate that an investigation occur before the licensing hearing, and the licensing officials' routine practice of relying on these investigations rather than engaging in their own "proper cause" investigation, it is reasonably foreseeable that the County's investigations would result in the denial of handgun licenses where it suggested that no proper cause existed. This conclusion is analogous to the *Malley* Court's view that an officer's review of evidence and application for an arrest warrant provided a casual link to a judge's issuance of an improper warrant. Even though New York's licensing officials have the prerogative to

46

disregard the County's recommendations, this independent decision-making ability does not

absolve the County of all § 1983 liability, as *Kerman*, *Warner*, and *Back* make clear.

Accordingly, the County's argument that it is not a direct cause of Plaintiffs' injuries and is not

liable is legal fiction, given the foreseeable consequence of its recommendations to handgun

licensing officials.

X.      THE EQUAL PROTECTION CLAIM PROVIDES THE DEFENSE
        SUFFICIENT NOTICE.

In their final argument, Defendants claims that Count II (U.S. Const.., Amend. XIV,

Equal Protection, 42 U.S.C. § 1983) ought to have been pleaded with greater specificity. After

incorporating the entirety of the Complaint, this count further provides that "New York Penal

Code § 400.00(2)(f)'s requirement that handgun carry permit applicants demonstrate cause for

the issuance of a permit classifies individuals, including plaintiffs, on the basis of irrelevant,

arbitrary, and speculative criteria in the exercise of a fundamental right." See First Am.

Complaint ¶ 43. The allegations make plain that *everyone* is entitled to exercise the right of self-

defense, regardless of Defendants' classifying activities. *Id.* ¶¶ 39, 40. Nothing further is

required.

The present Complaint gives fair notice about what the claim is and the grounds upon

which it rests.  The Complaint describes the manner in which Defendants impermissibly classify

individuals. First Am. Complaint, ¶ 25. It lays out, in great detail, the plaintiffs' attempts to

obtain permits, their denial and all other relevant facts. First Am. Complaint, ¶¶ 26-37. Most

critically, the Complaint quotes liberally from Defendants' written permit denials and thus shows

exactly how it is that Defendants go about classifying individuals, including Plaintiffs. Then the

Complaint cites the specific constitutional language transgressed by the statute.  See First Am. Complaint, Count II.  Finally, the Complaint details the injury to Plaintiffs and the relief sought. See First Am. Complaint, ¶ 23 & Prayer for Relief.

"[N]otice-pleading does not require 'detailed factual allegations.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). All that is required is "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This is exactly what the defense has been provided -- nothing more and nothing less.

It requires no effort to discern that when a Plaintiff complains that he has a fundamental right, and is being denied access to that right based on improper and arbitrary standards, the Equal Protection Clause is implicated because the Defendants are improperly classifying individuals with respect to the exercise of a fundamental constitutional right. Some people might obtain gun carry permits because they are deemed by Defendants to have established a special need for those permits; everyone else, including Plaintiffs, falls on the other side of the "proper cause," imminent harm ledger. Defendants are entitled to defend this practice—but for purposes of this motion, they are on good and sufficient notice as to how their practices are alleged to violate principles of equal protection.

CONCLUSION

Defendants' motions raise many issues, none of them compelling or even particularly close. The motions must be denied.

Dated: January 5, 2011                    Respectfully submitted,

Alan Gura                                 Vincent Gelardi
Gura & Possessky, PLLC                    Gelardi & Randazzo
101 N. Columbus Street, Suite 405         800 Westchester Avenue, Suite S-608
Alexandria, VA 22314                      Rye Brook, NY 10573
703.835.9085/Fax 703.997.7665            914.251.0603/Fax 914.253.0909
Lead Counsel  (Pro Hac Vice)              Local Counsel

By: _____
    Alan Gura                             Attorneys for Plaintiffs

49