**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------X
Alan Kachalsky, Christina Nikolov, and   :
Second Amendment Foundation,          :
           :
           Plaintiffs,       :    **Civil Action Number:**
           :    **10-cv-5413**
-against-             :
           :    **(Hon. Cathy Seibel)**
Susan Cacace, Jeffrey A. Cohen, and   :
County of Westchester,          :
           :
           Defendants.   :
------------------------------------------------------X

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
## OF THE STATE DEFENDANTS'
## MOTION TO DISMISS THE COMPLAINT

ERIC T. SCHNEIDERMAN
Attorney General of the
 State of New York
Attorney for the State Defendants
Assistant Attorney General
120 Broadway, 24th Floor
New York, New York 10271
(212) 416-8553

ANTHONY J. TOMARI (AT-0186)
MONICA CONNELL (MC-9841)
Of Counsel

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................... ii

Preliminary Statement ....................................................................................................... 1

POINT I
ABSTENTION IS APPROPRIATE IN THIS CASE ........................................................ 1

A.   Abstention is Required Under *Younger v. Harris* ........................................................ 1

B.   Abstention is Also Appropriate Under *Pullman* and *Burford*. ...................................... 4

POINT II
STANDING MUST BE ESTABLISHED INDEPENDENTLY FOR EACH
PLAINTIFF ..................................................................................................................... 6

A.   Plaintiff SAF Lacks Standing ...................................................................................... 8

B.   Plaintiffs Kachalsky and Nilolov Lack Standing ........................................................... 9

C.   Plaintiffs Detmer, Nance and Marcucci-Nance Lack Standing .................................... 11

POINT III
PLAINTIFFS ARE BARRED FROM RE-LITIGATING
STATE COURT DECISIONS HERE ............................................................................ 12

CONCLUSION ................................................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**                                                         **Page**

333 East 60th Street, Inc. v. N.Y.S. Liquor Authority,
2008 WL 4104012 (S.D.N.Y. 2008) ...................................................................................3

Allstate Ins. Co. v. Serio,
261 F.3d 143 (2d Cir. 2001) .............................................................................................5

Ashcroft v. Iqbal,
556 U.S. ---, 129 S.Ct. 1937 (2009) ...............................................................................11

Bach v. Pataki,
408 F.3d 75 (2d Cir. 2005) ......................................................................................10, 11

Baggett v. Bullitt,
377 U.S. 360 (1964) .........................................................................................................5

Bando v. Sullivan,
290 A.D.2d 691 (3d Dep't 2002) ...................................................................................11

Bernstein v. Police Dept. of City of New York,
85 A.D.2d 574 (1st Dep't 1981) .....................................................................................11

Bethphage Lutheran Service, Inc. v. Weicker,
965 F.2d 1239 (2d Cir. 1992) ...........................................................................................5

Burford v. Sun Oil Co.,
319 U.S. 315 (1943) .........................................................................................................4

Catlin v. Ambach,
820 F.2d 588 (2d Cir. 1987) .............................................................................................5

City of Los Angeles v. Lyons,
461 U.S. 95 (1983) .....................................................................................................7, 10

City of New York v. Milhelm Attea & Bros., Inc.,
550 F.Supp.2d 332 (E.D.N.Y. 2008) ...............................................................................5

Collard v. Incorporated Village of Flower Hill,
759 F.2d 205 (2d Cir.1985) ...........................................................................................13

Colon v. Coughlin,
58 F.3d 865 (2d Cir. 1995) .............................................................................................13

Council of City of New York v. Bloomberg,
 6 N.Y.3d 380 (2006) .......................................................................................................13

Diamond "D" v. McGowan,
 282 F.3d 191 (2d Cir. 2002)..........................................................................................1, 2

Dreamland Amusements, Inc.,
 2008 WL 4369270 (S.D.N.Y. 2008) ..................................................................................3

Dyno v. Village of Johnson City,
 240 Fed.Appx. 432, 2007 WL 1544816 (C.A.2 (2d Cir. 2007))......................................13

Ex Parte Young,
 209 U.S. 123 (1908)...........................................................................................................9

FW/PBS, Inc. v. City of Dallas,
 493 U.S. 215 (1990)................................................................................................8, 9, 12

Golden v. Zwickler,
 394 U.S. 103 (1969).........................................................................................................10

Green v. Mansour,
 474 U.S. 64 (1985).............................................................................................................9

Hachamovitch v. DeBuono,
 159 F.3d 687 (2d Cir. 1998)............................................................................................13

Harrison v. N.A.A.C.P.,
 360 U.S. 167 (1959)...........................................................................................................5

Heller v. District of Columbia,
 698 F.Supp.2d 179 (D.D.C. March 26, 2010)....................................................................4

Hodgkins v. Holder,
 965 F.2d 1239 (2d Cir. 1992).......................................................................................8, 10

Huffman v. Pursue,
 420 U.S. 592 (1975)........................................................................................................3, 4

Hunt v. Washington State Apple Advertising Commission,
 432 U.S. 333 (1977)...........................................................................................................9

Internat'l Broth. of Teamsters v. U.S.,
 431 U.S. 324 (1977).........................................................................................................10

Kaufman v. Kaye,
 466 F.3d 83 (2d Cir. 2006).................................................................................................2

