IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
WHITE PLAINS DIVISION


ALAN KACHALSKY, et al.,    :    Case No. 10-CV-05413-CS
    :
    Plaintiffs,    :    Hon. Cathy Seibel
    :
    v.    :
    :
SUSAN CACACE,    :
    :
    Defendants.    :
    :
-----------------------------------------------------X


MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Alan Gura*    Vincent Gelardi
Gura & Possessky, PLLC    Gelardi & Randazzo
101 N. Columbus Street, Suite 405    800 Westchester Avenue, Suite S-608
Alexandria, VA 22314    Rye Brook, NY 10573
703.835.9085/Fax 703.997.7665    914.251.0603/Fax 914.253.0909
Lead Counsel    Local Counsel
*Admitted Pro Hac Vice

TABLE OF CONTENTS

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

I.     THE SECOND AMENDMENT SECURES A RIGHT TO CARRY
       ARMS IN PUBLIC. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

II.    GOVERNMENT OFFICIALS MAY NOT ARBITRARILY DETERMINE
       WHETHER AN INDIVIDUAL MAY EXERCISE FUNDAMENTAL RIGHTS. . . . . . 13

III.   CONDITIONING THE EXERCISE OF SECOND AMENDMENT RIGHTS
       ON PROOF OF "PROPER CAUSE" FOR SELF-DEFENSE VIOLATES THE
       EQUAL PROTECTION CLAUSE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

       A.     The Second Amendment Rights of Law-Abiding, Responsible Individuals
              Are Subject to Strict Scrutiny Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

       B.     The "Proper Cause" Standard Fails Any Level of Scrutiny. . . . . . . . . . . . . . . . 24

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

i

TABLE OF AUTHORITIES

Cases

*414 Theater Corp.* v. *Murphy*,
    499 F.2d 1155 (2d Cir. 1974).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*754 Orange Ave., Inc.* v. *West Haven*,
    761 F.2d 105 (2d Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Andrews* v. *State*,
    50 Tenn. 165 (1871).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-11

*Ashcroft* v. *ACLU*,
    542 U.S. 656 (2004).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Aymette* v. *State*,
    21 Tenn. 154 (1840).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Bach* v. *Pataki*,
    408 F.3d 75 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

*Bayside Enterprises, Inc.* v. *Carson*,
    450 F. Supp. 696 (M.D. Fla. 1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Beal* v. *Stern*,
    184 F.3d 117 (2d Cir. 1999).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Broadway Books, Inc.* v. *Roberts*,
    642 F. Supp. 486 (E.D.Tenn. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Buck* v. *Bell*,
    274 U.S. 200 (1927).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Cantwell* v. *Connecticut*,
    310 U.S. 296 (1940).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16

*Cent. Hudson Gas & Elec. Corp.* v. *Public Serv. Comm'n*,
    447 U.S. 557 (1980).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Charette* v. *Town of Oyster Bay*,
    159 F.3d 749 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Chesapeake B & M, Inc.* v. *Harford County*,
    58 F.3d 1005 (4th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Citizens United* v. *FEC*,
    130 S. Ct. 876 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*City of Lakewood* v. *Plain Dealer Publishing Co.*,
    486 U.S. 750 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*City of Las Vegas* v. *Moberg*,
    82 N.M. 626, 485 P.2d 737 (N.M. Ct. App. 1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Clark* v. *City of Lakewood*,
    259 F.3d 996 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Clark* v. *Jeter*,
    486 U.S. 456 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*District of Columbia* v. *Heller*,
    128 S. Ct. 2783 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

*Elam* v. *Bolling*,
    53 F. Supp. 2d 854 (W.D.Va. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Forsyth County* v. *Nationalist Movement*,
    505 U.S. 123 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 18

*FW/PBS* v. *City of Dallas*,
    493 U.S. 215 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15

*Genusa* v. *Peoria*,
    619 F.2d 1203 (7th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Hague* v. *Committee for Indus. Org.*,
    307 U.S. 496 (1937) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*In re Application of McIntyre*,
    552 A.2d 500 (Del. Super. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*In re Brickey*,
    8 Idaho 597, 70 P. 609 (1902) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Kachalsky* v. *Cacase*,
    65 A.D.3d 1045 (2d Dept. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Kellogg* v. *City of Gary*,
    562 N.E.2d 685 (Ind. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Kuck* v. *Danaher*,
    600 F.3d 159 (2d Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Kunz* v. *New York*,
    340 U.S. 290 (1951) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Largent* v. *Texas*,
    318 U.S. 418 (1943) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Louisiana* v. *United States*,
    380 U.S. 145 (1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Lusk* v. *Vill. of Cold Spring*,
    475 F.3d 480 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*McDonald* v. *City of Chicago*,
    130 S. Ct. 3020 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

*MD II Entertainment* v. *City of Dallas*,
    28 F.3d 492 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Muscarello* v. *United States*,
    524 U.S. 125 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*N.J. Envtl. Fed'n* v. *Wayne Twp.*,
    310 F. Supp. 2d 681 (D.N.J. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Nakatomi Inv.* v. *City of Schenectady*,
    949 F. Supp. 988 (N.D.N.Y. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Nat'l Fed'n of the Blind* v. *FTC*,
    420 F.3d 331 (4th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Niemotko* v. *Maryland*,
    340 U.S. 268 (1951) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Nunn* v. *State*,
1 Ga. 243 (1846). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Ohio Citizen Action* v. *City of Mentor-On-The-Lake*,
272 F. Supp. 2d 671 (N.D. Ohio 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Ohio Citizen Action* v. *City of Seven Hills*,
35 F. Supp. 2d 575 (N.D. Ohio 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Parker* v. *District of Columbia*,
478 F.3d 370 (D.C. Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Peruta* v. *County of San Diego*,
678 F. Supp. 2d 1046 (S.D. Ca. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*R.W.B. of Riverview, Inc.* v. *Stemple*,
111 F. Supp. 2d 748 (S.D.W.Va. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Robertson* v. *Baldwin*,
165 U.S. 275 (1897). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Schneider* v. *New Jersey (Town of Irvington)*,
308 U.S. 147 (1939). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 24

*Shuttlesworth* v. *Birmingham*,
394 U.S. 147 (1969). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 16-18

*Simon & Schuster, Inc.* v. *N.Y. State Crime Victims Bd.*,
502 U.S. 105 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*State ex rel. City of Princeton* v. *Buckner*,
180 W. Va. 457, 377 S.E.2d 139 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*State* v. *Chandler*,
5 La. Ann. 489 (1850). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*State* v. *Delgado*,
298 Or. 395, 692 P.2d 610 (Or. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*State* v. *Reid*,
1 Ala. 612 (1840). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*State* v. *Rosenthal*,
   75 Vt. 295, 55 A. 610 (1903). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Staub* v. *City of Baxley*,
   355 U.S. 313 (1958) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 17

