UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
ALAN KACHALSKY, CHRISTINA NIKOLOV, ERIC
DETMER, JOHNNIE NANCE, ANNA MARCUCCI-
NANCE, and SECOND AMENDMENT                         Case No.: 10 CV 05413 (CS)
FOUNDATION, INC.,
                                                    ECF Case
                                      Plaintiffs,

-against-

SUSAN CACACE, JEFFREY A. COHEN, ALBERT
LORENZO, ROBERT K. HOLDMAN, and COUNTY
OF WESTCHESTER,

                                      Defendants.
------------------------------------------------------------------x


MEMORANDUM OF LAW IN OPPOSITION TO THE PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT


ROBERT F. MEEHAN
Westchester County Attorney
Attorney for Defendant County of Westchester
148 Martine Avenue, 6th Floor
White Plains, New York 10601


Melissa-Jean Rotini (MR-4948)
Assistant County Attorney
     Of Counsel

## PRELIMINARY STATEMENT

As is the case with the Amended Complaint in this matter, the Summary Judgment Motion by the Plaintiffs seeks no relief which the County of Westchester can provide, and therefore, the County is not a proper party to this action. Should the County's separate Motion to Dismiss be denied, and the Court finds that the County's investigations are sufficient to implicate the County in rights violations, then Summary Judgment must be denied as against the County because any rights violations argued in the Plaintiffs Motion for Summary Judgment are not due to actions of the County.

## STATEMENT OF FACTS

The County respectfully refers the Court to the Statement of Facts provided in the County's Motion to Dismiss, the Counter Rule 56.1 Statement submitted in connection with this motion for Summary Judgment, and the Declaration of Melissa-Jean Rotini, incorporated herein by reference.

## ARGUMENT

## SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure ("FRCP"), a party "may move, with or without supporting affidavits, for summary judgment on all or part of the claim." FRCP 56(b). Summary judgment should be granted if the evidence demonstrates that there are no genuine issues of material fact, <u>and</u> that the moving party is entitled to judgment as a matter of law.

"An issue of fact is genuine when a reasonable jury could return a verdict for the nonmoving party, and facts are material to the outcome of the particular litigation if the substantive law at issue so renders them." *Shabazz v. Pico*, 994 F.Supp. 460, 466 (S.D.N.Y.

1

1998) (internal quotation and citation omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776 (2007).

## NEW YORK STATE PISTOL REGULATIONS DO NOT VIOLATE SECOND AMENDMENT RIGHTS

As this Court is well aware, the Supreme Court in *District of Columbia v. Heller*, 554 U.S. ___, 128 S. Ct. 2783 (2008) ("*Heller*") reviewed several laws of the District of Columbia that, when read together, essentially prohibited gun ownership and, where ownership was allowed, prohibited the carrying of a loaded, operable firearm within one's home. The *Heller* Court reviewed: D.C. Code §7-2502.01(a), D.C. Code §7-2502.02(a)(4), D.C. Code §22-4504l, and D.C. Code §7-2507.02.

D.C. Code §7-2502.01(a) as reviewed in *Heller* made it unlawful for any person to possess an unregistered firearm within the District, stating:

> (a) Except as otherwise provided in this unit, no person or organization in the District of Columbia ("District") shall receive, possess, control, transfer, offer for sale, sell, give, or deliver any destructive device, and no person or organization in the District shall possess or control any firearm, unless the person or organization holds a valid registration certificate for the firearm. A registration certificate may be issued:
>
> (1) To an organization if: (A) The organization employs at least 1 commissioned special police officer or employee licensed to carry a firearm whom the organization arms during the employee's duty hours; and (B) The registration is issued in the name of the organization and in the name of the president or chief executive officer of the organization;
>
> (2) In the discretion of the Chief of Police, to a police officer who has retired from the Metropolitan Police Department; or

2

>   (3) In the discretion of the Chief of Police, to the Fire Marshal and any
>   member of the Fire and Arson Investigation Unit of the Fire Prevention
>   Bureau of the Fire Department of the District of Columbia, who is designated
>   in writing by the Fire Chief, for the purpose of enforcing the arson and fire
>   safety laws of the District of Columbia.

