IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
WHITE PLAINS DIVISION


ALAN KACHALSKY, et al.,          :          Case No. 10-CV-05413-CS
                                 :
              Plaintiffs,        :          Hon. Cathy Seibel
                                 :
        v.                       :
                                 :
SUSAN CACACE,                    :
                                 :
              Defendants.        :
                                 :
-----------------------------------------------------X



MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND IN REPLY TO
DEFENDANTS' OPPOSITION TO PLAINTIFFS' SUMMARY JUDGMENT MOTION

Alan Gura*                              Vincent Gelardi
Gura & Possessky,PLLC                   Gelardi & Randazzo
101 N. Columbus Street, Suite 405       800 Westchester Avenue, Suite S-608
Alexandria, VA 22314                    Rye Brook, NY 10573
703.835.9085/Fax 703.997.7665          914.251.0603/Fax 914.253.0909
*Lead Counsel, Admitted Pro Hac Vice    Local Counsel

TABLE OF CONTENTS

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

     I.     THE SECOND AMENDMENT EXTENDS BEYOND THE HOME. . . . . . . . . . 3

     II.    SOCIAL SCIENCE DOES NOT SUBSTITUTE FOR THE CONSTITUTION. . 5

     III.   THE COURT CANNOT SIMPLY DEFER TO LEGISLATIVE
               JUDGMENTS THAT INFRINGE FUNDAMENTAL
               CONSTITUTIONAL RIGHTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

            A.     Defendants Exercise Unlawfully Excessive Licensing Discretion. . . . . . . 9

            B.     Defendants Violate Plaintiffs' Right to Equal Protection. . . . . . . . . . . . 10

     IV.   THE ALLEGED AVAILABILITY OF OTHER ARMS IS IRRELEVANT. . . . 16

     V.    THE SECOND AMENDMENT IS "FULLY APPLICABLE" TO
               THE STATES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

TABLE OF AUTHORITIES

Cases

*Alexander* v. *Louisiana*,
    405 U.S. 625 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Apodaca* v. *Oregon*,
    406 U.S. 404 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Burdick* v. *Takushi*,
    504 U.S. 428 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Cent. Hudson Gas & Elec. Corp.* v. *Public Serv. Comm'n*,
    447 U.S. 557 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*City of Chicago* v. *Morales*,
    527 U.S. 41 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*City of Cleburne* v. *Cleburne Living Ctr.*,
    473 U.S. 432 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*City of Los Angeles* v. *Alameda Books*,
    535 U.S. 425 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Commonwealth* v. *Blanding*,
    20 Mass. 304 (1825) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*District of Columbia* v. *Heller*,
    128 S. Ct. 2783 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

*Hawaii Housing Authority* v. *Midkiff*,
    467 U.S. 229 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*J.A. Croson* v. *City of Richmond* v. *J.A. Croson Co.*,
    488 U.S. 469 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Lewis* v. *Casey*,
    518 U.S. 343 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Malloy* v. *Hogan*,
    378 U.S. 1 (1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Marbury* v. *Madison*,
    5 U.S. (1 Cranch) 137 (1803) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*McDonald* v. *City of Chicago*,
    130 S. Ct. 3020 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

*Miller* v. *United States*,
    307 U.S. 174 (1939) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Parker* v. *District of Columbia*,
    478 F.3d 370 (D.C. Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 16

*Patsone* v. *Pennsylvania*,
    232 U.S. 138 (1914). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Peruta* v. *County of San Diego*,
    2010 U.S. Dist. LEXIS 130878 (S.D. Cal. Dec. 10, 2010). . . . . . . . . . . . . . . . . . . 13, 14

*Plyler* v. *Doe*,
    457 U.S. 202 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Republica* v. *Oswald*,
    1 U.S. (1 Dall.) 319 (Pa. 1788) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Robinson* v. *California*,
    370 U.S. 660 (1962). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Romer* v. *Evans*,
    517 U.S. 620 (1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Rybar* v. *United States*,
    103 F.3d 273 (3d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Simon & Schuster, Inc.* v. *N.Y. State Crime Victims Bd.*,
    502 U.S. 105 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Staub* v. *City of Baxley*,
    355 U.S. 313 (1958). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Timmons* v. *Twin Cities Area New Party*,
    520 U.S. 351 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States* v. *Chester*, __ F.3d __,
  2010 U.S. App. LEXIS 26508 (4th Cir. Dec. 30, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States* v. *Marzzarella*,
  614 F.3d 85 (3d Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States* v. *Salerno*,
  481 U.S. 739 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Williams* v. *State*,
  __ A.3d __, 2011 Md. LEXIS 1 (Jan. 5, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Statutes and Rules

18 Pa. Cons. Stat. Ann. § 6109(e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Ala. Code § 13A-11-73. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Ala. Code § 13A-11-75. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Ark. Code Ann. § 5-73-309(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Cal. Penal Code § 12031. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

Cal. Penal Code § 12050. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Colo. Rev. Stat. Ann.  § 18-12-203(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Conn. Agencies Regs. § 29-36m-8. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Conn. Gen. Stat. Ann. § 29-28(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Conn. Gen. Stat. Ann. § 29-35(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Del. Code Ann. tit. 11 § 1441-42 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Fla. Stat. Ann. § 790.06(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Ga. Code Ann. § 16-11-129. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Idaho Code Ann. § 18-3302(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

iv

Ind. Code Ann. § 35-47-2-3(e)... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Iowa Code Ann. § 724.7. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Kansas Stat. Ann. § 75-7c03. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Ky. Rev. Stat. Ann. § 237.110(2)... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

