UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x

ALAN KACHALSKY, CHRISTINA NIKOLOV, ERIC
DETMER, JOHNNIE NANCE, ANNA MARCUCCI-
NANCE, and SECOND AMENDMENT
FOUNDATION, INC.,

          Plaintiffs,

-against-

SUSAN CACACE, JEFFREY A. COHEN, ALBERT
LORENZO, ROBERT K. HOLDMAN, and COUNTY
OF WESTCHESTER,

          Defendants.

-----------------------------------------------------------------------x

**RESPONSE TO
PLAINTIFFS' RULE 56.1
STATEMENT OF FACTS IN
CONNECTION WITH
PLAINTIFFS' MOTION
FOR SUMMARY
JUDGMENT**

Case No.: 10 CV 05413 (CS)

ECF Case

Pursuant to United States District Court, Local Rule 56.1, Civil, Defendant County of

Westchester ("County") by its attorney Robert F. Meehan, Westchester County Attorney, hereby

submit the following responses to Plaintiffs' Statement of Facts in Support of their Summary

Judgment Motion (Plaintiffs' Factual Allegations are italicized):

  1. *Unlicensed possession of any firearm is a class A misdemeanor. See New York*

*Penal Law § 265.01(1).*

  The County disputes the stated fact, as it is a legal interpretation.  The New York Penal

Law §265.01(1) cited by Plaintiffs is the best evidence of its meaning, intent, and content. It

provides:

> § 265.01 Criminal possession of a weapon in the fourth degree. A person
> is guilty of criminal possession of a weapon in the fourth degree when:
> (1) He or she possesses any firearm, electronic dart gun, electronic stun
> gun, gravity knife, switchblade knife, pilum ballistic knife, metal knuckle
> knife, cane sword, billy, blackjack, bludgeon, plastic knuckles, metal
> knuckles, chuka stick, sand bag, sandclub, wrist-brace type slingshot
> or slungshot, shirken or "Kung Fu star"…Criminal possession of a
> weapon in the fourth degree is a class A misdemeanor.

2.    *Unlicensed possession of a loaded firearm outside one's home or place of business constitutes "Criminal Possession of a Firearm in the Second Degree," a class C felony. See New York Penal Law § 265.03(3).*

The County disputes the stated fact, as it is a legal interpretation.  The New York Penal Law §265.03(3) cited by Plaintiffs is the best evidence of its meaning, intent, and content. It provides:

> § 265.01 Criminal possession of a weapon in the fourth degree. A  person is  guilty of criminal possession of a weapon in the fourth degree when: …(3) He or she knowingly has in his or her possession a rifle,  shotgun or firearm  in  or  upon  a  building  or  grounds, used for educational purposes, of any school, college or university,  except  the  forestry lands, wherever located, owned and maintained by the State University of New York college of environmental science and forestry, or upon a school bus as  defined  in  section  one  hundred  forty-two of the vehicle and traffic law, without  the  written  authorization  of  such  educational institution…Criminal possession  of  a  weapon  in  the fourth degree is a class A misdemeanor.

3.    *For most civilians who are not otherwise barred from possessing and carrying weapons, the only theoretically available permit to carry handguns in public for self-defense is a permit "to have and carry concealed, without regard to employment or place of possession, by any person when proper cause exists for the issuance thereof." See New York Penal Law §§ 265.20, 400.00(2)(f).*

The County disputes the stated fact, as it is a legal interpretation.  The New York Penal Law §265.20 and §400.00(2)(f) cited by Plaintiffs are the best evidence of their meaning, intent, and content. In fact, there are several pistol permit licensing restrictions that permit individuals to carry firearms set forth in §400.00(2)(f):

> 2. Types of licenses. A license for gunsmith or  dealer in  firearms shall be  issued  to engage in such business. A license for a pistol or revolver, other than an assault weapon or a  disguised gun,  shall be issued to (a) have  and possess in his dwelling by a householder; (b) have and possess

in his place of business by a merchant or storekeeper; (c) have and carry concealed while so employed by a messenger employed by a banking institution or express company; (d) have and carry concealed by a justice of the supreme court in the first or second judicial departments, or by a judge of the New York city civil court or the New York city criminal court; (e) have and carry concealed while so employed by a regular employee of an constitution of the state, or of any county, city, town or village, under control of a commissioner of correction of the city or any warden, superintendent or head keeper of any state prison, penitentiary, workhouse, county jail or other institution for the detention of persons convicted or accused of crime or held as witnesses in criminal cases, provided that application is made therefore by such commissioner, warden, superintendent or head keeper; (f) have and carry concealed, without regard to employment or place of possession, by any person when proper cause exists for the issuance thereof; and (g) have, possess, collect and carry antique pistols...

