UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ALAN KACHALSKY, CHRISTINA NIKOLOV, ERIC DETMER, JOHNNIE NANCE, ANNA MARCUCCI-NANCE, and SECOND AMENDMENT FOUNDATION, INC.,

         *Plaintiffs*

-against-

SUSAN CACACE, JEFFREY A. COHEN, ALBERT LORENZO, ROBERT K. HOLDMAN, and COUNTY OF WESTCHESTER,

         *Defendants.*

**DECLARATION**

10-CV-05413

Hon. Cathy Seibel

---

Thomas L. Fazio declares under penalty of perjury pursuant to 28 U.S.C. § 1746:

1. I have been a member of the New York State Police for over 30 years. During my tenure, I have served in the positions of Trooper, Investigator, Lieutenant, Captain, Major – Troop Commander, Staff Inspector, Assistant Deputy Superintendent – Bureau of Criminal Investigation ("BCI") (which oversees operations for more than 1000 investigators assigned to the investigative branch of the State Police in stations and special details across the state), and now as Deputy Superintendent, with overall responsibility for field operations. While in the BCI, I was a hostage negotiator in Poughkeepsie. I hold the rank of Colonel.

2. Counsel informs me that plaintiffs in this action challenge the constitutionality of the portion of New York's handgun law that prohibits the possession of concealed handguns on the street without a permit. I submit this declaration in support of

defendants' cross-motion for summary judgment on the grounds that New York's restriction on the right to carry a concealed handgun in public is consistent with the Second Amendment.

3. From a law enforcement perspective, strong reason exists for New York's more demanding regulatory control of pistols and revolvers carried in public than those maintained for self-defense in one's home.

4. The inherent danger of firearms is readily apparent. The easy accessibility of a gun in public can increase the danger associated with emotional confrontations, such as road rage incidents, disputes involving broken relationships, or suicide attempts. One who is depressed or cannot control anger or emotions may pose a greater danger in public if he or she can simply draw a gun from a waistband. Numerous unknown people may be present and the surroundings may be unfamiliar to the shooter. Uninvolved and innocent bystanders can be placed at great risk. Handguns are particularly dangerous. It takes little skill to operate today's semi-automatic pistols. With the flick of a thumb, a shooter can drop a depleted magazine from the pistol grip. In a couple of seconds, he or she can load another magazine and chamber a round. A person wearing clothes containing a few pockets can easily carry enough magazines to supply dozens of rounds of ammunition without detection.

5. The decision of whether to fire a gun in public must be made in only a moment, and yet is enormously complicated. The State Police, for example, imposes rigorous training and qualification standards on its members before they are allowed to carry a gun. During the 26-week academy training, each recruit is educated and tested on

the capabilities and use of firearms. They are subjected to extensive range training, and must pass difficult tests before graduation. Included in the training are sessions devoted to the split-second decision to shoot. Recruits are required to view films of possible perpetrators engaged in a variety of activities and to shoot at the image on the screen when they believe deadly force is necessary. Mistakes made in training are corrected, and innocent lives in public are thereby saved. Initial gun training alone is inadequate. In the absence of unusual circumstance, members of the State Police undergo qualification testing every six months. Life and death decisions in public cannot be made without extensive training and continued reevaluation.

6. Even highly trained police officers, however, can mistake law abiding and well intentioned citizens for armed criminals. From 1981 to 2009, for instance, 26 police officers around the country have been shot and killed by fellow officers who have mistaken them for dangerous criminals. The last two tragedies occurred in New York State. *See* Reducing Inherent Danger: Report of the Task Force on Police-on-Police Shootings (2010). A variety of factors can be responsible for mistaken shootings. Mistaking a non-threatening citizen for a killer is a far greater concern in street situations than those in a home.

7. Concealed gun possession on the street poses special dangers for police officers. About 73 percent (357 of 490) of firearms used in killings of police from 2000 to 2009 were handguns (typically not the officer's own weapon), even though the restrictions on the acquisition of long guns are much less demanding. U.S. Dept. of

3

Justice, FBI, Law Enforcement Officers Killed & Assaulted (LEOKA) 2009, table 27. (fbi.gov/ucr/killed/2009/data/table_27.html; visited Jan. 17, 2011).

8. Further, like some other states, New York imposes restrictions on police in citizen encounters that are not mandated by the United States Constitution. Therefore, police in New York must exercise great restraint in determining whether a person is armed, and a proliferation of handguns in public can complicate that task. New York police officers are instructed that under New York case law, police must have "founded suspicion of criminal activity" before asking questions that may lead a person to believe he or she is suspected of a crime. Accordingly an officer with a hunch that the person is armed, but with no reasonable suspicion, may not ask if the person is carrying any guns, and may not ask the person for consent to be frisked. I am informed by counsel that cases illustrating New York law in this area include *People v. DeBour*, 40 N.Y.2d 210 (1976) and *People v. Hollman*, 79 N.Y.2d 181 (1992).

9. In light of the dangers accompanying handgun possession on the street, background investigations are appropriate before a permit is issued. This process may yield information suggesting that the applicant is a poor candidate for an unrestricted pistol permit, even if he or she has no criminal or mental health record. Obligating the state to issue permits for street gun possession to all but those with criminal or mental health records would eliminate the ability of the licensing officer to balance the information disclosed in the background investigation with the need for an unrestricted permit. Applying such a constitutional rule to the entire state would eliminate the ability to distinguish between the dissimilar concerns of a rural county such as Essex from an

urban county such as Brooklyn. It could lead to a proliferation of handguns in the public square, and thereby increase the danger to citizens and police officers alike.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 21, 2011, Albany, New York

*Thomas L. Fazio*
Thomas L. Fazio