UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
Alan Kachalsky, Christina Nikolov, Eric Detmer, :
Johnnie Nance, Anna Marcucci-Nance, :
and Second Amendment Foundation, Inc., :
:
                    Plaintiffs, :    Civil Action Number:
:    10-cv-5413
-against- :
:    (Hon. Cathy Seibel)
Susan Cacace, Jeffrey A. Cohen, :
Albert Lorenzo, Robert K. Holdman :
and County of Westchester, :
:
                    Defendants. :
------------------------------------------------------------X

## DECLARATION OF ANDREW LUNETTA

The undersigned declares under penalty of perjury and in accordance with 28 U.S.C. §1746 as follows:

### EXPERIENCE

1. I, Andrew Lunetta, am a Deputy Inspector in the New York City Police Department (NYPD), assigned as the Commanding Officer of the License Division.

2. I make this Declaration upon information and belief, based upon nearly 24 years in various assignments in the NYPD, near three years in my present assignment in the License Division, consultation with other members from various commands within the NYPD, and a review of NYPD records. My career has included a mix of assignments in which I performed legal work in my capacity as an attorney, and enforcement work, which has included patrol and supervision of investigations and patrol functions in my capacity as a sworn member of the NYPD. My years of experience involving police/citizen interaction in public settings (such as investigating disputes, accidents,

infractions, and crimes, as well as policing to balance rights and competing interests during the exercise of First Amendment rights at demonstrations) in New York City's busy and often stressed environment have led me to conclude that there is a need for reasonable restriction on the number of concealed handguns possessed on the street. This is best accomplished by the investigation of individual applications, subject to an administrative and legal process, in order to balance the rights of those who can demonstrate a need for self protection outside the home distinguishable from that of the general public (i.e. those who can demonstrate "proper cause") with the government interest in maintaining public safety by limiting the number of concealed handguns on the street.

### IMPORTANCE OF LAW ENFORCEMENT DISCRETION IN GUN LICENSING DETERMINATIONS

3. New York State law gives the NYPD a central role in issuing licenses to carry handguns to persons with a residence or principal place of business within the City of New York. First, the NYPD, like the Westchester County Department of Public Safety, as a duly constituted police authority investigates applicants for handgun licenses as required by Penal Law § 400.00(4). Second, the NYPD Police Commissioner serves as a licensing officer and thus makes decisions to grant or deny licenses under §§ 265.00(10) and 400.00(1) – a role filled by judges with regard to applicants in Westchester County. Furthermore, § 400.00(6) requires a special permit from the commissioner (Special Carry – out-of-city validation – license) to carry a concealed handgun within the City, even if the bearer has a license issued in another county of the state, with certain narrow exceptions. Finally, § 400.00(11) empowers the commissioner to revoke a license at any time.

4. Those powers are exercised pursuant to relevant chapters within Title 38 of the Rules of the City of New York (38 RCNY), which, consistent with the Penal Law, clarify how those powers will be used. In particular, decisions on handgun licensing are made by NYPD's License Division. Application denials can be appealed in writing to the Director of the License Division, and revocation of active licenses can be appealed by a hearing before an administrative law judge with final review by the Director, in either case leading to final agency determination. These decisions are made consistent with both the Penal Law and NYPD's regulations.

5. Careful investigations, with an even application of standards, into both the applicant and their asserted basis for a showing of proper cause, which is designed to distinguish the applicant's need for self protection outside the home from that of the general public, ensure a precise fit between the "proper cause" requirement and the public safety interest in intelligently limiting full-carry handgun licenses. These careful investigations take place with each application for a carry license.

6. The NYPD's discretion over handgun licensing, while necessarily broad, is not absolute. Decisions to deny or revoke a license can be, and often are, challenged in state court under Article 78 of the Civil Practice Law and Rules. The NYPD's decision is upheld in the majority of such cases but is sometimes overturned.

7. Based on my and the NYPD's knowledge of handgun license applicants and of gun criminals, eliminating the "proper cause" requirement and thereby limiting the ability to deny a license to carry a handgun to only those circumstances where the applicant is prohibited from possessing a firearm by the specific provisions of federal law (18 U.S.C. § 922(g)) or state law (paragraphs (a), (c), and (e) of Penal Law § 400.00(1))

will be insufficient to prevent the granting of such licenses to potentially dangerous individuals who may commit crimes or endanger themselves. This is because only the review for "proper cause" allows the NYPD to investigate why a particular applicant wishes to carry a gun, how likely he or she is to need it for legitimate self-defense, and whether that need might be satisfied by a more limited class of license.

