# S (12)

Case 7:10-cv-05413-CS Document 66-1 Filed 02/23/11 Page 2 of 55

## Firearms—Possession—Licenses

## CHAPTER 136

**An Act to amend the penal law, in relation to the carrying, sale, possession and use of firearms and other dangerous weapons, the issuance of licenses therefor, and the surrendering, destruction, checking and recording of same, and repealing certain sections of such law relating thereto.**

**Became a law March 25, 1963, with the approval of the Governor.**

**Effective July 1, 1963.**

*The People of the State of New York, represented in Senate and Assembly, do enact as follows:*

Section 1. Section eighteen hundred ninety-six of the penal law, as last amended by chapter one hundred seven of the laws of nineteen hundred fifty-eight, is hereby repealed and a new section eighteen hundred ninety-six is hereby inserted in lieu thereof, to read as follows:

**§ 1896. Definitions**

As used in sections eighteen hundred ninety-seven, eighteen hundred ninety-eight, eighteen hundred ninety-nine, nineteen hundred, nineteen hundred one, nineteen hundred two, nineteen hundred three, nineteen hundred four and nineteen hundred five, the following terms shall mean and include:

1. "Machine-gun," a weapon of any description, irrespective of size, by whatever name known, loaded or unloaded, from which a number of shots or bullets may be rapidly or automatically discharged from a magazine with one continuous pull of the trigger and includes a sub-machine gun.

2. "Firearm silencer," any instrument, attachment, weapon or appliance for causing the firing of any gun, revolver, pistol or other firearms to be silent, or intended to lessen or muffle the noise of the firing of any gun, revolver, pistol or other firearms.

3. "Firearm," any pistol, revolver, sawed-off shotgun or other firearm of a size which may be concealed upon the person.

4. "Switchblade knife," any knife which has a blade which opens automatically by hand pressure applied to a button, spring or other device in the handle of the knife.

5. "Gravity knife," any knife which has a blade which is released from the handle or sheath thereof by the force of gravity or the application of centrifugal force and which, when released, is locked in place by means of a button, spring, lever or other device.

6. "Dispose of," to dispose of, give, give away, lease, loan, keep for sale, offer, offer for sale, sell, transfer and otherwise dispose of.

7. "Deface," to remove, deface, cover, alter or destroy the manufacturer's serial number or any other distinguishing number or identification mark.

8. "Gunsmith," any person, firm, partnership, corporation or company who engages in the business of repairing, altering, assembling, cleaning, polishing, engraving or trueing, or who performs any mechanical opera-

 **Changes or additions in text are indicated by underline**

tion on, any pistol or revolver. Gunsmith shall not include a wholesale dealer.

9. "Dealer in firearms," any person, firm, partnership, corporation or company who engages in the business of purchasing, selling, keeping for sale, loaning, leasing, or in any manner disposing of, any pistol or revolver. Dealer in firearms shall not include a wholesale dealer.

10. "Licensing officer," in the city of New York the police commissioner of that city; in the county of Nassau the commissioner of police of that county; and elsewhere in the state a judge or justice of a court of record having his office in the county of issuance.

§ 2. Section eighteen hundred ninety-seven of such law, as amended, is hereby repealed and a new section is hereby inserted in lieu thereof, to be section eighteen hundred ninety-seven, to read as follows:

**§ 1897. Possession of weapons and dangerous instruments and appliances**

1. Any person who has in his possession any bomb, bombshell, firearm silencer or machine-gun is guilty of a felony.

2. Any person who has or carries concealed upon his person any firearm which is loaded with ammunition, or who has or carries concealed upon his person any firearm and, at the same time, has or carries upon his person a quantity of ammunition which may be used to discharge such firearm is guilty of a felony.

3. Any person who has in his possession any firearm, gravity knife, switchblade knife, billy, blackjack, bludgeon, metal knuckles, sandbag, sandclub or slungshot is guilty of a misdemeanor, and he is guilty of a felony if he has previously been convicted of any crime.

4. Any person under the age of sixteen years who has in his possession any of the weapons, instruments, appliances or substances specified in the first three subdivisions of this section, or any air-gun, spring-gun or other instrument or weapon in which the propelling force is a spring or air, or any gun, or any instrument or weapon commonly known as a toy pistol, or any such instrument or weapon in or upon which any loaded or blank cartridges may be used, or any loaded or blank cartridges or ammunition therefor, or any dangerous knife, shall be adjudged a juvenile delinquent.

5. Any person not a citizen of the United States who has in his possession any dangerous or deadly weapon other than those prohibited to him in the first two subdivisions of this section is guilty of a misdemeanor, and he is guilty of a felony if he has previously been convicted of any crime.

6. Any person who has in his possession any explosive substance with intent to use the same unlawfully against the person or property of another is guilty of a felony.

7. Any person who knowingly has in his possession a machine-gun or firearm which has been defaced for the purpose of concealment or prevention of the detection of a crime or misrepresenting the identity of such machine-gun or firearm is guilty of a felony.

8. Any person who has in his possession any dagger, dangerous knife, dirk, razor, stiletto, imitation pistol or any other dangerous or deadly

instrument or weapon with intent to use the same unlawfully against another is guilty of a misdemeanor, and he is guilty of a felony if he has previously been convicted of any crime.

§ 3. Sections eighteen hundred ninety-seven-a, eighteen hundred ninety-seven-b, eighteen hundred ninety-seven-c and eighteen hundred ninety-eight of such law, as amended, are hereby repealed and a new section, to be section eighteen hundred ninety-eight, is hereby inserted in lieu thereof, to read as follows:

§ 1898. Manufacture, transport, disposition and defacement of weapons and dangerous instruments and appliances

1. Any person who manufactures or causes to be manufactured any machine-gun is guilty of a felony. Any person who manufactures or causes to be manufactured any switchblade knife, gravity knife, billy, blackjack, bludgeon, metal knuckles, sandbag, sandclub or slungshot is guilty of a misdemeanor.

2. Any person who transports or ships any machine-gun or firearm silencer is guilty of a felony. Any person who transports or ships as merchandise any firearm, switchblade knife, gravity knife, billy, blackjack, bludgeon, metal knuckles, sandbag or slungshot is guilty of a misdemeanor.

3. Any person who disposes of any machine-gun or firearm silencer is guilty of a felony. Any person who knowingly buys, receives, disposes of, or conceals a machine-gun or firearm which has been defaced for the purpose of concealment or prevention of the detection of a crime or misrepresenting the identity of such machine-gun or firearm is guilty of a felony.

4. Any person who disposes of any of the weapons, instruments or appliances specified in subdivision three of the preceding section is guilty of a misdemeanor, and he is guilty of a felony if he has previously been convicted of any crime.

5. Any person who disposes of any of the weapons, instruments, appliances or substances specified in subdivision four of the preceding section to any other person under the age of sixteen years is guilty of a misdemeanor.

6. Any person who wilfully defaces any machine-gun or firearm is guilty of a felony.

§ 4. Sections eighteen hundred ninety-eight-a and eighteen hundred ninety-nine of such law, as amended, are hereby repealed and a new section, to be section eighteen hundred ninety-nine, is hereby inserted in lieu thereof, to read as follows:

§ 1899. Presumptions of possession, unlawful intent and defacement

1. The presence in any room, dwelling, structure or vehicle of any machine-gun is presumptive evidence of its unlawful possession by all persons occupying the place where such machine-gun is found.

2. The presence in any stolen vehicle of any weapon, instrument, appliance or substance specified in section eighteen hundred ninety-seven is presumptive evidence of its possession by all persons occupying such vehicle at the time such weapon, instrument, appliance or substance is found.

 Changes or additions in text are indicated by underline

Case 7:10-cv-05413-CS Document 66-1 Filed 02/23/11 Page 5 of 55

3. The presence in an automobile, other than a stolen one or a public omnibus, of any firearm, defaced firearm, firearm silencer, bomb, bombshell, gravity knife, switchblade knife, dagger, dirk, stiletto, billy, blackjack, metal knuckles, sandbag, sandclub or slungshot is presumptive evidence of its possession by all persons occupying such automobile at the time such weapon, instrument or appliance is found, except under the following circumstances: (a) if such weapon, instrument or appliance is found upon the person of one of the occupants therein; (b) if such weapon, instrument or appliance is found in an automobile which is being operated for hire by a duly licensed driver in the due, lawful and proper pursuit of his trade, then such presumption shall not apply to the driver; or (c) if the weapon so found is a pistol or revolver and one of the occupants, not present under duress, has in his possession a valid license to have and carry concealed the same.

4. The possession by any person of the substance as specified in subdivision six of section eighteen hundred ninety-seven is presumptive evidence of possessing such substance with intent to use the same unlawfully against the person or property of another. The possession by any person of any dagger, dirk, stiletto, dangerous knife or of any other weapon, instrument, appliance or substance designed, made or adapted for use primarily as a weapon, is presumptive evidence of intent to use the same unlawfully against another.

5. The possession by any person of a defaced machine-gun or firearm is presumptive evidence that such person defaced the same.

§ 5. Section nineteen hundred of such law, subdivision one having been amended by chapter five hundred seventy of the laws of nineteen hundred thirty, is hereby renumbered section nineteen hundred six and a new section is hereby inserted in lieu thereof, to be section nineteen hundred, to read as follows:

§ 1900. Exemptions and immunity

a. Sections eighteen hundred ninety-seven, eighteen hundred ninety-eight and eighteen hundred ninety-nine shall not apply to:

1. Possession of any of the weapons, instruments, appliances or substances specified in section eighteen hundred ninety-seven by the following:

(a) Persons in the military service of the state of New York and sheriffs, policemen or other peace officers thereof.

(b) Persons in the military or other service of the United States, in pursuit of official duty or when duly authorized by federal law, regulation or order to possess the same.

(c) Persons employed in fulfilling defense contracts with the government of the United States or agencies thereof when possession of the same is necessary for manufacture, transport, installation and testing under the requirements of such contract.

(d) During the month of June only each year, a person voluntarily surrendering such weapon, instrument, appliance or substance, provided that such surrender shall be made to the sheriff of the county in which such person resides and in the county of Nassau to the commissioner of police or a member of the police department thereof designated by him, or if such person resides in a city having a population of seventy-five

thousand or more to the police commissioner or head of the police force or department, or to a member of the force or department designated by such commissioner or head; and provided, further, that the same shall be surrendered by such person only after he gives notice in writing to the appropriate authority, stating his name, address, the nature of the weapon to be surrendered, and the approximate time of day and the place where such surrender shall take place. Such notice shall be acknowledged immediately upon receipt thereof by such authority. Nothing in paragraph (d) of subdivision one hereof shall be construed as granting immunity from prosecution for any crime or offense except that of unlawful possession of such weapons, instruments, appliances or substances surrendered as herein provided.

2. Possession of a machine-gun, firearm, switchblade knife, gravity knife, billy or blackjack by a warden, superintendent, headkeeper or deputy of a state prison, penitentiary, workhouse, county jail or other institution for the detention of persons convicted or accused of crime or detained as witnesses in criminal cases, in pursuit of official duty or when duly authorized by regulation or order to possess the same.

3. Possession of a pistol or revolver by a person to whom a license therefor has been issued as provided under section nineteen hundred three.

4. Possession of a switchblade or gravity knife for use while hunting, trapping or fishing by a person carrying a valid license issued to him pursuant to article four, part four of the conservation law.

5. Possession, at an indoor or outdoor rifle range for the purpose of loading and firing the same, of a rifle of not more than twenty-two calibre rim fire, the propelling force of which may be either gunpowder, air or springs, by a person under sixteen years of age but not under twelve, who is a duly enrolled member of any club, team or society organized for educational purposes and maintaining as a part of its facilities, or having written permission to use, such rifle range under the supervision, guidance and instruction of (a) a duly commissioned officer of the United States army, navy, marine corps or coast guard, or of the national guard of the state of New York; or (b) a duly qualified adult citizen of the United States who has been granted a certificate as an instructor in small arms practice issued by the United States army, navy or marine corps, or by the adjutant general of this state, or by the national rifle association of America, a membership corporation duly organized under the laws of this state.

6. The manufacturer of machine-guns, switchblade or gravity knives, billies or blackjacks as merchandise and the disposal and shipment thereof direct to a regularly constituted or appointed state or municipal police department, sheriff, policeman or other peace officer, or to a state prison, penitentiary, workhouse, county jail or other institution for the detention of persons convicted or accused of crime or held as witnesses in criminal cases, or to the military service of this state or of the United States.

7. The regular and ordinary transport of firearms as merchandise, provided that the person transporting such firearms, where he knows or has reasonable means of ascertaining what he is transporting, notifies in

writing the police commissioner, police chief or other law enforcement officer performing such functions at the place of delivery, of the name and address of the consignee and the place of delivery, and withholds delivery to the consignee for such reasonable period of time designated in writing by such police commissioner, police chief or other law enforcement officer as such official may deem necessary for investigation as to whether the consignee may lawfully receive and possess such firearms.

8. Engaging in the business of gunsmith or dealer in firearms by a person to whom a valid license therefor has been issued pursuant to section nineteen hundred three.

b. At any time, any person who voluntarily delivers to a peace officer any weapon, instrument, appliance or substance specified in section eighteen hundred ninety-seven, under circumstances not suspicious, peculiar or involving the commission of any crime, shall not be arrested. Instead, the officer who might make the arrest shall issue or cause to be issued in a proper case a summons or other legal process to the person for investigation of the source of the weapon, instrument, appliance or substance.

§ 6. Section nineteen hundred one of such law, as amended by chapter two hundred twenty-nine of the laws of nineteen hundred forty-nine, is hereby renumbered section nineteen hundred fourteen and a new section is hereby inserted in lieu thereof, to be section nineteen hundred one, to read as follows:

§ 1901. Destruction of weapons and dangerous instruments, appliances and substances

1. Any weapon, instrument, appliance or substance specified in section eighteen hundred ninety-seven, when unlawfully possessed, manufactured, transported or disposed of, or when surrendered or voluntarily delivered pursuant to the preceding section, is hereby declared a nuisance. When the same shall come into the possession of any peace officer, it shall be surrendered immediately to the official mentioned in paragraph (d) of subdivision one of the preceding section, except that such weapon, instrument, appliance or substance coming into the possession of the state police shall be surrendered to the superintendent of state police.

2. The official to whom the weapon, instrument, appliance or substance is so surrendered shall, at any time but at least once each year, destroy the same or cause it to be destroyed, or render the same or cause it to be rendered ineffective and useless for its intended purpose and harmless to human life.

3. Notwithstanding subdivision two of this section, the official to whom the weapon, instrument, appliance or substance is so surrendered shall not destroy the same if (a) a judge or justice of a court of record, or a district attorney, shall file with the official a certificate that the non-destruction thereof is necessary or proper to serve the ends of justice; or (b) the official directs that the same be retained in any laboratory conducted by any police or sheriff's department for the purpose of research, comparison, identification or other endeavor toward the prevention and detection of crime.

