# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued November 15, 2010      Decided April 15, 2011

No. 10-5062

STEPHEN DEARTH AND SECOND AMENDMENT FOUNDATION, INC.,
APPELLANTS

v.

ERIC H. HOLDER, JR.,
APPELLEE

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:09-cv-00587)

---

*Alan Gura* argued the cause for appellants. With him on the briefs were *Thomas M. Huff* and *Candice N. Hance*.

*Anisha S. Dasgupta*, Attorney, U.S. Department of Justice, argued the cause for appellee. With her on the brief were *Ronald C. Machen, Jr.*, U.S. Attorney, and *Mark B. Stern* and *Michael S. Raab*, Attorneys. *R. Craig Lawrence*, Assistant U.S. Attorney, entered an appearance.

Before: GINSBURG, HENDERSON and KAVANAUGH, *Circuit Judges*.

2

Opinion for the Court filed by *Circuit Judge* GINSBURG.

GINSBURG, *Circuit Judge*: Plaintiffs Stephen Dearth and the Second Amendment Foundation, Inc. (SAF), seeking declaratory and injunctive relief, claim that portions of 18 U.S.C. § 922 and related regulations are unconstitutional because they prevent Dearth from purchasing a firearm. The district court dismissed the suit for lack of standing. Because we conclude Dearth does have standing, we reverse the judgment of the district court and remand the case to the district court for further proceedings.

I. Background

The plaintiffs challenge 18 U.S.C. §§ 922(a)(9) and (b)(3) and implementing regulations promulgated by the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), which together make it impossible for a person who lives outside the United States lawfully to purchase a firearm in the United States. Section 922(a)(9) makes it unlawful for "any person ... who does not reside in any State to receive any firearms unless such receipt is for lawful sporting purposes." *Accord* 27 C.F.R. § 478.29a. Section 922(b)(3) prohibits the sale or delivery of a firearm by a licensed dealer to "any person who the licensee knows or has reasonable cause to believe does not reside in ... the State in which the licensee's place of business is located," except this prohibition does "not apply to the loan or rental of a firearm ... for temporary use for lawful sporting purposes."[*] In order to ensure compliance, the ATF requires the seller to obtain from the purchaser a completed form (Form 4473) listing certain personal information. *See* 27 C.F.R. §§ 478.124(a), (c)(1).

---

[*] Section 922(b)(3) contains another exception not relevant here.

3

Question 13 on Form 4473 asks for the purchaser's state of residence. *See id.* § 478.124(c)(1).[*]

Dearth is an American citizen who resides in Canada and no longer maintains a residence in the United States. In 2006 and again in 2007 Dearth attempted to purchase a firearm in the United States. On both occasions, he "could not provide a response to Question 13" on account of his residing in Canada; therefore "the transaction was terminated." Compl. ¶¶ 22–23. Dearth alleges he still intends, if he may do so lawfully, to purchase firearms in the United States for the purposes of sporting and self-defense, and to store those firearms with his relatives in Ohio.

Dearth and the SAF, a non-profit organization that promotes the Second Amendment right to keep and bear arms, filed the present action in the district court, which subsequently granted the Government's motion to dismiss for lack of standing. It held the merchants' refusals to sell firearms to Dearth did not support his standing to sue under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202. *Hodgkins v. Holder*, 677 F. Supp. 2d 202, 204 (2010). Nor, according to the district court, did Dearth have "pre-enforcement" standing on the ground that the Government had "personally threatened" him with prosecution. *Id.* at 204–05 (quoting *Seegars v. Gonzalez*, 396 F.3d 1248, 1251 (D.C. Cir. 2005)). The district court also rejected the SAF's claim to organizational and representational standing. *Id.* at 206.

---

[*] Form 4473 can be viewed at http://www.atf.gov/forms/download/atf-f-4473.pdf. According to 27 C.F.R. § 478.11, "An individual resides in a State if he or she is present in a State with the intention of making a home in that State."

4

## II. Analysis

In considering de novo whether Dearth has standing, we assume the factual "allegations of the complaint relevant to standing are true." *Young Am.'s Found. v. Gates*, 573 F.3d 797, 799 (D.C. Cir. 2009). Dearth's burden is to show he suffers an "injury in fact" that is both "concrete and particularized" and either "actual or imminent." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks and citations omitted). That injury must be both "fairly ... trace[able] to the challenged action of the defendant" and redressable by the court. *Id.* at 560–61 (internal quotation marks and citation omitted). The Government disputes only whether Dearth has suffered a cognizable injury, as the requirements of traceability and redressability are clearly met.

In a case of this sort, where the plaintiffs seek declaratory and injunctive relief, past injuries alone are insufficient to establish standing. Rather, Dearth must show he is suffering an ongoing injury or faces an immediate threat of injury. *See Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983); *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974). Dearth argues he suffers continuing, adverse effects sufficient to support standing because the Government denied and continues to deny him the ability to purchase a firearm; he notes we held a similar injury sufficient for standing in *Parker v. District of Columbia*, 478 F.3d 370, 376 (2007), *aff'd sub nom. District of Columbia v. Heller*, 554 U.S. 570 (2008). More specifically, he argues the Government denied him the ability to buy a firearm by requiring, via Question 13 on Form 4473, that he reside in a state as a condition of making such a purchase.

