IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
WHITE PLAINS DIVISION

| | | |
|---|---|---|
| ALAN KACHALSKY, et al., | : | Case No. 10-CV-05413-CS |
| | : | |
| Plaintiffs, | : | NOTICE OF NEWLY DECIDED AUTHORITY |
| | : | |
| v. | : | |
| | : | |
| SUSAN CACACE, | : | |
| | : | |
| Defendants. | : | |
| | : | |
| --------------------------------------------------X | | |

NOTICE OF NEWLY DECIDED AUTHORITY

TO THE HONORABLE COURT AND ALL PARTIES, please take notice that on July 6, 2011, the Court of Appeals for the Seventh Circuit issued an opinion in *Ezell* v. *City of Chicago*, 2011 U.S. App. LEXIS 14108 (7th Cir. July 6, 2011), ordering the issuance of a preliminary injunction against the City of Chicago's gun range ban, as a violation of the Second Amendment. Plaintiff Second Amendment Foundation, Inc. was a prevailing party in *Ezell*.

*Ezell* comprehensively addresses numerous issues argued by the parties in this case, resolving all of them—and more—in Plaintiffs' favor. *Ezell*'s most salient points, for purposes of this case, are noted in turn:

    1.    *No Presumption of Constitutionality in Second Amendment Cases*

"The judge was evidently concerned about the novelty of Second Amendment litigation and proceeded from a default position in favor of the City. The concern is understandable, but the default position cannot be reconciled with *Heller*." *Ezell*, 2011 U.S. App. 14108 at *35.

2.   *The Second Amendment Applies Outside the Home*

The Seventh Circuit held that plaintiffs had a Second Amendment right to operate and use gun ranges to practice their shooting skills, activity that usually occurs outside the home: "The right to possess firearms for protection implies a corresponding right to acquire and maintain proficiency in their use; the core right wouldn't mean much without the training and practice that make it effective." *Ezell*, 2011 U.S. App. LEXIS 14108 at *48.

3.   *Individual Standing*

In *Ezell*, three individuals asserted that their Second Amendment rights were violated because the city barred them from training and practicing with their firearms. The Seventh Circuit held that plaintiffs' standing "is not in serious doubt." 2011 U.S. App. LEXIS 14108 at *19. Their "injuries easily support Article III standing." *Id.*, at *20. "Their injuries are clear."*Id.*, at *21.

In part because it continued the trend of following First Amendment doctrine in applying the Second Amendment, *infra*, the Seventh Circuit criticized and declined to adopt a "no set of circumstances rule" as urged by the Defendants here. *See Ezell*, 2011 U.S. App. LEXIS 14108 at *27-*31.

4.   *Associational Standing*

The Seventh Circuit upheld Plaintiff Second Amendment Foundation's standing to assert Second Amendment challenges:

> The Second Amendment Foundation and the Illinois Rifle Association have many members who reside in Chicago and easily meet the requirements for associational standing: (1) their members would otherwise have standing to sue in their own right; (2) the interests the associations seek to protect are germane to their organizational purposes; and (3) neither the claim asserted nor the relief requested requires the participation of individual association members in the lawsuit.

*Ezell*, 2011 U.S. App. LEXIS at *22 (citations omitted). The Seventh Circuit also followed the rule that there was not even a need to examine the Second Amendment Foundation's standing, considering the individual plaintiffs had standing. *Id.*, at *22-*23 n.7.

     5.    *Application of First Amendment Doctrine in Second Amendment Cases*

Plaintiffs assert that the prior restraint doctrine, which usually arises in the context of First Amendment cases, governs the Defendants' standards for issuing handgun carry licenses under the Second Amendment.  Defendants disagree, claiming that the prior restraint doctrine must be limited to the First Amendment.

*Ezell* is replete with references to First Amendment doctrines, which the Seventh Circuit clearly expressed it would look to in determining the law of the Second Amendment. A few examples:

> In the First Amendment context, the Supreme Court long ago made it clear that "one is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place." The same principle applies here.

