**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
Alan Kachalsky, Christina Nikolov, Eric Detmer, :
Johnnie Nance, Anna Marcucci-Nance, :
and Second Amendment Foundation, Inc., :
                                           :
                Plaintiffs,          :  **Civil Action Number: 10-cv-5413**
                                           :  **(Hon. Cathy Seibel)**
        -against-                        :
                                           :
Susan Cacace, Jeffrey A. Cohen, :
Albert Lorenzo, Robert K. Holdman :
and County of Westchester, :
                                           :
               Defendants.       :
-------------------------------------------------------------X

**STATE DEFENDANTS' MEMORANDUM IN RESPONSE**
**TO PLAINTIFFS' NOTICE OF NEWLY DECIDED AUTHORITY**

      State Defendants the Hon. Susan Cacace, the Hon. Jeffrey A. Cohen, the Hon. Albert Lorenzo and the Hon. Robert K. Holdman hereby respond to Plaintiffs' "Notice of Newly Decided Authority", dated July 29, 2011. In their Notice, Plaintiffs make arguments based on a July 6, 2011 decision by the United States Court of Appeals for the Seventh Circuit in the case Ezell v. City of Chicago, 2011 WL 2623511, __ F.3d __ (7th Cir. 2011). Plaintiffs' Notice mischaracterizes Ezell and its potential effect on this case.

**Preliminary Statement**

      Just days after the Supreme Court's decision in McDonald v. City of Chicago, Ill., _U.S._, 130 S.Ct. 3020 (2010), which struck down Chicago's handgun ban, the Chicago City Council enacted new legislation regulating firearms, described by the Seventh Circuit as "a sweeping array of firearms restrictions." Ezell, at *2. Chicago required firing range training in order to lawfully own a gun but at the same time prohibited all firing ranges within the City of Chicago (excepting certain firing ranges that were

restricted to law enforcement or security personnel).  The law challenged in <u>Ezell</u> was described in the concurrence as a "thumbing of the municipal nose at the Supreme Court" which "admittedly was designed to make gun ownership as difficult as possible" and effected "a complete ban in gun ownership within City limits". <u>Ezell</u>, at * 20.

Various individual and organizational plaintiffs mounted a facial constitutional challenge to the City's ban on firing ranges and sought preliminary injunctive relief.  The Seventh Circuit reversed the district court's decision denying injunctive relief, finding that Chicago's firing-range ban was

> not merely regulatory; it *prohibits* the 'law-abiding, responsible citizens' of Chicago from engaging in target practice in the controlled environment of a firing range. This is a serious encroachment on the right to maintain proficiency in firearm use, an important corollary to the meaningful exercise of the core right to possess firearms for self-defense. That the City conditions gun possession on range training is an additional reason to closely scrutinize the range ban."  <u>Ezell</u>, at * 17.

Because the law implicated a "core" component of the Second Amendment, namely the right to possess a firearm in the home for self-defense purposes, the court applied a form of heightened scrutiny lower than strict scrutiny, requiring the City to show a "strong public-interest justification" for its ban on range training and a "close fit" between the law and the purposes it served. <u>Id.</u>  "Stated differently, the City must demonstrate that civilian target practice at a firing range creates such genuine and serious risks to public safety that prohibiting range training throughout the city is justified." <u>Id.</u>  The Seventh Circuit found that Chicago had not "come close" to satisfying that standard, that the City's public safety concerns were "entirely speculative".

In their Notice, Plaintiffs go beyond informing the court of <u>Ezell</u> and extrapolate from the decision, in particular asserting that it establishes that the Second Amendment

- 2 -

applies outside the home[1]; supports their argument that the First Amendment "prior restraint" doctrine applies in the Second Amendment context; supports Plaintiffs' individual and associational standing; and establishes that heightened scrutiny always applies in Second Amendment cases.  State Defendants differ with Plaintiffs' interpretation of Ezell, and note that it is just one of numerous Second Amendment decisions issued since the submission of the parties' cross-motions for summary judgment in this case.  Recent Second Amendment decisions demonstrate that the State Defendants are entitled to summary judgment in this action and nothing in Ezell holds otherwise.

**Ezell Does Not Establish that Plaintiffs Have a Second Amendment Right to Carry a Concealed Handgun Outside the Home.**

To support their claim that the Second Amendment applies outside the home, Plaintiffs point to language in the Ezell decision which states "[t]he right to possess firearms for protection implies a corresponding right to acquire and maintain proficiency in their use." Id. at *14.  However, this must be put in the context of the Ezell case in which the possession of guns in the home (or anywhere) for self-defense was barred absent range training and that ranges within Chicago were prohibited by law.  However, the court in Ezell did not recognize a general right to carry a concealed handgun outside the home, but rather found that the law there at issue was a prohibition, not a regulation, observing that the "core" Heller right "implies a corresponding right to acquire and maintain proficiency in [a gun's] use; the core right wouldn't mean much without the

---

[1] Plaintiffs, in a section heading, state that following Ezell, there is "No Presumption of Constitutionality in Second Amendment Cases". Plaintiffs' Notice at p. 1.  However, the quote from Ezell upon which they rely neither holds nor suggests that the presumption of constitutionality does not apply in the Second Amendment context. Lemon v. Kurtzman, 411 U.S. 192, 208 (1973); Sanitation and Recycling Industry, Inc. v. City of New York, 928 F.Supp. 407, 412 (S.D.N.Y. 1996), aff'd, 107 F.3d 985 (1997).  Plaintiffs fail to cite any support for this proposition in Ezell or in any other case.

training and practice that make it effective" and noted the City's conflicting positions that firing range training was "so critical" to gun ownership that it is a necessary pre-condition to lawful handgun possession, while simultaneously banning firing ranges. Ezell, *14.