Kirschner v. Klemons,
   225 F.3d 227 (2d Cir. 2000)...........................................................................................2, 3

Kovarsky v. Housing and Dev. Admin. of City of New York,
   31 N.Y.2d 184 (1972) ...................................................................................................13

Lewis v. Casey,
   518 U.S. 343 (1996)........................................................................................................7

Liberty Mutual v. Hurlburt,
   585 F.3d 689 (2d Cir. 2009)...........................................................................................5

Lujan v. Defenders of Wildlife,
   504 U.S. 555 (1992)...................................................................................................8, 12

McDonald v. City of Chicago, Ill.,
   __ U.S. __ , 130 S.Ct. 3020 (2010)............................................................................5, 9

Mental Disability Law Clinic v. Hogan,
   2008 WL 4104460 (E.D.N.Y. 2008)................................................................................8

Middlesex County Ethics Comm. v. Garden State Bar Ass'n.,
   457 U.S. 423 (1982)....................................................................................................2, 3

Moore v. Sims,
   442 U.S. 415 (1979)........................................................................................................4

NOPSI v. Council of the City of New Orleans,
   491 U.S. 350 (1989)........................................................................................................3

O'Shea v. Littleton,
   414 U.S. 488 (1974)......................................................................................................10

Patsy v. Florida Board of Regents,
   457 U.S. 496 (1982)......................................................................................................11

Pennzoil Co. v. Texaco, Inc.,
   481 U.S. 1 (1987)...................................................................................................2, 3, 10

People Yarbrough,
   169 Cal. App. 4th 303 (2008)..........................................................................................4

Pratt v. Hogan,
   631 F.Supp.2d 192 (N.D.N.Y. 2009) ..............................................................................4

Press v. Monroe Co.,
  50 N.Y.2d 695 (1980) ......................................................................................................13

Railroad Commission of Texas v. Pullman Co.,
  312 U.S. 496 (1941)......................................................................................................4, 5

Raines v. Byrd,
  521 U.S. 811 (1997)..........................................................................................................7

Ramos v. Patrician Equities Corp.,
  765 F.Supp. 1196 (S.D.N.Y. 1991)...................................................................................8

Regan v. Metropolitan Life Ins. Co.,
  80 Fed.Appx. 718, 2003 WL 22717676 (2d Cir. 2003)...................................................13

Robidoux v. Celani,
  987 F.2d 931 (2d Cir. 1993)..............................................................................................9

Romero v. Pataki,
  WL 842177 (S.D.N.Y. 2006)............................................................................................4

Schall v. Martin,
  467 U.S. 253 (1984)..........................................................................................................3

Simon v. Eastern Kentucky Welfare Rights Organization,
  426 U.S. 26 (1976)............................................................................................................8

Spargo v. N.Y. State Comm'n on Judicial Conduct,
  351 F.3d 65 (2d Cir. 2003)............................................................................................2, 4

Springfield Branch, Nat. Ass'n for the Advancement of Colored People v. City of
Springfield, Ill.,
  139 F.Supp.2d  990 (C.D.Ill. 2001) ..................................................................................9

U.S. v. Skoien,
  614 F.3d at 645 (7th Cir. 2010).......................................................................................11

United States v. Masciandro,
  648 F.Supp.2d 779 (E.D.Va. 2009)..................................................................................11

United States v. Salerno,
  481 U.S. 739 (1987)......................................................................................................3, 11

Valley Forge Christian College v. Americans United for Separation of Church and State,
Inc.,
  454 U.S. 464 (1982)......................................................................................................7, 8

Village of Arlington Heights v. Met. Housing Dev. Corp.,
    429 U.S. 252 (1977)..................................................................................................6

Warth v. Seldin,
    422 U.S. 490 (1975)..........................................................................................7, 9, 10

Washington State Grange v. Washington State Republican Party,
    552 U.S. 442 (2008)................................................................................................11

Whitaker v. Garcetti,
    486 F.3d 572 (9th Cir. 2007)....................................................................................7

Williams v. Maryland,
    __ A.3d. __, 2011 WL 13746 (2011)........................................................................10

Wilson v. Edmond,
    373 Fed.Appx. 98, 2010 WL 1573291 (2d Cir. 2010)............................................2

Wisconsin v. Constantineau,
    400 U.S. 433 (1971)..................................................................................................5

Younger v. Harris,
    401 U.S. 37 (1971)..........................................................................................1, 2, 3, 4

Zwickler v. Koota,
    389 U.S. 241 (1967)..................................................................................................5

**United States Constitution**
First Amendment.......................................................................................................11
Second Amendment ...........................................................................................9, 10, 11
Article III.................................................................................................................6, 7

**Federal Statutes**

42 U.S.C. § 1983 .......................................................................................................13

**State Statutes**

Article 78...................................................................................................................13
CPLR § 103(c) ...........................................................................................................13
Penal Law § 400.00(2)(f) ..........................................................................................12

### Preliminary Statement

State Defendants submit this Reply Memorandum in further support of their

Motion to Dismiss the Complaint, responding to Plaintiff's opposition to that motion ("Pls.