*T & A's, Inc.* v. *Town Bd. of the Town of Ramapo*,
   109 F. Supp. 2d 161 (S.D.N.Y. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Tom T., Inc.* v. *City of Eveleth*,
   2003 U.S. Dist. LEXIS 3718 (D. Minn. March 11, 2003). . . . . . . . . . . . . . . . . . . 19

*United States* v. *Carolene Products Co.*,
   304 U.S. 144 (1938). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

*United States* v. *Chester*,
   2010 U.S. App. LEXIS 26508 (4th Cir. Dec. 30, 2010) . . . . . . . . . . . . . . . . . . 7, 14, 21

*United States* v. *Emerson*,
   270 F.3d 203 (5th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*United States* v. *Engstrum*,
   609 F. Supp. 2d 1227 (D. Utah 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States* v. *Everist*,
   368 F.3d 517 (5th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*United States* v. *Marzzarella*,
   614 F.3d 85 (3d Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States* v. *Miller*,
   307 U.S. 174 (1939). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States* v. *Playboy Entm't Group*,
   529 U.S. 803 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*United States* v. *Skoien*,
   614 F.3d 638 (7th Cir. 2010) (en banc) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 20, 21

*United States* v. *Williams*,
   616 F.3d 685 (7th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

vi

*United States* v. *Yancey*,
    621 F.3d 681 (7th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21


Constitutional Provisions

U.S. Const. amend II. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim


Statutes and Regulations

D.C. Code § 22-4504(a) (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

D.C. Code § 22-4506 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

N.Y. Penal Law § 265.00(10). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

N.Y. Penal Law § 265.01(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

N.Y. Penal Law § 265.03(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

N.Y. Penal Law § 265.20. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

N.Y. Penal Law § 400.00(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

N.Y. Penal Law § 400.00(1)(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

N.Y. Penal Law § 400.00(2)(f). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2


Other Authorities

BLACK'S LAW DICTIONARY (6th Ed. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

David Kopel & Clayton Cramer, *State Court Standards*
    *of Review for the Right to Keep and Bear Arms*,
    50 SANTA CLARA L. REV. 1 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Florenz Plassman & John Whitley, Comment: Confirming "More Guns,
    Less Crime," 55 STANFORD L. REV. 1313 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . 23

THE AMERICAN STUDENTS' BLACKSTONE (G. Chase ed. 1884) . . . . . . . . . . . . . . . . . . . . 11

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

PRELIMINARY STATEMENT

When individuals enjoy a constitutional "right" to engage in some activity, a license to
engage in that activity cannot be conditioned on the government's determination of their "proper
cause" to exercise that right. Defendants impose this classic form of unconstitutional prior
restraint against the fundamental individual right to keep and bear arms. It must be enjoined.

Of course, Defendants have an interest in regulating firearms in the interest of public
safety. But the regulatory power here is not absolute. Whatever else the state may command with
respect to the carrying of arms, it cannot reserve for itself the power to arbitrarily decide, in all
cases, whether individuals should be able to carry guns for self-defense.

STATEMENT OF FACTS

The facts of this case are not complicated. Although the Constitution presumes that
individuals have an individual right to keep and bear arms, U.S. Const. amend. II; *District of
Columbia* v. *Heller*, 128 S. Ct. 2783 (2008), New York law embarks from the opposite
conclusion: without more, mere possession of any firearm is a class A misdemeanor. New York
Penal Law § 265.01(1); Statement of Undisputed Fact ("SUF") 1. The possession of a loaded
firearm outside one's home or place of business constitutes "Criminal Possession of a Firearm in
the Second Degree," a class C felony. New York Penal Law § 265.03(3); SUF 2.

These prohibitions do not apply to the "[p]ossession of a pistol or revolver by a person to
whom a license therefor has been issued as provided under section 400.00 or 400.01." New York
Penal Law § 265.20. For most civilians who are not otherwise barred from possessing and

carrying weapons, the only theoretically-available permit to carry handguns in public for self-defense is a permit "to have and carry concealed, without regard to employment or place of possession, by any person when proper cause exists for the issuance thereof," pursuant to New York Penal Law § 400.00(2)(f); SUF 3.

Plaintiffs Alan Kachalsky, Christina Nikolov, Eric Detmer, Johnnie Nance, and Anna Marcucci-Nance, all reside in Westchester County. Apart from the challenged requirement that they demonstrate "proper cause," each Plaintiff is fully qualified to obtain a license to carry a handgun under New York Penal Law § 400.00(1), in that each (a) is over 21 years old, (b) of good moral character, (c) has never been convicted of a felony or serious crime, (d) has never been mentally ill or confined to any institution, (e) has not had a license revoked or been the subject of a family court order, and (f) with exception of Plaintiff Detmer, who is qualified under subdivision 400.00.1(i), has completed a firearms safety course. SUF 4.

In New York, handgun carry permit licensing officers "[are] often local judges," but not always. *Bach* v. *Pataki*, 408 F.3d 75, 79 & n.7 (2d Cir. 2005) (citing N.Y. Penal Law § 265.00(10)). Depending on where an applicant resides in, or on the applicant's former employment, the licensing officer may also be a police commissioner, sheriff, or the state police superintendent. Because Plaintiffs reside in Westchester County, their applications for gun carry licenses are passed on by state judges acting as licensing officers. SUF 5.

Plaintiff Alan Kachalsky's application for a handgun carry license was referred for decision to Defendant Susan Cacase, "in [her] capacity as handgun licensing officer for the County of Westchester." SUF 6. Defendant Westchester County recommended that the permit be denied. SUF 7. On or about October 8, 2008, Defendant Cacace denied Kachalsky's permit

application, offering that Kachalsky "has not stated any facts which would demonstrate a need for self protection distinguishable from that of the general public." Accordingly, Defendant Cacace found Kachalsky did not satisfy the requirement of New York Penal Law § 400.00(2)(f) that "proper cause" be shown for issuance of the permit. SUF 8. On September 8, 2009, the Appellate Division held that Kachalsky must demonstrate "proper cause" for the issuance of the permit, and that Defendant Cacace's "determination was not arbitrary or capricious and should not be disturbed." *Kachalsky* v. *Cacace*, 65 A.D.3d 1045 (2d Dept. 2009).

On February 16, 2010, the New York Court of Appeals dismissed Kachalsky's appeal on the grounds that it presented no substantial constitutional question. *Kachalsky* v. *Cacase*, 14 N.Y.3d 743 (2010). At the time of this decision, it was not a holding of any federal appellate court that the States were bound to respect Second Amendment rights, and in fact, the Second Circuit had held that the Second Amendment did not apply to the States. *Bach* v. *Pataki*, *supra*. On June 28, 2010, the Supreme Court overruled *Bach* on this point, in holding that the Fourteenth Amendment does incorporate and apply the Second Amendment against the States. *McDonald* v. *City of Chicago*, 130 S. Ct. 3020 (2010).

Plaintiff Kachalsky would apply again for a handgun carry license, but refrains from doing so because any such application would be a futile act. He cannot satisfy the proper cause standard, which has already been applied to him. SUF 9.