The prior D.C. Code §7-2502.02(a)(4) barred the registration of pistols not registered before September 24, 1976, with limited exceptions. A "pistol" was defined as "any firearm originally designed to be fired by use of a single hand or with a barrel less than 12 inches in length" *See* D.C. Code § 7-2501.01(12). The text of D.C. Code §7-2502.02(a)(4) was:

>   (a) A registration certificate shall not be issued for a:...
>   (4) Pistol not validly registered to the current registrant in the District prior to
>   September 24, 1976, except that the provisions of this section shall not apply
>   to any organization that employs at least 1 commissioned special police
>   officer or other employee licensed to carry a firearm and that arms the
>   employee with a firearm during the employee's duty hours or to a police
>   officer who has retired from the Metropolitan Police Department...

*Heller* also reviewed D.C. Code §22-4504l, which prohibited one from carrying a pistol without a license, stating:

>   (a) No person shall carry within the District of Columbia either openly or
>   concealed on or about their person, a pistol, without a license issued pursuant
>   to District of Columbia law, or any deadly or dangerous weapon capable of
>   being so concealed....

The effect of the combined laws was to bar ownership or use of firearms within the District of Columbia. The *Heller* Court held that the Second Amendment did not allow for a complete bar such as was set forth in the D.C. Code, stating that: "the absolute prohibition of handguns held and used for self-defense in the home" was unconstitutional. *Heller, supra* at *2822. However, the Court specifically stated that D.C. could use "a variety of tools for

3

combating th[e] problem [of handgun violence], including some measures regulating handguns." *Id.* at *2822.

As the District of Columbia is governed by federal law, the ruling in *Heller* left open the question of whether the Second Amendment could be applied to various state laws regarding handgun ownership. In 2010, the Supreme Court addressed this issue in reviewing Chicago and Oak Park's statutory bans on handguns in *McDonald v. Chicago*, 561 U.S. ___, 130 S.Ct. 2783 (2010) ("*McDonald*").

The Court in *McDonald* reviewed a Chicago law that placed such restrictions on registration of handguns, that it essentially prohibited the keeping of handguns in the home within the City of Chicago. Chicago Code §8-20-040(a) provided that "[n]o person shall . . . possess . . . any firearm unless such person is the holder of a valid registration certificate for such firearm." The law did not allow for registration of certain firearms, including most handguns; rifles and shotguns were able to be registered under Chicago Code §8-20-050.

In that same case, the Court also reviewed an Oak Park law that made it "unlawful for any person to possess…any firearm [including] pistols, revolvers, guns, and small arms". Oak Park Code §27-2-1 and §27-1-1.

The *McDonald* Court ultimately found that the Second Amendment extended to the several states and, therefore, the laws at issue were unconstitutional because they resulted in bans of handgun ownership in the home. However, the Court cautioned that:

> It is important to keep in mind that *Heller*, while striking down a law that prohibited the possession of handguns in the home, recognized **the right to keep and bear arms is not 'a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose.'** *McDonald*, quoting *Heller, supra* at *2816 (emphasis added).

4

The *McDonald* Court reiterated the limited ruling of *Heller* "that the Second Amendment protects the right to possess a handgun in the home for the purpose of self-defense". Although the Court made *Heller* applicable to the States, incorporating the Second Amendment rights into the Due Process Clause of the Fourteenth Amendment, the Court clearly advised that such incorporation "does not imperil every law regulating firearms." *McDonald, supra.*

Despite the Plaintiffs' contention, "...*Heller* did not endorse a right to carry weapons outside the home. Nor has the Court done so in its more recent decision in *McDonald*." *Mack v. The United States*, --- A.2d. ---, Case No.: 08-CF-603, pg. 23 (D.C. November 4, 2010). As further explained by the Court of Appeals in *Mack*:

> ...*Heller* did not recognize a right to carry concealed weapons...In *Heller* the Supreme Court made clear that 'the right secured by the Second Amendment is not unlimited,' and it specifically acknowledged that laws prohibiting the carrying of concealed weapons have long been upheld as appropriate limits on that right. 128 S.Ct. at 2816 ('[T]he majority of 19th century courts to consider the question held that prohibitions on carrying concealed weapons were lawful.'). *See Robertson v. Baldwin*, 165 U.S. 275, 281-82 (1897) ('[T]he right of the people to keep and bear arms ... is not infringed by laws prohibiting the carrying of concealed weapons ....' (dictum)). In short, it simply is not obvious that the Second Amendment secures a right to carry a concealed weapon.
>
> *Mack, supra,* at 23-24 (quotations and internal citations in original).

Courts reviewing *Heller* have found that the decision itself warned against an overreaching approach to its interpretation.