La. Rev. Stat. Ann. § 40:1379(A)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Me. Rev. Stat. Ann. tit. 25, § 2003. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Mich. Comp. Laws Ann. § 28.422(2)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Minn. Stat. § 624.714, subdiv. 2(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Miss. Code Ann. § 45-9-101(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Mo. Ann. Stat. § 571.090(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Mont. Code Ann. § 45-8-321(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

N.C. Gen. Stat. § 14-415.11(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

N.D. Cent. Code § 62.1-04-03. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

N.H. Rev. Stat. Ann. § 159.6. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

N.M. Stat. Ann. § 29-19-4. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Neb. Rev. Stat. § 28-1202. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Nev. Rev. Stat. Ann. § 202.3657(2)... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Ohio Rev. Code Ann. § 2923.125(D)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Okla. Stat. Ann. tit. 21, § 1290.12(12)... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Or. Rev. Stat. Ann. § 166.291. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

S.C. Code Ann. § 23-31-215(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

S.D. Codified Laws § 23-7-7. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Tenn. Code Ann. § 39-17- 1351(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Tex. Gov't Code Ann. § 411.177(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Utah Code Ann. § 53-5-704(1)(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Va. Code Ann. § 18.2-308(D). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

W. Va. Code Ann. § 61-7-4(f). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Wash. Rev. Code Ann. § 9.41.070(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Wis. Stat. Ann. § 941.23. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Wyo. Stat. Ann. § 6-8-104(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Other Authorities

Br. of the United States, No. 07-290. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Cert. Pet. No. 07-290. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Letter of December 18, 1773,
      LETTERS OF JOHN ANDREWS, ESQ., OF BOSTON, 1772–1776
      (Winthrop Sargent ed., 1866).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

THE COLONIAL RECORDS OF THE STATE OF GEORGIA, PART 1 (1911) . . . . . . . . . . . . . . . . . . . . . 5

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND IN REPLY TO
DEFENDANTS' OPPOSITION TO PLAINTIFFS' SUMMARY JUDGMENT MOTION

PRELIMINARY STATEMENT

Plaintiffs opened their summary judgment brief by conceding that "[o]f course,
Defendants have an interest in regulating firearms in the interest of public safety," suggesting
only that "the regulatory power here is not absolute. " Pl. Summ. Judgment Br. 1. Reviewing the
*law* on the subject (as opposed to their preferences), Plaintiffs offered that courts uphold "mere
regulations of the manner in which arms are carried – with the understanding that a complete ban
on the carrying of handguns is unconstitutional." *Id.* at 10. From this very clear language,
Defendants somehow deduce that Plaintiffs seek a holding "that the states may not regulate the
carrying of concealed handguns in public." Def. Summ. Judgment Br. 2.

This gross misstatement of Plaintiffs' position reflects Defendants' absolutist and overly
simplistic "all or nothing" approach to the topic. Starting from a position fundamentally opposed
to the right to bear arms, Defendants are unable to distinguish between regulation and abolition,
and justify the latter by their asserted need of the former. The circular syllogism is: carrying guns
is bad, arbitrarily denying licenses to carry guns eliminates the carrying of guns (at least by law-
abiding people), therefore arbitrarily banning guns is justified. This is simply not constitutional
analysis. It is the unchecked imposition of Defendants' personal policy preferences.

However, the "judicial power" bestowed upon this Court by Article III is limited to the
resolution of questions arising under the Constitution and laws of the United States—not, as
Defendants might prefer, generalized questions of social science or public policy. This Court
does not review the wisdom of the Legislature's actions, nor does it determine the optimal public
policy to be secured by the Constitution. It applies the law.

The parties disagree about whether the availability of firearms for self-defense is a good idea. Without question, firearms are a leading cause of statistics, and the debate about which figures are superior is not one that will ever be truly resolved, in an absolute sense. However, just as in a Free Exercise Clause case, the question is not the validity or efficacy of the religious practice, the question here is not whether the carrying of arms is a good idea—the question is whether carrying arms is constitutionally protected. Objective standards and due process—not Defendants' philosophy or personal beliefs about the value of this activity—must carry the day.

The Supreme Court has emphatically laid down two ultimate instructions regarding Second Amendment litigation. First, judges may not engage in any balancing inquiry to determine the content of Second Amendment rights. Like the rest of the Constitution, the Second Amendment contains the plain meaning that its Framers understood its language to possess. Second, the right to bear arms is a normal part of the Bill of Rights. It was enumerated for a reason.  Courts cannot refuse to enforce this important right by deferring to its infringement, any more than courts should defer to abrogation of the First or Fourth Amendment.

As for legal arguments, Defendants add almost nothing to what has been briefed earlier.

## STATEMENT OF FACTS

Most of the new facts averred to by Defendants are simply irrelevant. There is no dispute that the misuse of guns exacts a terrible social cost, and the self-serving statements by legislators and government officials that they have only the best of intentions in enacting and enforcing laws are as predictable as they would be relating to any subject of legislation.[1]

---

[1]One would not expect politicians and police officers to aver bad motives in enforcing laws that they confess violate the rights of the people.