4.    *Plaintiffs Kachalsky, Nikolov, Detmer, all reside in Westchester County. Each (a) is over 21 years old, (b) of good moral character, (c) has never been convicted of a felony or serious crime, (d) has never been mentally ill or confined to any institution, (e) has not had a license revoked or been the subject of a family court order, and (f) with exception of Plaintiff Detmer, who is qualified under subdivision 400.00.1(i), has completed a firearms safety course. See Kachalsky Decl., ¶ 1; Nikolov Decl., Nance, and Marcucci-Nance, ¶ 1; Detmer Decl., ¶¶ 1-2; Nance Decl., ¶ 1; Marcucci-Nance Decl., ¶ 1.*

The County disputes the stated fact, excepting that upon information and belief at the time of the pistol permit license applications at issue in this case, all individual Plaintiffs were at least 21 years of age and residents and/or employees within the geographical boundaries of Westchester County, had no mental health information returned from the search conducted in connection with the applications, had not had licenses revoked at the time of the applications, had completed a firearm safety course, except as to Plaintiff Detmer, and had not had any criminal convictions, except as to Plaintiff Kachalsky. Plaintiff Kachalsky's had been arrested in 2005 for Attempted Assault, 2nd Degree, on a police officer, Resisting Arrest, Obstructing

government Administration, 2nd Degree, and Following Too Closely. Plaintiff Kachalsky was convicted of Inadequate Tire, a traffic infraction. *See* Superseding Misdemeanor Information and Certificate of Disposition, included in the Pistol Permit Application and Investigation Materials of Plaintiff Kachalsky, attached to the Declaration of Anthony Tomari, Esq. on behalf of State Defendants.

5.   *Because Plaintiffs reside in Westchester County, their applications for gun carry licenses are passed on by state judges acting as licensing officers. .See N.Y. Penal Law § 265.00(10).*

The County disputes the stated fact, as it is a legal interpretation.  The New York Penal Law §265.00(10) cited by Plaintiffs is the best evidence of its meaning, intent, and content. It provides:

> 10. "Licensing officer" means in the city of New York the police commissioner of that city; in the county of Nassau the commissioner of police of that county;  in the county of Suffolk the sheriff of that county except in the towns of Babylon, Brookhaven, Huntington, Islip and Smithtown, the commissioner of police of that county; for the purposes of section 400.01 of this chapter the superintendent of state police; and elsewhere in the state a judge or justice of a court of record having his office in the county of issuance.

6.   *Kachalsky's application for a handgun carry license pursuant was referred for decision to Defendant Susan Cacase, "in [her] capacity as handgun licensing officer for the County of Westchester." See Exh. A.*

The County does not dispute this fact.

7.   *Defendant Westchester County recommended that Kachalsky's carry permit application be denied. See Exh. A.*

The County disputes the stated fact, as the County conducted the statutorily required investigation and provided a summary report, which was submitted to the Court as Plaintiff's Exhibit A.  That summary is the best evidence of its content.

8.      *On October 8, 2008, Cacace denied Kachalsky's permit application, offering that Kachalsky "has not stated any facts which would demonstrate a need for self protection distinguishable from that of the general public. Accordingly, Cacace found Kachalsky did not satisfy the requirement of New York Penal Law § 400.00(2)(f) that "proper cause" be shown for issuance of the permit. See Exh. A.*

The County does not dispute that Co-Defendant Judge Cacase issued a decision denying Kachalsky's application for a full carry permit, but disputes the stated fact insofar as it is an interpretation of the content of the decision.  The Decision has been submitted to the Court and is attached to the Rotini Declaration as Exhibit C, and is the best evidence of its content.

9.      *Kachalsky would apply again for a carry license, but refrains from doing so because any such application would likely be a futile act, as in all likelihood, he cannot satisfy the proper cause standard, which has already been applied to him. See 9. Kachalsky Decl, ¶ 3.*

The County disputes and has no information to respond to Kachalsky's state of mind or the possible outcome of a future pistol permit application made by Kachalsky.

10.     *Plaintiff Christina Nikolov's application for a handgun carry license pursuant to New York Penal Law § 400.00 was referred to Defendant Jeffrey A. Cohen "in [his] capacity as handgun licensing officer for Westchester County." Exh. B.*

The County does not dispute this fact.

11.     *On October 1, 2009, Cohen denied Nikolov's permit application. Reviewing the application and Defendant County's investigation of Nikolov, Cohen offered that "conspicuously*

*absent . . . is the report of any type of threat to her own safety anywhere. . . it cannot be said that the applicant has demonstrated that she has a special need for self-protection distinguishable from that of the general public; therefore, her application for a firearm license for a full carry permit must be denied. See Exh. B.*

The County does not dispute that Co-Defendant Judge Cohen issued a decision denying Nikolov's application for a full carry permit, but disputes the stated fact insofar as it is an interpretation of the content of the decision. The Decision has been submitted to the Court and is attached to the Rotini Declaration as Exhibit D, and is the best evidence of its content.