8. The Penal Law directs NYPD to issue a license to carry a handgun only (with the rare exceptions noted elsewhere in PL 400.00(2)) after investigating the applicant and finding that he or she has proper cause to carry a concealed firearm in public places outside his/her home or place of business. In order to better inform applicants, NYPD has published a regulation explaining two major forms of proper cause: applicants who have received threats and those who face exceptional personal danger due to their jobs. 38 RCNY 5-03. As the regulation stresses, however, those are not the only forms of proper cause, and "the License Division will consider any proof . . . which document[s] the need for a handgun license." In any case, as required by the Penal Law, NYPD investigates applicants to confirm that they have proper cause. For example, if an applicant claims to need to carry a handgun because s/he carries large quantities of cash for business, NYPD will request records to confirm the size and frequency of the business's cash deposits.

## PROBLEMS FROM PREVALENCE OF CARRIED HANDGUNS

9. A change to New York's licensing system that would enlarge the number of handguns carried in public, such as removal of the "proper cause" requirement, would based upon my professional experience, increase the dangers to citizens and law enforcement officers and would make it more difficult for the NYPD to do its job of

protecting the public.

10. In particular, increases in the prevalence of carried handguns will, based upon my professional experience, add to the danger facing NYPD officers. Every NYPD officer murdered in the line of duty since at least 2005 has been killed with a handgun (excluding those who died, on September 11, 2001 or thereafter, from the attacks that day).

11. The prevalence of guns poses a similar threat to law enforcement officers across the country. According to the FBI's latest report, *Law Enforcement Officers Killed and Assaulted – 2009*, 48 law enforcement officers were feloniously killed in the line of duty nationwide in 2009. Of those 48, 45 (94%) were killed by a gun, including 28 (58%) who were killed by a handgun.

12. Handgun possession plays a significant role in the commission of many crimes, and the NYPD focuses its attention accordingly. For several years, New York City has been the safest big city in America, according to an analysis of crime data released by the FBI in its *Crime in the United States,* the Uniform Crime Reports. The NYPD has had great success in crime reduction, which has occurred while the reasonable restriction of requiring "proper cause" has been in place. Based upon my experience I find it reasonable to conclude that continued success at crime reduction would be made more difficult if the restriction were removed and more firearms were carried on the street.

13. An increasing prevalence of handgun carrying will pose particular problems for officers in already dangerous situations. It will endanger officers who stop people on the street or who stop motorists during a car stop by making it more likely that

such people are armed with handguns.

14. Police encounters with plain clothes police officers and off-duty police officers have always been an area wrought with difficult tactics and great potential for danger. The tactics and split-second decisions required during these encounters could become more complicated, and therefore more dangerous, if a greater number of individuals were possessing handguns on the street.

15. A key part of the NYPD's strategy for reducing crime has been targeting areas of high crime, especially gun crime, across the City. For example, based upon my review of NYPD records and policies, Operation Impact send large numbers of officers to the precincts with the greatest crime problems. Within each precinct, commanders use data to concentrate patrol and other resources on the areas with the most crime. Not only homicide, but also shootings and other gun crimes are key factors in this targeting.

16. Especially in those targeted areas, but throughout the City, NYPD officers concentrate their efforts against illegal firearms possession. A change in New York's licensing laws that would remove the "proper cause" requirement would have the effect of making the public possession of concealed handguns more common, and would make it more difficult for police officers to distinguish between lawful and unlawful possession and take appropriate action pursuant to law. Likewise, it would make it more dangerous for law enforcement officers to deal with situations where they have reason to believe that concealed handguns are present, or when persons encountered by officers exhibit signs indicating to officers that they may be carrying a concealed handgun. The existing New York State "proper cause" provision for handgun licensing is an important tool in enabling law enforcement to enhance public safety and to provide protection to law

enforcement officers and the public in general in instances involving the potential for violence.

I declare under penalty of perjury that the foregoing is true and correct.

Date: January 26, 2011

_____
Andrew Lunetta
1 Police Plaza
New York, NY 10038