§ 7. Section nineteen hundred two of such law is hereby renumbered section nineteen hundred fifteen and a new section is hereby inserted in lieu thereof, to be section nineteen hundred two, to read as follows:

§ 1902. Forwarding information on firearms, convictions and certain wounds inflicted by weapons, instruments, appliances and substances

1. In the case of any machine-gun or firearm taken from the possession of any person, the official to whom such weapon is surrendered pursuant to subdivision one of the preceding section shall immediately notify the executive department, division of state police, Albany, giving the calibre, make, model, manufacturer's name and serial number, or if none, any other distinguishing number or identification mark. A search of the files of such division and notification of the results of the search to such official shall immediately be made.

2. Before any machine-gun or firearm is destroyed pursuant to subdivision two of the preceding section, (a) the official to whom the same has been surrendered shall forward to the executive department, division of state police, Albany, a notice of intent to destroy and the calibre, make, model, manufacturer's name and serial number, or if none, any other distinguishing number or identification mark of the machine-gun or firearm; (b) such division shall make and keep a record of such description together with the name and address of the official reporting the same and the date such notice was received; and (c) a search of the files of such division and notification of the results of the search to such official shall be made without unnecessary delay.

3. Any person, other than a wholesale dealer, or gunsmith or dealer in firearms duly licensed pursuant to section nineteen hundred three, lawfully in possession of a firearm, who disposes of the same without first notifying in writing the licensing officer in the city of New York and county of Nassau and elsewhere in the state the executive department, division of state police, Albany, is guilty of a misdemeanor.

4. Every case of a bullet wound, gunshot wound, powder burn or any other injury arising from or caused by the discharge of a gun or firearm, and every case of a wound which is likely to or may result in death and is actually or apparently inflicted by a knife, icepick or other sharp or pointed instrument, shall be reported at once to the police authorities of the city, town or village where the person reporting is located by: (a) the physician attending or treating the case; or (b) the manager, superintendent or other person in charge, whenever such case is treated in a hospital, sanitarium or other institution. Failure to make such report is a misdemeanor. This subdivision shall not apply to such wounds, burns or injuries received by a member of the armed forces of the United States or the state of New York while engaged in the actual performance of duty.

5. Every conviction under sections eighteen hundred ninety-seven, eighteen hundred ninety-eight, nineteen hundred two, nineteen hundred three or nineteen hundred four of a person who is not a citizen of the United States, shall be certified to the proper officer of the United States government by the district attorney of the county in which such conviction was had.

 Changes or additions in text are indicated by underline

§ 8. Section nineteen hundred three of such law is hereby renumbered nineteen hundred nineteen and a new section is hereby inserted in lieu thereof, to be section nineteen hundred three, to read as follows:

§ 1903. Licenses to carry, possess, repair and dispose of firearms

1. Eligibility. No license shall be issued or renewed pursuant to this section except by the licensing officer, and then only after investigation and finding that all statements in a proper application for a license are true. No license shall be issued or renewed except for an applicant (a) of good moral character; (b) who has not been convicted anywhere of a felony or any one of the misdemeanors or offenses mentioned in section five hundred fifty-two of the code of criminal procedure; (c) who has stated whether he has ever suffered any mental illness or been confined to any hospital or institution, public or private, for mental illness; and (d) concerning whom no good cause exists for the denial of the license. No person shall engage in the business of gunsmith or dealer in firearms unless licensed pursuant to this section. An applicant to engage in such business shall also be a citizen of the United States, more than twenty-one years of age and maintain a place of business in the city or county where the license is issued. For such business, if the applicant is a firm or partnership, each member thereof shall comply with all of the requirements set forth in this subdivision and if the applicant is a corporation, each officer thereof shall so comply.

2. Types of licenses. A license for gunsmith or dealer in firearms shall be issued to engage in such business. A license for a pistol or revolver shall be issued to (a) have and possess in his dwelling by a householder; (b) have and possess in his place of business by a merchant or storekeeper; (c) have and carry concealed while so employed by a messenger employed by a banking institution or express company; (d) have and carry concealed while so employed by a regular employee of an institution of the state, or of any county, city, town or village, under control of a commissioner of correction of the city or any warden, superintendent or head keeper of any state prison, penitentiary, workhouse, county jail or other institution for the detention of persons convicted or accused of crime or held as witnesses in criminal cases, provided that application is made therefor by such commissioner, warden, superintendent or head keeper; and (e) have and carry concealed without regard to employment or place of possession, by any person when proper cause exists for the issuance thereof.

3. Applications. Applications shall be made and renewed, in the case of a license to carry or possess a pistol or revolver, to the licensing officer in the city or county, as the case may be, where the applicant resides, is principally employed or has his principal place of business as merchant or storekeeper; and, in the case of a license as gunsmith or dealer in firearms, to the licensing officer where such place of business is located. Blank applications shall, except in the city of New York, be approved as to form by the superintendent of state police. An application shall state the full name, date of birth, residence, present occupation of each person or individual signing the same, whether or not he is a citizen of the United States, whether or not he complies with each requirement for eligibility

Case 7:10-cv-05413-CS Document 66-1 Filed 02/23/11 Page 10 of 55

specified in subdivision one of this section and such other facts as may be required to show the good character, competency and integrity of each person or individual signing the application. An application shall be signed and verified by the applicant. Each individual signing an application shall submit one photograph of himself and a duplicate for each required copy of the application. Such photographs shall have been taken within thirty days prior to filing the application. In the case of a license as gunsmith or dealer in firearms, the photographs submitted shall be two inches square, and the application shall also state the previous occupation of each individual signing the same and the location of the place of such business, or of the bureau, agency, subagency, office or branch office for which the license is sought, specifying the name of the city, town or village, indicating the street and number and otherwise giving such apt description as to point out reasonably the location thereof. In such case, if the applicant is a firm, partnership or corporation, its name, date and place of formation, and principal place of business shall be stated. For such firm or partnership, the application shall be signed and verified by each individual composing or intending to compose the same, and for such corporation, by each officer thereof.

4. Investigation. Before a license is issued or renewed, there shall be an investigation of all statements required in the application by the duly constituted police authorities of the locality where such application is made. For that purpose, the records of the department of mental hygiene concerning previous or present mental illness of the applicant shall be available for inspection by the investigating officer of the police authority. In order to ascertain any previous criminal record, the investigating officer shall take the fingerprints and physical descriptive data in quadruplicate of each individual by whom the application is signed and verified. Two copies of such fingerprints shall be taken on standard fingerprint cards eight inches square, and one copy may be taken on a card supplied for that purpose by the federal bureau of investigation. When completed, one standard card shall be forwarded to and retained by the division of criminal identification, department of correction, at Albany. A search of the files of such division and written notification of the results of the search to the investigating officer shall be made without unnecessary delay. Thereafter, such division shall notify the licensing officer and the executive department, division of state police, Albany, of any criminal record of the applicant filed therein subsequent to the search of its files. A second standard card, or the one supplied by the federal bureau of investigation, as the case may be, shall be forwarded to that bureau at Washington with a request that the files of the bureau be searched and notification of the results of the search be made to the investigating police authority. Of the remaining two fingerprint cards, one shall be filed with the executive department, division of state police, Albany, within ten days after issuance of the license, and the other remain on file with the investigating police authority. No such fingerprints may be inspected by any person other than a peace officer, except on order of a judge or justice of a court of record either upon notice to the licensee or without notice, as the judge or justice may deem ap-

 Changes or additions in text are indicated by underline

propriate. Upon completion of the investigation, the police authority shall report the results to the licensing officer without unnecessary delay.

5. Filing of approved applications. The application for any license, if granted, shall be a public record. Such application shall be filed by the licensing officer with the clerk of the county of issuance, except that in the city of New York and county of Nassau, the licensing officer shall designate the place of filing in the appropriate division, bureau or unit of the police department thereof. A duplicate copy of such application shall be filed by the licensing officer in the executive department, division of state police, Albany, within ten days after issuance of the license.

6. License: validity. Any license issued pursuant to this section shall be valid notwithstanding the provisions of any local law or ordinance. No license shall be transferable to any other person or premises. A license to carry or possess a pistol or revolver, not otherwise limited as to place or time of possession, shall be effective throughout the state, except that the same shall not be valid within the city of New York unless a special permit granting validity is issued by the police commissioner of that city. A license as gunsmith or dealer in firearms shall not be valid outside the city or county, as the case may be, where issued.

7. License: form. Any license issued pursuant to this section shall, except in the city of New York, be approved as to form by the superintendent of state police. A license to carry or possess a pistol or revolver shall have attached the licensee's photograph, and a coupon which shall be removed and retained by any person disposing of a firearm to the licensee. Such license shall specify the weapon covered by calibre, make, model, manufacturer's name and serial number, or if none, by any other distinguishing number or identification mark, and shall indicate whether issued to carry on the person or possess on the premises, and if on the premises shall also specify the place where the licensee shall possess the same. If such license is issued to an alien, or to a person not a citizen of and usually a resident in the state, the licensing officer shall state in the license the particular reason for the issuance and the names of the persons certifying to the good character of the applicant. Any license as gunsmith or dealer in firearms shall mention and describe the premises for which it is issued and shall be valid only for such premises.

8. License: exhibition and display. Every licensee while carrying a pistol or revolver shall have on his person a license to carry the same. Every person licensed to possess a pistol or revolver on particular premises shall have the license for the same on such premises. Upon demand, the license shall be exhibited for inspection to any peace officer. A license as gunsmith or dealer in firearms shall be prominently displayed on the licensed premises. Failure of any licensee to so exhibit or display his license, as the case may be, shall be presumptive evidence that he is not duly licensed.

9. License: amendment. Elsewhere than in the city of New York, a person licensed to carry or possess a pistol or revolver may apply at any time to his licensing officer for amendment of his license to include one or more such weapons or to cancel weapons held under license. If granted, a record of the amendment describing the weapons involved

Case 7:10-cv-05413-CS Document 66-1 Filed 02/23/11 Page 12 of 55

shall be filed by the licensing officer in the executive department, division of state police, Albany.

10. License: expiration and renewal. Any license for gunsmith or dealer in firearms and, in the city of New York and the counties of Nassau and Suffolk, any license to carry or possess a pistol or revolver, issued at any time pursuant to this section or prior to the first day of July, nineteen hundred sixty-three and not limited to expire on an earlier date fixed in the license, shall expire on the first day of the second January after the date of issuance. Elsewhere than in the city of New York and the counties of Nassau and Suffolk, any license to carry or possess a pistol or revolver, issued at any time pursuant to this section or prior to the first day of July, nineteen hundred sixty-three and not previously revoked or cancelled, shall be in force and effect until revoked as herein provided. Any application to renew a license that has not previously expired, been revoked or cancelled shall thereby extend the term of the license until disposition of the application by the licensing officer. In the case of a license for gunsmith or dealer in firearms, in counties having a population of less than two hundred thousand inhabitants, photographs and fingerprints shall be submitted on original applications and upon renewal thereafter only at six year intervals.

11. License: revocation. The conviction of a licensee anywhere of a felony or any one of the misdemeanors or offenses mentioned in section five hundred fifty-two of the code of criminal procedure shall operate as a revocation of the license. A license may be revoked and cancelled at any time in the city of New York and county of Nassau by the licensing officer, and elsewhere than in the city of New York by any judge or justice of a court of record. The official revoking a license shall give written notice thereof without unnecessary delay to the executive department, division of state police, Albany, and shall also notify immediately the duly constituted police authorities of the locality.

12. Records required of gunsmiths and dealers in firearms. Any person licensed as gunsmith or dealer in firearms shall keep a record book approved as to form, except in the city of New York, by the superintendent of state police. In the record book shall be entered at the time of every transaction involving a firearm the date, name, age, occupation and residence of any person from whom a firearm is received or to whom a firearm is delivered, and the calibre, make, model, manufacturer's name and serial number, or if none, any other distinguishing number or identification mark on such firearm. Before delivering a firearm to any person, the licensee shall require him to produce either a license valid under this section to carry or possess the same, or proof of lawful authority as a peace officer or other exempt person pursuant to section nineteen hundred. The licensee shall remove and retain the attached coupon and enter in the record book the date of such license, number, if any, and name of the licensing officer, in the case of the holder of a license to carry or possess, or the shield or other number, if any, assignment and department or unit, in the case of an exempt person. The record book shall be maintained on the premises mentioned and described in the license and shall be open at all reasonable hours for inspection by any

 Changes or additions in text are indicated by underline

peace officer. In the event of cancellation or revocation of the license for gunsmith or dealer in firearms, or discontinuance of business by a licensee, such record book shall be immediately surrendered to the licensing officer in the city of New York and county of Nassau, and elsewhere in the state to the executive department, division of state police.

13. Expenses. The expense of providing a licensing officer with blank applications, licenses and record books for carrying out the provisions of this section shall be a charge against the county, and in the city of New York against the city.

14. Fees. In the city of New York, the annual license fee shall be twenty-five dollars for gunsmiths and fifty dollars for dealers in firearms. In such city, the city council shall fix the fee to be charged for a license to carry or possess a pistol or revolver and provide for the disposition of such fees. Elsewhere in the state, the licensing officer shall collect and pay into the county treasury the following fees: for each license to carry or possess a pistol or revolver, not less than three dollars nor more than five dollars as may be determined by the board of supervisors of the county; for each amendment thereto, one dollar, and two dollars in the county of Suffolk; and for each license issued to a gunsmith or dealer in firearms, four dollars.

15. Any violation by any person of any provision of this section is a misdemeanor.

§ 9. Section nineteen hundred four of such law is hereby renumbered section nineteen hundred twenty-two.

§ 10. Section nineteen hundred six of such law, as amended by chapter eight hundred ninety-one of the laws of nineteen hundred fifty-three, paragraph a of subdivision one thereof having been last amended by chapter five hundred seventy-six of the laws of nineteen hundred fifty-eight, is hereby renumbered section nineteen hundred four and amended to read as follows:

~~§ 1906. Discharging fire-arms~~

~~1. A person who, otherwise than in self defense, or in the discharge of official duty:~~

~~a. Wilfully discharges any species of firearms, air-gun or other weapon, or throws any other deadly missile~~

~~(1) in a public place or in any place where there is any person to be endangered thereby, or,~~

~~(2) in Putnam county within one-quarter mile of any occupied school building other than under supervised instruction by properly authorized instructors, although no injury to any person ensues; or,~~

~~b. Intentionally, without malice, points or aims any fire-arm at or toward any other person; or,~~

~~c. Discharges, without injury to any other person, fire-arms, while intentionally without malice, aimed at or toward any person; or,~~

~~d. Maims or injures any other person by the discharge of any fire-arm pointed or aimed intentionally, but without malice, at any such person,~~

~~Is guilty of a misdemeanor.~~

§ 1904. Prohibited use of weapons

1. Except as permitted in section nineteen hundred, any person who uses a machine-gun is guilty of a felony. Any person who attempts to

use against another an imitation pistol is guilty of a misdemeanor, and he is guilty of a felony if he has previously been convicted of any crime.

2. Any person hunting with a dangerous weapon in any county wholly embraced within the territorial limits of a city is guilty of a misdemeanor.

3. Any person who wilfully discharges a loaded firearm or any other gun, the propelling force of which is gunpowder, at an aircraft while such aircraft is in motion in the air or in motion or stationary upon the ground, or at any railway or street railroad train as defined by the public service law, or at a locomotive, car, bus or vehicle standing or moving upon any such railway, railroad or public highway, is guilty of a felony and punishable: first, if thereby the safety of any person is endangered, by not more than twenty years in prison; second, in every other case, by not more than five years in prison.