5

We agree with Dearth that the Government has denied him the ability to purchase a firearm and he thereby suffers an ongoing injury.  Dearth's injury is indeed like that of the plaintiff in *Parker*, who had standing to challenge the District of Columbia's ban on handguns because he had been "denied a registration certificate to own a handgun."  478 F.3d at 376.  As we there stated, "a license or permit denial pursuant to a state or federal administrative scheme" that can "trench upon constitutionally protected interests" gives rise to "an Article III injury"; "the formal process of application and denial, however routine," suffices to show a cognizable injury.  *Id.*

The Government nonetheless argues *Parker* does not control both because here it did not affirmatively deny Dearth's application to purchase a firearm and because Dearth does not claim he has a right to be issued a "permit" or "license" by the Government.  As to the first distinction, we hold the Government cannot so easily avoid suit when it has erected a regulatory scheme that precludes Dearth from truthfully completing the application form the Government requires for the purchase of a firearm.  Like the plaintiff in *Parker*, Dearth twice attempted to go through the "formal process" of applying to purchase a firearm and each time failed because of the laws and regulations he now challenges.

As for its second effort to distinguish *Parker*, the Government places undue weight upon our statement there that the plaintiff was "asserting a right to a registration certificate, the denial of which [was] his distinct injury."  478 F.3d at 376.  More fundamentally, as we explained, the plaintiffs there were "claim[ing] a right to possess ... 'functional firearms[]' ... for self-defense in the home."  *Id.* at 374.  That is, the right to possess, not the right to a permit or license, was the substance of their claim.  One of those plaintiffs had standing because, rather than alleging merely an

6

intent to violate the District's gun laws, he had "invoked his rights under the Second Amendment to challenge the statutory classifications used to bar his ownership of a handgun." *Id.* at 376. Just so with Dearth, who raises a constitutional challenge to the regulatory and "statutory classifications" that bar him from acquiring a firearm. *Id.* That the regulatory regime does not provide for the Government's issuance of a permit or license is of no moment; the challenged provisions have similarly thwarted Dearth's best efforts to acquire a firearm.

The Government also argues Dearth cannot show he suffers either the "continuing, present adverse effects," *Lujan*, 504 U.S. at 564 (internal quotation marks and citation omitted), or the "sufficient likelihood of future injury," *Haase v. Sessions*, 835 F.2d 902, 911 (D.C. Cir. 1987), necessary to support standing because he is not currently in the United States and because he has no concrete plan to visit the United States. Accordingly, the Government maintains Dearth has failed to show he will be injured anytime "soon." *Lujan*, 504 U.S. at 564 n.2. Not so.

In *Lujan*, the case upon which the Government relies for this point, various environmental organizations challenged a regulation that limited application of a section of the Endangered Species Act to the United States and the high seas. *Id.* at 557–59. The organizations presented evidence that two of their members who had in the past traveled abroad to visit the habitats of endangered species intended to do so again, but the Court held their prospective injury was insufficiently "actual or imminent." *Id.* at 563–64. As the Government here emphasizes, the Court said "'some day' intentions — without any description of concrete plans, or indeed even any specification of *when* the some day will be" — were "simply not enough" to survive a summary judgment

7

motion. *Id.* at 564 (one member "confessed that she had no current plans" to return); *see also Haase*, 835 F.2d at 911 (no standing to challenge policy applicable to travelers entering the United States from Nicaragua when the plaintiff did no more than "assert generally that he might one day return to Nicaragua").

Dearth alleges in his complaint he "has many friends and relatives" in the United States "whom he intends to continue visiting on a regular basis." Dearth also states directly that he "intends to purchase firearms within the United States, which he would store securely at his relatives' home in Mount Vernon, Ohio," allegations that, when tested by a motion to dismiss, we presume to "embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561 (internal quotation marks and citation omitted). Dearth, moreover, is not alleging merely an "injury at some indefinite future time," *id.* at 565 n.2; he claims he presently suffers a cognizable injury to his constitutional rights because the federal regulatory scheme thwarts his continuing desire to purchase a firearm. *Parker*, 478 F.3d at 376.

The Government objects that it remains speculative whether Dearth will again come up against the statutes and regulations he is challenging, citing *Golden v. Zwickler*, 394 U.S. 103 (1969). In that case the Court held the plaintiff lacked standing to challenge the constitutionality of a New York law that prohibited the distribution of anonymous literature concerning an election campaign. *Id.* at 109–10. The plaintiff alleged he had before and intended again to distribute such literature criticizing a particular Congressman during an upcoming election. Because the Congressman had by then left the House of Representatives to begin a 14-year term as a state court judge, it was "most unlikely that [he] would again be a candidate for Congress." *Id.* at 109 & n.4.

8

As it was therefore "wholly conjectural that another occasion might arise when [the plaintiff] might be prosecuted for distributing the handbills," the Court concluded the plaintiff had failed to show "sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* at 108–09 (internal quotation marks and citation omitted).

In this case, there is no similar contingency that makes Dearth's injury conjectural; indeed his injury is present and continuing. In light of Dearth's stated intent to return regularly to the United States, only to face a set of laws that undoubtedly prohibit him from purchasing a firearm, we conclude his injury is sufficiently real and immediate to support his standing to challenge those laws.[*]

### III. Conclusion

For the foregoing reasons, the order of the district court dismissing this case for lack of standing is reversed and the matter is remanded to the district court for further proceedings.

*So ordered.*

---

[*] Accordingly, we need not consider whether Dearth has pre-enforcement standing. Nor, because the SAF raises no issue not also raised by Dearth, need we decide whether it has standing. *Environmental Action, Inc. v. FERC*, 939 F.2d 1057, 1061 n.∗ (D.C. Cir. 1991).