*Ezell*, 2011 U.S. App. LEXIS 14108 at *25-*26 (citations and internal quotation marks omitted).

> The loss of a First Amendment right is frequently presumed to cause irreparable harm based on "the intangible nature of the benefits flowing from the exercise of those rights; and the fear that, if those rights are not jealously safeguarded, persons will be deterred, even if imperceptibly, from exercising those rights in the future." The Second Amendment protects similarly intangible and unquantifiable interests.

*Ezell*, 2011 U.S. App. LEXIS 14108 at *32 (citations omitted).

> The Supreme Court's free-speech jurisprudence contains a parallel for this kind of threshold "scope" inquiry.

*Ezell*, 2011 U.S. App. LEXIS 14108 at *41 (citations omitted) (discussing *Heller*'s citation of presumptively-lawful regulation that may be outside the scope of Second Amendment protection).

> Borrowing from the Court's First Amendment doctrine, the rigor of this judicial review will depend on how close the law comes to the core of the Second Amendment right and the severity of the law's burden on the right.

*Ezell*, 2011 U.S. App. 14108 at *43-*44 (citations omitted).

> Both *Heller* and *McDonald* suggest that First Amendment analogues are more appropriate [than abortion analogues], *see Heller*, 554 U.S. at 582, 595, 635; *McDonald*, 130 S. Ct. at 3045, and on the strength of that suggestion, we and other circuits have already begun to adapt First Amendment doctrine to the Second Amendment context.

*Ezell*, 2011 U.S. App. LEXIS 14108 at *55.

      6.      *Heightened Scrutiny in Second Amendment Cases*

With respect to their equal protection claim, Plaintiffs aver that classifying individuals seeking to carry handguns for self-defense on the basis of the government's assessment of their necessity is inherently arbitrary and fails any level of heightened scrutiny. Defendants claim that intermediate scrutiny, at most, should apply, and their laws pass such review.

*Ezell* continues the trend of tailoring the standard of review to the nature of the claimants and the degree to which the challenged law implicates core Second Amendment rights:

> Labels aside, we can distill this First Amendment doctrine and extrapolate a few general principles to the Second Amendment context. First, a severe burden on the core Second Amendment right of armed self-defense will require an extremely strong public-interest justification and a close fit between the government's means and its end. Second, laws restricting activity lying closer to the margins of the Second Amendment right, laws that merely regulate rather than restrict, and modest burdens on the right may be more easily justified. How much more easily depends on the relative severity of the burden and its proximity to the core of the right.

*Ezell*, 2011 U.S. App. LEXIS at *59.

In *Ezell*, the Seventh Circuit concluded that "a more rigorous showing than that applied in [*United States* v. *Skoien*, 614 F.3d 638 (7th Cir. 2010) (en banc)] should be required, if not quite 'strict scrutiny.'" *Ezell*, at *60. Defendants relied heavily on *Skoien*, which concerned a challenge to the domestic violence firearms prohibition brought by an individuals who wished to use a gun

for hunting. Clearly, the *Ezell* claim, by law-abiding individuals seeking to engage in self-defense, triggered a higher level of review.

| | |
|---|---|
| Dated: July 29, 2011 | Respectfully submitted, |
| Alan Gura* | Vincent Gelardi |
| Gura & Possessky, PLLC | Gelardi & Randazzo |
| 101 N. Columbus Street, Suite 405 | 800 Westchester Avenue, Suite S-608 |
| Alexandria, VA 22314 | Rye Brook, NY 10573 |
| 703.835.9085/Fax 703.997.7665 | 914.251.0603/Fax 914.253.0909 |
| Lead Counsel | Local Counsel |
| *Admitted Pro Hac Vice | |

By: /s/ Alan Gura
Alan Gura

Attorneys for Plaintiffs