Ezell neither recognizes a fundamental right to carry a handgun outside the home nor holds that there is a Second Amendment right, not subject to regulation, which extends outside of the right to possess a handgun in the home for self-defense as established in Heller. Ezell, * 15. Furthermore, the limitations of the Heller right have consistently been recognized, not just in those cases cited in the State Defendants' previous briefing, but also in more recent decisions which have been issued, affirmed or had certiorari denied since the completion of briefing in this case. See U.S. v. Skoien, 614 F.3d 638 (7th Cir. 2010), cert. denied, 131 S.Ct. 1674 (2011); Osterweil v. Bartlett, 2011 WL 1983340 (N.D.N.Y. May 20, 2011); U.S. v. Masciandro, 648 F.Supp.2d 779, 788 (E.D. Va. 2009), aff'd, 638 F.3d 458, 474 (4th Cir. 2011); People v. Ellison, 128 Cal.Rptr.3d 245, 252 (Cal.App. 4 Dist. 2011)(Holding prohibition on concealed carrying of handgun in vehicle constitutional because it "does not impair the ability of a person to defend 'hearth or home'" and does not constitute "a blanket prohibition against carrying a firearm"); Paige v. U.S., 2011 WL 3190409, 16 (D.C. 2011)(Rejecting constitutional challenge to the District of Columbia's licensing and registration statutes.); State v. King, 2011 WL 2671937, * 4 (Ohio App. 2 Dist. 2011)(Rejecting Second Amendment and Equal Protection Challenge to Ohio law barring the carrying of loaded, accessible handguns in a motor vehicle).

**<u>Ezell Does Not Establish that the Idiosyncratic First Amendment Doctrine of "Prior Restraint" is Applicable in Plaintiffs' Second Amendment Challenge.</u>**

Plaintiffs assert that <u>Ezell</u> supports their argument for the application of the First Amendment doctrine of "prior restraint" in the Second Amendment context. Many courts have considered First Amendment jurisprudence to offer "guidance" or "inform" the development of an applicable standard of review in Second Amendment cases. <u>See</u>, e.g., <u>U.S. v. Chester</u>, 628 F.3d 673, 682 (4th Cir. 2010); <u>U.S. v. Marzzarella</u>, 614 F.3d 85, 97 (3d Cir. 2010).  While the court in <u>Ezell</u> also draws on First Amendment jurisprudence, noting that "labels aside", the court could "distill" First Amendment jurisprudence and "extrapolate a few general principles" to the Second Amendment context, it does not hold that such unique First Amendment doctrines as "prior restraint" should apply in Second Amendment challenges, and Plaintiffs cite to no such statements in <u>Ezell</u>.  <u>Ezell</u>, at * 17. As set forth in the State Defendants' previously submitted briefing, the prior restraint doctrine is incompatible with <u>Heller'</u>s recognition that the Second Amendment right is subject to substantial and numerous limitations-all of which could properly be characterized as prior restraints.  <u>Heller</u>, 554 U.S. at 626-27; <u>Heller v. District of Columbia</u> ("<u>Heller II</u>"), 698 F.Supp.2d 179, 187 (D. D.C. 2010).  Plaintiffs still cite no case which makes the "prior restraint" doctrine applicable to Second Amendment challenges;  <u>Ezell</u> certainly does not.

Furthermore, <u>Ezell</u> undercuts Plaintiffs' arguments that strict scrutiny must apply to their challenge because in <u>Ezell</u>, even after considering First Amendment jurisprudence, the court did not apply strict scrutiny to the challenged law.  Because New York law does not affect the kind of prohibition that the <u>Ezell</u> court found to be impermissibly intrusive of the "core" of the Second Amendment right, <u>Ezell</u> suggests that

intermediate scrutiny would pertain in this case. Ezell at *16 (Noting that even drawing on First Amendment principles intermediate scrutiny applies to lesser intrusions).  It is clear that even where a challenged law allegedly touches upon or impacts the Second Amendment right, or any constitutional right, strict scrutiny will not necessarily apply because courts "do not apply strict scrutiny whenever a law impinges upon a right specifically enumerated in the Bill of Rights." Chester, 628 F.3d at 682; see also Reese, 627 F.3d at 801; Nordyke, 2011 WL 1632063, *6-7. In fact, in considering a Second Amendment challenge to New York's licensing statutes recently, the Northern District of New York held that

> contrary to plaintiff's suggestion, fundamental constitutional rights are not invariably subject to strict scrutiny. In the First Amendment context, for example, content-neutral restrictions on the time, place and manner of speech are subject to a form of intermediate scrutiny….Other restrictions on speech may be held to an even lower standard of review….Drawing on First Amendment jurisprudence, several courts have applied intermediate scrutiny in the Second Amendment context.