MTD Mem."). This Reply Memorandum incorporates all arguments asserted in the

Memorandum of Law in Support of the State Defendants' Motion to Dismiss the

Complaint and their Supplemental Memorandum. Since Plaintiffs elected to respond to the

parts of the dismissal motion concerning Plaintiffs' substantive constitutional claims in

their summary judgment motion, State Defendants address these constitutional claims in

the Memorandum of Law in Support of State Defendants' Cross-Motion for Summary

Judgment and Opposition to Plaintiffs' Motion for Summary Judgment, which is hereby

incorporated by reference herein. This Reply Memorandum is confined to the arguments

made by Plaintiffs in their opposition to the jurisdictional and procedural aspects of the

dismissal motion. State Defendants' motion to dismiss must be granted on the grounds that:

this matter is not ripe for adjudication; Plaintiffs lack standing to challenge the statute at

issue; principles of federalism require this court to abstain from exercising jurisdiction;

Plaintiffs' claims are barred by res judicata; and Plaintiff Kahcalsky's claims are barred by

the Rooker-Feldman doctrine.

### POINT I

### ABSTENTION IS APPROPRIATE IN THIS CASE.

**A.** **Abstention is Required Under *Younger v. Harris*.**

Abstention under Younger v. Harris, 401 U.S. 37 (1971) is an equitable doctrine.

Diamond "D" v. McGowan, 282 F.3d 191, 198 (2d Cir. 2002). It is applicable to state civil

and administrative proceedings and is mandatory where, as here, three elements are met: 1)

there is an ongoing state proceeding; 2) an important state interest is implicated in that

proceeding; and 3) plaintiff has an adequate opportunity for judicial review of the federal claims, in that proceeding. Spargo v. N.Y. State Comm'n on Judicial Conduct, 351 F.3d 65, 75 (2d Cir. 2003); Diamond "D" v. McGowan, 282 F.3d at 198.

Plaintiffs ask this Court to add a fourth requirement, that Younger abstention is inapplicable because the individual Plaintiffs were not "defendants" in the underlying state proceedings and those proceedings thus were not "coercive." Plaintiffs cite no Second Circuit authority for this point and ignore binding Second Circuit precedent to the contrary. For example, in Kirschner v. Klemons, the Second Circuit held "we note that it is irrelevant that the state proceeding (the Article 78 proceeding) was brought by Kirschner rather than the state". 225 F.3d at 234. In the Second Circuit, applicants need not be the state court defendant in order for Younger abstention to apply.[1] See Wilson v. Edmond, 373 Fed.Appx. 98, 2010 WL 1573291 (2d Cir. 2010)(abstaining in federal action arising out of federal plaintiff's application to join the Connecticut bar); Kaufman v. Kaye, 466 F.3d 83, 87-88 (2d Cir. 2006)(Abstaining where the federal plaintiff had himself initiated the underlying state proceedings). Plaintiffs' reliance on Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 11 (1987) is inexplicable. There the Supreme Court held that Younger should apply in situations, as here, where deferring to the state courts "offers the opportunity for

---

[1] Plaintiffs cite cases from other Circuits to argue that the underlying state must proceeding be "coercive" but decline to define "coercive". Arguably, any proceeding which enforces the State's law and denies Plaintiffs request to carry concealed, loaded handguns in public could be termed "coercive" which is generally defined as "to compel an act or choice" or "[t]o cause to do through pressure or necessity, by physical, moral or intellectual means". Merriam-Webster online dictionary at http://www.merriamwebster.com/dictionary/coerce. In any event, this is not one of the core requirements of the Younger doctrine and is not the law of the Second Circuit. Younger is applicable to civil proceedings where an important state interest is at issue. See Middlesex County Ethics Comm. v. Garden State Bar Ass'n., 457 U.S. 423, 432 (1982); Kirschner, 225 F.3d at 233. The Second Circuit's three-part Younger test does not require the existence of a coercive proceeding and holds that abstention is mandatory where they are met.

2

narrowing constructions that might obviate the constitutional problem and intelligently mediate federal constitutional concerns and state interests." 481 U.S. at 12.[2]

Plaintiffs do not overcome authority that a proceeding is ongoing for <u>Younger</u> abstention purposes when the federal plaintiff had the opportunity to raise the constitutional claim in the state trial and/or appellate courts but did not do so, even if further review of the claim is no longer available when the federal action is commenced. <u>See</u> <u>Huffman v. Pursue</u>, 420 U.S. 592, 609 (1975); <u>Kirschner</u>, 225 F.3d at 234.