Plaintiff Christina Nikolov's application for a handgun carry license was referred to Defendant Jeffrey A. Cohen "in [his] capacity as handgun licensing officer for Westchester County." SUF 10. On or about October 1, 2009, Cohen denied Nikolov's permit application. Considering the application and Defendant County's investigation, Cohen offered that

conspicuously absent . . . is the report of any type of threat to her own safety anywhere. . . it cannot be said that the applicant has demonstrated that she has a special need for self-protection distinguishable from that of the general public; therefore, her application for a firearm license for a full carry permit must be denied.

SUF 11.

Plaintiff Eric Detmer serves in the United States Coast Guard, for one weekend each month and two full weeks each year. Since 2004, Detmer has been a qualified Boarding Team Member.  Although lacking authority to arrest, Detmer carries a .40 caliber handgun while on duty with the Coast Guard, which he surrenders each time upon leaving duty. Detmer qualifies semi-annually with his handgun, regularly taking a non-firing judgmental pistol course, a firing tactical pistol course, and use-of-force training. SUF 12.

Detmer is licensed to have a private handgun for the limited purposes of target shooting and hunting. Detmer applied to amend his license for the purpose of "full carry." SUF 13. On or about September 3, 2010, Defendant Westchester County recommended that the application be disapproved, as Detmer's need to enforce laws while off-duty was "speculative," and Detmer "has not substantiated that he faces danger during non employment hours that would necessitate the issuance of a full carry firearm license" and "has not demonstrated an exceptional need for self protection distinguishable from that of the general public." SUF 14. On or about September 27, 2010, Defendant Lorenzo denied Detmer's application, stating, "At this time, I see no justification for a full carry permit." SUF 15.

Plaintiff Johnnie Nance is licensed to have a private handgun for the limited purpose of target shooting. Nance applied to amend his license for the purpose of "full carry" for self-defense. SUF 16. On or about August 11, 2010, Defendant Westchester County recommended

that the application be disapproved, as "No safety related concerns have been cited by the applicant," and Nance "has not demonstrated an exceptional need for self protection distinguishable from that of the general public."  SUF 17.

On or about September 9, 2010, Defendant Holdman denied Nance's application for a carry permit. Holdman cited Defendant County's recommendation for denial, and its finding that Nance had not demonstrated any exceptional need for the permit. Holdman further stated, "The applicant has not provided the court with any information that he faces any danger of any kind that would necessitate the issuance of a full carry firearm license; or has not demonstrated a need for self protection distinguishable from that of the general public or of other persons similarly situated." SUF 18. Citing the denial of Kachalsky's application, Holdman found Nance did not demonstrate "proper cause" within the meaning of the governing provision. Holdman continued:

> In sum, the applicant has not shown sufficient circumstances to distinguish his need from those of countless others, nor has he demonstrated a specific need for self protection distinguishable from that of the general community or of persons engaged in the same business or profession.

SUF 19.

Plaintiff Anna Marcucci-Nance is licensed to have a private handgun for the limited purpose of target shooting. Marcucci-Nance applied to amend her license for the purpose of "full carry" for self-defense. SUF 20. On or about August 11, 2010, Defendant Westchester County recommended that the application be disapproved, as "No safety related concerns have been cited by the applicant," and Marcucci-Nance "has not demonstrated an exceptional need for self protection distinguishable from that of the general public." SUF 21.

On or about September 9, 2010, Holdman denied Marcucci-Nance's application for a

carry permit. Holdman cited Defendant County's recommendation for denial, and its finding that Marcucci-Nance had not demonstrated any exceptional need for the permit. Holdman's decision appears to be a form decision, using largely identical language and reasoning invoked to deny Nance's application. SUF 22, 23.

Plaintiff Second Amendment Foundation, Inc. ("SAF") is a non-profit membership organization incorporated under the laws of Washington with its principal place of business in Bellevue, Washington. SUF 24. SAF has over 650,000 members and supporters nationwide, including many in Westchester County, New York. The purposes of SAF include education, research, publishing and legal action focusing on the Constitutional right to privately own and possess firearms, and the consequences of gun control. SUF 25.

SAF expends its resources encouraging exercise of the right to bear arms, and advising and educating their members, supporters, and the general public about the policies with respect to the public carrying of handguns in New York. The issues raised by, and consequences of, Defendants' policies, are of great interest to SAF's constituency. Defendants' policies regularly cause the expenditure of resources by SAF as people turn to it for advice and information. SUF 26. Defendants' policies bar SAF's members and supporters from obtaining permits to carry handguns. SUF 27. The individual Plaintiffs, and SAF's members and supporters, would carry functional handguns in public for self-defense, but refrain from doing so because they fear arrest, prosecution, fine, and imprisonment for lack of a license to carry a handgun. SUF 28.

## SUMMARY OF ARGUMENT

This case is not difficult. The Second Amendment secures a right to carry arms for self-defense. Defendants refuse to acknowledge that carrying arms is a right, and instead demand that

6

applicants prove their need to do so. There is no such thing as a "right" that can be denied unless people prove a special need to exercise it. Prior restraints on constitutionally-protected conduct cannot allow regulators unbridled discretion in choosing who may exercise the right, nor can regulators substitute their own judgment for that of the Constitution as to whether the exercise of a particular right is a good idea. The challenged provision, or at least its implementation, violates basic prior restraint standards. And because the challenged practice arbitrarily classifies individuals in the exercise of a fundamental right, it also violates the Equal Protection Clause.

ARGUMENT

I.       THE SECOND AMENDMENT SECURES A RIGHT TO CARRY ARMS IN PUBLIC.

The Second Amendment applies "*most notably* for self-defense within the home,*"* *McDonald* v. *City of Chicago*, 130 S. Ct. 3020, 3044 (2010) (plurality opinion) (emphasis added), "where the need for defense of self, family, and property is most acute," *District of Columbia* v. *Heller*, 128 S. Ct. 2783, 2717 (2008), but not exclusively so. "[T]he Second Amendment creates [sic] individual rights, *one of which* is keeping operable handguns at home for self-defense. What other entitlements the Second Amendment creates, and what regulations legislatures may establish, were left open [in *Heller*]." *United States* v. *Skoien*, 614 F.3d 638, 640 (7th Cir. 2010) (en banc) (emphasis added). "[T]he core right identified in *Heller* [is] the right of a law-abiding, responsible citizen to possess *and carry* a weapon for self-defense." *United States* v. *Chester*, __ F.3d __,  2010 U.S. App. LEXIS 26508 at *26 (4th Cir. Dec. 30, 2010) (emphasis removed and added). "*Heller* does not preclude Second Amendment challenges to laws regulating firearm possession outside of home." *Peruta* v. *County of San Diego*, 678 F. Supp. 2d 1046, 1051 (S.D. Ca. 2010).