> The language [of *Heller*] warns readers not to treat *Heller* as containing broader holdings than the Court set out to establish: that the Second Amendment creates individual rights, one of which is keeping operable handguns at home for self-defense. What other entitlements the Second Amendment creates, and what regulations legislatures may establish, were left open. The opinion is not a

5

comprehensive code; it is just an explanation for the Court's disposition. Judicial opinions must not be confused with statutes, and general expressions must be read in light of the subject under consideration. *U.S. v. Skoien*, 614 F.3d 638, 640 (C.A.7 (Wis.), 2010), citing *Zenith Radio Corp. v. United States*, 437 U.S. 443, 462, 98 S.Ct. 2441, 57 L.Ed.2d 337 (1978).

It is clear that regulations of firearms are permitted so long as the regulation does not act as a complete ban on firearm ownership for all persons. "*Heller* and the 19th-century cases it relied upon instruct that concealed weapons restrictions cannot be viewed in isolation; they must be viewed in the context of the government's overall scheme." *Peruta v. County of San Diego*, --- F.Supp.2d ----, 2010 WL 5137137, 6 (S.D.Cal., 2010). In this matter, Plaintiffs Detmer, Nance and Marcucci-Nance all have pistol permit licenses with restrictions. Therefore, it is evident that the New York State Regulations for Pistol Permit Licenses do not act as a complete ban on firearm ownership, protecting the Second Amendment rights of individuals within the State.

### THE COUNTY DOES NOT DETERMINE PISTOL PERMIT APPLICATIONS

As has been the case for each step of this matter, the Plaintiffs generally discuss the Defendants without specifying to which government entity Plaintiffs are addressing their claims. As the County does not make any determinations, the discretion which the Plaintiffs find objectionable is not the discretion of the County. In fact, the State Defendants' Declarations assert that they are the decision-makers and outline the materials they review in connection with the decision. *See* Declarations of Co-Defendant Judges attached to the Declaration of Anthony J. Tomari, wherein each asserts s/he is "presented with a packet of materials, including the application and the applicant's supporting documents; the results of any and all criminal and mental health background checks performed by the Department of Public Safety for Westchester,

who, pursuant to Penal Law §400.00(4) is charged with investigating an applicant's background and application statements; and the recommendations of the various levels of the Department of Public Safety." *See also* Declaration of Bruce Bellom attached to the Declaration of Melissa-Jean Rotini as Exhibit A in connection with this Motion Opposition, incorporated herein by reference.

The decisions of these Judges, sitting as licensing officers, are subject to review to assure that the decisions are not arbitrary and capricious as the Plaintiffs assert. *See* Plaintiffs' Motion for Summary Judgment, Point II. The judicial review of these pistol permit licensing decisions distinguish the Co-Defendants' decisions from the caselaw that the Plaintiffs site regarding "unbridled discretion". *Id.* at pg. 15.

The County plays no role in determining the applications, but merely engages in an investigation and provides those materials, along with an investigative summary, to the licensing officers. *See Velez v. DiBella*, --- N.Y.S.2d ----, 2010 WL 3910479 (N.Y.A.D. 2d Dept.). The determinations and their effect on the purported rights of the Plaintiffs, if any, is best addressed by the Co-Defendants, and as such, the County defers to the State's Briefing on this Point.

## THE PROPER CAUSE STANDARD DOES NOT VIOLATE THE EQUAL PROTECTION CLAUSE & THE APPROPRIATE LEVEL OF SCRUTINY

Following the Supreme Court decision in *Heller*, a further action was brought in the District Court for the District of Columbia. *Heller v. District of Columbia*, 698 F.Supp.2d 179 (D.D.C., 2010) ("*Heller 2010*"), where defendants were granted summary judgment upholding the current D.C. firearm regulations. In reviewing the applicable caselaw to determine the level of scrutiny to apply, the Court held:

7

> [T]o assess the constitutionality of each of the challenged provisions, the court will begin by determining whether the provision at issue implicates the core Second Amendment right. If it does not, then the court will uphold the regulation. If the regulation does, however, implicate the core Second Amendment right, the court will apply intermediate scrutiny to determine whether the measure is substantially related to an important governmental interest. *Heller 2010* at 188.

The decision in *Heller*, as made applicable to the several states by the decision in *McDonald*, was limited in that it held unconstitutional "the absolute prohibition of handguns held and used for self-defense in the home". *Heller, supra* at 2822. The State Law at issue merely sets forth a reasonable regulation for the unrestricted carrying of a pistol; it does not prohibit the carrying of pistol within ones home for the purpose of self-defense.[1] Therefore, the Second Amendment right to defend one's self in one's home is not implicated by the State Law at issue. Moreover, the regulation does not constitute a complete ban on the carrying of firearms.