2

To the extent Defendants clothe their opinions about the desirability of violating the right to bear arms as a matter of social science, Plaintiffs' contrary statement of disputed material facts collects a small sample of the contrary data, of which there is no shortage. This material is presented not to establish that Plaintiffs are necessarily correct, but to demonstrate that opinions about the social utility of guns are inherently beyond legal adjudication. The only determination that matters here, regarding the value of the right to arms, is that made by the people in ratifying the Second Amendment.

The only true *facts* that matter in this case are that Plaintiffs' applications for permits to carry handguns have been denied by Defendants. Whether this is constitutionally-appropriate is a question of law.

ARGUMENT

I.    THE SECOND AMENDMENT EXTENDS BEYOND THE HOME.

Plaintiffs have already refuted, at some length, Defendants' assertion that the Second Amendment right is limited to the home. Pl. Summ. Judgment Br.7-12. Little remains to be said.

Defendants rest their theory on the fact that in *District of Columbia* v. *Heller*, 128 S. Ct. 2783 (2008), the Second Amendment issue arose within a home context. Accordingly, they believe the case is limited to its facts. Under this reasoning, *Marbury* v. *Madison*, 5 U.S. (1 Cranch) 137 (1803) would be limited to cases concerning the President's delivery of judicial commissions. That is simply not how the law works. *Heller* defined the meaning of "bear arms" as doing so was necessary for the decision in that case, and endorsed at some length numerous cases upholding the right to carry guns for self-defense. *Heller* and *McDonald* v. *City of Chicago*, 130 S. Ct. 3020 (2010) both extolled the right to arms in various public settings, and *Miller* v.

3

*United States*, 307 U.S. 174 (1939) specifically acknowledged a Second Amendment case arising on the highways. Refusing to acknowledge the plain instruction of these opinions simply defies the Supreme Court's considered judgment on the topic.

Defendants ably provide a string of citations to various precedents they claim as supporting their home-limitation theory. Almost all of these cases acknowledge that the right to carry a gun is not unlimited, or that the carrying of *concealed* handguns may be banned. These propositions are neither relevant nor disputed. To the extent a few courts, primarily state courts, have refused to recognize the Second Amendment outside the home, they have done so without offering any actual reasoning.

Indeed, the Maryland Court of Appeals' statement that "if the Supreme Court . . . meant its holding to extend beyond home possession, it will need to say so more plainly," *Williams* v. *State*, __ A.3d __, 2011 Md. LEXIS 1 at *30 (Jan. 5, 2011) is practically defiant of the Supreme Court, announcing a policy of out-and-out resistance. The Supreme Court probably does not expect its intervention would be required in each and every Second Amendment case. *Heller* instructs lower courts that the Second Amendment must be interpreted according to the way the Framers would have used its words "in their normal and ordinary as distinguished from technical meaning." *Heller*, 128 S. Ct. at 2788. When an activity comes within the plain meaning of the constitutional text, courts must implement, not resist, the constitutional command.

Indeed, the issue was already decided by the Supreme Court. The Supreme Court engaged in a long discussion of what it meant, in 1791, to "bear arms," because that question lay at the heart of *Heller*. The Supreme Court's definition of that term is not "dicta." While some believe "dicta" is any part of an opinion with which they disagree, the term is correctly limited to

4

portions of a court's opinion that are not necessary to the resolution of the case. In any event, Plaintiffs adopt and advance the Supreme Court's definition of "bear arms" – and Defendants have completely failed to address, let alone rebut, this definition. Neither Defendants, nor any of the resisting cases they cite, offer *any* explanation as to how the people of 1791 believed the Second Amendment right was limited to the home, or what else "bear arms" might mean if it does not mean what the Supreme Court said it means.[2]

It is not enough to ask this Court to simply ignore the constitutional text, and its crystal-clear definition by the Supreme Court. After over 100 pages of Defendants' various briefing in opposition, it remains not seriously contested that the right to bear arms is the right to carry arms.

## II.    SOCIAL SCIENCE DOES NOT SUBSTITUTE FOR THE CONSTITUTION.

Little needs to be added to Plaintiffs' earlier discussion of this concept. If courts were to support any governmental decision based upon social science assessments, the Constitution would be a dead letter. In a constitutional system, the people, not judges or government officials, make basic public policy decisions.

> We know of no other enumerated constitutional right whose core protection has been subjected to a freestanding "interest-balancing" approach. The very enumeration of the right takes out of the hands of government--even the Third Branch of Government--the power to decide on a case-by-case basis whether the right is *really worth* insisting upon. A constitutional guarantee subject to future judges' assessments of its usefulness is no constitutional guarantee at all . . . Like the First, [the Second Amendment] is the very *product* of an interest-balancing by the people . . .

_____

[2]The original Boston Tea Party "Indians" were  "each arm'd with a hatchet or axe, and pair pistoles."  Letter of December 18, 1773 in LETTERS OF JOHN ANDREWS, ESQ., OF BOSTON, 1772–1776 12 (Winthrop Sargent ed., 1866). Indeed, the carrying of guns has occasionally been *required* in this country.  *See, e.g.*, 19 THE COLONIAL RECORDS OF THE STATE OF GEORGIA, PART 1 138 (1911) (churchgoer "shall carry with him a gun, or a pair of pistols, in good order and fit for service, with at least six charges of gun-powder and ball, and shall take the said gun or pistols with him to the pew or seat").