12. *Plaintiff Eric Detmer serves in the United States Coast Guard, for one weekend each month and two full weeks each year. Since 2004, Detmer has been a qualified Boarding Team Member. Although lacking authority to arrest, Detmer carries a .40 caliber handgun while on duty with the Coast Guard, which he surrenders each time upon leaving duty. Detmer qualifies semi-annually with his handgun, regularly taking a non-firing judgmental pistol course, a firing tactical pistol course, and use-of-force training. See Detmer Decl., ¶ 2.*

The County disputes and has no information to respond to the current employment, military status, or pistol use in connection therewith. The County does not dispute the facts as stated for the timeframe of the application submitted.

13. *Detmer is licensed to have a private handgun for the limited purpose of target shooting and hunting. Pursuant to New York Penal Law § 400.00, Detmer applied to amend his license for the purpose of "full carry." See Detmer Decl., ¶ 3.*

The County does not dispute this fact.

14. *On September 3, 2010, Defendant Westchester County recommended that the application be disapproved, as Detmer's need to enforce laws while off duty was "speculative,"*

*and Detmer "has not substantiated that he faces danger during non employment hours that would necessitate the issuance of a full carry firearm license" and "has not demonstrated an exceptional need for self protection distinguishable from that of the general public." See Exh. C.*

The County disputes the stated fact, as the County conducted the statutorily required investigation and provided a summary report, which was submitted to the Court as Plaintiffs' Exhibit C. That summary is the best evidence of its content.

15.     *On September 27, 2010, Defendant denied Detmer's application, stating, "At this time, I see no justification for a full carry permit." See Exh. D. Lorenzo.*

The County does not dispute this fact.

16.     *Plaintiff Johnnie Nance is licensed to have a private handgun for the limited purpose of target shooting. Pursuant to New York Penal Law § 400.00, Nance applied to amend his license for the purpose of "full carry" for self-defense. See Nance Decl., ¶ 2.*

The County does not dispute that Plaintiff Nance has a pistol permit license restricted to target shooting, or that Plaintiff Nance applied for a restriction change to allow for the unrestricted carry of a pistol in New York, but the County disputes and lacks information as to Nance's motives in making the application.

17.     *Or about August 11, 2010, Defendant Westchester County recommended that Nance's application be disapproved, as "No safety related concerns have been cited by the applicant," and Nance "has not demonstrated an exceptional need for self protection distinguishable from that of the general public." See Exh. E.*

The County disputes the stated fact, as the County conducted the statutorily required investigation and provided a summary report, which was submitted to the Court as Plaintiffs' Exhibit E. That summary is the best evidence of its content.

18.     *On September 9, 2010, Defendant Holdman denied Nance's application for a carry permit. Holdman cited Defendant County's recommendation for denial, and its finding that Nance had not demonstrated any exceptional need for the permit. Holdman further stated, "The applicant has not provided the court with any information that he faces any danger of any kind that would necessitate the issuance of a full carry firearm license; or has not demonstrated a need for self protection distinguishable from that of the general public or of other persons similarly situated." See Exh. F.*

The County does not dispute that Co-Defendant Judge Holdman issued a decision denying Nance's request to amend his pistol license permit to an unrestricted license, but disputes the stated fact insofar as it is an interpretation of the content of the decision. The Decision has been submitted to the Court and is attached to the Rotini Declaration as Exhibit F, and is the best evidence of its content.

19.     *Citing the denial of Kachalsky's application, Holdman found Nance did not demonstrate "proper cause" within the meaning of the governing provision. Holdman continued: "In sum, the applicant has not shown sufficient circumstances to distinguish his need from those of countless others, nor has he demonstrated a specific need for self protection distinguishable from that of the general community or of persons engaged in the same business or profession." See Exh. F.*

The County does not dispute that Co-Defendant Judge Holdman issued a decision denying Nance's request to amend his pistol license permit to an unrestricted license, but disputes the stated fact insofar as it is an interpretation of the content of the decision. The Decision has been submitted to the Court and is attached to the Rotini Declaration as Exhibit F, and is the best evidence of its content.

20.     *Plaintiff Anna Marcucci-Nance is licensed to have a private handgun for the limited purpose of target shooting. Pursuant to New York Penal Law § 400.00, Marcucci-Nance applied to amend her license for the purpose of "full carry" for self-defense. See Marcucci-Nance Decl., ¶ 2.*

The County does not dispute that Plaintiff Marcucci-Nance has a pistol permit license restricted to target shooting, or that Plaintiff Marcucci-Nance applied for a restriction change to allow for the unrestricted carry of a pistol in New York, but the County disputes and lacks information as to Marcucci-Nance's motives in making the application.