4. Any person who, otherwise than in self defense or in the discharge of official duty, (a) wilfully discharges any species of firearms, air-gun or other weapon, or throws any other deadly missile, either in a public place, or in any place where there is any person to be endangered thereby, or, in Putnam county, within one-quarter mile of any occupied school building other than under supervised instruction by properly authorized instructors although no injury to any person ensues; (b) intentionally, without malice, points or aims any firearm or any other gun, the propelling force of which is gunpowder, at or toward any other person; (c) discharges, without injury to any other person, firearms or any other guns, the propelling force of which is gunpowder, while intentionally without malice, aimed at or toward any person; or (d) maims or injures any other person by the discharge of any firearm or any other gun, the propelling force of which is gunpowder, pointed or aimed intentionally, but without malice, at any such person, is guilty of a misdemeanor.

2 5. A person who leaves the state, with intent to elude any provision of subdivision four of this section, or to commit any act without the state, which is prohibited by subdivision four of this section, or who, being a resident of this state, does any act without the state, which would be punishable by the provisions of subdivision four of this section, if committed within the state, is guilty of the same offense and subject to the same punishment, as if the act had been committed within this state.

3 6. In any criminal proceeding before any court, magistrate or grand jury for any of the offenses specified in subdivision four of this section, the court, magistrate or grand jury may confer immunity in accordance with the provisions of section two thousand four hundred forty-seven of this chapter.

§ 11. Section nineteen hundred four-a of such law, as added by chapter three hundred ninety-seven of the laws of nineteen hundred fifty, is hereby renumbered section nineteen hundred twenty-three.

§ 12. Such law is hereby amended by inserting therein a new section, to be section nineteen hundred five, to read as follows:

§ 1905. Committing crime while armed

1. If any person while in the commission or attempted commission of a felony or crime or in leaving the scene of a crime shall be armed with a pistol or any of the weapons or instruments specified in section eighteen

 Changes or additions in text are indicated by underline

hundred ninety-seven, the punishment elsewhere prescribed in this law for the felony of which he is convicted may be increased by imprisonment in state's prison for not less than five nor more than ten years. Upon a second conviction for a felony so committed such period of imprisonment may be increased by not less than ten nor more than fifteen years. Upon a third conviction for a felony so committed such period of imprisonment may be increased by not less than fifteen nor more than twenty-five years.

2. In no case shall any person punished as provided in subdivision one of this section be put upon probation or have the execution of his sentence suspended, notwithstanding the provisions of section twenty-one hundred eighty-eight, for the increased term of his punishment imposed as above.

§ 13. Section nineteen hundred forty-four of such law, as last amended by chapter fifty-three of the laws of nineteen hundred thirty-six, is hereby amended to read as follows:

**§ 1944. Committing crime while ~~armed~~ occupant of stolen or other automobile**

If any person while in the act of committing a felony~~,~~ or attempting to commit a felony, or any person while in the act of committing a crime or attempting to commit a crime shall be an occupant of a stolen automobile or an automobile carrying fictitious license plates or an automobile which has been used in the commission of a crime or in an attempt to commit a crime, ~~or if any person while in the commission or attempted commission of either of such acts or in leaving the scene of a crime shall be armed with a pistol or any of the weapons or instruments specified in sections eighteen hundred and ninety-six, eighteen hundred and ninety-seven or eighteen hundred and ninety-seven-a,~~ the punishment elsewhere prescribed in this law for the felony of which he is convicted may be increased by imprisonment in state's prison for not less than five nor for more than ten years. Upon a second conviction for a felony so committed such period of imprisonment may be increased by not less than ten years nor more than fifteen years; and upon a third conviction for a felony so committed such period of imprisonment may be increased by not less than fifteen nor more than twenty-five years. In no case shall any person punished as above provided be put upon probation or have the execution of his sentence suspended, notwithstanding the provisions of section twenty-one hundred and eighty-eight, for the increased term of his punishment imposed as above.

§ 14. Section nineteen hundred ninety-one of such law, as amended by chapter three hundred of the laws of nineteen hundred forty-one, is hereby amended to read as follows:

**§ 1991. Injuring railroad property and appurtenances; obstructing tracks**

A person who wilfully:

1. Displaces, loosens, removes, injures or destroys any rail, sleeper, switch, bridge, viaduct, culvert, embankment or structure or any part thereof, attached, appertaining to or connected with any railway or street railroad as defined by the public service law, or leaves unattended any car, bus or other transit facility or equipment given into his possession or care as an officer, employee or agent of any such privately or publicly owned or operated railroad, street railroad or bus system, or by any other means attempts to wreck, destroy, or so damage any car, bus, tender, locomotive or railway or street railroad train or part thereof, while moving

Case 7:10-cv-05413-CS Document 66-1 Filed 02/23/11 Page 16 of 55

or standing upon any railway or railroad track or public highway in this state, as to render such car, bus, tender, locomotive or railway or street railroad train wholly or partially unfitted for its ordinary use, whether operated by steam, electricity, oil, gasoline or other motive power; or,

2. Places any obstruction upon the track of any such railway or railroad; or,

3. Wilfully destroys or breaks any guard erected or maintained by a railroad corporation or public agency operating a street railroad or bus system as a warning signal for the protection of its employees; or,

4. ~~Wilfully discharges a loaded fire-arm, or projects~~ Projects, or throws a stone or other missile at any such railway or railroad train, or at a locomotive, car, bus or vehicle standing or moving upon any such railway, railroad or highways; or,

5. Wilfully displaces, removes, cuts, injures or destroys any wire, insulator, pole, dynamo, motor, locomotive, or any part thereof, attached, appertaining to or connected with any railway, street railroad operated by electricity or connected with any such street railroad facility or equipment, or wilfully interferes with or interrupts any motive power used in running such road, street railroad or bus system, or wilfully places any obstruction upon the track or in front of such railroad, street railroad or bus, ~~or wilfully discharges a loaded fire-arm,~~ or projects or throws a stone or any other missile at such railway train or street railroad train or locomotive, car or vehicle or bus, standing or moving upon such railway or highway; or,

6. Removes a journal brass from a car while standing upon any railroad or street railroad track in this state, without authority from some person who has a right to give such authority~~.~~,

Is punishable as follows: First. If thereby the safety of any person is endangered, by imprisonment for not more than twenty years. Second. In every other case by imprisonment for not more than five years.

§ 15. Sections nineteen hundred fourteen, nineteen hundred fifteen and nineteen hundred nineteen of such law, as amended, are hereby repealed.

§ 16. Separability clause. If any provision of this act, or the application thereof to any person or circumstance, is held invalid, the remainder of the act, and the application of such provisions to other persons or circumstances, shall not be affected thereby.

§ 17. This act shall take effect July first, nineteen hundred sixty-three.

## TABLE I

### DISTRIBUTION OF PRESENT PROVISIONS OF THE PENAL LAW PROPOSED TO BE REPEALED IN THE NEW TEN SECTIONS

| Present Statute | | | Proposed Statute |
|---|---|---|---|
| Section Number | Subdivision Number | Sentence | Section and Subdivision Number |
| 1896 | | 1st | 1896(4) (5); 1898(1) (4) (5) |
| | | 2d | 1898(2) (3) |
| | | 3d | 1900(a.6) |
| 1897 | 1 | 1st first part | 1904(1) |
| | | last part | 1897(8) |
| | | 2d | 1897(1) |
| | 1–a | 1st | 1896(1) |
| | | 2d | 1897(1); 1904(1) |
| | | 3d | 1899(1) |
| | | 4th | 1900(a.6) |
| | | 5th | 1900(a.1(a)) (a.1(b)) (a.2) (a.6) |
| | 2 | 1st | 1897(1) (6) |
| | 3 | 1st | 1897(1) (2) (3) (4) |
| | | 2d | 1900(a.5) |
| | | 3d | 1900(a.4) |
| | 4 | 1st | 1897(3) |
| | 5 | 1st | 1897(3) |
| | 5–a | 1st | 1897(2) |
| | 6 | 1st | 1897(5) |
| | 6–a | 1st | 1900(b) |
| | 6–b | 1st | 1904(2) |
| | 7 | 1st | 1903(2) |
| | 8 | 1st | 1903(1) (2) |
| | 9 | 1st | 1903(1) (2) |
| | 9–a | 1st | 1896(10); 1903(3) |
| | | 2d | 1896(10); 1903(3) |
| | | 3d | 1903(3) |
| | | 4th | 1903(6) |
| | 9–b | 1st | 1903(1) |
| | | 2d first part | 1903(4) |
| | | last part | 1903(1) |
| | | 3d | 1903(4) |
| | | 4th | Dropped |
| | 10.a | 1st | 1903(13) |
| | | 2d | 1903(14) |
| | | 3d | 1903(14) |
| | | 4th | 1903(5) |
| | | 5th | 1903(7) |
| | 10.b | 1st first part | 1903(9) |
| | | last part | 1903(14) |
| | | 2d | 1903(9) |
| | | 3d | 1903(9) |
| | | 4th | 1903(10) |
| | | 5th | 1903(10) |
| | | 6th | 1903(7) |
| | | 7th | 1903(3) |
| | | 8th | 1903(3) |
| | | 9th | 1903(3) |

Case 7:10-cv-05413-CS Document 66-1 Filed 02/23/11 Page 18 of 55

TABLE I—(Continued)

DISTRIBUTION OF PRESENT PROVISIONS OF THE PENAL LAW PROPOSED TO BE REPEALED IN THE NEW TEN SECTIONS

| Present Statute | | | Proposed Statute |
|---|---|---|---|
| Section Number | Subdivision Number | Sentence | Section and Subdivision Number |
| 1897 | | 10th | 1903(3) |
| | | 11th | 1903(3) |
| | | 12th | 1903(3) |
| | | 13th | 1903(3) |
| | | 14th | 1903(3) |
| | | 15th | 1903(4) |
| | | 16th | 1903(1) |
| | | 17th | 1903(11) |
| | | 18th | 1903(11) |
| | | 19th | 1903(11) |
| | | 20th | 1903(10) |
| | 11 | 1st | 1903(11) |
| | | 2d | 1903(4) |
| | 12 | 1st | 1903(7) |
| | | 2d | 1903(12) |
| | 13(a) | 1st | 1900(a.7) |
| | 13(b) | 1st | 1900(a.1(a)) (a.1(b)) |
| | 14 | 1st | 1902(5) |
| | 15 | 1st | 1900(a.1(c)) |
| 1897–a | | 1st | 1896(2); 1897(1) |
| | | 2d | 1900(a.1(a)) (a.1(b)) |
| 1897–b | 1 | 1st | 1896(7); 1898(6) |
| | 2 | 1st | 1898(3) |
| | 3 | 1st | 1898(3) |
| | 4 | 1st | 1899(5) |
| 1897–c | 1 | 1st | 1902(1) |
| | | 2d | 1902(1) |
| | | 3d | 1902(1) |
| | 2 | 1st | 1902(2) |
| | | 2d | 1902(2) |
| | | 3d | 1902(2) |
| 1898 | | 1st | 1899(4) |
| | | 2d | 1899(2) |
| 1898–a | | 1st | 1899(3) |
| | | 2d | 1899(3) |
| | | 3d first part | 1900(a.1(a)) (a.1(b)) (a.2) |
| | | last part | 1899(3) |
| 1899 | 1 | 1st | 1901(1) |
| | | 2d | 1901(1) |
| | | 3d | 1901(2) (3) |
| | | 4th | 1901(3) |
| | 2 | | Dropped |
| | 3 | | Dropped |
| | 4 | | 1900(a.1(d)) |

Changes or additions in text are indicated by underline

TABLE I—(Continued)

DISTRIBUTION OF PRESENT PROVISIONS OF THE PENAL LAW PROPOSED TO BE REPEALED IN THE NEW TEN SECTIONS

| Present Statute | | | Proposed Statute |
|---|---|---|---|
| Section Number | Subdivision Number | Sentence | Section and Subdivision Number |
| 1914 | 1 | 1st | 1903(12) |
| | 2 | 1st | 1896(8) |
| | | 2d | 1896(9) |
| | 3 | 1st | 1903(1) |
| | | 2d | 1896(10); 1903(1) |
| | | 3d | 1896(10); 1903(3) |
| | | 4th | 1896(10); 1903(3) |
| | | 5th | 1903(6) |
| | 4 | 1st | 1903(1) (4) |
| | | 2d | 1903(1) |
| | 5 | 1st first part | 1903(13) |
| | | last part | 1903(3) (7) (12) |
| | | 2d | 1903(1) |
| | | 3d | 1903(5) |
| | | 4th | 1903(3) |
| | | 5th | 1903(3) |
| | | 6th | 1903(3) |
| | | 7th | 1903(4) |
| | | 8th | 1903(4) |
| | | 9th | 1903(4) |
| | | 10th | 1903(4) |
| | | 11th | 1903(4) |
| | | 12th | 1903(4) |
| | | 13th | 1903(4) |
| | | 14th | 1903(10) |
| | | 15th | 1903(4) |
| | | 16th | 1903(1) |
| | | 17th | 1903(11) |
| | | 18th | 1903(11) |
| | | 19th | 1903(3) |
| | | 20th | 1903(1) |
| | | 21st first part | 1903(7) |
| | | last part | 1903(8) |
| | | 22d | 1903(6) |
| | | 23d | 1903(14) |
| | | 24th | 1903(10) |
| | 6 | 1st | 1903(12) |
| | | 2d | 1903(12) |
| | | 3d | 1903(12) (15) |
| | | 4th | 1903(12) |
| | | 5th | 1903(11) |
| | | 6th | 1902(3) |
| | | 7th | 1896(8) (9); 1902(3) |
| | 7 | 1st | 1903(15) |
| 1915 | 1 | 1st | 1902(4) |
| | 2 | 1st | 1902(4) |
| | 3 | 1st | 1902(4) |
| | 4 | 1st | 1902(4) |
| 1919 | | | 1904(3) |

deletions by ~~strikeouts~~

**TABLE 2**

DISTRIBUTION OF PRESENT PROVISIONS OF THE PENAL LAW PROPOSED TO BE AMENDED IN THE NEW TEN SECTIONS

| Present Statute | Proposed Statute |
|---|---|
| Section Number | Section and Subdivision Number |
| 1906 | 1904(4) (5) (6) |
| 1944 | 1905 |
| 1991 | 1904(3) |

NOTES

Note.—This bill is introduced on behalf of the Joint Legislative Committee on Firearms and Ammunition.

Note.—1. Two sets of present provisions of the penal law are proposed to be repealed by the bill:

(a) One set (§§ 1896, 1897, 1897-a, 1897-b, 1897-c, 1898, 1898-a, 1899 and 1914) makes criminal certain conduct relating to the possession, manufacture, transport and disposal of weapons and dangerous instruments, appliances and substances, and the defacement of firearms. These provisions create presumptions of various sorts: of possession arising from presence in certain places; of unlawful intent arising from possession; and of defacement of a firearm from possession of the same. Certain persons are given exemption and immunity throughout these provisions. These provisions cover destruction of weapons, appliances and instruments, and the forwarding of certain information concerning firearms. Finally, these provisions cover the licensing of possession of firearms and of gunsmiths and dealers in firearms. With minor exceptions, every one of these provisions govern conduct relating to weapons and dangerous instruments, appliances and substances, that falls short of their use or attempted use. The exceptions are the attempted use of an imitation pistol (§ 1897(1)), hunting with a dangerous weapon in certain counties (§ 1897(6-b)) and use of a machine gun (§ 1897(1-a)).