Osterweil v. Bartlett, 2011 WL 1983340, 8 (N.D.N.Y. 2011)(Internal citations omitted). There, the court applied intermediate scrutiny to a law which had the effect of barring out of state residents from obtaining licenses to possess firearms for their homes in New York. See also, Peterson v. LaCabe, 2011 WL 843909, at *8-9  (D. Colo. March 8, 2011).

**Ezell Does Not Establish That the Plaintiffs in this Case, Particularly the Organizational Plaintiffs, Have Standing.**

Ezell addressed a purely facial challenge to an unambiguous law: to possess a handgun in Chicago, one must obtain firing range training and firing ranges were barred. The court held that in such challenges, "individual application facts do not matter…the plaintiff's personal situation becomes irrelevant" and noted that "facial challenges are to constitutional law what res ipsa loquitur is to facts—in a facial challenge, *lex ipsa*

- 6 -

*loquitur:* the law speaks for itself." Ezell, at * 9 (Internal citations and quotations omitted). This is hardly the case in the instant action before this Court where the Plaintiffs claims include "as applied" challenges to the "proper cause" standard applied by licensing officers, judges throughout most of the State, in issuing concealed carry licenses.

Furthermore, in Ezell, the Court held that the organizational plaintiffs met the test for associational or representational standing to assert claims on behalf of their members. That is not the case here. Since submission of the briefing in this case, the Second Circuit has issued a decision re-affirming the Circuit's position that in actions pursuant to 42 U.S.C. § 1983, like the instant action, organizations may not assert claims on behalf of their constituents. Nnebe v. Daus, 2011 WL 2149924, at *6 (2d Cir. May 31, 2011), citing League of Women Voters of Nassau Cnty. v. Nassau Cnty. Bd. of Supervisors, 737 F.2d 155, 160 (2d Cir.1984); Aguayo v. Richardson, 473 F.2d 1090 (2d Cir.1973), cert. denied, 414 U.S. 1146 (1974) ("Neither [the] language nor the history [of § 1983] suggests that an organization may sue under the Civil Rights Act for the violations of rights of members"). So SAF must, itself, satisfy the test for standing. Because SAF has not shown any cognizable constitutional injury caused by the § 400.00(2)(f), or any basis for associational standing to represent the interests of members, it must be dismissed as a plaintiff.

**Application of Heightened Scrutiny in Second Amendment Cases**

In District of Columbia v. Heller, 554 U.S. 570, 628 (2008), the Supreme Court did not establish a standard of review for Second Amendment challenges, but rejected rational basis review as the relevant standard where the core right was implicated. Ezell breaks no new ground on this point. As Plaintiffs correctly note, the trend in Second Amendment case law has been to look at the nature of the challenged law in determining the level of scrutiny to apply and to apply a lower level of scrutiny where the challenged law merely regulates but does not prohibit protected conduct or is not a "severe" burden on the Second Amendment right. Ezell, at * 17. In fact, in Ezell, even though the Court found, following a hearing, that the challenged law was *intended to* interfere with and did in fact impede the exercise of the core Second Amendment right, it declined to apply strict scrutiny.

As set forth in State Defendants' summary judgment briefing, following Heller, the overwhelming majority of courts have applied intermediate or lower scrutiny to Second Amendment claims, even those claims which touch upon gun possession in the home and this has remained true in the most recent decision, including those decisions issued or affirmed since the completion of briefing in this case. See U.S. v. Skoien, 614 F.3d 638 (7th Cir. 2010), cert. denied, 131 S.Ct. 1674 (2011); U.S. v. Reese, 627 F.3d 792, 800 (10th Cir. 2010), cert. denied, 131 S.Ct. 2476 (2011); United States v. Booker, 2011 WL 1631947(1st Cir. May 2, 2011); Nordyke v. King, 2011 WL 1632063, at *8 (9th Cir. May 2, 2011); Osterweil v. Bartlett, 2011 WL 1983340 (N.D.N.Y. May 20, 2011); U.S. v. Elkins, 2011 WL 1637618, at *4 (W.D. Va. May 2, 2011); People v. Delacy, 192 Cal.App.4th 1481, 1495-96 (Cal. Ct. App. 2011); Wilson v. Cook Cnty., 943 N.E.2d 768, 776-77 (Ill. App. Ct. 2011).

- 9 -

Dated: New York, New York
       August 16, 2011

                                        Respectfully submitted,

                                        ERIC T. SCHNEIDERMAN
Attorney General of the
 State of New York
<u>Attorney for the State Defendants</u>
By:
              /s/
_____
MONICA CONNELL
ANTHONY TOMARI
Assistant Attorney General
120 Broadway, 24th Floor
New York, NY 10271
(212) 416-8965/8553

- 9 -