Finally, Plaintiffs assert that the State cannot establish an "important state interest" for the purposes of abstention, arguing that the State cannot have any legitimate interest in regulating an asserted constitutional right to carry concealed loaded handguns in public. However, <u>Younger</u> unquestionably requires abstention despite a plaintiff's assertion of constitutional violations, and mere allegation of violation of a constitutional right does not negate abstention. <u>See</u> <u>Kirschner v. Klemons</u>, 225 F.3d at 233; <u>NOPSI</u>, 491 U.S. at 365. States have an "important state interest" in the licensing of dentists, attorneys and drinking establishments, even where plaintiffs have asserted constitutional violations in such licensing schemes. <u>See</u> <u>Middlesex County Ethics Comm. v. Garden State Bar Ass'n.</u>, 457 U.S. 423, 432 (1982); <u>Kirschner</u>; <u>333 East 60th Street, Inc. v. N.Y.S. Liquor Authority</u>, 2008 WL 4104012, 4 (S.D.N.Y. 2008). In light of the public health and safety concerns involved, Plaintiffs' assertion that the State can have no important interest in its system of regulating handguns in public is without merit. <u>See</u> <u>United States v. Salerno</u>, 481 U.S. 739, 748-50 (1987); <u>Schall v. Martin</u>, 467 U.S. 253, 264 (1984); <u>Heller v. District of</u>

---

[2] Plaintiffs' reliance on <u>NOPSI v. Council of the City of New Orleans</u>, 491 U.S. 350, 359 (1989) is similarly unavailing. There, the Supreme Court recognized that abstention, while an exception rather than a rule, is called for where traditional abstention doctrines are applicable, that those doctrines are equitable and flexible and not "rigid pigeon holes into which federal courts must try to fit cases." <u>Id.</u> citing <u>Pennzoil Co. v. Texaco, Inc.</u>, 481 U.S. 1, 11 (1987). <u>See</u> <u>also</u> <u>Dreamland Amusements, Inc.</u>, 2008 WL 4369270, 11 (S.D.N.Y. 2008).

Columbia, 698 F.Supp.2d 179, 192-93, 195 (D.D.C. March 26, 2010); People Yarbrough, 169 Cal. App. 4th 303, 314 (2008). The state also has an important interest in determining the constitutionality of its gun licensing statute. Pratt v. Hogan, 631 F.Supp.2d 192, 196 (N.D.N.Y. 2009); Spargo, 351 F.3d at 81.[3]

Plaintiffs argue that Younger abstention is inappropriate where a plaintiff makes a constitutional challenge to a state law. This argument is entirely without merit. See Moore v. Sims, 442 U.S. 415, 427-29 (1979) ("The breadth of a challenge to a complex state statutory scheme has traditionally militated in *favor* of abstention, not *against* it....[reflecting] sensitivity to the primacy of the State in the interpretation of its own laws"); Romero v. Pataki, WL 842177 *3 -4  (S.D.N.Y. 2006)(Younger is applicable to "broad facial attack on a state statute"). The Supreme Court has recognized that excepting facial attacks from abstention threatens to obstruct application of the domestic policy of the states and to displace the state courts as "the principal expositors of state law," that federal intervention impinges on the "informed evolution of state policy by state tribunals" and robs the state courts of "the opportunity for narrowing constructions that might obviate the constitutional problem". Moore v. Sims, 442 U.S. 415, 429-430 (1979); see also Huffman v. Pursue, Ltd., 420 U.S. at 603.

**B.      Abstention is Also Appropriate Under *Pullman* and *Burford*.**

Plaintiffs argue that abstention is inappropriate under Railroad Comm'n v. Pullman Co., 312 U.S. 496, 501 (1941) and Buford v. Sun Oil Co., 319 U.S. 315, 318 (1943) because there is no ambiguity in the challenged statute which might be differently construed by the state courts and because there is no requirement that the state courts hear

---

[3] Plaintiffs' conclusory assertions that the state court will not afford them a constitutional remedy will not suffice as a justification to avoid abstention. The relevant inquiry for abstention purposes is whether the state courts could provide a constitutional remedy, not whether they will. If Plaintiffs disagree with the results in the state courts, they can appeal to the Supreme Court. Spargo, 351 F.3d at 79.

4

the constitutional claims before the federal court does. But the cases relied upon by

Plaintiffs are inapposite. In those cases, there was no ambiguity or room for interpretation

of judicial construction in the challenged statute. See, e.g., Wisconsin v. Constantineau,

400 U.S. 433, 439 (1971); Zwickler v. Koota, 389 U.S. 241, 250 (1967) (No term in the

challenged statute was left to judicial interpretation and the statute was found clear and

precise); Baggett v. Bullitt, 377 U.S. 360, 378 (1964)("Here the uncertain issue of state law

does not turn upon a choice between one or several alternative meanings of a state

statute"). Here, in contrast, the challenged statutory term, "proper cause," has actually

been defined by state court jurisprudence, but Plaintiffs have declined to challenge this

definition in the state courts following the Supreme Court's McDonald decision, denying

the state courts "a reasonable opportunity to pass upon" the statute. Harrison v.

N.A.A.C.P., 360 U.S. 167, 176-177 (1959), citing Railroad Commission of Texas v.

Pullman Co. While State Defendants submit that the current definition and application of

"proper cause" comports with the constitution, they also submit that in instances, as here,

where a state law is susceptible to an interpretation by state courts that could avoid or

modify the constitutional claim, and where "difficult questions of state law bearing on

policy problems of substantial public import whose importance transcends the result in the

case then at bar," the federal court should abstain to allow resolution of the state law

question in the state forum. City of New York v. Milhelm Attea & Bros., Inc., 550

F.Supp.2d 332, 342 (E.D.N.Y. 2008); Allstate Ins. Co. v. Serio, 261 F.3d 143 (2d Cir.

2001); Catlin v. Ambach, 820 F.2d 588, 591 (2d Cir. 1987). See also Liberty Mutual v.