7

The Supreme Court confirmed that "keep and bear," U.S. Const. amend. II, refers to two distinct concepts, rejecting the argument that "keep and bear arms" was a unitary concept referring only to a right to possess weapons in the context of military duty. "At the time of the founding, as now, to 'bear' meant to 'carry.'" *Heller*, 128 S. Ct. at 2793 (citations omitted). To "bear arms," as used in the Second Amendment, is to "wear, bear, or carry . . . upon the person or in the clothing or in a pocket, for the purpose . . . of being armed and ready for offensive or defensive action in a case of conflict with another person." *Heller*, 128 S. Ct. at 2793 (quoting *Muscarello* v. *United States*, 524 U.S. 125, 143 (1998) (Ginsburg, J., dissenting)); Black's Law Dictionary 214 (6th Ed. 1998)); *see also Heller*, 128 S. Ct. at 2804 ("the Second Amendment right, protecting only individuals' liberty to keep *and carry* arms . . ."), at 2817 ("the right to keep *and carry* arms") (emphasis added). "[B]ear arms means . . . simply the carrying of arms . . ." *Heller*, 128 S. Ct. at 2796.

Having defined the Second Amendment's language as including a right to "carry" guns for self-defense, the Supreme Court helpfully noted several exceptions that prove the rule. Explaining that this right is "not unlimited," in that there is no right to "carry any weapon whatsoever in any manner whatsoever and for whatever purpose," *Heller*, 128 S. Ct. at 2816 (citations omitted), the Court confirmed that there is a right to carry at least some weapons, in some manner, for some purpose. The Court then listed as "presumptively lawful," *id.*, at 2817 n.26, "laws forbidding the carrying of firearms in sensitive places," *id.*, at 2817, confirming both that such "presumptions" may be overcome, and that carrying bans are *not* presumptively lawful in non-sensitive places. Wherever "sensitive places" may exist, they do not exist inside the home.

*Heller*'s dissenters acknowledged that the decision protected the public carrying of arms:

8

> Given the presumption that most citizens are law abiding, and the reality that the need to defend oneself may suddenly arise in a host of locations outside the home, I fear that the District's policy choice may well be just the first of an unknown number of dominoes to be knocked off the table.

*Heller*, 128 S. Ct. at 2846 (Stevens, J., dissenting).

In upholding the right to carry a handgun under the Second Amendment, *Heller* broke no new ground. As early as 1846, Georgia's Supreme Court, applying the Second Amendment, quashed an indictment for the carrying of a handgun that failed to allege whether the handgun was being carried in a constitutionally-protected manner. *Nunn* v. *State*, 1 Ga. 243, 251 (1846); *see also In re Brickey*, 8 Idaho 597, 70 P. 609 (1902) (Second Amendment right to carry handgun). Numerous state constitutional right to arms provisions have likewise been interpreted as securing the right to carry a gun in public, albeit often, to be sure, subject to some regulation. *See*, *e.g. Kellogg* v. *City of Gary*, 562 N.E.2d 685 (Ind. 1990); *State ex rel. City of Princeton* v. *Buckner*, 180 W. Va. 457, 377 S.E.2d 139 (1988); *City of Las Vegas* v. *Moberg*, 82 N.M. 626, 485 P.2d 737 (N.M. Ct. App. 1971); *State* v. *Rosenthal*, 75 Vt. 295, 55 A. 610 (1903) (striking down ban on concealed carry); *Andrews* v. *State*, 50 Tenn. 165 (1871); *see also State* v. *Delgado*, 298 Or. 395, 692 P.2d 610 (Or. 1984) (right to carry a switchblade knife).

The right to bear arms is not abrogated by recognition of the fact it may be regulated. To the contrary, precedent approving of the government's ability to regulate the carrying of handguns confirms the general rule to which it establishes exceptions. Traditionally, "the right of the people to keep and bear arms (Article 2) is not infringed by laws prohibiting the carrying of *concealed* weapons . . . ." *Robertson* v. *Baldwin*, 165 U.S. 275, 281-82 (1897) (emphasis added). But more recently, the Supreme Court has suggested that such bans are only "presumptively"

9

constitutional. *Heller*, 128 S. Ct. at 2817 n.26 (emphasis added). Surveying the history of concealed carry prohibitions, it appears time and again that such laws have been upheld as mere regulations of the manner in which arms are carried – with the understanding that a complete ban on the carrying of handguns is unconstitutional.

*Heller* discussed, with approval, four state supreme court opinions that referenced this conditional rule. *See Heller*, 128 S. Ct. at 2818 (discussing *Nunn*, *supra*, 1 Ga. 243; *Andrews*, *supra*, 50 Tenn. 165; and *State* v. *Reid*, 1 Ala. 612, 616-17 (1840)) and 128 S. Ct. at 2809 (citing *State* v. *Chandler*, 5 La. Ann. 489, 490 (1850)). In *Reid*, upholding a ban on the carrying of concealed weapons, Alabama's high court explained:

> We do not desire to be understood as maintaining, that in regulating the manner of bearing arms, the authority of the Legislature has no other limit than its own discretion. A statute which, under the pretence of regulating, amounts to a destruction of the right, or which requires arms to be so borne as to render them wholly useless for the purpose of defense, would be clearly unconstitutional. But a law which is merely intended to promote personal security, and to put down lawless aggression and violence, and to this end prohibits the wearing of certain weapons in such a manner as is calculated to exert an unhappy influence upon the moral feelings of the wearer, by making him less regardful of the personal security of others, does not come in collision with the Constitution.

*Reid*, 1 Ala. at 616-17.

The *Nunn* court followed *Reid*, and quashed an indictment for publicly carrying a pistol for failing to specify how the weapon was carried:

> so far as the act . . . seeks to suppress the practice of carrying certain weapons *secretly*, that it is valid, inasmuch as it does not deprive the citizen of his *natural* right of self-defence, or of his constitutional right to keep and bear arms. But that so much of it, as contains a prohibition against bearing arms *openly*, is in conflict with the Constitution, and *void*.

*Nunn*, 1 Ga. at 251 (emphasis original).

*Andrews* presaged *Heller* by finding that a revolver was a protected arm under the state

10

constitution's Second Amendment analog. It therefore struck down as unconstitutional the

application of a ban on the carrying of weapons to a man carrying a revolver, declaring:

> If the Legislature think proper, they may by a proper law regulate the carrying of this weapon publicly, or abroad, in such a manner as may be deemed most conducive to the public peace, and the protection and safety of the community from lawless violence. We only hold that, as to this weapon, the prohibition is too broad to be sustained.

*Andrews*, 165 Tenn. at 187-88.[1] Finally, in *Chandler,*

> the Louisiana Supreme Court held that citizens had a right to carry arms openly: "This is the right guaranteed by the Constitution of the United States, and which is calculated to incite men to a manly and noble defence of themselves, if necessary, and of their country, without any tendency to secret advantages and unmanly assassinations."

*Heller*, 128 S. Ct. at 2809 (quoting *Chandler*, 5 La. Ann. at 490).

> At least one legal treatise invoked by the *Heller* court explained the rule succinctly:

> [I]t is generally held that statutes prohibiting the carrying of *concealed* weapons are not in conflict with these constitutional provisions, since they merely forbid the carrying of arms in a particular manner, which is likely to lead to breaches of the peace and provoke to the commission of crime, rather than contribute to public or personal defence. In some States, however, a contrary doctrine is maintained.