Assuming *arguendo* this Court were to find that a Second Amendment Right is implicated by virtue of the mere regulation of the unrestricted carrying of pistols outside of the home, the County asserts that the strict scrutiny of the regulation is not required.

> Contrary to Plaintiffs' suggestion, fundamental constitutional rights are not invariably subject to strict scrutiny. In the First Amendment context, for example, content-neutral restrictions on the time, place and manner of speech are subject to a form of intermediate scrutiny. *See United States v. O'Brien*, 391 U.S. 367, 377, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). Other restrictions on speech may be held to an even lower standard of review.

---

[1] A denial of an unrestricted or full carry pistol permit license does not prohibit a person for possessing a pistol in the home as Penal Law §400.00(2) provides for various restricted permits:
> "(a) have and possess in his dwelling by a householder; (b) have and possess in his place of business by a merchant or storekeeper; (c) have and carry concealed while so employed by a messenger... (d) have and carry concealed by a justice of the supreme court...or ... New York city civil court or the New York city criminal court; (e) have and carry concealed while so employed by a regular employee of an institution ... correction...(f) [at issue herein]have and carry concealed, without regard to employment or place of possession, by any person when proper cause exists for the issuance thereof; and (g) have, possess, collect and carry antique pistols..."

8

> *See Int'l Soc'y for Krishna Consciousness v. Lee*, 505 U.S. 672, 678-79, 112 S.Ct. 2701, 120 L.Ed.2d 541 (1992) (noting that limitations on expressive activity conducted in a nonpublic forum need only be reasonable, as long as they are viewpoint neutral); *Cornelius v. NAACP Legal Defense & Ed. Fund, Inc.*, 473 U.S. 788, 806, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985) (same). Drawing on First Amendment jurisprudence, several courts have applied intermediate scrutiny in the Second Amendment context. *See, e. g., United States v. Smith*, 2010 WL 3743842, at *8 (S.D.W.Va. Sept. 20, 2010); *United States v. Walker*, 709 F.Supp.2d 460, 466 (E.D.Va.2010); *United States v. Marzzarella*, 595 F.Supp.2d 596 (W.D.Pa. 2009). Accordingly, Plaintiffs are wrong in suggesting that the Court must apply strict scrutiny. *Peruta, supra* at 7.

At best, the "intermediate scrutiny" test applies and the State Law at issue is "substantially related to an important governmental interest". *See Heller 2010.* Intermediate scrutiny requires that "the degree of fit between [the law at issue] and the well-established goal of promoting public safety need not be perfect; it must only be substantial." *Heller 2010, supra* at 191 (internal citations omitted). Further, the *Heller 2010* Court notes that:

> Even in cases such as this one in which laws are subjected to intermediate scrutiny because they implicate constitutional rights, the Supreme Court has specified that 'deference must be accorded to [legislative] findings as to the harm to be avoided and to the remedial measures adopted for that end, lest [the courts] infringe on traditional legislative authority to make predictive judgments when enacting nationwide regulatory policy.' *Heller 2010, supra* at 191, *citing Turner v. FCC*, 520 U.S. 180, 195, 117 S.Ct. 1174 (1997).

The State's substantial interest in regulating firearm safety, and the reasons for the regulations are clear and numerous. The need for the reduction in crime and gun violence is evident, and regulation of handguns is one method of achieving those ends. Plaintiffs' insinuate that because no one can predict violence the regulation of handguns is without merit as a means to curb violence. (Plaintiffs MOL, pg. 24). Although this regulation of firearms may not be the

9

perfect solution to the dangers of crime and gun violence, it is a step that governments can take to support the legitimate role of government to protect the interests and safety of its citizenry.

Again, due to the Plaintiffs' continual assertion that the County is somehow responsible for the State Law, the County is in the position of having to speak for the State. As the County is not the regulator in this instance, the County defers to the State as to the specific reasons for the regulation, and incorporates its response herein by reference.

## CONCLUSION

Based upon the foregoing, the County of Westchester respectfully requests that Summary Judgment be denied to the Plaintiffs, and that the Amended Complaint be dismissed with prejudice and for such other and further relief as to this Court may deem just and proper.

Dated: White Plains, New York
January 26, 2011

ROBERT F. MEEHAN
Westchester County Attorney
By:

_____
Melissa Jean Rotini (MR-4948)
Assistant County Attorney, of Counsel
148 Martine Avenue, 6th Floor
White Plains, New York 10601
914-995-3630