5

*Heller*, 128 S. Ct. at 2821 (emphasis original).

Accordingly, it is absurd for Defendants to offer as an expert a "Professor of Public Policy," representing one side of an academic debate about the social utility of guns, opining about whether the right to carry arms is a good idea. *See generally* Decl. of Phillip Cook; *see also* Decl. of Franklin Zimring (law professor and "Distinguished Scholar"). Plaintiffs are equally capable of mustering an array of distinguished social scientists who disagree. *See* Pl. Sep. Statement of Disputed Facts No.  87. Were the professors' declarations relevant here, a criminal case arising before this Court could include professorial testimony explaining the social harms caused by allowing criminals a sphere of privacy against certain forms of search and seizure. And if the case concerned tax evasion, the defense could call an economist to explain the various policy deficiencies inherent in taxing income, the Sixteenth Amendment notwithstanding.

But constitutional cases are not resolved in the faculty lounge, and this Court does not settle scholarly disputes. "[T]he enshrinement of constitutional rights necessarily takes certain policy choices off the table." *Heller*, 128 S. Ct. at 2822. Defendants are entitled to believe that the Second Amendment right to bear arms is disastrously dangerous. Defendants are also entitled to that same belief regarding the exclusionary rule or the right to counsel. *McDonald*'s instructions bear repeating:

> Municipal respondents maintain that the Second Amendment differs from all of the other provisions of the Bill of Rights because it concerns the right to possess a deadly implement and thus has implications for public safety. And they note that there is intense disagreement on the question whether the private possession of guns in the home increases or decreases gun deaths and injuries. The right to keep and bear arms, however, is not the only constitutional right that has controversial public safety implications. All of the constitutional provisions that impose restrictions on law enforcement and on the prosecution of crimes fall into the same category.

*McDonald*, 130 S. Ct. at 3045 (citations omitted).

In *Heller* and *McDonald* as well, the Supreme Court was flooded with social science data regarding the evils of gun possession, and the absolutely imperative and total need for local government officials to enjoy an unfettered hand in regulating firearms in the public interest. None of this mattered. What mattered were the words of the Constitution, as understood by those who framed and ratified it.

III.   THE COURT CANNOT SIMPLY DEFER TO LEGISLATIVE JUDGMENTS THAT INFRINGE FUNDAMENTAL CONSTITUTIONAL RIGHTS.

Just as the scope of Second Amendment rights are not determined by the ideas of the distinguished ITT/Sanford Professor of Public Policy at Duke, neither is the Second Amendment eviscerated by invocation of these public policy beliefs within the context of a deferential, rational basis-type review. As described previously, rational basis review is simply not available in Second Amendment cases. The Second Amendment does not "require judges to assess the costs and benefits of firearms restrictions and thus to make difficult empirical judgments in an area in which they lack expertise." *McDonald*, 130 S. Ct. at 3050. Judges may not be social science "experts," but they are experts, in a sense, at applying the law.

The frivolity of Defendants' approach to this case is neatly summed up on page 23 of their summary judgment brief, which advances the proposition that "the judgment of whether and how to regulate firearms should, wherever possible, be made by the legislature, not the judiciary." For support, Defendants cite a page of the majority that contains no such concept, and that portion of Justice Breyer's *dissenting* opinion that was emphatically rejected by the *Heller* majority. Within that, Defendants invoke Justice Breyer's citation to a plurality observation that

7

"the Los Angeles City Council is in a better position than the judiciary to gather data on local problems." *City of Los Angeles* v. *Alameda Books*, 535 U.S. 425, 440 (2002) (plurality). This is incomplete. The *Los Angeles* plurality, evaluating what it believed to be a content-neutral ordinance regulating adult businesses, was describing only one side "of a careful balance between competing interests," the other factor being the Court's "obligation to exercise independent judgment when First Amendment rights are implicated." *Id.*

This is not the only erroneous discussion of a standard of review. For example, Defendants invoke a statement in *J.A. Croson* v. *City of Richmond* v. *J.A. Croson Co.*, 488 U.S. 469, 544 (1989) (Marshall, J., dissenting), extolling the unique wisdom of local officials, without noting that the quote is from Justice Marshall's *dissenting* opinion. Justice Marshall was lamenting the majority's rejection of what it termed "blind judicial deference." *Id.*, at 543 (Marshall, J., dissenting); *Id.*, at 501. The nested citation is to *Hawaii Housing Authority* v. *Midkiff*, 467 U.S. 229, 244 (1984), which was describing the level of deference shown a state's determination of "public use" under the Fifth Amendment's Takings Clause, a quite specific, and entirely irrelevant test.