21.     *On August 11, 2010, Defendant Westchester County recommended that the application be disapproved, as "No safety related concerns have been cited by the applicant," and Marcucci-Nance "has not demonstrated an exceptional need for self protection distinguishable from that of the general public." See Exh. G.*

The County disputes the stated fact, as the County conducted the statutorily required investigation and provided a summary report, which was submitted to the Court as Plaintiffs' Exhibit G. That summary is the best evidence of its content.

22.     *On September 9, 2010, Holdman denied Marcucci-Nance's application for a carry permit. Holdman cited Defendant County's recommendation for denial, and its finding that Marcucci-Nance had not demonstrated any exceptional need for the permit. Holdman further stated, "The applicant has not provided the court with any information that she faces any danger of any kind that would necessitate the issuance of a full carry firearm license; or has not demonstrated a need for self protection distinguishable from that of the general public or of other persons similarly situated." See Exh. H.*

The County does not dispute that Co-Defendant Judge Holdman issued a decision denying Marcucci-Nance's request to amend her pistol license permit to an unrestricted license, but disputes the stated fact insofar as it is an interpretation of the content of the decision. The Decision has been submitted to the Court and is attached to the Rotini Declaration as Exhibit G, and is the best evidence of its content.

23.    *Citing the denial of Kachalsky's application, Holdman found Marcucci-Nance did not demonstrate "proper cause" within the meaning of the governing provision. Holdman continued: "In sum, the applicant has not shown sufficient circumstances to distinguish her need from those of countless others, nor has she demonstrated a specific need for self protection distinguishable from that of the general community or of persons engaged in the same business or profession." See Exh. H.*

The County does not dispute that Co-Defendant Judge Holdman issued a decision denying Marcucci-Nance's request to amend his pistol license permit to an unrestricted license, but disputes the stated fact insofar as it is an interpretation of the content of the decision. The Decision has been submitted to the Court and is attached to the Rotini Declaration as Exhibit G, and is the best evidence of its content.

24.    *Plaintiff Second Amendment Foundation, Inc. ("SAF") is a non-profit membership organization incorporated under the laws of Washington with its principal place of business in Bellevue, Washington. See Versnel Decl., ¶ 2.*

The County disputes and has no information to respond to the location, not-for-profit status, or legal incorporation of Plaintiff Second Amendment Foundation.

25.    *SAF has over 650,000 members and supporters nationwide, including many in Westchester County, New York. The purposes of SAF include education, research, publishing*

*and legal action focusing on the Constitutional right to privately own and possess firearms, and the consequences of gun control. See Versnel Decl., ¶ 2.*

The County disputes and has no information to respond to membership or goals of Plaintiff Second Amendment Foundation.

26.     *SAF expends its resources encouraging exercise of the right to bear arms, and advising and educating their members, supporters, and the general public about the policies with respect to the public carrying of handguns in New York. The issues raised by, and consequences of, Defendants' policies, are of great interest to SAF's constituency. Defendants' policies regularly cause the expenditure of resources by SAF as people turn to it for advice and information. See Versnel Decl., ¶ 3.*

The County disputes and has no information to respond to the expenditures or activities of Plaintiff Second Amendment Foundation.

27.     *Defendants' policies bar SAF's members and supporters from obtaining permits to carry handguns. See Versnel Decl., ¶ 4.*

The County disputes the stated facts, as the County does not have any such policies and no such policies have been identified by the Plaintiffs, rather the Plaintiffs have only identified a State Law (Penal Law §400.00(2)(f)) that they argue is unconstitutional. Further, the County disputes and has no information as to any law or policy that "bars" all of these unknown SAF members and supporters from obtaining permits to carry pistols in New York State.

28.     *Plaintiffs Alan Kachalsky, Christina Nikolov, Eric Detmer, Johnnie Nance, Anna Marcucci-Nance and the members and supporters of SAF, would carry functional handguns in public for self-defense, but refrain from doing so because they fear arrest, prosecution, fine, and*

11

*imprisonment for lack of a license to carry a handgun. See Kachalsky Decl., ¶ 4; Nikolov Decl.,*

*¶4; Detmer Decl., ¶ 6; Nance Decl., ¶ 6; Marcucci-Nance Decl., ¶ 6; Versnel Decl., ¶ 5.*

The County disputes and has no information to respond to Plaintiffs' states of mind.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: White Plains, New York
January 26, 2011

Melissa-Jean Rotini (MR-4948)
Assistant County Attorney, of Counsel