(b) The second set of such provisions (§§ 1915, 1919) relate to required reporting of certain wounds and injuries, and to prohibited uses of firearms.

2. The present provisions of the penal law (§§ 1906, 1944 and 1991) proposed to be amended by the bill relate to prohibited uses of firearms and the imposition of additional punishment for committing crime while armed.

3. The present provisions of the penal law proposed to be renumbered by the bill (§§ 1900 to be 1906; 1901 to be 1914; 1902 to be 1915; 1903 to be 1919; 1904 to be 1922; and 1904-a to be 1923) do not relate to weapons or dangerous instruments, appliances or substances. One additional provision proposed to be renumbered (§ 1906 to be 1904) relates to prohibited uses of firearms and is also the subject of amendment by the bill. There is no present provision of the penal law for section 1905. The proposed renumbering of these provisions makes available ten consecutively numbered sections of the penal law, beginning with section 1896 and ending with section 1905, for the provisions proposed in the bill.

4. The bill undertakes to reorder and rearrange in standardized manner all of the present provisions of the penal law relating to weapons and dangerous instruments, appliances and substances in ten consecutive sections of such law. The intended omissions to this comprehensive plan, so far as instruments, appliances and substances are concerned, are certain present provisions of the penal law relating to fireworks (§§ 1894, 1894-a and 2151), and explosives (§§ 851(6), 1052(8), 1420, 1894 and 1895). So far as weapons are concerned, the intended omissions are certain present provisions of the penal law relating to extortion by threats to use a weapon (§ 851(6)), manslaughter by use of a weapon (§ 1050(2)), pawnbrokers accepting a firearm in pawn (§ 1593) and tramps carrying weapons under certain circumstances (§ 2371).

 Changes or additions in text are indicated by underline

5. The order and arrangement of the ten sections of the penal law proposed by the bill are as follows: section 1896 defines ten terms frequently used in the nine succeeding sections. Section 1897 defines all criminal conduct relating to possession and arranges such conduct according to the order of severity of treatment. The first five subdivisions deal with conduct that requires no particular state of mind and the remaining three with conduct that makes such requirement. Section 1898, continuing the arrangement according to severity of treatment, defines criminal conduct with respect to manufacture, transport, disposal and defacement, in that order. Section 1899 creates six presumptions. The first three are presumptions of possession arising from presence in certain places. The next two are ones of unlawful intent arising from possession. The final one is a presumption of defacing a firearm arising from possession of the same. Section 1900 defines all exemptions and immunity with respect to the preceding three sections. These provisions are arranged according to the conduct (and not the person) covered by the exemption in the identical order previously used of possession, manufacture, transport and disposal. The broadest exemption precedes the more limited one, and accordingly the first nine subdivisions exempting from prosecution precede the final subdivision that exempts only from arrest. Section 1901 covers destruction. Section 1902 collates all instances when information must be forwarded. Section 1903 combines the licensing of possession with that of gunsmith and dealer in firearms. Sections 1904 and 1905 are concerned with all conduct relating to use and attempted use covered in the proposed ten sections.

6. With three minor exceptions, every provision of the penal law proposed to be repealed by the bill is incorporated into the proposed ten new sections. The exceptions relate to one provision that was effective only during the year 1937 (§ 1897 (9-b)) and two that expired on July 1, 1955 (§ 1899(2) (3)). Without exception, the omitted provisions effected by the proposed amendments to three sections of the penal law (§§ 1906, 1944 and 1991), are incorporated into the new ten sections. The two tables above present the distribution in the new ten sections of each provision of the present penal law proposed to be repealed and amended.

## Savings and Loan Associations—Terminology

## CHAPTER 137

An Act to amend the banking law, with respect to terminology of savings and loan associations.

Became a law March 25, 1963, with the approval of the Governor.

Effective March 25, 1963.

*The People of the State of New York, represented in Senate and Assembly, do enact as follows:*

Section 1. Subdivision three of section three hundred seventy-eight of the banking law, such subdivision having been added by chapter three hundred forty-one of the laws of nineteen hundred thirty-nine, is hereby repealed.

§ 2. Subdivisions four through ten, inclusive, of section three hundred seventy-eight of such law are hereby renumbered, respectively, as subdivisions three through nine, inclusive.

§ 3. Section three hundred seventy-eight of such law is hereby amended by adding thereto a new subdivision, to be subdivision ten, to read as follows:

10. Notwithstanding any provision of this chapter, a savings and loan association, in its organization certificate, by-laws, advertising matter or any other instrument, document or other writing used in or in connection with its business, may designate its shares as "deposit accounts" or "sav-

# S (13)

Legislative Document (1965) No. 6

STATE OF NEW YORK

---

# REPORT

OF THE

# NEW YORK STATE JOINT LEGISLATIVE COMMITTEE

ON

# FIREARMS AND AMMUNITION

1965

# COMMITTEE PERSONNEL

SENATOR ALBERT BERKOWITZ, *Chairman*

ASSEMBLYMAN JULIUS VOLKER, *Vice-Chairman*

SENATOR WALTER VAN WIGGEREN
SENATOR THOMAS LAVERNE
SENATOR LEIGHTON A. HOPE
SENATOR SIMON J. LIEBOWITZ
SENATOR JULIAN B. ERWAY
ASSEMBLYMAN HYMAN E. MINTZ
ASSEMBLYMAN LEO A. LAWRENCE
ASSEMBLYMAN GEORGE M. MICHAELS
ASSEMBLYMAN CLARENCE D. LANE
ASSEMBLYMAN JOSEPH R. CORSO
FREDERICK J. LUDWIG, *Legal Consultant*

## Ex Officio

SENATOR WALTER J. MAHONEY, *President Pro Tem.*, The Senate
ASSEMBLYMAN JOSEPH E. CARLINO, *Speaker*, The Assembly
SENATOR JOSEPH ZARETZKI, *Minority Leader*, The Senate
ASSEMBLYMAN GEORGE L. INGALLS, *Majority Leader*, The Assembly
ASSEMBLYMAN ANTHONY J. TRAVIA, *Minority Leader*, The Assembly
SENATOR ELISHA T. BARRETT, *Finance Committee Chairman*, The Senate
ASSEMBLYMAN FRED W. PRELLER, *Ways and Means Committee Chairman*, The Assembly

# SUMMARY OF CONTENTS

INTRODUCTION .......... 7

THE OLD SULLIVAN LAW AND THE NEW STATUTE .......... 7

PURPOSE OF LEGISLATION DEALING WITH DANGEROUS WEAPONS .......... 11

INCIDENCE OF VIOLENT CRIME AND ADEQUATE WEAPONS LEGISLATION .......... 14

RECOMMENDATIONS .......... 17

LIST OF TABLES

1. Estimated Crimes of Violence Involving Weapons Committed in the United States and in New York, 1963 .......... 12
2. Violent and Non-Violent Crimes in the United States and England, 1962 .......... 14

APPENDIX A—THE NEW STATUTE .......... 19

APPENDIX B—WHAT HAPPENED TO THE OLD LAW .......... 33

## INTRODUCTION

At the fateful hour on Friday, November 22, 1963, when an assassin's bullets took the life of the President of the United States in Dallas, a full meeting of the Joint Legislative Committee on Firearms and Ammunition in New York was considering legislation to prevent such tragedy before it could happen.  At the identical moment of the event, the chairman and counsel were actually explaining such program to previously invited members of the press in the offices of the Temporary President of the Senate at 270 Broadway, New York City.  At such time, only New York, among the fifty states and the District of Columbia, had any apparatus in force and effect for comprehensive revision of laws affecting firearms and weapons.  Only New York had achieved comprehensive revision.  Only New York had under active consideration extensive substantive changes in the new statute.

The heart of the work of this Committee has been the new statute.  In many respects the statute is landmark legislation in the law-making history of New York: first, as a model of draftsmanship in the fields of both criminal and administrative law with respect to clarity, conciseness, definiteness, and order and arrangement; second, line by line, as the most extensive revision of the penal law actually enacted in the twentieth century, rivalled only by the enactments introduced by Caleb Baumes (Assemblyman, 1909–1913; Senator, 1919–1930); and third, as the only revision to succeed in enactment of the concededly most controversial provisions of the penal law in more than fifty years of their existence.

This is a report on the work of the Joint Legislative Committee and supplements two major reports of the Committee, one made in 1962 (*Legislative Document* No. 29, 33 pp.) and the other in 1964 (*Legislative Document* No. 12, 15 pp.).

## THE OLD SULLIVAN LAW AND THE NEW STATUTE

The first requirement of a sound provision of penal law is to draw a line as clear and unmistakable as the best draftsmanship can supply between lawful and unlawful conduct, and then to give fair warning in language that everyone will understand of what the law proposes to do when that line is overstepped.  More than sixty amendments to the old Sullivan Law in the half-century of its existence without systematic recodification caused counsel to report that "no area of the Penal Law is more bogged down in a logomachy of confusion than those sections dealing with weapons". (*Report of N. Y. Temp. Comm. on Youth & Delinquency* (1955) p. 39).

The old law contained 145 separate identifiable provisions and these are elsewhere tabulated (Appendix B, *post*, p. 33).  These provisions were not only not consecutive but actually scattered

through almost a hundred numbered sections of the penal law. Even the numbering system was haphazard: some sections were designated by number only; others, by a number and letter hyphenation. The same was true of the designation of subdivisions of sections: some had both number and letter in hyphenated form; others, simply a letter in parentheses. Spelling of identical terms often varied: *e.g.*, a "slungshot" appearing in several enumerations of prohibited weapons suddenly became a "slingshot" in an additional otherwise identical enumeration. Myriads of lines of the old law were verbatim repetitions of itself. Any original form of order and arrangement had long since been buried by an accumulation of amendments over a fifty-year period. The more serious deficiencies of the old law were those of content. Dozens of its provisions were vague and in need of clarification. Others were inconsistent, or flatly contradictory, and in need of standardization. Still others were absurd and unnecessary, or duplicative and overlapping, and in need of elimination.

In the half-century of its existence, the old Sullivan Law was amended more than sixty times. Prior to the enactment of the new statute, more than five hundred amendments had failed of enactment by the Legislature. A handful of these undertook comprehensive revision. A single bill in all of these years succeeded in passing both houses of the Legislature. This bill, introduced in the Senate by Joe R. Hanley (Pr. S. 1815, S. Intro. 656), and in the Assembly by Kenneth W. Fake (Pr. A. 1940, A. Intro. 822), proposed the adoption of provisions acceptable to uniform law commissioners. On March 26, 1932, the bill was vetoed by Governor Franklin D. Roosevelt on the grounds that such uniform provisions fell far below the stringent law enforcement requirements of the State of New York.

The new statute (L. 1963, c. 136, effective July 1, 1963) was introduced in the Senate by the Chairman of the Joint Legislative Committee (S. Intro. 136, Pr. 136 [1963]), passed both houses of the Legislature and was approved by Governor Nelson A. Rockefeller. Of the 145 provisions of the old law, three were dropped outright as anachronistic: one (old law § 1897(9-b), fourth sentence) expired on December 31, 1937, but for some unknown reason was retained for a quarter century thereafter; and two others (old law §§ 1899 (2), (3)), similarly retained, that expired on July 1, 1955. Of the fifteen sections of the old law scattered through almost one hundred sections of the penal law and containing the remaining 142 provisions, twelve were flatly repealed by the new statute and the remaining three amended (Appendix B, *post*, p. 33). The new statute contains ten consecutive sections. The sections and subdivisions are uniformly numbered. Repetitive language has been dropped. Absurd, unnecessary, duplicative and overlapping provisions have been eliminated. Inconsistent and contradictory provisions have been standardized. Most important, vague provisions have been clarified. Although the new statute retains the force and effect of 142 provisions of the old law, with some additions, its language is fully one-third less.

The order and arrangement of the new statute provides a logical basis for all reform of its substantive content. The first of the ten consecutive sections, 1896, contains definitions of twelve terms (two, on "rifle" and "shotgun," added) frequently used in the nine succeeding sections. By contrast, the old law defined only some of these terms and distributed their definition through four separate sections and through five subdivisions of two of these sections.

The heart of the new statute, section 1897, defines all conduct relating to the possession of weapons that is made criminal, and, in addition, specifies each and every weapon involved, including rifles and shotguns. The first six subdivisions deal with possessory conduct that requires no proof of any particular state of mind in order to convict, and the next three with conduct that makes such requirement. These subdivisions are arranged according to the severity of treatment. A tenth subdivision deals with circumstances under which mentally ill persons may not possess rifles or shotguns. By contrast the old law distributed provisions relating to criminal possession through numerous subdivisions of two sections that also dealt with numerous other topics.

Section 1898 of the new statute defines all other conduct relating to weapons that is made criminal short of their use or attempted use: manufacture, transport, disposition and defacement, in that order. As in the preceding section, the subdivisions are arranged according to the severity of treatment. By contrast, this conduct was distributed in the old law through three different sections with little regard to systematic arrangement.

All presumptions involved in the trial of all of this conduct are contained in section 1899: the first three are presumptions of the fact of possession arising from the presence of the actor in certain places; the next two, of unlawful intent arising from possession under certain circumstances; and the final one of the defacement of a firearm arising from its possession in that condition. By contrast in the old law these presumptions were scattered with considerable overlapping through four separate sections.

Every instance of exemption and immunity is delineated in section 1900 of the new statute and arranged according to *conduct* otherwise made criminal, *i.e.*, possession of specific weapons, and then their manufacture, transport and disposal, in that order, rather than according to the *status* of the person engaging in such conduct. The old law, besides confusing the exemption of conduct with status, also distributed these provisions through seven subdivisions scattered through five widely separated sections.

The next three sections of the new statute contain provisions of administrative rather than criminal law: section 1901, controlling destruction of weapons by criminal law administrators; section 1902, governing transmittal of information by and to such administrators; and section 1903, relating to licensing by such administrators. In the old law these provisions were widely distributed among its various sections. Significantly different considerations of draftsmanship must govern provisions of administrative law compared with those of criminal law. For criminal law

Case 7:10-cv-05413-CS Document 66-1 Filed 02/23/11 Page 29 of 55

provisions, exclusive rule-making power is retained by the Legislature. Trial of issues of fact is committed to courts of criminal jurisdiction and such issues must be established by proof beyond a reasonable doubt. On the other hand, in the administrative law provisions the Legislature shares its rule-making power with certain of its designated administrators. Issues of fact are committed by the Legislature to determination by such administrators. Court proceedings are civil and not criminal, review rather than originally determine the rule-making or fact determination of the administrators, and do so according to standards of proof quite different from those required in a criminal trial. To illustrate: in section 1903 of the new statute, the [illegible] a State-wide basis for the issuance of a license and then commits to the discretion of the licensing officer determination of "good cause" and "proper cause." [Penal Law § 1903 (1), (2), Appendix A, *post*, p. 26–27] Such provision, even penal, would certainly not be vague because of settled rules of judicial construction that limit the meaning of a [illegible] to the common characteristics of its preceding enumeration. In the instant case of an administrative provision, the language signifies that the licensing officer is not a mere ministerial agent and the [illegible] court may not independently dispose of every case of an applicant denied a license by such officer.