Hurlburt, 585 F.3d 689 (2d Cir. 2009); Bethphage Lutheran Service, Inc. v. Weicker, 965

F.2d 1239, 1244 (2d Cir. 1992) ("The Supreme Court has recognized that the factors

5

relevant to abstention analysis are "to be applied in a pragmatic, flexible manner with a view to the realities of the case at hand." ).

## POINT II

### STANDING MUST BE ESTABLISHED
### INDEPENDENTLY FOR EACH PLAINTIFF.

Plaintiffs assert that they need not each establish standing, arguing that if any plaintiff has standing for any claim, then all plaintiffs have standing for all claims, essentially negating Article III jurisdictional and prudential limits of federal court jurisdiction. Plaintiffs' argument is based on a footnote in <u>Village of Arlington Heights v. Met. Housing Dev. Corp.</u>, 429 U.S. 252, 263 (1977). Plaintiffs a non-profit and a real estate developer alleged that a plan to develop an integrated housing development was thwarted by the local government's refusal to re-zone the property, which plaintiffs claimed was racially motivated and/or had a racially disparate effect. Plaintiffs lost at trial and appealed. The Circuit Court reversed, finding that the denial had racially discriminatory effects and the government was required to demonstrate compelling interests for the denial. <u>Id.</u>, 429 U.S. at 260. The Supreme Court considered standing, which apparently had not been litigated in the lower courts, and found that it could reach the constitutional questions because the real estate developer and at least one plaintiff had standing, holding that the plaintiffs had not carried their burden of showing that discriminatory intent motivated the Village's denial of the zoning variance. This case does not stand for the wholesale proposition, as Plaintiffs here assert, that standing applies only to one party per suit and that any and all plaintiffs can bootstrap their claims and establish federal jurisdiction if they can identify one plaintiff who has standing for some claim.

6

Here, State Defendants have timely raised the issue of their standing. There is no basis to believe that in these circumstances "bedrock" principals of standing do not pertain, particularly since their as-applied challenges require particularized analysis. Raines v. Byrd, 521 U.S. 811, 820 (1997)(Constitution requires that federal courts "put aside the natural urge to proceed directly to the merits of [an] important dispute" and establish whether the litigants have standing prior to reaching merits); Whitaker v. Garcetti, 486 F.3d 572, 580 (9th Cir. 2007).

As the Supreme Court recognized in Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 475-476 (1982), decided after Village of Arlington Heights:

> We need not mince words when we say that the concept of "Art. III standing" has not been defined with complete consistency in all of the various cases decided by this Court which have discussed it, nor when we say that this very fact is probably proof that the concept cannot be reduced to a one-sentence or one-paragraph definition. But of one thing we may be sure: Those who do not possess Art. III standing may not litigate as suitors in the courts of the United States.

(Emphasis added). Thus this Court lacks jurisdiction to hear the claims of any plaintiffs who lack standing. City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983); see also Lewis v. Casey, 518 U.S. 343, 358 (1996) (Reversing where only two of twenty-two plaintiffs seeking injunctive and declaratory relief had standing and noting that "standing is not dispensed in gross"); Warth v. Seldin, 422 U.S. 490, 499 (1975)("The Art. III judicial power exists only to redress or otherwise to protect against injury to the complaining party, even though the court's judgment may benefit others collaterally. A federal court's jurisdiction therefore can be invoked only when the plaintiff himself [has standing]"); see also Valley Forge Christian College, 454 U.S. at 472 ("[A]t an irreducible minimum, Art. III requires the party who invokes the court's authority to 'show that he personally has

7

suffered some actual or threatened injury'" as well as causation and redressability); Simon v. Eastern Kentucky Welfare Rights Organization, 426 U.S. 26, 39-40 (1976); Ramos v. Patrician Equities Corp., 765 F.Supp. 1196, 1199 (S.D.N.Y. 1991); Mental Disability Law Clinic v. Hogan, 2008 WL 4104460, 7 (E.D.N.Y. 2008) (Dismissing some claims and concluding that "each plaintiff must establish the necessary elements with respect to each claim it asserts on its own behalf or on behalf of others"). Here, the Plaintiffs bear the burden of establishing standing, and, among other "irreducible" requirements each must establish that he or she has suffered a "personal and individual" injury. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). Proof of standing must affirmatively appear in the record at each phase of the proceeding or the plaintiffs will face dismissal. FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 235 (1990).

## A. Plaintiff SAF Lacks Standing.

Plaintiffs must do more than make conclusory statements to establish standing. As the Supreme Court recognized in Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 486 (1982), an organization's interest in a matter "does not provide a special license to roam the country in search of governmental wrongdoing and to reveal their discoveries in federal court." Here, SAF has not identified in the First Amended Complaint or in plaintiffs' summary judgment motion a constitutional injury it has suffered or a manner that the same can be redressed, and thus fails to establish direct standing. Lujan v. Defenders of Wildlife, supra 504 U.S. at 560-561; Hodgkins, supra, 677 F.Supp.2d at 206 (holding SAF lacked standing to challenge firearms laws).