THE AMERICAN STUDENTS' BLACKSTONE, 84 n.11 (G. Chase ed. 1884) (emphasis original). This

understanding survives. *See, e.g. In re Application of McIntyre*, 552 A.2d 500, 501 n.1 (Del.

Super. 1988) ("[T]he right to keep and bear arms' does not of necessity require that such arms

may be kept concealed.").

Defendants and their amicus exert tremendous effort correctly noting that *concealed*

carrying may be banned, but they do not recognize that this rule is conditioned on the allowance

---

[1]*Andrews* appeared to abrogate in large part *Aymette* v. *State*, 21 Tenn. 154 (1840), upholding the prohibition on the concealed carry of daggers. But even *Aymette*, which found a state right to bear arms limited by a military purpose, deduced from that interpretation that the right to bear arms protected the open carrying of arms. *Aymette*, 21 Tenn. at 160-61.

of open carrying. Moreover, the fact is that New York law makes no distinction between open and concealed carrying. *All* carrying of handguns is regulated by the licensing system at issue. The precedent is clear: the state may regulate the time, place and manner of carrying guns, but cannot completely abrogate the right.

Defendants and their amici's insistence that the Second Amendment extends no further than the home, because that is the only context in which the Supreme Court has yet to review the Second Amendment, is not rational. *Heller* observed that "Americans valued the ancient right [to keep and bear arms] . . . for self-defense *and hunting*." *Heller*, 128 S. Ct. at 2801 (emphasis added). "The settlers' dependence on game for food and economic livelihood, moreover, undoubtedly undergirded . . .  state constitutional guarantees [of the right to arms]." *McDonald*, 130 S. Ct. at 3042 n.27. Hunting does not occur inside the home. And even the *Heller* dissenters recognized the majority to have secured a right to arms for "self-defense, *recreation, and other lawful purposes*." *Heller*, 128 S. Ct. at 2845 n.38 (Stevens, J., dissenting) (emphasis added); *id.* at 2869 (Breyer, J., dissenting). Recreational firearms use typically occurs outside the home.

But Defendants and amici's claim that the Supreme Court has never examined the Second Amendment in a public context is also factually incorrect. The Second Amendment's application outside the home dates back to *United States* v. *Miller*, 307 U.S. 174 (1939), which remanded for further proceedings the question of whether a sawed-off shotgun qualified as a constitutionally-protected  arm. The shotgun came within federal purview because it had allegedly been transported from Claremore, Oklahoma to Siloam Springs, Arkansas, *id.* at 175— obviously outside Miller's home, yet potentially within the Second Amendment's protection.

Finally with respect to this point, Defendant amici's emphasized citation of the Supreme

Court's command that the District of Columbia issue Heller "a license to carry [his handgun] in the home," Brady Br. at 4 and 6 (quoting *Heller*, 128 S. Ct. at 2822) (footnote omitted), is at best disingenuous. Heller challenged former D.C. Code § 22-4504(a) (2008), which provided that carrying a gun *in one's home* without a permit constituted a misdemeanor offense, separate and apart from the felony offense of carrying a gun in public. Former D.C. Code § 22-4506 (2008) provided for a license to carry issued at the police chief's discretion, although licenses were never issued. Heller did not seek a permit to carry a handgun in public. *See Parker* v. *District of Columbia*, 478 F.3d 370, 400 (D.C. Cir. 2007), *aff'd sub nom Heller*.

II.     GOVERNMENT OFFICIALS MAY NOT ARBITRARILY DETERMINE WHETHER AN INDIVIDUAL MAY EXERCISE FUNDAMENTAL RIGHTS.

Because the practice of bearing arms is secured by the Second Amendment, the decision to issue a license to bear arms cannot be left to the government's unbridled discretion.

> It is settled by a long line of recent decisions of this Court that an ordinance which . . . makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official -- as by requiring a permit or license which may be granted or withheld in the discretion of such official -- is an unconstitutional censorship or prior restraint upon the enjoyment of those freedoms.

*Staub* v. *City of Baxley*, 355 U.S. 313, 322 (1958) (citations omitted); *see also FW/PBS* v. *City of Dallas*, 493 U.S. 215, 226 (1990) (plurality opinion); *Shuttlesworth* v. *Birmingham*, 394 U.S. 147, 151 (1969); *Lusk* v. *Vill. of Cold Spring*, 475 F.3d 480, 486 (2d Cir. 2007). "The Supreme Court has repeatedly struck down ordinances that make the enjoyment of constitutional freedoms contingent upon the uncontrolled will of a government official." *Nakatomi Inv.* v. *City of Schenectady*, 949 F. Supp. 988, 1002 (N.D.N.Y. 1997).

The law of prior restraint, well-developed in the First Amendment context, supplies

useful guidance here. *Chester*, 2010 U.S. App. LEXIS 26508 at *24 ("we agree with those who advocate looking to the First Amendment as a guide in developing a standard of review for the Second Amendment") (citations omitted); *United States* v. *Marzzarella*, 614 F.3d 85, 89 n.4 (3d Cir. 2010); *Parker*, 478 F.3d at 399 (citation omitted). Indeed, in *Staub* and its progeny, the Supreme Court did not limit its disapproval of prior restraints to First Amendment freedoms, but spoke more generally of "freedoms which the Constitution guarantees." *Staub*, 355 U.S. at 322.[2]

"While prior restraints are not unconstitutional per se, any system of prior restraint comes to the courts bearing a heavy presumption against its constitutional validity." *Clark* v. *City of Lakewood*, 259 F.3d 996, 1009 (9th Cir. 2001) (citations omitted); *T & A's, Inc.* v. *Town Bd. of the Town of Ramapo*, 109 F. Supp. 2d 161, 172 (S.D.N.Y. 2000). In *Staub*, the Supreme Court struck down an ordinance authorizing a mayor and city council "uncontrolled discretion," *Staub*, 355 U.S. at 325, to grant or refuse a permit required for soliciting memberships in organizations. Such a permit, held the Court,

> makes enjoyment of speech contingent upon the will of the Mayor and Council of the City, although that fundamental right is made free from congressional abridgment by the First Amendment and is protected by the Fourteenth from invasion by state action. For these reasons, the ordinance, on its face, imposes an unconstitutional prior restraint upon the enjoyment of First Amendment freedoms and lays "a forbidden burden upon the exercise of liberty protected by the Constitution."

*Staub*, 355 U.S. at 325 (quoting *Cantwell* v. *Connecticut*, 310 U.S. 296, 307 (1940)); *see also*

---

[2]Not surprisingly, the Second Circuit applies established constitutional doctrines in cases involving licenses to carry firearms. *See, e.g. Kuck* v. *Danaher*, 600 F.3d 159 (2d Cir. 2010) (applying established due process framework to firearms carry license). Incredibly, in a case plainly addressing the constitutionality of a prior restraint, neither Defendants nor their amici address the law of prior restraint. Instead, they view the case only as one presenting a standard of review, and then offer that unbridled discretion itself can satisfy their proposed rational basis standard, euphemistically repackaged as "reasonable regulation."