Ironically, Defendants invoke then-Judge Alito's dissent in *Rybar* v. *United States*, 103 F.3d 273, 294 n.6 (3d Cir. 1996) for the proposition that judges are not expert in firearms, but the context is hardly helpful to their position: Justice Alito was demanding that Congress produce "findings or empirical support" to verify the claim it enjoyed Commerce Clause power to regulate firearms. And without signaling that the statement came from a concurring opinion, Defendants invoke Justice Thomas's statement that courts should not supplant "the difficult policy judgments that state officials are both constitutionally entitled and uniquely qualified to

8

make." *Lewis* v. *Casey*, 518 U.S. 343, 385 (1996) (Thomas, J., concurring). In *Lewis*, Justice

Thomas rejected the doctrine that prisons are constitutionally required to provide inmates with

any form of legal assistance. Of course, in *McDonald*, Justice Thomas rejected the idea that state

officials are constitutionally entitled or uniquely qualified to deny the right to bear arms,

extolling the use of guns outside the home for self defense. *See, e.g. McDonald*, 130 S. Ct. at

3088 (Thomas, J., concurring).

     A.     Defendants Exercise Unlawfully Excessive Licensing Discretion.

     To the extent the "proper cause" and "moral character" requirements place excessive

discretion at the hands of officials in the licensing of a fundamental right, they fail basic prior

restraint principles. There is no reason why prior restraint principles would not apply in a Second

Amendment context. As discussed previously, and not truly rebutted, the Supreme Court does

not tolerate unbridled licensing discretion wherever "the peaceful enjoyment of freedoms which

the Constitution guarantees [are made] contingent upon the uncontrolled will of an official . . ."

*Staub* v. *City of Baxley*, 355 U.S. 313, 322 (1958).

     The fact remains that Defendants protestations notwithstanding, three circuits have

already held that the First Amendment framework should be imported into Second Amendment

analysis. "The protections of the Second Amendment are subject to the same sort of reasonable

restrictions that have been recognized as limiting, for instance, the First Amendment." *Parker* v.

*District of Columbia*, 478 F.3d 370, 399 (D.C. Cir. 2007), *aff'd sub nom Heller* (citation omitted)

"[W]e agree with those who advocate looking to the First Amendment as a guide in developing a

standard of review for the Second Amendment." *United States* v. *Chester*, __ F.3d __,  2010 U.S.

App. LEXIS 26508 at *24 (4th Cir. Dec. 30, 2010) (citations omitted).

9

Because *Heller* is the first Supreme Court case addressing the scope of the individual right to bear arms, we look to other constitutional areas for guidance in evaluating Second Amendment challenges. We think the First Amendment is the natural choice. *Heller* itself repeatedly invokes the First Amendment in establishing principles governing the Second Amendment. We think this implies the structure of First Amendment doctrine should inform our analysis of the Second Amendment.

*United States* v. *Marzzarella*, 614 F.3d 85, 89 n.4 (3d Cir. 2010).

The Third, Fourth, and D.C. Circuits' adoption of a First Amendment framework for the Second Amendment stands on strong historical footing. Abuse of First and Second Amendment rights have long been viewed as similar. *See Commonwealth* v. *Blanding*, 20 Mass. 304, 314 (1825) ("The liberty of the press was to be unrestrained, but he who used it was to be responsible in case of its abuse; like the right to keep fire arms, which does not protect him who uses them for annoyance or destruction."); *Republica* v. *Oswald*, 1 U.S. (1 Dall.) 319, 330 n.* (Pa. 1788) ("The right of publication, like every other right, has its natural and necessary boundary; for, though the law allows a man the free use of his arm, or the possession of a weapon, yet it does not authorize him to plunge a dagger in the breast of an inoffensive neighbour.").

But against the clear weight of history and precedent, Defendants invoke the *dissenting* view of Judge Davis in *Chester*, who specifically declined to join the majority's adoption of a First Amendment framework because he wished to advance the rule of *United States* v. *Salerno*, 481 U.S. 739, 745 (1987), a subject already briefed at some length in Plaintiffs' opposition to the motion to dismiss.

      B.      Defendants Violate Plaintiffs' Right to Equal Protection.

Because they fail to acknowledge *McDonald*'s instruction that the Second Amendment secures a fundamental right, Defendants proceed to offer an impermissible rational basis analysis

of the Equal Protection claim. However, to the extent the "proper cause" and "moral character" requirements arbitrarily classify individuals in the exercise of a fundamental right, by disadvantaging the class of people who cannot show what Defendants believe to be a heightened "need" for the exercise of their right, the requirements trigger—and fail—strict scrutiny review.[3]

Defendants correctly note that some courts have applied intermediate scrutiny in Second Amendment cases, but they have done so in contexts where the Second Amendment's core was not implicated. The notion that the Second Amendment might be subject to intermediate review was first raised, unsuccessfully, by the Solicitor General in *Heller*. In the government's understanding, intermediate review was so toothless that its application might have saved even the District of Columbia's handgun and functional firearms bans—perhaps after trial, no less. Br. of the United States, No. 07-290, at 27-32. That is reason enough to be suspicious of the standard's ability to secure any measure of Second Amendment rights.

But intermediate scrutiny's problems are doctrinal as well as practical. In *Heller*, the government drew the intermediate standard from two election-law cases, applying the standard where challenged restrictions were insufficiently "severe" to merit strict scrutiny. *Timmons* v. *Twin Cities Area New Party*, 520 U.S. 351, 358 (1997); *Burdick* v. *Takushi*, 504 U.S. 428, 434 (1992). That dual-level analysis might function in the election context, where some rules are bound to be arbitrary (e.g., voting on Tuesday rather than Wednesday). And indeed, an intermediate standard of review may apply to an enumerated right under circumstances where the right's exercise is "of less constitutional moment." *Cent. Hudson Gas & Elec. Corp.* v. *Public*

---

[3]Of course, these provisions would fail any means-ends standard of review.