The remaining provisions of the new statute, sections 1904 and 1905, cover conduct that goes beyond that of a mere possessory nature. Section 1904 sets forth all instances in the new statute in which the actual or attempted use of weapons is prohibited. This section replaces provisions distributed through four sections of the old law. Section 1905 covers the matter of additional punishment for committing crime while armed, a provision commingled with other sections in the old law.

The new statute with its amendments to date is fully set forth, Appendix A, *post*, p. 19 to 32.

Simple comparison of the new statute with those of fifty other American jurisdictions (49 States and the District of Columbia) demonstrates its superior clarity, orderly arrangement, comprehensiveness and conciseness. For the first time in the law-enforcement history of the State, personnel charged with the administration of its weapons laws could be and in fact were supplied with the precise content of its provisions: the police of the city of New York in printed Circular No. 13, dated June 28, 1963, before the effective date of the new statute, and again in printed Circular No. 35, dated September 14, 1964, covering the complete statute, as amended; and the State police by mimeographed material of the complete statute, made available in June, 1964.

More careful comparison demonstrates that New York in its new statute imposes restrictions upon weapons that exceed every other American jurisdiction. With respect to pistols and revolvers, only New York and a single other State (Hawaii) require a license for possession in one's home, place of business, or property, as distinguished from carrying the same. Only New York and

two other States (California and New Jersey) make mandatory the taking of fingerprints for the issuance of such license. Only in New York and a handful of the 28 American jurisdictions that require any licensing whatsoever (Connecticut, District of Columbia, Hawaii, Indiana, Massachusetts and West Virginia) does the prohibition against unlicensed carrying include not only concealed pistols or revolvers but also those openly carried. Of the jurisdictions that undertake licensing of pistols or revolvers in some form, less than half also license dealers, and New York is one of these jurisdictions. Apart from pistols and revolvers, New York is the only American jurisdiction to outlaw flatly, without proof of any criminal intent, the gangster sawed-off shotgun and the stealthy switchblade and gravity knife. With respect to rifles and shotguns, New York flatly prohibits their possession by minors, aliens, persons mentally incompetent, and persons convicted anywhere of any felony, or of any of the misdemeanors or offenses sufficient to require bail by a court, unless such person obtains a certificate of good conduct. No other American jurisdiction exceeds these prohibitions.

## PURPOSE OF LEGISLATION DEALING WITH DANGEROUS WEAPONS

Murder and non-negligent manslaughter, robbery, and aggravated assault are serious crimes of violence usually committed with weapons. The traditional criminal law system for controlling crime operates after its commission by arrest, indictment, trial, and punishment of offenders found guilty. Prevention is achieved by restraining behind bars persons who have demonstrated that they are dangerously likely to commit crimes, and, through the example of such unpleasant treatment, by deterring would-be offenders. Despite this system, crimes of violence increase each year; without this system, no sane person doubts that the increase would be enormously greater.

The best method of preventing crimes of violence is to prevent them before they occur. On Saturday evening, March 25, 1911, six hundred employees of the Triangle Shirtwaist Company were leaving the factory eight stories above the ground in a building in lower Manhattan. One exit door had been locked to assure egress through another door under scrutiny of supervisors searching for the tell tale bulge of a stolen shirtwaist. A fire broke out. In less than ten minutes, it was all over. One hundred forty-five employees had lost their lives. The two operators of the company were indicted for manslaughter in the first and second degrees, and tried for these crimes in connection with the death of one female employee. Had the defendants been convicted and punished, the legislative history of labor laws and building codes in this State might well have been different. The defendants were acquitted by a jury, apparently because of insufficient proof of knowledge that a door had been locked. Governor Dix promptly appointed a factory investigation commission. The Legislature enacted stringent provisions that,

by licensing, inspection and certification, would prevent such holocausts before they could occur. The Legislature did not undertake any change in the definition of manslaughter or any increase in punishment for its commission. The Legislature did not attempt to outlaw factories but rather their operation under dangerous conditions.

Statutes governing firearms and weapons are not desirable as ends in themselves. Such legislation [illegible] only as a means to the worthwhile end of preventing crimes of violence before they occur. The legislative problem posed for the fifty-one American jurisdictions (fifty States and the District of Columbia) charged with the major responsibility of criminal law enforcement in the United States is this: to [illegible] designed to prevent crimes of violence before they can happen, and, at the same time preserve legitimate interests such as training for the national defense, the right of self defense and recreational pursuits of hunting, target shooting and trophy collecting. Solution is simple when these interests are not in conflict; for example, prohibition of machine guns, firearm silencers, sawed-off shotguns and brass knuckles. In areas of conflict, sane solution depends upon careful balancing of the interests involved. The magnitude of the interest of preventing crimes of violence before they occur throughout the nation and in New York for the most recent reported period appears in Table 1 below.

TABLE 1. ESTIMATED CRIMES OF VIOLENCE INVOLVING WEAPONS COMMITTED IN THE UNITED STATES AND IN NEW YORK, 1963

| | United States | | New York | |
|---|---|---|---|---|
| | Number | Rate per 100,000 | Number | Rate per 100,000 |
| TOTAL | 256,460 | 138.0 | 23,851 | 134.8 |
| Murder and non-negligent manslaughter | 8,500 | 4.5 | 669 | 3.8 |
| Robbery | 100,160 | 53.1 | 8,131 | 45.9 |
| Aggravated assault | 147,800 | 78.1 | 15,051 | 85.0 |

—*Uniform Crime Reports* (1963) pp. 2, 3, 61.

A firearm was used in 56 percent of the wilful killings in the United States, a knife or cutting instrument in 23 percent, "personal" devices (such as strangulation or beating) in 9 percent, blunt objects in 6 percent, and the weapon or type of weapon unknown in the remainder. The use of a firearm as a weapon was up 4 percent over 1962 (*Uniform Crime Reports* [1963] p. 7).

[illegible] value to law enforcement of adequate statutes dealing with dangerous weapons is prevention of crimes of violence before their consummation. The traditional criminal law requires total enactment of the tragedy and all the infliction of its harm before arrest and prosecution may lawfully begin, with but few carefully circumscribed exceptions. These exceptions largely are conspiracy, which can only cover cases of multiple offenders, and attempt. The efficacy of the law of attempt to prevent tragedies

has many regrettable shortcomings. For example, four men planned to rob another of a payroll. They went by automobile to the bank from which he was supposed to withdraw the money, and then to various other buildings where the employees were scheduled to be paid. By now, they were watched and followed by two police officers. At last, they went to a railroad station to accost the intended victim. Before the victim arrived, all were arrested by the police officers. The highest court of our State unanimously held that no attempted robbery took place and curiously complimented the police for making what amounted to a false arrest. Said the court at the outset of its opinion (*People* v. *Rizzo*, 246 N. Y. 334):

> "The police of the city of New York did excellent work in this case by preventing the commission of a serious crime. It is a great satisfaction to realize that we have such wide-awake guardians of our peace. Whether or not the steps which the defendant had taken up to the time of his arrest amounted to the commission of a crime, as defined by our law, is, however, another matter. He has been convicted of an attempt to commit the crime of robbery in the first degree and sentenced to State's prison. There is no doubt that he had the intention to commit robbery if he got the chance. * * *
>
> "In a word, these defendants had planned to commit a crime and were looking around the city for an opportunity to commit it, but the opportunity fortunately never came. Men would not be guilty of an attempt at burglary if they had planned to break into a building and were arrested while they were hunting about the streets for the building not knowing where it was. Neither would a man be guilty of an attempt to commit murder if he armed himself and started out to find the person whom he had planned to kill but could not find him."

So far as the traditional law of attempt goes, the police must postpone intervention until the last act of consummation. In the case of robbery, there are at least sixteen possible configurations upon its consummation with an exchange of bullets between the killer and killed, and these concrete cases have been fully discussed in a previously published law review article (See *Foreseeable Death in Felony Murder*, 18 University of Pittsburgh Law Review 51, 56–59 [1956]). In the absence of adequate weapons legislation, under the traditional law of criminal attempt, lawful action by the police must await the last act necessary to consummate the crime, with anyone of sixteen possible people constituting the killer and killed, as between the victim, his robber, a policeman or passerby, or a companion of any of them. Adequate statutes governing firearms and weapons would make lawful intervention by police and prevention of these fatal consequences, before any could occur.

## INCIDENCE OF VIOLENT CRIME AND ADEQUATE WEAPONS LEGISLATION

Law-enforcement officials have expressed the belief that more consistent enforcement of adequate statutes governing firearms and weapons would reduce the incidence of crimes of violence. (*Role of the Police*, IACP Committee on Juvenile Delinquency p. 15; New York Times, September 12, 1956, p. 1.) No one seriously concerned with the advancement of the common good can ignore the startling difference between the incidence of violent crimes in England and the United States, on one hand, and the nature of their laws controlling firearms and weapons, on the other. In 1962, the homicide rate per 100,000 inhabitants in the United States (4.5) was more than eight times that of England (0.56), the rate for robbery in the United States (51.3) more than ten times that of England (5.0), and the rate for aggravated assault in the United States (75.1) more than seventeen times that of England (4.3). On the other hand, for non-violent crime, the difference in rate between the two countries is not only not as great, but also shows greater incidence in England. For example, larceny, other than petty larceny and that involving motor vehicles, actually occurs almost three times less frequently in the United States (290.5) than in England (848.8). The data for the United States is based upon the *Uniform Crime Reports* (1962) and that for England covers England and Wales and has been compiled by the Home Office.

TABLE 2. VIOLENT AND NON-VIOLENT CRIMES IN THE UNITED STATES AND ENGLAND, 1962

| | UNITED STATES | | ENGLAND & WALES | |
|---|---|---|---|---|
| | Number | Rate per 100,000 | Number | Rate per 100,000 |
| POPULATION | 185,822,000 | | 46,669,000 | |
| Murder and non-negligent manslaughter | 8,404 | 4.5 | 262 | 0.56 |
| Robbery | 95,260 | 51.3 | 2,349 | 5.0 |
| Aggravated assault | 139,625 | 75.1 | 2,007 | 4.3 |
| Larceny, other than petty or motor vehicle | 539,893 | 290.5 | 390,148 | 848.8 |

Weapons statutes in England date from 1328 when the Statute of Northumberland (2 Edw. III, c. 3) was enacted. Under this statute, which is still in force, anyone appearing before the king's justices or ministers, with force and arms, or going armed by night or day in any fair, market or elsewhere in such manner as to terrify the king's subjects, or bringing force "in affray of the peace" is guilty of a misdemeanor. Exempted are the king's servants, ministers and [illegible] them in the execution of their duties. [illegible] the Gun License [illegible] Under its most recent revision, the Firearms Act of 1937 (1 Edw. VIII & Geo. VI, c. 12), "no person shall purchase, acquire or have in his possession any

firearm or ammunition to which this Part of the Act applies unless he holds a firearms certificate in force at the time'' (*id.* Pt. I, § (1)). "The certificate shall be granted by the chief officer of police if he ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ the firearm or ammunition in respect of which the application is made, and can be permitted to have in his possession that firearm or ammunition without danger to the public safety or to the peace'' (*id.* § 2(2)). The certificate may be revoked if ''the chief officer is satisfied that the holder is prohibited by this Act from possessing a firearm to which this Part of the Act applies, or is of intemperate habits or unsound mind, or is otherwise unfitted to be entrusted with such a firearm'' (*id.*, § 1(7)(a)).

Notwithstanding the Firearms Act, there was an increase in violent crimes in England in recent years. The British bar has attributed this increase to weapons other than firearms in the hands of the Teddy boy—sharpened bicycle chains, ''knuckle dusters'' and the ''flick'' knife (28 The Solicitor 223 [1961]). In the Restriction of Offensive Weapons Act of 1959, the British borrowed almost verbatim the provisions contained in the New York statute prohibiting possession of switchblade and gravity knives (Appendix A, *post*, §§ 1896 (4),(5); 1897 (3)). Firearm licensing statutes may reduce the incidence of violent crimes committed with guns but such statutes, no matter how stringent, may still be flouted by criminals. On August 8, 1963, the biggest robbery in history, more than £2½ million ($7 million) in currency, was effected by armed, masked men, said to be 15 to 40 in number, from a mail train near Cheddington, northwest of London.

In the United States, primary responsibility for enactment of statutes dealing with weapons rests with the fifty States and the District of Columbia. So far as pistols, revolvers and firearms capable of being concealed are concerned, at least twenty-three States have either no statutes at all or ones with toothless provisions. One of these States borders on New York. Twenty-seven States and the District of Columbia have licensing statutes. These vary widely: only three States make mandatory the taking of fingerprints; less than half undertake any licensing of dealers. In all of them, except Hawaii and New York, unlimited arsenals may lawfully be possessed without license or supervision in the home, place of business or on one's own property. Uniform legislation, striking a median among these statutes, was found insufficient by gubernatorial veto in New York in 1932. In other States in more than two score years, such legislation has been found too stringent. The recommendations of the National Conference of Commissioners on Uniform Acts (Uniform Pistol Act, Uniform Firearm Act, Uniform Machine Gun Act) have thus far met with acceptance in but a handful of States. So far as rifles and shotguns are concerned, but a single State requires licensing and this only for a special repeating action gun. Motivation for this unique statute is protection, not of human, but of wild avian life.

Unlike the British Parliament and the States of the United States which have residual and inherent power, the capability of Congress to act in domestic affairs is limited to powers delegated by the Constitution. So far as control of weapons is concerned, two of these powers are important: the power to regulate interstate and foreign commerce and the power to tax. The most formidable of these powers is the power to tax. Consideration of State boundaries does not affect its exercise; it may be used to operate on purely local and intrastate situations in the control of crime. The fact that the effect of a given tax, *e.q.*, on narcotics, or on bookmakers and wagers, is primarily regulatory and only incidentally productive of revenue, does not invalidate it. Moreover, by the power to tax Congress can coerce minimal uniform State legislation in intrastate situations, *e.q.*, social security and agriculture. By its power to tax, Congress could accomplish overnight in the weapons field what uniform State legislation—at the present rate of acceptance—cannot dream of achieving until the third millenium.

When at long last in 1934, the roaring twenties roused Congress to the reality of gangster warfare and organized crime, the taxing power was invoked in the National Firearms Act (26 U.S.C. §§ 2720–2733, 3260–3266). Pistols and revolvers—included in the original draft of the bill—were deleted from its final version. Only the most sensational weapons of gang warfare—machine guns, firearm silencers and sawed-off shotguns—were included. For such "firearms"—excluding pistols, revolvers, automatics, rifles and shotguns above a minimal barrel length—a steep annual tax on manufacturers ($500), pawnbrokers ($300), dealers and anyone transferring such guns ($200) was imposed (26 U.S.C. §§ 2720, 3260). Yet in 1927, when Congress exercised the more limited postal power, pistols and revolvers were declared non-mailable (18 U.S.C. § 1715). When Congress resorted to the commerce power in 1938 (Federal Firearms Act, 15 U.S.C. §§ 901–909), the term "firearm" was broadly defined to include "any weapon, by whatever name known, which is designed to expel a projectile or projectiles by the action of an explosive and a firearm muffler or firearm silencer, or any part or parts of such weapon" (15 U.S.C. § 901(3)), as well as pistol and revolver ammunition (15 U.S.C. § 901(7)). This act, however, does no more than require a license—annually issued for one dollar with blind automaticity—to manufacturers and dealers, and generally prohibits with no implementation shipment to convicts, fugitives and persons under indictment.