Furthermore, in Pls. MTD Mem. SAF similarly fails to demonstrate that is has capacity to sue in a representational capacity. Plaintiffs have provided declarations in

8

support of their summary judgment motion but have not provided nothing showing that a

member of SAF has suffered a concrete, particularized and ripe injury sufficient to meet

the first element of representational standing. See Hunt v. Washington State Apple

Advertising Commission, 432 U.S. 333 (1977); FW/PBS, Inc. v. Dallas, supra, 493 U.S. at

235; Warth, supra 422 U.S. at 509.  For example, the declaration by Julianne Versnel, an

officer of SAF, identifies no SAF member who has been injured and instead asserts that

New York law "bars" unnamed "members and supporters" of SAF from carrying handguns

in public.  No declaration states that any of the named Plaintiffs are members of SAF and

were at the time of filing. Robidoux v. Celani, 987 F.2d 931, 938 (2d Cir. 1993).  Even the

case cited by SAF does not assist it.  In Springfield Branch, Nat. Ass'n for the

Advancement of Colored People v. City of Springfield, Ill., 139 F.Supp.2d 990,

993 (C.D.Ill. 2001), the Court held that the plaintiff organization could not bring suit on

behalf of individuals who were not members at the time that the action was commenced. In

any event, Plaintiffs' as-applied challenges require the participation of individual members

to prosecute this action and SAF thus lacks representational standing.

**B.    Plaintiffs Kachalsky and Nilolov Lack Standing.**

Whether conceived as a lack or standing or as also implicating a lack of a ripe

conflict, Plaintiffs Kachalsky and Nikolov cannot invoke this Court's jurisdiction.

Plaintiffs do not dispute that there must be an ongoing constitutional violation for them to

obtain declaratory or injunctive relief. Ex Parte Young, 209 U.S. 123, 152 (1908); Green

v. Mansour, 474 U.S. 64, 68 (1985).  To the extent that they assert that they need not have

applied for licenses after McDonald made the Second Amendment applicable to the states,

because such applications would be "futile", such assertion is "conjectural" and does not

have the necessary "immediacy" and certainty required to establish standing for an "as-

applied" constitutional challenge. Golden v. Zwickler, 394 U.S. 103, 108-09 (1969);

Hodgkins v. Holder, 677 F.Supp.2d at 206. See also Los Angeles v. Lyons, 461 U.S. at

107-09; O'Shea v. Littleton, 414 U.S. 488, 494-95 (1974). The cases upon which Plaintiffs

rely are inapposite. For example, Internat'l Broth. of Teamsters v. U.S., 431 U.S. 324,

365 (1977), held that in order to state a Title VII claim, a non-white employee would not

be required to apply for a job if the employer announced his policy of discrimination by a

sign reading "Whites Only" on the office door. There is no comparable circumstance here.

Plaintiffs here argue that the Second Amendment gives them a constitutional right to carry

a concealed handgun in public for self-defense (citing no case establishing such a right)

and yet have not applied for licenses to carry a gun for self-defense following the

application of the Second Amendment to the State. Plaintiffs also ask the Court to ignore

the fact that here the challenged statute, if it is determined to violate the constitution, may

be subject to a narrowing or limiting interpretation that will avoid the constitutional

question. See, e.g., Pennzoil, 481 U.S. at 12. Unlike the plaintiff in Bach v. Pataki, 408

F.3d 75 (2d Cir. 2005), on which they rely, Plaintiffs are not specifically statutorily

excluded from such license. Plaintiffs Kachalsky and Nikolov do not present ongoing

unconstitutional conduct and a live, concrete dispute sufficient to have standing. Warth v.

Seldin, 422 U.S. 490, 517 (1975).[4]

Plaintiffs assert that they cannot be required to apply for a license or to let the state

courts define the "proper cause" standard post-McDonald because, ordinarily, plaintiffs are

not required to exhaust state administrative remedies before proceeding on a § 1983 claim.

---

[4]   Plaintiffs' argument that they need not even apply for a license to assert as-applied challenges to challenge
the licensing statute must be rejected for the reasons set forth in the State Defendants' memorandum in
support of the motion to dismiss. Recently, in Williams v. Maryland, __ A.3d. __, 2011 WL 13746 (2011),
the Maryland Court of Appeals held that a litigant lacked standing to challenge Maryland's gun permitting
laws because he had not applied for a license.

Patsy v. Florida Board of Regents, 457 U.S. 496 (1982). They engage in a bit of sophistry here. At once they assert that the "proper cause" requirement has been so clearly defined and "strictly" applied that they know that further application or appeals from their license determinations would be "futile"[5] Pls. MTD Mem. pp. 3, 9, 10, and simultaneously rely on inapposite First Amendment cases to assert that the "proper cause" standard is vague and undefined and vests unbridled discretion in licensing officials, and they thus need not actually permit the state courts the opportunity to hear their claims and interpret "proper cause" in a constitutional manner. Pls. MTD Mem. pp. 5, 13.[6] This assertion is without merit. The term has been defined by the state courts[7] which have an obligation to interpret and apply state laws in a manner which comports with the constitution, and this Court cannot assume that the State Courts would interpret the statute in a manner that violates Plaintiffs' constitutional rights.