*Largent* v. *Texas*, 318 U.S. 418, 422 (1943) (striking down ordinance allowing speech permit where mayor "deems it proper or advisable."); *Louisiana* v. *United States*, 380 U.S. 145, 153 (1965) ("The cherished right of people in a country like ours to vote cannot be obliterated by the use of laws . . . which leave the voting fate of a citizen to the passing whim or impulse of an individual registrar."). The Second Circuit has rejected a licensing officer's assessment of what may inure to the "welfare and benefit of the people of and visitors to the city" as a licensing standard. *Charette* v. *Town of Oyster Bay*, 159 F.3d 749, 754 (2d Cir. 1998) (quoting *414 Theater Corp.* v. *Murphy*, 499 F.2d 1155, 1156 n.1, 1159 (2d Cir. 1974)).

"Traditionally, unconstitutional prior restraints are found in the context of judicial injunctions or a licensing scheme that places 'unbridled discretion in the hands of a government official or agency.'" *Nat'l Fed'n of the Blind* v. *FTC*, 420 F.3d 331, 350 n. 8 (4th Cir. 2005) (quoting *FW/PBS*, 493 U.S. at 225-26); *754 Orange Ave., Inc.* v. *West Haven*, 761 F.2d 105, 114 (2d Cir. 1985) ("discretion given the police department (presumably the Chief of Police) . . . sets forth no standards for the issuance or revocation of a license"). Yet

> [t]he existence of standards does not in itself preclude a finding of unbridled discretion, for the existence of discretion may turn on the looseness of the standards or the existence of a condition that effectively renders the standards meaningless as to some or all persons subject to the prior restraint.

*Beal* v. *Stern*, 184 F.3d 117, 126 n.6 (2d Cir. 1999). "Unbridled discretion naturally exists when a licensing scheme does not impose adequate standards to guide the licensor's discretion." *Id.* (citation omitted).

"A regulation may constitute a prior restraint  even if it is not content-based." *Beal*, 184 F.3d at 124 (citation omitted). Standards governing prior restraints must be "narrow, objective

15

and definite." *Shuttlesworth*, 394 U.S. at 151. Standards involving "appraisal of facts, the exercise of judgment, [or] the formation of an opinion" are unacceptable. *Forsyth County* v. *Nationalist Movement*, 505 U.S. 123, 131 (1992) (quoting *Cantwell*, 310 U.S. at 305). Defendant's amici's clami that "[c]ourts have always looked with a more wary eye on laws that impose restrictions on broad classes of people than laws that require individual determinations," Brady Br. at 19, could not be more erroneous. It is much easier to sustain a law barring a "broad class of people" that are clearly and objectively defined, i.e., "felons and the mentally ill," *Heller*, 128 S. Ct. at 2817, than a law vesting unbridled discretion to make inherently arbitrary and capricious "individual determinations." Of course, there is nothing quite so broad as a law allowing "individual determinations," because such laws impact *everyone*, as opposed to only those members of a class, however large, described with some precision.

Public safety is invoked to justify most laws, but where a fundamental right is concerned, a mere incantation of a public safety rationale does not save arbitrary licensing schemes.

> [W]e have consistently condemned licensing systems which vest in an administrative official discretion to grant or withhold a permit upon broad criteria unrelated to proper regulation of public places . . . There are appropriate public remedies to protect the peace and order of the community if appellant's speeches should result in disorder or violence.

*Kunz* v. *New York*, 340 U.S. 290, 294 (1951); *Shuttlesworth*, 394 U.S. at 153; *Beal*, 124 F.3d at 126 n.6. "But uncontrolled official suppression of the privilege cannot be made a substitute for the duty to maintain order in connection with the exercise of the right." *Hague* v. *Committee for Indus. Org.*, 307 U.S. 496, 516 (1937) (plurality opinion).

> Even when the use of its public streets and sidewalks is involved, therefore, a municipality may not empower its licensing officials to roam essentially at will, dispensing or withholding permission to speak, assemble, picket, or parade, according to their own opinions regarding the potential effect of the activity in question on the

16

"welfare," "decency," or "morals" of the community.

*Shuttlesworth*, 394 U.S. at 153.

For an example of these prior restraint principles applied in the Second Amendment

context, the Court need look no further than *Heller* itself. Although the case is best known for its

challenges to a direct handgun ban and a functional firearms ban, Heller also challenged

application of a third law, for functioning as an indirect handgun ban: the District of Columbia's

requirement that handgun registrants obtain a discretionary (but never issued) permit to carry a

gun inside the home. *See discussion supra*, at 14. The Supreme Court held that the city had no

discretion to refuse issuance of the permit: "Assuming that Heller is not disqualified from the

exercise of Second Amendment rights, the District must permit him to register his handgun and

must issue him a license to carry it in the home." *Heller*, 128 S. Ct. at 2822.  The city could deny

Heller a permit if it could demonstrate there was some constitutionally valid reason for denying

him Second Amendment rights. But the city could not otherwise refuse to issue the permit. The

city repealed its home carry permit requirement.[3]

The same logic governs this case. New York's "proper cause" requirement for issuance of

a handgun carry permit, or at least, Defendants' application of that requirement, fails

constitutional scrutiny as an impermissible prior restraint. The right to carry a firearm for self-

defense is plainly among the "freedoms which the Constitution guarantees." *Staub*, 355 U.S. at

322. Accordingly, the government bears the burden of proving that the an applicant may not have

a permit, for some constitutionally-compelling reason defined by application of standards that are

---

[3]The city also adopted a complete ban on carrying handguns in public, prompting
additional litigation. *Palmer* v. *District of Columbia*, U.S. Dist. Ct. D.C. No. 09-CV-1482-HHK.

"narrow, objective and definite." *Shuttlesworth*, 394 U.S. at 151. Defendants may not engage in the "appraisal of facts, the exercise of judgment, [or] the formation of an opinion." *Forsyth County*, 505 U.S. at 131.

The determination that Plaintiffs, and others, do not have a "proper cause" to exercise their constitutional rights is insufficient to deprive individuals of this important right. "Proper cause" is plainly among the impermissible "illusory 'constraints'" amounting to "little more than a high-sounding ideal." *City of Lakewood* v. *Plain Dealer Publishing Co.*, 486 U.S. 750, 769-70 (1988). Defendants' demand that Plaintiffs demonstrate "a need for self protection distinguishable from that of the general public" is quite beside the point—the general public is entitled to Second Amendment rights, and the interest in self-defense secured by that provision is held by everyone. Detmer's application was denied merely because Defendant Lorenzo saw "no justification" to issue a permit. Any finding that Plaintiffs' need for self-defense must be subordinated to some state interest is unsupported by any narrow, objective, or definite standards that can be subjected to meaningful review.