11

*Serv. Comm'n*, 447 U.S. 557, 563 n.5 (1980). But intermediate, heightened rational basis review is inapplicable writ-large to fundamental rights.

Indeed, intermediate scrutiny is not a reduced form of strict scrutiny; it is an enhanced version of rational basis review. "'[I]ntermediate' scrutiny permits us to evaluate the rationality of the legislative judgment . . . we employ this standard to aid us in determining the rationality of the legislative choice." *Plyler* v. *Doe*, 457 U.S. 202, 217 n.16 (1982). This aid is invoked in "quasi-suspect" cases, *City of Cleburne* v. *Cleburne Living Ctr.*, 473 U.S. 432, 442 (1985), where the government's classifications do not relate to enumerated rights or suspect classes, and would thus trigger only un-enhanced rational basis review in the absence of intermediate scrutiny's boost. *Romer* v. *Evans*, 517 U.S. 620, 631 (1996).

Alas, it may not matter much in the final analysis whether the standard is strict or intermediate scrutiny, because Defendants fail to satisfy the threshold burden under either test – they fail to identify any valid interest in their "proper cause" and "moral character" requirements. In a constitutional case, the government cannot offer the *impact* of its law as the *justification* for the law. This is the definition of a circular, self-serving argument. *See Simon & Schuster, Inc.* v. *N.Y. State Crime Victims Bd.*, 502 U.S. 105, 120 (1991).

Without question, placing access to a gun-carry permit at the discretion of licensing officials who oppose the carrying of handguns greatly reduces the carrying of handguns by law-abiding people. It plainly eliminated the carrying of handguns by the Plaintiffs. But the carrying of handguns for self-defense cannot be both constitutionally-protected, *and* an evil that the state is self-evidently entitled to eliminate. If the carrying of handguns is not constitutionally protected, the Defendants prevail. If the carrying of handguns is within the Second Amendment's

12

protection, then whatever regulation is enforced impacting that right must be justified with some reasoning that is *not* simply a disagreement with the value of that right. New York has an interest in limiting gun violence, but it has no interest in limiting the exercise of Second Amendment rights by law-abiding people.

That Defendants' asserted regulatory interest is nothing more than a reformulation of their rejection of the right at issue is confirmed by their claim that restricting the carrying of guns is self-justified because it allows them to arrest criminals. Def. Summ. Judgment Br. 27. Under this theory, the government could justify criminalizing *anything* that criminals find useful: cell phones, cars, or even common articles of clothing (e.g., pockets in which drugs could be concealed). But Plaintiffs—and millions upon millions of American gun owners—are not drug-dealing gangsters, and we do not live in a total police state where a generalized pretext to arrest everyone and anyone can be used as an investigative tool. Of course, even drug-dealing gangsters enjoy some constitutional rights incident to their illicit activities. *See City of Chicago* v. *Morales*, 527 U.S. 41 (1999). Enforcing the Constitution qualifies as "law enforcement," too.

Defendants' heavy reliance on *Peruta* v. *County of San Diego*, 2010 U.S. Dist. LEXIS 130878 (S.D. Cal. Dec. 10, 2010), upholding a similarly restrictive scheme governing the issuance of concealed handgun carry permits, is seriously misplaced. As Plaintiffs cited in their brief, the *Peruta* court had earlier *rejected* the claim that the Second Amendment right to carry a gun is limited to the home, a point the court re-emphasized in the opinion cited by Defendants:

> in its order denying Defendant's motion to dismiss, this Court emphasized that not *all* concealed weapons bans are presumptively lawful. *Heller* and the 19th-century cases it relied upon instruct that concealed weapons restrictions cannot be viewed in isolation; they must be viewed in the context of the government's overall scheme.

13

*Peruta*, at *18 (emphasis in original). And "the government's overall scheme" in California differs from that of New York's in one critical respect:

> Here, to the extent that Penal Code sections 12025 and 12050 and Defendant's policy burden conduct falling within the scope of the Second Amendment, if at all, the burden is mitigated by the provisions of [Cal. Penal Code] section 12031 that expressly permit loaded open carry for immediate self-defense.

*Peruta*, at *19. California Penal Code § 12031(a) does *not* prohibit individuals from carrying handguns, without a license, provided they do so openly and provided that the handgun is not loaded in incorporated areas or prohibited portions of unincorporated areas. Carrying handguns is permitted at campsites. Cal. Penal Code § 12031(l). And open carrying of handguns is also allowed to individuals with an immediate need for self-defense, including those who reasonably fear an individual against whom a restraining order has been issued. Cal. Penal Code § 12031(j).

None of these exceptions exist in Defendants' scheme. Moreover, the *Peruta* plaintiffs did not invoke any of the prior restraint arguments raised by Plaintiffs in this case. And while Plaintiffs would strongly disagree that the unloaded, open carrying of a handgun provides individuals with an effective means of self-defense in case of emergency (or is even a good idea, considering that the open display of *unloaded* firearms may make one a tempting robbery target), the fact is that any of the various allegedly saving exceptions of the California law are unavailable here.