Measuring the efficacy of State-wide statutes governing firearms and weapons upon the incidence of violent crime by simple comparison of its rate per 100,000 inhabitants is complicated by several factors. One is that millions of persons are drawn daily as commuters into modern metropolitan complexes from States having widely divergent weapons laws. Another is that a wide variety of weapons lawfully flow across State lines with little or no Federal restriction. Nevertheless, such comparison is fruitful. Our two newest States happen to have the most widely divergent weapons laws, Alaska with virtually no statutes at all, and Hawaii with the

most stringent among the United States. In 1963, the homicide rate per 100,000 inhabitants in Alaska (6.5) was almost four times that of Hawaii (1.7), the robbery rate in Alaska (22.2) about twice that of Hawaii (11.5) and the rate for aggravated assault in Alaska (66.1) more than four times that of Hawaii (15.1). Exactly a half dozen of our States have populations in excess of ten million: New York, California, Pennsylvania, Texas, Illinois and Ohio, in that descending order. In 1963, the homicide rate per 100,000 in Texas (7.3) exceeded that of each of the other large States: New York (3.8); California (3.8); Pennsylvania (2.3); Illinois (5.1); and Ohio (3.0). Under the weapons laws of Texas, possession of a rifle or shotgun is denied to no one, regardless of his background. Possession of pistols and revolvers is not licensed. Under general prohibitory statutes, any one, regardless of his background, may lawfully possess a pistol or revolver in his home. Away from his home, any one may openly carry a pistol or revolver, regardless of his background. To violate the weapons laws of Texas, the defendant must (i) carry concealed (ii) away from his home (iii) a pistol or revolver; (iv) have been convicted of a felony (v) involving a crime of violence, *and* (vi) the particular act of violence must have been committed, not with any weapon, but a firearm.

## RECOMMENDATIONS

The new statute prescribes mandatory minimum requirements for the issuance of a license [illegible] felony or of any misdemeanor [illegible] propensity toward crime, existence [illegible] or of another similar purpose, affirmative finding by the licensing authority that all statements [illegible] proper application are true, including whether or not the [illegible] has ever suffered any mental illness, that he has complied with every requirement for eligibility, and facts showing good character, competency and integrity; and the absence of good cause for denial, in the discretion of the licensing authority. The minimum prescribed investigation by the local police includes the taking of fingerprints and photographs, checking the same with the State Department of Correction and the Federal Bureau of Investigation, investigation of the records of the State Department of Mental Hygiene and verification of each and every statement in the application. These legislatively prescribed standards are uniform throughout the State (Appendix A, *post,* § 1903 (1),(2),(3),(4)). The rule-making power of determining the form of the application is delegated to the police commissioner of the city of New York for that city, and to the superintendent of State Police for the rest of the State (*id,* § 1903(3)). No case has been brought to the attention of this Committee in which an applicant thus screened and approved has committed any crime of violence.

Between the city of New York and the remainder of the State, there are certain variations in licensing. In the city of New York, the police commissioner is the sole issuing and revoking officer;

elsewhere in the State, judges of the county of issuance constitute the licensing authority (except in Nassau county in which the issuing officer is the police commissioner), and any judge of a court of record constitutes the revoking authority, a power shared in Nassau county by its police commissioner (*id.* §§ 1896(10); 1903(11)). The duration of the license also varies. In the city of New York (and Nassau and Suffolk counties), the maximum validity of a license is until the second January after the date of issuance and the minimum, any period prescribed by the licensing officer. Elsewhere in the State, the duration of a license depends upon the discretion of a judge of a court of record who may revoke or cancel "at any time" (*id.* § 1903(10),(11)). Licenses issued outside the city of New York have no validity inside that city until approved by its police commissioner (*id.* § 1903(6)).

Upon recommendation of the Committee, effective July 1, 1964, several measures were enacted by the Legislature to assure more careful inventory of pistols and revolvers in this State:

> [i] All holders of pistol licenses must report in writing any change of address to the State Police in Albany within ten days. Failure to do so constitutes a misdemeanor [L. 1964, c. 296; Appendix A, *post,* § 1903(9)];
>
> [ii] Members of the State Guard may no longer lawfully possess pistols or revolvers when off duty, except upon authorization by explicit regulation issued by the Chief of Staff to the Governor [L. 1964, c. 260; Appendix A, *post,* § 1900(1.a)].

The new statute also contains a provision, effective July 1, 1963, that requires, under penalty of misdemeanor, notification in writing to the police of any sale, gift, loan or transfer of any pistol or revolver [Appendix A, *post,* §§ 1898(5); 1902(3)]. During 1964, members of the Temporary Commission of Investigation met with the Committee, and considered the problem of missing firearms. The Committee has prepared comprehensive legislation dealing with the disposition of firearms of a deceased licensee and the requirement of reporting by a licensee of the loss or theft of any firearm.

Respectfully submitted,

ALBERT BERKOWITZ, *Chairman*
JULIUS VOLKER, *Vice-Chairman*
LEO A. LAWRENCE
CLARENCE D. LANE
WALTER VAN WIGGEREN
JULIAN B. ERWAY
LEIGHTON A. HOPE
THOMAS LAVERNE

# APPENDIX A

## THE NEW STATUTE:

### Ten Consecutive Penal Law Sections Relating to Firearms and Other Dangerous Weapons
(as amended by the Laws of 1964)

§ 1896. **Definitions.** As used in sections eighteen hundred ninety-seven, eighteen hundred ninety-eight, eighteen hundred ninety-nine, nineteen hundred, nineteen hundred one, nineteen hundred two, nineteen hundred three, nineteen hundred four and nineteen hundred five, the following terms shall mean and include:

1. "Machine-gun," a weapon of any description, irrespective of size, by whatever name known, loaded or unloaded, from which a number of shots or bullets may be rapidly or automatically discharged from a magazine with one continuous pull of the trigger and includes a sub-machine gun.

2. "Firearm silencer," any instrument, attachment, weapon or appliance for causing the firing of any gun, revolver, pistol or other firearms to be silent, or intended to lessen or muffle the noise of the firing of any gun, revolver, pistol or other firearms.

3. "Firearm," any pistol, revolver, sawed-off shotgun or other firearm of a size which may be concealed upon the person.

4. "Switchblade knife," any knife which has a blade which opens automatically by hand pressure applied to a button, spring or other device in the handle of the knife.

5. "Gravity knife," any knife which has a blade which is released from the handle or sheath thereof by the force of gravity or the application of centrifugal force and which, when released, is locked in place by means of a button, spring, lever or other device.

6. "Dispose of," to dispose of, give, give away, lease, loan, keep for sale, offer, offer for sale, sell, transfer and otherwise dispose of.

7. "Deface," to remove, deface, cover, alter or destroy the manufacturer's serial number or any other distinguishing number or identification mark.

8. "Gunsmith," any person, firm, partnership, corporation or company who engages in the business of repairing, altering, assembling, cleaning, polishing, engraving or trueing, or who performs any mechanical operation on, any pistol or revolver. Gunsmith shall not include a wholesale dealer.

9. "Dealer in firearms," any person, firm, partnership, corporation or company who engaged in the business of purchasing, selling, keeping for sale, loaning, leasing, or in any manner disposing of, any pistol or revolver. Dealers in firearms shall not include a wholesale dealer.

10. "Licensing officer," in the city of New York the police commissioner of that city; in the county of Nassau the commissioner of police of that county; and elsewhere in the state a judge or justice of a court having his office in the county of issuance.

11. "Rifle," a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed metallic cartridge to fire only a single projectile through a rifled bore for each single pull of the trigger. (Added Ch. 277, L. 1964)

12. "Shotgun," a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed shotgun shell to fire through a smooth bore either a number of ball shot or a single projectile for each single pull of the trigger. (Added Ch. 277, L. 1964)

§ 1897. **Possession of weapons and dangerous instruments and appliances.** 1. Any person who has in his possession any bomb, bombshell, firearm silencer, machine gun or any other firearm or weapon simulating a machine gun and which is adaptable for such use is guilty of a felony. (As amended Ch. 708, L. 1964)

2. Any person who has in his possession any firearm which is loaded with ammunition, or who has in his possession any firearm and, at the same time, has in his possession a quantity of ammunition which may be used to discharge such firearm is guilty of a felony. Such possession shall not, except as provided in subdivision three of this section, constitute a felony if such possession takes place in such person's home or place of business. (As amended Ch. 521, L. 1964)

3. Any person who has in his possession any firearm, gravity knife, switchblade knife, billy, blackjack, bludgeon, metal knuckles, sandbag, sandclub or slungshot is guilty of a misdemeanor, and he is guilty of a felony if he has previously been convicted of any crime.

4. Any person under the age of sixteen years who has in his possession any of the weapons, instruments, appliances or substances specified in the first three subdivisions of this section, or any air-gun, spring-gun or other instrument or weapon in which the propelling force is a spring or air, or any gun or any instrument or weapon in or upon which any loaded or blank cartridges may be used, or any loaded or blank cartridges or ammunition therefor, or any dangerous knife, shall be adjudged a juvenile delinquent. (As amended Ch. 788, L. 1964)

5. Any person not a citizen of the United States who has in his possession any dangerous or deadly weapon other than those prohibited to him in the first two subdivisions of this section is guilty of a misdemeanor, and he is guilty of a felony if he has previously been convicted of any crime.

6. Any person who has in his possession a rifle or shotgun and who has been convicted anywhere of a felony or any one of the misdemeanors or offenses mentioned in section five hundred fifty-two of the code of criminal procedure is guilty of a misdemeanor. (Added Ch. 277, L. 1964)

7. Any person who has in his possession any explosive substance with intent to use the same unlawfully against the person or property of another is guilty of a felony. (Formerly subd. 6, changed to subd. 7, ch. 277, L. 1964)

8. Any person who knowingly has in his possession a machine-gun or firearm which has been defaced for the purpose of concealment or prevention of the detection of crime or misrepresenting the identity of such machine-gun or firearm is guilty of a felony. Formerly subd. 7, changed to subd. 8, ch. 277, L. 1964)

9. Any person who has in his possession any dagger, dangerous knife, dirk, razor, stiletto, imitation pistol or any other dangerous or deadly instrument or weapon with intent to use the same unlawfully against another is guilty of a misdemeanor, and he is guilty of a felony if he has previously been convicted of any crime. (Formerly subd. 8, changed to subd. 9, ch. 277, L. 1964)

10. Whenever the director or physician in charge of any hospital or institution for mental illness, public or private, shall certify to the superintendent of state police or to any organized police department of a county, city, town or village of this state, that a person who has been judicially adjudicated incompetent, or who has been confined to such institution for mental illness pursuant to judicial authority, upon the release of such person from such institution, is not suitable to possess a rifle or shotgun, a member of such police department or of the state police shall forthwith seize any rifle or shotgun possessed by such person. Any such person who refuses to yield possession of such rifle or shotgun to such police officer shall be guilty of a misdemeanor. A rifle or shotgun seized as herein provided shall not be destroyed, but shall be delivered to the headquarters of such police department, or state police, and there retained until the aforesaid certificate has been rescinded by the director or physician in charge, or other disposition of such rifle, or shotgun has been ordered or authorized by a court of competent jurisdiction. (Added Ch. 277, L. 1964)

§ 1898. **Manufacture, transport, disposition and defacement of weapons and dangerous instruments and appliances.** 1. Any person who manufactures or causes to be manufactured any machine-gun is guilty of a felony. Any person who manufactures or causes to be manufactured any switchblade knife, gravity knife, billy, blackjack, bludgeon, metal knuckles, sandbag, sandclub or slungshot is guilty of a misdemeanor.

2. Any person who transports or ships any machine-gun or fire-arm silencer is guilty of a felony. Any person who transports or ships as merchandise any firearm, switchblade knife, gravity knife, billy, blackjack, bludgeon, metal knuckles, sandbag or slungshot is guilty of a misdemeanor.

3. Any person who disposes of any machine-gun or firearm silencer is guilty of a felony. Any person who knowingly buys, receives, disposes of, or conceals a machine-gun or firearm which has been defaced for the purpose of concealment or prevention of the detection of a crime or misrepresenting the identity of such machine-gun or firearm is guilty of a felony.

4. Any person who disposes of any of the weapons, instruments or appliances specified in subdivision three of the preceding section is guilty of a misdemeanor, and he is guilty of a felony if he has previously been convicted of any crime.

5. Any person who disposes of any of the weapons, instruments, appliances or substances specified in subdivision four of the preceding section to any other person under the age of sixteen years is guilty of a misdemeanor.

6. Any person who wilfully defaces any machine-gun or firearm is guilty of a felony.

§ 1899. **Presumptions of possession, unlawful intent and defacement.** 1. The presence in any room, dwelling, structure or vehicle of any machine-gun is presumptive evidence of its unlawful possession by all persons occupying the place where such machine-gun is found.

2. The presence in any stolen vehicle of any weapon, instrument, appliance or substance specified in section eighteen hundred ninety-seven is presumptive evidence of its possession by all persons occupying such vehicle at the time such weapon, instrument, appliance or substance is found.

3. The presence in an automobile, other than a stolen one or a public omnibus, of any firearm, defaced firearm, firearm silencer, bomb, bombshell, gravity knife, switchblade knife, dagger, dirk, stiletto, billy, blackjack, metal knuckles, sandbag, sandclub or slungshot is presumptive evidence of its possession by all persons occupying such automobile at the time such weapon, instrument or appliance is found, except under the following circumstances:

(a) if such weapon, instrument or appliance is found upon the person of one of the occupants therein; (b) if such weapon, instrument or appliance is found in an automobile which is being operated for hire by a duly licensed driver in the due, lawful and proper pursuit of his trade, then such presumption shall not apply to the driver; or (c) if the weapon so found is a pistol or revolver and one of the occupants, not present under duress, has in his possession a valid license to have and carry concealed the same.

4. The possession by any person of the substance as specified in subdivision six of section eighteen hundred ninety-seven is presumptive evidence of possessing such substance with intent to use the same unlawfully against the person or property of another. The possession by any person of any dagger, dirk, stiletto, dangerous knife or of any other weapon, instrument, appliance or substance designed, made or adopted for use primarily as a weapon, is presumptive evidence of intent to use the same unlawfully against another.

5. The possession by any person of a defaced machine-gun or firearm is presumptive evidence that such person defaced the same.

§ 1900. **Exemptions and immunity.** a. Sections eighteen hundred ninety-seven, eighteen hundred ninety-eight and eighteen hundred ninety-nine shall not apply to:

1. Possession of any of the weapons, instruments, appliances or substances specified in section eighteen hundred ninety-seven by the following:

(a) Persons in the military service of the state of New York when duly authorized by regulations issued by the chief of staff to the governor to possess the same, and peace officers as defined in section one hundred fifty-four of the code of criminal procedure. (As amended Ch. 260, L. 1964)

(b) Persons in the military or other service of the United States, in pursuit of official duty or when duly authorized by federal law, regulation or order to possess the same.