## C.     Plaintiffs Detmer, Nance and Marcucci-Nance Lack Standing.

Plaintiffs assert that they have a constitutional right "to carry functional handguns in non-sensitive public places for purposes of self-defense". See First Amended Complaint ¶ 15. Plaintiffs Detmer, Nance and Marcucci-Nance already have licenses to carry

---

[5]  Plaintiffs argue that the court must accept their assertion that they "cannot meet" the proper cause standard. See Pl.'s Mem. at p. 10. Yet this is not the type of well-plead factual allegation that the Court must accept as true. As set forth in Ashcroft v. Iqbal, 556 U.S. ---, 129 S.Ct. 1937, 1949 (2009), this Court need not accept as true Plaintiffs' conclusory assertions but only well-pleaded factual allegations.

[6]  Plaintiffs attempt to evade the jurisdiction and justiciability questions here by claiming they need not comply with such requirements where they are asserting a facial constitutional challenge. The law is clear that outside the First Amendment context, a facial challenge can only succeed where a plaintiff can establish that there is no set of circumstances under which the challenged statute would be constitutional. United States v. Salerno, 481 U.S. 739, 745 (1987). Plaintiffs cite three cases which look to First Amendment law for the determination of the *standard* to be applied to Second Amendment challenges but none overruled Salerno or the requirement that Plaintiffs cannot mount a facial challenge without succeeding on an as-applied challenge. Thus, where a plaintiff's as-applied challenge fails, his or her facial challenge will also fail. Plaintiffs refer to this principal as "controversial". Nevertheless, it is clearly the law. See, e.g., Washington State Grange v. Washington State Republican Party, 552 U.S. 442, 449-50 (2008); U.S. v. Skoien, 614 F.3d at 645; see also, Masciandaro, supra, 648 F.Supp.2d 779.

[7]  Bach v. Pataki, 408 F.3d at 80; Bando v. Sullivan, 290 A.D.2d 691, 693 (3d Dep't 2002); Bernstein v. Police Dept. of City of New York, 85 A.D.2d 574 (1st Dep't 1981); FAC ¶ 25

concealed handguns in New York, but these licenses are restricted to activities related to

target shooting. Each applied for and was denied amendments granting a "full carry" or

unrestricted license. None indicated that they wanted an unrestricted license for self-

defense purposes. Nance and Marcucci-Nance informed the police and Judge Holdman

that they wanted to amend their licenses to permit them to carry the guns in connection

with firearms education courses, a purpose that the police felt was already permitted under

their current licenses. See Tomari Decl., Exhibits H - J. Plaintiff Detmer did not indicate

that he needed an unrestricted license for self-defense but stated that "[w]ith a Full Carry

permit, I would safely provide the same public service of enforcing laws while off-duty, if

needed." See Exhibit H (Detmer application).[8]

## POINT III

### PLAINTIFFS ARE BARRED FROM RE-LITIGATING
### STATE COURT DECISIONS HERE .

Plaintiff Kachalsky's argument that res judicata is inapplicable to him is unavailing.

In his application for a license to Judge Cacace, his Article 78 proceeding before the

Appellate Division, and in his application to the Court of Appeals, Kachalsky asserted and

litigated his as-applied and a facial constitutional challenges to Penal Law 400.00(2)(f).

See Exhibits F (Plaintiff's application packet); K (Judge Cacace's decision); Exhibit L

(Petition at Wherefore Cl.); and 15 (Kachalsky's November 27, 2009 letter to the New

York State Court of Appeals). These claims were necessarily decided in his state

proceedings. Kachalsky is thus precluded from re-litigating these issues by well-

established principals of claim preclusion. Where a plaintiff has asserted and litigated the

---

[8] Here, Plaintiffs bear the burden of establishing standing and because they have cross-moved for summary judgment, they must establish standing using more than mere conclusory allegations. Lujan, 504 U.S. at 561; FW/PBS, Inc., 493 U.S. at 235. As a result, State Defendants make reference to exhibits and affidavits introduced in connection with the parties' motions for summary judgment, including to exhibits to the Declaration of Anthony J. Tomari.

claims in the state courts and where those courts were empowered to grant him the relief he

seeks, i.e., injunctive and declaratory relief, res judicata will apply to bar his relitigation of

the identical claims in federal court. Regan v. Metropolitan Life Ins. Co., 80 Fed.Appx.

718, 721, 2003 WL 22717676, 2 (2d Cir. 2003).  Traditional claim preclusion principals

bar § 1983 lawsuits where the claims therein were or could have been raised in a previous

Article 78 proceeding. Collard v. Incorporated Village of Flower Hill, 759 F.2d 205,

207 (2d Cir.1985); Dyno v. Village of Johnson City, 240 Fed.Appx. 432, 434, 2007 WL

1544816, 2 (C.A.2 (2d Cir. 2007)(Res judicata requires dismissal of § 1983 action

"because a state court judgment will have a preclusive effect on a subsequently filed §

1983 action where the § 1983 claims could have been raised in the state court action.").[9]

To the extent that Kachalsky alleges that *res judicata* could not bar his re-litigation

of his constitutional claims here because his claims could not have been asserted in an

Article 78 proceeding, his claim must be rejected.  First, the constitutional claims he

presented were entertained by the state courts.[10]  Second, although there is an exception to