The desire for self-defense, regardless of Defendants' opinions on the subject, is all the "proper cause" required of Plaintiffs by the Second Amendment to carry a firearm. Any adverse licensing decision barring exercise of this right must be rendered according to constitutionally adequate standards.

Plaintiffs are also constrained to observe that Penal Law § 400.00(1)(b) requires that gun carry license applicants be "of good moral character." Defendants do not apparently enforce this provision as an independent requirement, but their amici expressly welcome unbridled licensing discretion because "County officials" are allegedly "more likely to be familiar with the

18

backgrounds and personalities of the members of their communities than [distant] courts or juries." Brady Br. at 19.[4] In 2011, it is clear that assessments of "personalities" and "moral character," at least absent further definition, cannot enter a licensing discussion. The Supreme Court long ago rejected the constitutionality of an ordinance demanding "good character" as a prerequisite for a canvassing license. *Schneider* v. *New Jersey (Town of Irvington)*, 308 U.S. 147, 158 (1939). Absent further definition, courts typically reject all forms of "moral character" standards for the licensing of fundamental rights. *MD II Entertainment* v. *City of Dallas*, 28 F.3d 492, 494 (5th Cir. 1994); *Genusa* v. *Peoria*, 619 F.2d 1203, 1217 (7th Cir. 1980); *N.J. Envtl. Fed'n* v. *Wayne Twp.*, 310 F. Supp. 2d 681, 699 (D.N.J. 2004); *Ohio Citizen Action* v. *City of Mentor-On-The- Lake*, 272 F. Supp. 2d 671, 682 (N.D. Ohio 2003); *Tom T., Inc.* v. *City of Eveleth*, 2003 U.S. Dist. LEXIS 3718 at *14-15 (D. Minn. March 11, 2003); *R.W.B. of Riverview, Inc.* v. *Stemple*, 111 F. Supp. 2d 748, 757 (S.D.W.Va. 2000); *Elam* v. *Bolling*, 53 F. Supp. 2d 854, 862 (W.D.Va. 1999); *Ohio Citizen Action* v. *City of Seven Hills*, 35 F. Supp. 2d 575, 579 (N.D. Ohio 1999); *Broadway Books, Inc.* v. *Roberts*, 642 F. Supp. 486, 494-95 (E.D.Tenn. 1986); *Bayside Enterprises, Inc.* v. *Carson*, 450 F. Supp. 696, 707 (M.D. Fla. 1978).

III.   CONDITIONING THE EXERCISE OF SECOND AMENDMENT RIGHTS ON PROOF OF "PROPER CAUSE" FOR SELF-DEFENSE VIOLATES THE EQUAL PROTECTION CLAUSE.

   A.   The Second Amendment Rights of Law-Abiding, Responsible Individuals Are Subject to Strict Scrutiny Review.

The Second Amendment secures a fundamental right. *McDonald*, 130 S. Ct. at 3042

---

[4]Plaintiffs do not claim that courts or juries would have any licensing discretion, either. The notion that any county official could adequately assess the "backgrounds and personalities" of all individuals in Westchester County for any purpose, let alone to determine suitability for exercise of a constitutional right, is not realistic in any event.

(plurality opinion) & 3059 (Thomas, J., concurring). "[C]lassifications affecting fundamental rights are given the most exacting scrutiny." *Clark* v. *Jeter*, 486 U.S. 456, 461 (1988) (citation omitted). Under this analysis, the government carries the burden of proving the law "furthers a compelling interest and is narrowly tailored to achieve that interest," *Citizens United* v. *FEC*, 130 S. Ct. 876, 898 (2010) (citation omitted), a burden that cannot be met where less restrictive alternatives are available to achieve the same purpose. *Ashcroft* v. *ACLU*, 542 U.S. 656, 666 (2004); *see also United States* v. *Engstrum*, 609 F. Supp. 2d 1227, 1331-32 (D. Utah 2009) (applying strict scrutiny in Second Amendment analysis).

"The right to equal protection of the laws, in the exercise of those freedoms of speech and religion protected by the First and Fourteenth Amendments, has a firmer foundation than the whims or personal opinions of a local governing body." *Niemotko* v. *Maryland*, 340 U.S. 268, 272 (1951). Likewise, with the exercise of fundamental Second Amendment freedoms. Defendants' whims and personal opinions as to who should enjoy Second Amendment rights classify individuals in the exercise of these rights in a completely arbitrary, standardless fashion.

Of course, the nature of the restriction or violation may impact the standard of review. For example, Plaintiffs would contend that some carrying restrictions (e.g., restrictions on the carrying of guns in "sensitive places") inherently call for time, place, and manner review. Cases addressing categorical prohibitions on a type of arm are adjudicated under *Heller*'s "common use" test for protected arms. And at least two appellate courts apply intermediate scrutiny in Second Amendment cases questioning laws of the type *Heller* identified as presumptively lawful. *Chester*, 2010 U.S. App. LEXIS 26508 at *26-27; *Skoien*, 614 F.3d at 641.

But intermediate scrutiny is inapplicable in the Second Amendment as a general matter, as that test applies to an enumerated right under circumstances where the right's exercise is "of less constitutional moment." *Cent. Hudson Gas & Elec. Corp.* v. *Public Serv. Comm'n*, 447 U.S. 557, 563 n.5 (1980). Not surprisingly, courts have not reserved for peaceful, law-abiding people a *lower* level of review than that which is employed for violent felons, drug abusers, and other dangerous individuals arguably covered by a presumptive exception. To the contrary, the Fourth Circuit applied intermediate, rather than strict scrutiny, to a domestic violence misdemeanant only because it viewed the Second Amendment's core as reaching "*law-abiding,* responsible citizen[s]," *Chester*, 2010 U.S. App. LEXIS 26508 at *26 (emphasis original). The Seventh Circuit has suggested overbreadth is a possible alternative mode of analysis. *United States* v. *Williams*, 616 F.3d 685, 693 (7th Cir. 2010); *cf. United States* v. *Yancey*, 621 F.3d 681, 685 (7th Cir. 2010) ("felon-in-possession laws could be criticized as 'wildly overinclusive'").

Thus, the proper standard of review to be applied to Plaintiffs' equal protection claim is strict scrutiny. Arguably, were Plaintiffs felons or drug abusers, the standard could be reduced to intermediate scrutiny. But under no circumstance is rational basis available. The Supreme Court has made clear that the rational basis test "could not be used to evaluate the extent to which a legislature may regulate a specific, enumerated right, be it the freedom of speech, the guarantee against double jeopardy, the right to counsel, *or the right to keep and bear arms*." *Heller*, 128 S. Ct. at 2818 n.27 (citing *United States* v. *Carolene Products Co.*, 304 U.S. 144, 152, n. 4 (1938)) (emphasis added). "If a rational basis were enough, the Second Amendment would not do anything." *Skoien*, 614 F.3d at 641. "[R]ational-basis review . . . has been rejected by *Heller*." *Chester*, 2010 U.S. App. LEXIS 26508 at *17. "[I]t remains certain that the federal government

21

may not restrain the freedom to bear arms based on mere whimsy or convenience." *United States*

v. *Everist*, 368 F.3d 517, 519 n.1 (5th Cir. 2004).[5]

Undeterred by *Heller*'s explicit rejection of rational basis, amici repackage the test as

"reasonable regulation," based on the manner in which state courts have allegedly applied

analogous state right to arms provisions. Plaintiffs would disagree with this assessment of how

state courts evaluate right to arms provisions. *See, e.g.* David Kopel & Clayton Cramer, *State*

*Court Standards of Review for the Right to Keep and Bear Arms*, 50 Santa Clara L. Rev. 1

(2010). But having federal courts defer to state authorities on the question of how to best secure a

federal constitutional right contradicts the very logic of the Fourteenth Amendment, which was

ratified precisely because state courts were not upholding basic civil rights, including the right to

keep and bear arms.