Finally, even if the right at issue—the ability to carry arms for self-defense—could somehow constitute the evil that Defendants are entitled to address, less-restrictive alternatives are plainly available to Defendants. The laws of *forty-three States* recognize that private citizens who are otherwise qualified have a right to carry handguns for self-defense— whether by issuing

14

licenses to carry on the basis of non-discretionary criterion, or by allowing people to carry

without licenses. Thirty-six States have statues or regulations that require officials to issue gun

carry licenses to applicants who meet non-discretionary standards.[4] In some of these states, a

license is required only if a gun is carried concealed. Three States – Alaska, Arizona, and

Vermont – do not require permits to carry handguns, although Arizona and Alaska issue permits

for reciprocity purposes. Three States – Alabama, California, and Delaware – have discretionary

statutes for licensing the carry of concealed handguns, but allow private citizens to carry exposed

handguns.[5] One State – Wisconsin – prohibits concealed carry, but allows citizens to carry

exposed handguns without a license. Wis. Stat. Ann. § 941.23. Only Hawaii, Massachusetts,

New Jersey, and Maryland share New York's particular unconstitutional approach, and only

Illinois absolutely prohibits private citizens from carrying handguns.

─────────────

[4]Ark. Code Ann. § 5-73-309(a); Colo. Rev. Stat. Ann.  § 18-12-203(1); Fla. Stat. Ann. § 790.06(2); Ga. Code Ann. § 16-11-129; Idaho Code Ann. § 18-3302(1); Ind. Code Ann. § 35-47-2-3(e); Iowa Code Ann. § 724.7; Kansas Stat. Ann. § 75-7c03; Ky. Rev. Stat. Ann. § 237.110(2); La. Rev. Stat. Ann. § 40:1379(A)(1); Me. Rev. Stat. Ann. tit. 25, § 2003; Mich. Comp. Laws Ann. § 28.422(2)(3); Minn. Stat. § 624.714, subdiv. 2(b); Miss. Code Ann. § 45-9-101(2); Mo. Ann. Stat. § 571.090(1); Mont. Code Ann. § 45-8-321(1); Neb. Rev. Stat. § 28-1202; Nev. Rev. Stat. Ann. § 202.3657(2); N.H. Rev. Stat. Ann. § 159.6; N.M. Stat. Ann. § 29-19-4 ; N.C. Gen. Stat. § 14-415.11(b); N.D. Cent. Code § 62.1-04-03; Ohio Rev. Code Ann. § 2923.125(D)(1); Okla. Stat. Ann. tit. 21, § 1290.12(12); Or. Rev. Stat. Ann. § 166.291; 18 Pa. Cons. Stat. Ann. § 6109(e); S.C. Code Ann. § 23-31-215(A); S.D. Codified Laws § 23-7-7; Tenn. Code Ann. § 39-17- 1351(b); Tex. Gov't Code Ann. § 411.177(a); Utah Code Ann. § 53-5-704(1)(a); Va. Code Ann. § 18.2-308(D); Wash. Rev. Code Ann. § 9.41.070(1); W. Va. Code Ann. § 61-7-4(f); Wyo. Stat. Ann. § 6-8-104(b). Connecticut's statute is facially discretionary, but implementing regulations eliminate this discretion.  *See* Conn. Gen. Stat. Ann. §§ 29-28(b), 29-35(a); Conn. Agencies Regs. § 29-36m-8.

[5]Ala. Code §§ 13A-11-73, 13A-11-75; Cal. Penal Code §§ 12031, 12050(a)(1)(A)-(C); Del. Code Ann. tit. 11 §§ 1441-42. As discussed *supra,* California's law is unconstitutional as it uniquely mandates that openly carried guns be unloaded in most cases – a dangerous practice not suited for self-defense.

Plainly, New York's highly unusual law is not absolutely required for the maintenance of public safety. Many, if not most of the states that respect their citizens' Second Amendment right to bear arms might be generally safer.

IV.     THE ALLEGED AVAILABILITY OF OTHER ARMS IS IRRELEVANT.

Curiously, Defendants suggest that they do not violate the right to bear arms because they allow the unlicensed carrying of rifles and shotguns. Def. Summ. Judgment Br. 5.

It is difficult to imagine that individuals slinging loaded shotguns and rifles through the streets of White Plains would not attract negative police attention. And while Plaintiffs have no desire to carry such weapons in public, other people who feel strongly about the right to bear arms—and who enjoy carrying arms at least as much for reasons of political expression as for self-defense—have recently made spectacles of themselves carrying long arms in a variety of public settings throughout the country. Plaintiffs are surprised that Defendants would welcome this type of activity into their community, and otherwise take no position on its legality.

However, as a constitutional substitute for the carrying of handguns, the argument is unavailing. As early as 1914, the Supreme Court acknowledged that "pistols . . . may be supposed to be needed occasionally for self-defence." *Patsone* v. *Pennsylvania*, 232 U.S. 138, 143 (1914) (upholding ban on possession of hunting arms by aliens). The long-arm-as-substitute argument was first raised by the District of Columbia in defense of its handgun ban. The D.C. Circuit labeled the argument "frivolous." *Parker*, 478 F.3d at 400. "It could be similarly contended that all firearms may be banned so long as sabers were permitted. Once it is determined – as we have done – that handguns are 'Arms' referred to in the Second Amendment, it is not open to the District to ban them." *Id.* (citation omitted).