(c) Persons employed in fulfilling defense contracts with the government of the United States or agencies thereof when possession of the same is necessary for manufacture, transport, installation and testing under the requirements of such contract.

(d) During the month of June only each year, a person voluntarily surrendering such weapon, instrument, appliance or substance, provided that such surrender shall be made to the sheriff of the county in which such person resides and in the county of Nassau to the commissioner of police or a member of the police department thereof designated by him, or if such person resides in a city having a population of seventy-five thousand or more to the police commissioner or head of the police force or department, or to a member of the force or department designated by such commissioner or head; and provided, further, that the same shall be surrendered by such person only after he gives notice in writing to the appropriate authority, stating his name, address, the nature of the weapon to be surrendered, and the approximate time of day and the place where such surrender shall take place. Such notice shall be acknowledged immediately upon receipt thereof by such authority. Nothing in paragraph (d) of subdivision one hereof shall be construed as granting immunity from prosecution for any crime or offense except that of unlawful possession of such weapons, instruments, appliances or substances surrendered as herein provided.

2. Possession of a machine-gun, firearm, switchblade knife, gravity knife, billy or blackjack by a warden, superintendent, headkeeper or deputy of a state prison, penitentiary, workhouse, county jail or other institution for the detention of persons convicted or accused of crime or detained as witnesses in criminal cases, in pursuit of official duty or when duly authorized by regulation or order to possess the same.

3. Possession of a pistol or revolver by a person to whom a license therefor has been issued as provided under section nineteen hundred three.

4. Possession of a rifle or shotgun by a person who has been convicted as specified in section eighteen hundred ninety-seven, subdivision six to whom a certificate of good conduct has been issued pursuant to section two hundred forty-two, subdivision three of the executive law. (Added Ch. 277, L. 1964)

5. Possession of a switchblade or gravity knife for use while hunting, trapping or fishing by a person carrying a valid license issued to him pursuant to article four, part four of the conservation law. (Formerly subd. 4, changed to subd. 5, Ch. 277, L. 1964)

6. Possession, at an indoor or outdoor rifle range for the purpose of loading and firing the same, of a rifle of not more than twenty-two calibre rim fire, the propelling force of which may be either gunpowder, air or springs, by a person under sixteen years of age but not under twelve, who is a duly enrolled member of any club, team or society organized for educational purposes and maintaining as a part of its facilities, or having written permission to use, such rifle range under the supervision, guidance and instruction of (a) a duly commissioned officer of the United States army, navy, marine corps or coast guard, or of the national guard of the state of New York; or (b) a duly qualified adult citizen of the United States who has been granted a certificate as an instructor in small arms practice issued by the United States army, navy or marine corps, or by the adjutant general of this state, or by the national rifle association of America, a membership corporation duly organized under the laws of this state. (Formerly subd. 5, changed to subd. 6, Ch. 277, L. 1964)

7. The manufacturer of machine-guns, switchblade or gravity knives, billies or blackjacks as merchandise and the disposal and shipment thereof direct to a regularly constituted or appointed state or municipal police department, sheriff, policeman or other peace officer, or to a state prison, penitentiary, workhouse, county jail or other institution for the detention of persons convicted or accused of crime or held as witnesses in criminal cases, or to the military service of this state or of the United States. (Formerly subd. 6, change to subd. 7, Ch. 277, L. 1964)

8. The regular and ordinary transport of firearms as merchandise, provided that the person transporting such firearms, where he knows or has reasonable means of ascertaining what he is transporting, notifies in writing the police commissioner, police chief or other law enforcement officer performing such functions at the place of delivery, of the name and address of the consignee and the place of delivery, and withholds delivery to the consignee for such reasonable period of time designated in writing by such police commissioner, police chief or other law enforcement officer as such official may deem necessary for investigation as to whether the consignee may lawfully receive and possess such firearms. (Formerly subd. 7, changed to subd. 8, Ch. 277, L. 1964)

9. Engaging in the business of gunsmith or dealer in firearms by a person to whom a valid license therefor has been issued pursuant to section nineteen hundred three. (Formerly subd. 8, changed to subd. 9, Ch. 277, L. 1964)

b. At any time, any person who voluntarily delivers to a peace officer any weapon, instrument, appliance or substance specified in section eighteen hundred ninety-seven, under circumstances not suspicious, peculiar or involving the commission of any crime, shall not be arrested. Instead, the officer who might make the arrest shall issue or cause to be issued in a proper case a summons or other legal process to the person for investigation of the source of the weapon, instrument, appliance or substance.

§ 1901. **Destruction of weapons and dangerous instruments, appliances and substances.** 1. Any weapon, instrument, appliance or substance specified in section eighteen hundred ninety-seven, when unlawfully possessed, manufactured, transported or disposed of, or when surrendered or voluntarily delivered pursuant to the preceding section, is hereby declared a nuisance. When the same shall come into the possession of any peace officer, it shall be surrendered immediately to the official mentioned in paragraph (d) of subdivision one of the preceding section, except that such weapon, instrument, appliance or substance coming into the possession of the state police shall be surrendered to the superintendent of state police.

2. The official to whom the weapon, instrument, appliance or substance is so surrendered shall, at any time but at least once each year, destroy the same or cause it to be destroyed, or render the same or cause it to be rendered ineffective and useless for its intended purpose and harmless to human life.

3. Notwithstanding subdivision two of this section, the official to whom the weapon, instrument, appliance or substance is so surrendered shall not destroy the same if (a) a judge or justice of a court of record, or a district attorney, shall file with the official a certificate that the non-destruction thereof is necessary or proper to serve the ends of justice; or (b) the official directs that the same be retained in any laboratory conducted by any police or sheriff's department for the purpose of research, comparison, identification or other endeaver toward the prevention and detection of crime.

§ 1902. **Forwarding information on firearms, convictions and certain wounds inflicted by weapons, instruments, appliances and substances.** 1. In the case of any machine-gun or firearm taken from the possession of any person, the official to whom such weapon is surrendered pursuant to subdivision one of the preceding section shall immediately notify the executive department, division of state police, Albany, giving the calibre, make, model, manufacturer's name and serial number, or if none, any other distinguishing number or identification mark. A search of the files of such division and notification of the results of the search to such official shall immediately be made.

2. Before any machine-gun or firearm is destroyed pursuant to subdivision two of the preceding section, (a) the official to whom the same has been surrendered shall forward to the executive department, division of state police, Albany, a notice of intent to destroy and the calibre, make, model, manufacturer's name and

serial number, or if none, any other distinguishing number or identification mark of the machine-gun or firearm; (b) such division shall make and keep a record of such description together with the name and address of the official reporting the same and the date such notice was received; and (c) a search of the files of such division and notification of the results of the search to such official shall be made without unnecessary delay.

3. Any person, other than a wholesale dealer, or gunsmith or dealer in firearms duly licensed pursuant to section nineteen hundred three, lawfully in possession of a firearm, who disposes of the same without first notifying in writing the licensing officer in the city of New York and county of Nassau and elsewhere in the state the executive department, division of state police, Albany, is guilty of a misdemeanor.

4. Every case of a bullet wound, gunshot wound, powder burn or any other injury arising from or caused by the discharge of a gun or firearm, and every case of a wound which is likely to or may result in death and is actually or apparently inflicted by a knife, icepick or other sharp or pointed instrument, shall be reported at once to the police authorities of the city, town or village where the person reporting is located by: (a) the physician attending or treating the case; or (b) the manager, superintendent or other person in charge, whenever such case is treated in a hospital, sanitarium or other institution. Failure to make such report is a misdemeanor. This subdivision shall not apply to such wounds, burns or injuries received by a member of the armed forces of the United States or the state of New York while engaged in the actual performance of duty.

5. Every conviction under sections eighteen hundred ninety-seven, eighteen hundred ninety-eight, nineteen hundred two, nineteen hundred three or nineteen hundred four of a person who is not a citizen of the United States, shall be certified to the proper officer of the United States government by the district attorney of the county in which such conviction was had.

§ 1903. **Licenses to carry, possess, repair and dispose of firearms.** 1. Eligibility. No license shall be issued or renewed pursuant to this section except by the licensing officer, and then only after investigation and finding that all statements in a proper application for a license are true. No license shall be issued or renewed except for an applicant (a) of good moral character; (b) who has not been convicted anywhere of a felony or any one of the misdemeanors or offenses mentioned in section five hundred fifty-two of the code of criminal procedure; (c) who has stated whether he has ever suffered any mental illness or been confined to any hospital or institution, public or private, for mental illness; and (d) concerning whom no good cause exists for the denial of the license. No person shall engage in the business of gunsmith or dealer in firearms unless licensed pursuant to this section. An applicant to engage in such business shall also be a citizen of the United States, more than twenty-one years of age and maintain a place of business in the city or county where the license is issued. For such business,

if the applicant is a firm or partnership, each member thereof shall comply with all of the requirements set forth in this subdivision and if the applicant is a corporation, each officer thereof shall so comply.

2. Types of licenses. A license for gunsmith or dealer in firearms shall be issued to engage in such business. A license for a pistol or revolver shall be issued to (a) have and possess in his dwelling by a householder; (b) have and possess in his place of business by a merchant or storekeeper; (c) have and carry concealed while so employed by a messenger employed by a banking institution or express company; (d) have and carry concealed while so employed by a regular employee of an institution of the state, or of any county, city, town or village, under control of a commissioner of correction of the city or any warden, superintendent or head keeper of any state prison, penitentiary, workhouse, county jail or other institution for the detention of persons convicted or accused of crime or held as witnesses in criminal cases, provided that application is made therefor by such commissioner, warden, superintendent or head keeper; and (e) have and carry concealed, without regard to employment or place of possession, by any person when proper cause exists for the issuance thereof.

3. Applications. Applications shall be made and renewed, in the case of a license to carry or possess a pistol or revolver, to the licensing officer in the city or county, as the case may be, where the applicant resides, is principally employed or has his principal place of business as merchant or storekeeper; and, in the case of a license as gunsmith or dealer in firearms, to the licensing officer where such place of business is located. Blank applications shall except in the city of New York, be approved as to form by the superintendent of state police. An application shall state the full name, date of birth, residence, present occupation of each person or individual signing the same, whether or not he is a citizen of the United States, whether or not he complies with each requirement for eligibility specified in subdivision one of this section and such other facts as may be required to show the good character, competency and integrity of each person or individual signing the application. An application shall be signed and verified by the applicant. Each individual signing an application shall submit one photograph of himself and a duplicate for each required copy of the application. Such photographs shall have been taken within thirty days prior to filing the application. In the case of a license as gunsmith or dealer in firearms, the photographs submitted shall be two inches square, and the application shall also state the previous occupation of each individual signing the same and the location of the place of such business, or of the bureau, agency, subagency, office or branch office for which the license is sought, specifying the name of the city, town or village, indicating the street and number and otherwise giving such apt description as to point out reasonably the location thereof. In such case, if the applicant is a firm, partnership or corporation, its name, date and place of formation, and principal place of business shall be stated. For such firm or partnership, the application

shall be signed and verified by each individual composing or intending to compose the same, and for such corporation, by each officer thereof.

4. Investigation. Before a license is issued or renewed, there shall be an investigation of all statements required in the application by the duly constituted police authorities of the locality where such application is made. For that purpose, the records of the department of mental hygiene concerning previous or present mental illness of the applicant shall be available for inspection by the investigating officer of the police authority. In order to ascertain any previous criminal record, the investigating officer shall take the fingerprints and physical descriptive data in quadruplicate of each individual by whom the application is signed and verified. Two copies of such fingerprints shall be taken on standard fingerprint cards eight inches square, and one copy may be taken on a card supplied for that purpose by the federal bureau of investigation. When completed, one standard card shall be forwarded to and retained by the division of criminal identification, department of correction, at Albany. A search of the files of such division and written notification of the results of the search to the investigating officer shall be made without unnecessary delay. Thereafter, such division shall notify the licensing officer and the executive department, division of state police, Albany, of any criminal record of the applicant filed therein subsequent to the search of its files. A second standard card, or the one supplied by the federal bureau of investigation, as the case may be, shall be forwarded to that bureau at Washington with a request that the files of the bureau be searched and notification of the results of the search be made to the investigating police authority. Of the remaining two fingerprint cards, one shall be filed with the executive department, division of state police, Albany, within ten days after issuance of the license, and the other remain on file with the investigating police authority. No such fingerprints may be inspected by any person other than a peace officer, except on order of a judge or justice of a court of record either upon notice to the licensee or without notice, as the judge or justice may deem appropriate. Upon completion of the investigation, the police authority shall report the results to the licensing officer without unnecessary delay.

5. Filing of approved applications. The application for any license, if granted, shall be a public record. Such application shall be filed by the licensing officer with the clerk of the county of issuance, except that in the city of New York and county of Nassau, the licensing officer shall designate the place of filing in the appropriate division, bureau or unit of the police department thereof. A duplicate copy of such application shall be filed by the licensing officer in the executive department, division of state police, Albany, within ten days after issuance of the license.

6. License: validity. Any license issued pursuant to this section shall be valid notwithstanding the provisions of any local law or ordinance. No license shall be transferable to any other person or premises. A license to carry or possess a pistol or revolver, not otherwise limited as to place or time of possession,

shall be effective throughout the state, except that the same shall not be valid within the city of New York unless a special permit granting validity is issued by the police commissioner of that city. Such license to carry or possess shall be valid within the city of New York in the absence of a permit issued by the police commissioner of that city, provided that (a) the firearms covered by such license are being transported by the licensee in a locked container; and (b) the trip through the city of New York is continuous and uninterrupted; and (c) such licensee exhibits upon demand by a peace officer proof of registration in a pistol match which such licensee is about to attend or has attended and is returning therefrom. A license as gunsmith or dealer in firearms shall not be valid outside the city or county, as the case may be, where issued. (As amended Ch. 318, L. 1964)

7. License: form. Any license issued pursuant to this section shall, except in the city of New York, be approved as to form by the superintendent of state police. A license to carry or possess a pistol or revolver shall have attached the licensee's photograph, and a coupon which shall be removed and retained by any person disposing of a firearm to the licensee. Such license shall specify the weapon covered by calibre, make, model, manufacturer's name and serial number, or if none, by any other distinguishing number or identification mark, and shall indicate whether issued to carry on the person or possess on the premises, and if on the premises shall also specify the place where the licensee shall possess the same. If such license is issued to an alien, or to a person not a citizen of and usually a resident in the state, the licensing officer shall state in the license the particular reason for the issuance and the names of the persons certifying to the good character of the applicant. Any license as gunsmith or dealer in firearms shall mention and describe the premises for which it is issued and shall be valid only for such premises.

8. License: exhibition and display. Every licensee while carrying a pistol or revolver shall have on his person a license to carry the same. Every person licensed to possess a pistol or revolver on particular premises shall have the license for the same on such premises. Upon demand, the license shall be exhibited for inspection to any peace officer. A license as gunsmith or dealer in firearms shall be prominently displayed on the licensed premises. Failure of any licensee to so exhibit or display his license, as the case may be, shall be presumptive evidence that he is not duly licensed.