---

[9] Kachalsky cites Colon v. Coughlin, 58 F.3d 865, 870 (2d Cir. 1995) and Hachamovitch v. DeBuono, 159
F.3d 687, 695 (2d Cir. 1998) for the uncontroversial propositions that that res judicata does not necessarily
bar a § 1983 lawsuit following an Article 78 proceeding and that an Article 78 proceeding cannot be used to
mount a facial constitutional challenge to a state statute without converting the proceeding to a hybrid Article
78/declaratory judgment.  In Colon, the Court found that claim and issue preclusion did not bar an inmate's §
1983 claim because "the issues raised in Colon's Article 78 proceeding are not identical to the issues
presented in Colon's § 1983 complaint" and because the inmate had demonstrated bias which denied him a
full and fair opportunity to litigate his claim. In Hachamovitch the plaintiff had not litigated his constitutional
challenge to the medical licensing law and rules in his state proceedings and the court, in considering the
application of the Rooker Feldman doctrine, held that claim preclusion did not apply, relying on Colon for
the proposition that res judicata does not bar a § 1983 action where a plaintiff has previously brought an
Article 78 proceeding.  However, as noted above, Colon did not hold that claim preclusion can never apply to
bar re-litigation of claims asserted in an Article 78 proceeding.  Unlike in either Hachamovitch or Colon,
Kachalsky actually litigated the identical as-applied and facial constitutional challenges in the state courts
and those courts were empowered to grant him the relief he seeks and thus his relitigation here is precluded.

[10] Nor can Kachalsky rely upon the assertion that his constitutional claims could not be resolved in an Article
78 proceeding.  Pursuant to CPLR § 103(c), state courts must convert a civil judicial proceeding into its
proper form, so Kachalsky's constitutional claims were and could have been heard before the state courts
even if the proceeding originally began as an Article 78 proceeding.  See Kovarsky v. Housing and Dev.
Admin. of City of New York, 31 N.Y.2d 184, 192 (1972). Plaintiffs' reliance on Council of City of New
York v. Bloomberg, 6 N.Y.3d 380, 388 (2006) and similar cases is misplaced.  As set forth in Council of City

13

claim preclusion where the original court could not award the full measure of relief that the federal plaintiff seeks, the Second Circuit has recognized that where, as here, money damages are not sought, res judicata may bar re-litigation of constitutional claims which were addressed or could have been addressed in a state proceeding. Johns v. Rampe, 333 Fed.Appx. 644, 646, 2009 WL 1813730, 1 (2d Cir. 2009).  Plaintiff Kachalsky has thus assert no basis to find that his previous litigation of his claims does not mandate dismissal.

Similarly, Kachalsy's request for relief here, issuance of a license, and declaratory and injunctive relief invalidating the challenged statute would call for this Court to review and reverse the state courts' determinations of his license application and constitutional challenge. Kachalsky argues that the Rooker-Feldman doctrine is inapplicable because he complains of Judge Cacace's decision and not the decisions of the appellate courts and that he does not ask this Court to review the state court judgments. He is mistaken.  Here, the actions of Judge Cacace interpreted and applied the governing law to the facts of the particular case in front of her.  As such, even if technically denominated "administrative", her actions were judicial in nature.  Furthermore, the actions were affirmed by the state appellate courts. See Bliven v. Hunt, 579 F.3d 204, 212 (2d Cir. 2009), citing District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 477-78 (1983) ("state's characterization of proceedings as 'ministerial' rather than 'judicial' does not control federal court's analysis of whether a proceeding is judicial for purposes of the Rooker-Feldman doctrine").

Finally, the Rooker-Feldman doctrine and claim preclusion should also serve, at a minimum, to bar the claims of Plaintiffs Nance and Marcucci-Nance.  In denying their

---

of New York and in the precedent on which the State Court of Appeals relied, constitutional challenges to a statute may not be put forward in an Article 78 proceeding but if it is done, it is "of no practical significance" because under the state's civil practice rules, such actions are simply converted to declaratory judgment or hybrid actions. See Press v. Monroe Co., 50 N.Y.2d 695 (1980).

14

applications to amend their licenses, Judge Holdman addressed the constitutional

questions, holding, <u>inter alia</u>, that the challenged statute is constitutional both facially and

as applied to the Plaintiffs. <u>See</u> Exhibits H and I. [11]

## CONCLUSION

For the reasons stated herein, this action should be dismissed in its entirety as

against the State Defendants.

Dated: New York, New York
      January 26, 2011

Respectfully submitted,

ERIC T. SCHNEIDERMAN
Attorney General of the
 State of New York
Attorney for the State Defendants
By:

MONICA CONNELL (MC-9841)
Assistant Attorney General
120 Broadway, 24th Floor
New York, NY 10271
(212) 416-8965

ANTHONY J. TOMARI (AT-0186)
Assistant Attorney General
120 Broadway, 24th Floor
New York, New York 10271
(212) 416-8553

---

[11]  Plaintiffs Nance and Marcucci-Nance both have licenses to carry concealed weapons for the purposes of and in connection with target shooting and training. In 2009, they each sought to amend their licenses to permit them to teach firearms related courses. As per the reports of the Westchester County Sheriff, their licenses already permit this, thus the amendment was not necessary for those purposes. <u>See</u> Exhibits I and J.