In any event, amici's description of this allegedly new test makes it clear that it speaks of

rational basis review. Amici offer that "[t]his Court is obligated to uphold legislation where there

is a reasonable basis to do so," Brady Br. at 3, and that *Heller* "foreclosed any form of heightened

scrutiny." *Id.* at 4. Blithely ignoring *Heller*'s explicit instruction to the contrary, amici offer that

with respect to gun laws, "lower courts should 'presume' that state statutes are valid." Id. at 7;

*contra Heller*, 128 S. Ct. at 2818 n.27 (questioning presumption of constitutionality "when

legislation appears on its face to be within a specific prohibition of the Constitution, such as

those of the first ten amendments") (quoting *Carlone Products*, 304 U.S. at 152 n.4.)).

---

[5]The Fifth Circuit utilizes a version of strict scrutiny to evaluate gun laws under the
Second Amendment, permitting regulations that are "limited, narrowly tailored specific
exceptions or restrictions for particular cases that are reasonable and not inconsistent with the
right of Americans generally to individually keep and bear their private arms as historically
understood in this country." *United States* v. *Emerson*, 270 F.3d 203, 261 (5th Cir. 2001).

Nonetheless, amici advises that its proposed "reasonable regulation" test is distinguished from the rational basis test because the former "does not permit states to prohibit all firearms ownership." Brady Br. at 17. In other words, the test is so deferential as to permit *any* regulation that falls short of a complete prohibition. But the argument does not aid amici. If the Second Amendment protects (as it surely does) the bearing of arms, a licensing system under which virtually any and all applicants may be denied access to the right at the government's whim "eviscerate[s]" the right, "render[s] it nugatory," and "results in the effective 'destruction'" of the right. Brady Br. at 18 (citations omitted). As the Supreme Court recognized in the First Amendment context, "[i]t is of no moment that the statute does not impose a complete prohibition. The distinction between laws burdening and laws banning speech is but a matter of degree." *United States* v. *Playboy Entm't Group*, 529 U.S. 803, 812 (2000).

Any doubt as to whether "reasonable regulation" equals "rational basis" is dispelled by the manner in which amici defend the use of absolutely unlimited licensing discretion: by heavy resort to social science. Although the data overwhelmingly supports the conclusion that the Second Amendment secures a beneficial public policy, *see, e.g.* Florenz Plassman & John Whitley, *Comment: Confirming "More Guns, Less Crime,"* 55 STANFORD L. REV. 1313, 1365 (2003) ($2-$3 billion average crime-reduction benefit in first five years of liberalized gun carry laws), Plaintiffs see no reason to fully respond in kind. This is a court of law, not a court of social science.[6] Under the guise of serious constitutional analysis, Defendants and their amici would have the Court rubber-stamp the many learned and serious intonations of government "experts"

_____

[6] Judicial assessment of what is scientifically more desirable can be a very poor substitute for recognizing rights based on our nation's historic traditions of liberty. *See, e.g. Buck* v. *Bell*, 274 U.S. 200 (1927).

who "prove" that guns, after all, are unaccountably dangerous and must not be carried absent special permission of the authorities. "The right to keep and bear arms, however, is not the only constitutional right that has controversial public safety implications. All of the constitutional provisions that impose restrictions on law enforcement and the prosecution of crimes fall into the same category." *McDonald*, 130 S. Ct. at 3045. "Like the First, [the Second Amendment] is the very *product* of an interest-balancing by the people . . ." *Heller*, 128 S. Ct. at 2821 (emphasis original). Even were there meaningful distinction between rational basis and "reasonable regulation," such a deferential standard could not apply to a "fundamental" right. "The phrase [fundamental personal rights and liberties] is not an empty one and was not lightly used." *Schneider*, 308 U.S. at 161.

B.      The "Proper Cause" Standard Fails Any Level of Scrutiny.

Although the correct standard here may be strict scrutiny, the "proper cause" standards would fail *any* level of review, as there is never a legitimate state interest, let alone a compelling or important one, in depriving people of the means of self-defense. The state may have an interest in reducing gun violence and accidents, but it cannot presume that the exercise of a constitutional right will cause the sort of harm it is allowed to curtail. Defendants cannot point to the impact of their practice – disarmament, and hence the deprivation of constitutional rights – as their interest. *Simon & Schuster, Inc.* v. *N.Y. State Crime Victims Bd.*, 502 U.S. 105, 120 (1991).

Nor is the arbitrary licensing practice narrowly tailored to any interest in public safety. Defendants are plainly incapable of predicting crime. Defendants cannot predict who will face, much less when or where, a situation in which the right to self-defense would be desperately needed. Crime is largely random and unpredictable. Moreover, Defendants' insistence that

24

Plaintiffs "demonstrate[] an exceptional need for self protection distinguishable from that of the general public," Exh. C, E, F, G, H, is entirely irrational. Individuals victimized once may never be victimized again, while an individual's first random, unforeseeable encounter with a violent criminal often leads to death or seriously bodily harm. The Second Amendment allows each individual, not Defendants, to determine whether he or she "faces any danger of any kind that would necessitate the issuance of a full carry firearm license." Exh. C, F, H.

Finally, less-restrictive alternatives are plainly available to Defendants. Defendants already conduct background checks on permit applicants, require applicants to complete approved training, and remain free to ban guns from being carried in "sensitive places" or in a dangerous manner. Defendants have many narrowly-tailored tools at their disposal for addressing compelling public safety interests in the regulation of firearms without arbitrarily depriving individuals of their fundamental rights.

CONCLUSION

However else Defendants may license the right to carry a handgun for self-defense, conditioning a license on "proper cause" or "good moral character" is simply unacceptable under well-established prior restrain and equal protection principles.

Dated: January 5, 2011                           Respectfully submitted,

Alan Gura                                        Vincent Gelardi
Gura & Possessky, PLLC                           Gelardi & Randazzo
101 N. Columbus Street, Suite 405                800 Westchester Avenue, Suite S-608
Alexandria, VA 22314                             Rye Brook, NY 10573
703.835.9085/Fax 703.997.7665                    914.251.0603/Fax 914.253.0909
Lead Counsel  (Pro Hac Vice)                     Local Counsel

By: _____
Alan Gura                                        Attorneys for Plaintiffs

25