16

Undeterred, District of Columbia officials presented the Supreme Court with the following question on certiorari: "Whether the Second Amendment forbids the District of Columbia from banning private possession of handguns while allowing possession of rifles and shotguns." Cert. Pet. No. 07-290. Heller successfully challenged this question as not accurately reflecting the issues in the case, and the Supreme Court adopted a very different "Question Presented" along the lines proposed by Heller, namely, whether the District's laws violated the Second Amendment.

On the merits, the Supreme Court rejected the alternative arms argument.

It is no answer to say . . . that it is permissible to ban the possession of handguns so long as the possession of other firearms (i.e., long guns) is allowed. It is enough to note, as we have observed, that the American people have considered the handgun to be the quintessential self-defense weapon.

*Heller*, 128 S. Ct. at 2818. The Supreme Court then provided a list of reasons why a handgun might be more suitable for home self-defense than a long arm, and concluded, "[w]hatever the reason, handguns are the most popular weapon chosen by Americans for self-defense in the home, and a complete prohibition of their use is invalid." *Id.*

The same concept applies with even greater force in considering the right to bear arms for self-defense outside the home. Carrying long arms for ordinary self-defense is simply impractical, but more the point, handguns are protected by the Second Amendment. The right to their possession and use may be regulated, to be sure, but the alleged availability of other arms does not diminish the right to handguns.

17

V.      THE SECOND AMENDMENT IS "FULLY APPLICABLE" TO THE STATES.

In *McDonald*, the City of Chicago argued that even if the Second Amendment were made applicable to the States by operation of the Fourteenth Amendment, its handgun ban could nonetheless survive because the Fourteenth Amendment should only apply a diluted, partial version of the Second Amendment against the states— one that does not recognize handguns as constitutionally-protected arms. Support for this theory was found in the Supreme Court's earlier refusal to extend the unanimity requirement in the Sixth Amendment jury trial right against the States. *Apodaca* v. *Oregon*, 406 U.S. 404 (1972).

The Supreme Court emphatically rejected the argument, explaining that *Apodaca* "was the result of an unusual division among the Justices, not an endorsement of the two-track approach to incorporation." *McDonald*, 130 S. Ct. at 3035 n.14. With respect to the Second Amendment, all five justices in the majority held that the Second Amendment was "fully applicable" to the States. *McDonald*, 130 S. Ct. at 3026 & 3046 (plurality); *id.*, at 3058 (Thomas, J.).[6]

Ignoring this discussion, Defendants invoke *Apodaca* for the same proposition, that only a portion of the Second Amendment right has been held incorporated as against the States. Def. Summ Judgment Br. 18 n.12. The argument is not serious considering *McDonald*'s rejection of the *Apodaca* argument. Nor is the same claim serious to the extent that Defendants look to the lack of incorporation Fifth and Eighth Amendment provisions. These amendments guarantee a

---

[6]Defendants mistakenly suggest that the Supreme Court incorporated the Second Amendment under a Due Process Clause analysis. Not so. Only the four justices who fully joined Justice Alito's opinion endorsed this view, with Justice Thomas concurring in the judgment based on the Privileges or Immunities Clause. Both opinions, however, held the right to keep and bear arms is "fundamental" and "fully applicable" to the States.

variety of entirely separate and distinct rights. For example, the Bail Clause was not at issue in *Robinson* v. *California*, 370 U.S. 660 (1962), and the Takings Clause was not part of *Alexander* v. *Louisiana*, 405 U.S. 625, 633 (1972).[7] But as discussed extensively on Plaintiffs' motion for summary judgment, the meaning of "bear arms" was very much at issue—and resolved—in *Heller*.

"[T]his Court decades ago abandoned 'the notion that the Fourteenth Amendment applies to the States only a watered-down, subjective version of the individual guarantees of the Bill of Rights.'" *McDonald*, 130 S. Ct. at 3047 (quoting *Malloy* v. *Hogan*, 378 U.S. 1, 10-11 (1964)). *McDonald* contains ample discussion of why the Second Amendment applies to the States, and much of that discussion reflects an understanding that the right to bear arms applies beyond one's home. The argument that the right to bear arms has not been applied against the States is simply not serious.

---

[7]The Supreme Court has never passed on the Bail Clause's application to the States.

19

CONCLUSION

Defendants are entitled to disagree with the Constitution's wisdom, and seek to correct what they perceive to be its disastrous social policy consequences. But the avenue for that sort of relief, described in Article V, is not available on summary judgment. Defendants' motion must be denied. Plaintiffs' motion for summary judgment should be granted.

    Dated: February 9, 2011                Respectfully submitted,

| | |
|---|---|
| Alan Gura | Vincent Gelardi |
| Gura & Possessky, PLLC | Gelardi & Randazzo |
| 101 N. Columbus Street, Suite 405 | 800 Westchester Avenue, Suite S-608 |
| Alexandria, VA 22314 | Rye Brook, NY 10573 |
| 703.835.9085/Fax 703.997.7665 | 914.251.0603/Fax 914.253.0909 |
| Lead Counsel  (Pro Hac Vice) | Local Counsel |

By:  /s/ Alan Gura
     Alan Gura                               Attorneys for Plaintiffs