9. License: amendment. Elsewhere than in the city of New York, a person licensed to carry or possess a pistol or revolver may apply at any time to his licensing officer for amendment of his license to include one or more such weapons or to cancel weapons held under license. If granted, a record of the amendment describing the weapons involved shall be filed by the licensing officer in the executive department, division of state police, Albany. Notification of any change of residence shall be made in writing by any licensee within ten days after such change occurs, and a record of such change shall be inscribed by such licensee on the reverse side of his license. Elsewhere than in the city of New York, such notification

shall be made to the executive department, division of state police, Albany, and in the city of New York to the police commissioner of that city. (As amended Ch. 296, L. 1964)

10. License: expiration and renewal. Any license for gunsmith or dealer in firearms and, in the city of New York and the counties of Nassau and Suffolk, any license to carry or possess a pistol or revolver, issued at any time pursuant to this section or prior to the first day of July, nineteen hundred sixty-three and not limited to expire on an earlier date fixed in the license, shall expire on the first day of the second January after the date of issuance. Elsewhere than in the city of New York and the counties of Nassau and Suffolk, any license to carry or possess a pistol or revolver, issued at any time pursuant to this section or prior to the first day of July, nineteen hundred sixty-three and not previously revoked or cancelled, shall be in force and effect until revoked as herein provided. Any application to renew a license that has not previously expired, been revoked or cancelled shall thereby extend the term of the license until disposition of the application by the licensing officer. In the case of a license for gunsmith or dealer in firearms, in counties having a population of less than two hundred thousand inhabitants, photographs and fingerprints shall be submitted on original applications and upon renewal thereafter only at six year intervals. Upon satisfactory proof that a currently valid original license has been despoiled, lost or otherwise removed from the possession of the licensee and upon application containing an additional photograph of the licensee, the licensing officer shall issue a duplicate license. (As amended Ch. 320, L. 1964)

11. License: revocation. The conviction of a licensee anywhere of a felony or any one of the misdemeanors or offenses mentioned in section five hundred fifty-two of the code of criminal procedure shall operate as a revocation of the license. A license may be revoked and cancelled at any time in the city of New York and county of Nassau by the licensing officer, and elsewhere than in the city of New York by any judge or justice of a court of record. The official revoking a license shall give written notice thereof without unnecessary delay to the executive department, division of state police, Albany, and shall also notify immediately the duly constituted police authorities of the locality.

12. Records required of gunsmiths and dealers in firearms. Any person licensed as gunsmith or dealer in firearms shall keep a record book approved as to form, except in the city of New York, by the superintendent of state police. In the record book shall be entered at the time of every transaction involving a firearm the date, name, age, occupation and residence of any person from whom a firearm is received or to whom a firearm is delivered, and the calibre, make, model, manufacturer's name and serial number, or if none, any other distinguishing number or identification mark on such firearm. Before delivering a firearm to any person, the licensee shall require him to produce either a license valid under this section to carry or possess the same, or proof of lawful authority as a peace officer or other exempt person pursuant to section

nineteen hundred. The licensee shall remove and retain the attached coupon and enter in the record book the date of such license, number, if any, and name of the licensing officer, in the case of the holder of a license to carry or possess, or the shield or other number, if any, assignment and department or unit, in the case of an exempt person. The record book shall be maintained on the premises mentioned and described in the license and shall be open at all reasonable hours for inspection by any peace officer. In the event of cancellation or revocation of the license for gunsmith or dealer in firearms, or discontinuance of business by a licensee, such record book shall be immediately surrendered to the licensing officer in the city of New York and county of Nassau, and elsewhere in the state to the executive department, division of state police.

13. Expenses. The expense of providing a licensing officer with blank applications, licenses, and record books for carrying out the provisions of this section shall be a charge against the county, and in the city of New York against the city.

14. Fees. In the city of New York, the annual license fee shall be twenty-five dollars for gunsmiths and fifty dollars for dealers in firearms. In such city, the city council shall fix the fee to be charged for a license to carry or possess a pistol or revolver and provide for the disposition of such fees. Elsewhere in the state, the licensing officer shall collect and pay into the county treasury the following fees: for each license to carry or possess a pistol or revolver, not less than three dollars nor more than five dollars as may be determined by the board of supervisors of the county; for each amendment thereto, one dollar, and two dollars in the county of Suffolk; and for each license issued to a gunsmith or dealer in firearms, four dollars. The fee for a duplicate license shall be two dollars. (As amended Ch. 320, L. 1964)

15. Any violation by any person of any provision of this section is a misdemeanor.

§ 1904. **Prohibited use of weapons.** 1. Except as permitted in section nineteen hundred, any person who uses a machine-gun is guilty of a felony. Any person who attempts to use against another an imitation pistol is guilty of a misdemeanor, and he is guilty of a felony if he has previously been convicted of any crime.

2. Any person hunting with a dangerous weapon in any county wholly embraced within the territorial limits of a city is guilty of a misdemeanor.

3. Any person who wilfully discharges a loaded firearm or any other gun, the propelling force of which is gunpowder, at an aircraft while such aircraft is in motion in the air or in motion or stationary upon the ground, or at any railway or street railroad train as defined by the public service law, or at a locomotive, car, bus or vehicle standing or moving upon any such railway, railroad or public highway, is guilty of a felony and punishable: first, if thereby the safety of any person is endangered, by not more than twenty years in prison; second, in every other case, by not more than five years in prison.

4. Any person who, otherwise than in self defense or in the discharge of official duty, (a) wilfully discharges any species of firearms, air-gun or other weapons, or throws any other deadly missile, either in a public place, or in any place where there is any person to be endangered thereby, or, in Putnam county, within one-quarter mile of any occupied school building other than under supervised instruction by properly authorized instructors although no injury to any person ensures; (b) intentionally, without malice, points or aims any firearm or any other gun, the propelling force of which is gunpowder, at or toward any other person; (c) discharges, without injury to any other person, firearms or any other guns, the propelling force of which is gunpowder, while intentionally without malice, aimed at or toward any person; or (d) maims or injures any other person by the discharge of any firearm or any other gun, the propelling force of which is gunpowder, pointed or aimed intentionally, but without malice, at any such person, is guilty of a misdemeanor.

5. A person who leaves the state, with intent to elude any provision of subdivision four of this section, or to commit any act without the state, which is prohibited by subdivision four of this section, or who, being a resident of this state, does any act without the state, which would be punishable by the provisions of subdivision four of this section, if committed within the state, is guilty of the same offense and subject to the same punishment, as if the act had been committed within this state.

6. In any criminal proceeding before any court, magistrate or grand jury for any of the offenses specified in subdivision four of this section, the court, magistrate or grand jury may confer immunity in accordance with the provisions of section two thousand four hundred forty-seven of this chapter.

§ 1905. **Committing crime while armed.** 1. If any person while in the commission or attempted commission of a felony or crime or in leaving the scene of a crime shall be armed with a pistol or any of the weapons or instruments specified in section eighteen hundred ninety-seven, the punishment elsewhere prescribed in this law for th felony of which he is convicted may be increased by imprisonment in state's prison for not less than five nor more than ten years. Upon a second conviction for a felony so committed such period of imprisonment may be increased by not less than ten nor more than fifteen years. Upon a third conviction for a felony so committed such period of imprisonment may be increased by not less than fifteen nor more than twenty-five years.

2. In no case shall any person punished as provided in subdivision one of this section be put upon probation or have the execution of his sentence suspended, notwithstanding the provisions of section twenty-one hundred eighty-eight, for the increased term of his punishment imposed as above.

# APPENDIX B

## WHAT HAPPENED TO THE OLD LAW

### I. Distribution of Old Provisions of the Penal Law That Have Been Repealed in the New Ten Sections

| Old Statute | | | New Statute |
|---|---|---|---|
| Section Number | Subdivision Number | Sentence | Section and Subdivision Number |
| 1896 | | 1st | 1896(4) (5); 1898(1) (4) (5) |
| | | 2d | 1898(2) (3) |
| | | 3d | 1900(a.6) |
| 1897 | 1 | 1st first part | 1904(1) |
| | | last part | 1897(8) |
| | | 2 | 1897(1) |
| | 1-a | 1st | 1896(1) |
| | | 2d | 1897(1); 1904(1) |
| | | 3d | 1899(1) |
| | | 4th | 1900(a.6) |
| | | 5th | 1900(a.1) (a)) (a.1 (b)) (a.2) (a.6) |
| | 2 | 1st | 1897(1) (6) |
| | 3 | 1st | 1897(1) (2) (3) (4) |
| | | 2d | 1900(a.5) |
| | | 3d | 1900(a.4) |
| | 4 | 1st | 1897(3) |
| | 5 | 1st | 1897(3) |
| | 5-a | 1st | 1897(2) |
| | 6 | 1st | 1897(5) |
| | 6-a | 1st | 1900(b) |
| | 6-b | 1st | 1904(2) |
| | 7 | 1st | 1903(2) |
| 1897 | 8 | 1st | 1903(1) (2) |
| | 9 | 1st | 1903(1) (2) |
| | 9-a | 1st | 1896(10); 1903(3) |
| | | 2d | 1896(10); 1903(3) |
| | | 3d | 1903(3) |
| | | 4th | 1903(6) |
| | 9-b | 1st | 1903(1) |
| | | 2d first part | 1903(4 |
| | | last part | 1903(1) |
| | | 3d | 1903(4) |
| | | 4th | Dropped |
| | 10.a | 1st | 1903(13) |
| | | 2d | 1903(14) |
| | | 3d | 1903(14) |
| | | 4th | 1903(5) |
| | | 5th | 1903(7) |
| | 10.b | 1st first part | 1903(9) |
| | | last part | 1903(14) |
| | | 2d | 1903(9) |
| | | 3d | 1903(9) |

## APPENDIX B

## WHAT HAPPENED TO THE OLD LAW

### Distribution of Old Provisions of the Penal Law That Have Been Repealed in the New Ten Sections—(Cont'd)

| Old Statute | | | New Statute |
|---|---|---|---|
| Section Number | Subdivision Number | Sentence | Section and Subdivision Number |
| | | 4th | 1903(10) |
| | | 5th | 1903(10) |
| | | 6th | 1903(7) |
| | | 7th | 1903(3) |
| | | 8th | 1903(3) |
| | | 9th | 1903(3) |
| | | 10th | 1903(3) |
| | | 11th | 1903(3) |
| | | 12th | 1903(3) |
| | | 13th | 1903(3) |
| | | 14th | 1903(3) |
| | | 15th | 1903(4) |
| | | 16th | 1903(1) |
| | | 17th | 1903(11) |
| | | 18th | 1903(11) |
| | | 19th | 1903(11) |
| | | 20th | 1903(10) |
| | 11 | 1st | 1903(11) |
| | | 2d | 1903(4) |
| | 12 | 1st | 1903(7) |
| | | 2d | 1903(12) |
| | 13(a) | 1st | 1900(a.7) |
| | 13(b) | 1st | 1900(a.1 (a)) (a.1 (b)) |
| | 14 | 1st | 1902(5) |
| | 15 | 1st | 1900(a.1 (c)) |
| 1897-a | | 1st | 1896(2); 1987(1) |
| | | 2d | 1900(a.1 (a)) (a.1 (b)) |
| 1897-b | 1 | 1st | 1896(7);1898(6) |
| | 2 | 1st | 1898(3) |
| | 3 | 1st | 1898(3) |
| | 4 | 1st | 1899(5) |
| 1897-c | 1 | 1st | 1902(1) |
| | | 2d | 1902(1) |
| | | 3d | 1902(1) |
| | 2 | 1st | 1902(2) |
| | | 2d | 1902(2) |
| | | 3d | 1902(2) |
| 1898 | | 1st | 1899(4) |
| | | 2d | 1899(2) |
| 1898-a | | 1st | 1899(3) |
| | | 2d | 1899(3) |
| | | 3d first part | 1900(a.1 (a)) (a.1 (b)) (a.2) |
| | | last part | 1899(3) |

## APPENDIX B

## WHAT HAPPENED TO THE OLD LAW

### Distribution of Old Provisions of the Penal Law That Have Been Repealed in the New Ten Sections—(Cont'd)

| Old Statute | | | New Statute |
|---|---|---|---|
| Section Number | Subdivision Number | Sentence | Section and Subdivision Number |
| 1899 | 1 | 1st | 1901(1) |
| | | 2d | 1901(1) |
| | | 3d | 1901(2) (3) |
| | | 4th | 1901(3) |
| | 2 | | Dropped |
| | 3 | | Dropped |
| | 4 | | 1900(s.1 (d)) |
| 1914 | 1 | 1st | 1903(12) |
| | 2 | 1st | 1896(8) |
| | | 2d | 1896(9) |
| | 3 | 1st | 1903(1) |
| | | 2d | 1896(10); 1903(1) |
| | | 3d | 1896(10); 1903(3) |
| | | 4th | 1896(10); 1903(3) |
| | | 5th | 1903(6) |
| | 4 | 1st | 1903(1) (4) |
| | | 2d | 1903(1) |
| | 5 | 1st first part | 1903(13) |
| | | last part | 1903(3) (7) (12) |
| | | 2d | 1903(1) |
| | | 3d | 1903(5) |
| | | 4th | 1903(3) |
| | | 5th | 1903(3) |
| | | 6th | 1903(3) |
| | | 7th | 1903(4) |
| | | 8th | 1903(4) |
| | | 9th | 1903(4) |
| | | 10th | 1903(4) |
| | | 11th | 1903(4) |
| | | 12th | 1903(4) |
| | | 13th | 1903(4) |
| | | 14th | 1903(10) |
| | | 15th | 1903(4) |
| | | 16th | 1903(1) |
| | | 17th | 1903(11) |
| | | 18th | 1903(11) |
| | | 19th | 1903(3) |
| | | 20th | 1903(1) |
| | | 21st first part | 1903(7) |
| | | last part | 1903(8) |
| | | 22d | 1903(6) |
| | | 23d | 1903(14) |
| | | 24th | 1903(10) |
| | 6 | 1st | 1903(12) |
| | | 2d | 1903(12) |
| | | 3d | 1903(12) (15) |
| | | 4th | 1903(12) |

## APPENDIX B

### WHAT HAPPENED TO THE OLD LAW

DISTRIBUTION OF OLD PROVISIONS OF THE PENAL LAW THAT HAVE BEEN REPEALED IN THE NEW TEN SECTIONS—(CONT'D)

| Old Statute | | | New Statute |
|---|---|---|---|
| Section Number | Subdivision Number | Sentence | Section and Subdivision Number |
| | | 5th | 1903(11) |
| | | 6th | 1902(3) |
| | | 7th | 1896(8) (9); 1902(3) |
| | 7 | 1st | 1903(15) |
| 1915 | 1 | 1st | 1902(4) |
| | 2 | 1st | 1902(4) |
| | 3 | 1st | 1902(4) |
| | 4 | 1st | 1902(4) |
| 1919 | | | 1904(3) |

II. DISTRIBUTION OF OLD PROVISIONS OF THE PENAL LAW THAT HAVE BEEN AMENDED IN THE NEW TEN SECTIONS

| Old Statute | New Section |
|---|---|
| Section Number | Section and Subdivision Number |
| 1906 | 1904(4) (5) (6) |
| 1944 | 1905 |
| 1991 | 1904(3) |

Di:

That Ha

| Section Number |
|---|
| 1897-a |
| 1897-b |
| 1897-c |
| 1898 |
| 1898-a |